**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_In re_

MERCON COFFEE CORPORATION, _et al._,[1]

Debtors.

_____/

Chapter 11

Case No. 23-11945 (MEW)

Jointly Administered

### ORDER (I) SCHEDULING A PLAN CONFIRMATION HEARING, (II) APPROVING THE DISCLOSURE STATEMENT, (III) ESTABLISHING PLAN SOLICITATION, VOTING AND TABULATION PROCEDURES, (IV) APPROVING FORMS OF NOTICES AND BALLOTS, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Mercon Coffee Corporation and certain of its affiliates that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") pursuant to sections 105, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order (the "**Order**"): (i) approving the adequacy of the Disclosure Statement; (ii) scheduling a hearing to consider confirmation of the Plan, (iii) establishing procedures for the solicitation of the Plan, and related procedures for Plan voting and the tabulation of votes; (iv) approving forms of notice and Ballots; and (v) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Order of Reference M- 431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion

and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided in accordance with the Case Management Order, such notice having

been adequate and appropriate under the circumstances, and it appearing that no other or further

notice need be provided; and the Court having reviewed the Motion; and the Court having held a

hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the

Hearing; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      **Approval of Disclosure Statement.** The Disclosure Statement (as may be amended,

supplemented, or otherwise modified from time to time) is hereby approved as providing Holders

of Claims entitled to vote on the Plan with adequate information to make an informed decision as

to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the

Bankruptcy Code. The Debtors are authorized to distribute, or cause to be distributed, by e-mail,

and if not by e-mail by first-class mail, the Disclosure Statement and the Solicitation Packages to

solicit votes on, and pursue confirmation of, the Plan.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides

Holders of Claims and Interests and other parties in interest with sufficient notice of the injunction,

exculpation, and release provisions of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.    The Debtors' request for a Confirmation Hearing to confirm the Plan and the confirmation dates and timelines provided herein are approved as set forth herein.

5.    **Confirmation Hearing Notice.** The Confirmation Hearing Notice and the service thereof, as described in the Motion, complies with the requirements of Bankruptcy Rules 2002(b) and 3017 and constitutes adequate and sufficient notice of (a) the Confirmation Hearing to consider confirmation of the Plan, (b) the manner in which a copy of the Plan and Disclosure Statement can be obtained, and (c) the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

6.    **Scheduling Summary.** The following schedule of dates and deadlines is hereby approved:

| Event | Date / Deadline |
|---|---|
| Hearing to Consider Approval of the Disclosure Statement | May 14 and 16, 2024 |
| Voting Record Date | May 10, 2024 |
| Entry of Disclosure Statement Order | May 23, 2024 |
| Solicitation Commencement Date | Three business days after entry of Disclosure Statement Order approving the Disclosure Statement (or as soon as reasonably practicable thereafter) |
| Plan Supplement Deadline | 5 business days before the Voting Deadline |
| Claims Estimation Motion Deadline | June 6, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Deadline to file the Confirmation Brief and Supporting Evidence | June 12, 2024, at 4:30 p.m. |
| Plan Objection Deadline | June 20, 2024 at 4:30 p.m. (prevailing Eastern Time) |
| Voting Deadline | June 20, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Voting Tabulations Affidavit | June 24, 2024, at 4:30 p.m. (prevailing Eastern Time) |

| Event | Date / Deadline |
|---|---|
| Deadline to file Omnibus Reply to Plan Objections | June 22, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Confirmation Hearing | June 28, 2024, at 11:00 a.m. (prevailing Eastern Time), subject to the Court's availability |
| Proposed Entry of order confirming the Plan | No later than June 30, 2024 |
| Proposed Effective Date of the Plan | No later than July 6, 2024 (subject to all conditions to effectiveness being satisfied or waived pursuant to the Plan) |

7.  **Solicitation Packages.** In order to solicit votes on, and pursue Confirmation of, the Plan, the Debtors are authorized to distribute, or cause to be distributed, in their discretion, by first-class mail, CD, or USB to each Holder of a Claim in one of the Voting Classes, as of the Voting Record Date, a Solicitation Package containing the following:

   a.  the approved form of Disclosure Statement, together with the Plan and all other exhibits annexed thereto, substantially in the form annexed hereto as **Exhibit A**-1;

   b.  the Confirmation Hearing Notice, substantially in the form annexed hereto as **Exhibit A-2**;

   c.  an appropriate form of Ballot (as defined below) to accept or reject the Plan along with a pre-addressed, postage prepaid return envelope;

   d.  a letter from the Debtors, substantially in the form annexed hereto as **Exhibit B-1**;

   e.  a letter from the Creditors Committee recommending acceptance of the Plan, substantially in the form annexed hereto as **Exhibit B-2**; and

   f.  such other materials as the Court may direct or approve, including any supplemental solicitation materials the Debtors may file with the Court.

8.  **Non-Voting Packages.** The Debtors are authorized to distribute, or cause to be distributed, by first-class mail to all Holders of Claims or Equity Interests in the Unimpaired Classes (Class 2 and Class 3), Holders of Claims and Equity Interests in the Deemed Rejecting Classes

(Class 6, Class 7 and Class 8), and Holders of Unclassified Claims, a package (the "**Non-Voting Package**"), which shall consist of the Confirmation Hearing Notice and an appropriate notice of non-voting status, substantially in the form annexed hereto as **Exhibits C-1 and C-2** (the "**Notice of Non-Voting Status**"). This distribution shall be for information purposes only and not for solicitation since such Creditors and Interest Holders shall not be entitled to vote on the Plan or shall be deemed to have accepted or rejected the Plan, as applicable. For avoidance of doubt, the Debtors may elect not to serve the Non-Voting Package on any Holder who is entitled to receive a Solicitation Package on account of a Claim in a Voting Class. The Notice of Non-Voting Status is hereby approved.

9.    **Information Packages.** To the extent that the Office of the United States Trustee, governmental units having an interest in these Cases or those parties requesting notice pursuant to Bankruptcy Rule 2002 have not otherwise received a Solicitation Package, prior to the Solicitation Commencement Date (as defined below), the Debtors shall distribute, or cause to be distributed, by first-class mail to such parties the following information (collectively, the "**Information Package**"): (a) the Disclosure Statement, together with the Plan and all other exhibits annexed thereto, (b) the Disclosure Statement Order, excluding the exhibits annexed thereto, and (c) the Confirmation Hearing Notice.

10.    **Confirmation Hearing Notice.** The Debtors shall distribute, or cause to be distributed, to all Holders of Claims or Equity Interests a copy of the Confirmation Hearing Notice in connection with the mailing of the Solicitation Packages, the Non-Voting Packages and the Information Packages. The Confirmation Hearing Notice shall advise any party wishing to obtain a copy of the Disclosure Statement and/or the Plan that such documents can be obtained free of charge on the Debtors' case website at https://cases.ra.kroll.com/mercon or upon request to the Solicitation

Agent by (i) writing to Mercon Coffee Corporation Ballot Processing Center, c/o Kroll

Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, (ii) emailing

the Solicitation Agent at MerconInfo@ra.kroll.com (with "**Mercon Solicitation Inquiry**" in the

subject line), or (iii) phoning the restructuring hotline maintained by Solicitation Agent at (844)

974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll).

11.     The Confirmation Hearing Notice complies with the requirements of Bankruptcy

Rules 2002(b), 2002(d), 3017(d), and Local Rule 2002-1, and is approved. Service of the

Confirmation Hearing Notice in accordance with the provisions of this Order shall constitute good

and sufficient notice of the Confirmation Hearing.

12.     **<u>Fixing the Record Date.</u>** The record date with respect to Holders of Claims shall be

May 10, 2024 (the "**Voting Record Date**"). The Voting Record Date shall be used for purposes of

determining: (i) the Holders of Claims and Equity Interests in (a) the Voting Classes, who will

receive Solicitation Packages and vote to accept or reject the Plan, and (b) the Non-Voting Classes,

who shall receive a Non-Voting Package and are not entitled to vote to accept or reject the Plan; and

(ii) whether Claims have been properly assigned or transferred to an assignee pursuant to

Bankruptcy Rule 3001(e) such that the assignee can vote to accept or reject the Plan as the Holder

of a Claim (without prejudice to the Debtors' right or power to object to such assignment or transfer).

The proposed Voting Record Date of May 10, 2024, is the same day as the general Claims Bar Date

established pursuant to the Court's Bar Date Order. Due to the time required to process and

document Claims filed by the general Claims Bar Date, the Solicitation Agent shall send a

Solicitation Package (including a Ballot) to (a) Holders of Claims that are scheduled by the Debtors,

(b) parties that filed a Proof of Claim on or before May 3, 2024 (one week before the Voting Record

Date and general Claims Bar Date) and (c) Holders of Claims that are the subject of a Bankruptcy

Court order providing that no proof of claim needs to be filed with respect to such Claim.  For claimants that filed a Proof of Claim between May 4, 2024, and May 10, 2024, the Solicitation Agent shall supplement its initial solicitation mailing with a supplemental mailing by May 22, 2024, or as soon as reasonably practicable thereafter. However, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if the parties have completed all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) by the Voting Record Date set forth above. The amount of each Holder's Claim shall be determined for solicitation and voting purposes as of the Voting Record Date.

13.    **Solicitation Agent.** Kroll Restructuring Administration LLC (the "**Solicitation Agent**") is authorized to, among other things, perform all Balloting Services.

14.    **Solicitation Commencement Date.** The Solicitation Agent shall have completed the distribution of the appropriate Solicitation Packages, Non-Voting Packages and Information Packages by no later than three (3) Business Days following the entry of this Order, or as soon as reasonably practicable thereafter (the "**Solicitation Commencement Date**") [3] to all Holders of Claims or Equity Interests, as applicable.

15.    **Undeliverable or Returned Notices and Solicitation Packages.** The Debtors shall not be required to mail the Solicitation Packages to any Holders of Claims or Equity Interests at addresses that are determined to be undeliverable, unless the Debtors (through the Solicitation Agent) are provided with an accurate address for each Claim or Interest Holder's previously undeliverable address at least ten (10) calendar days prior to the Solicitation Commencement Date.

---

[3] This initial mailing on or before the Solicitation Commencement Date may be followed by an additional supplemental solicitation mailing to accommodate Claims filed, amended, and/or superseded between May 4, 2024, and May 10, 2024.

If a Holder of Claims or Equity Interests has changed its mailing address after the Commencement Date, such Holder of Claims or Equity Interests shall be solely responsible for notifying the Solicitation Agent and the Debtors of its new address.

16.    **Prior Payment of Claim and Solicitation Packages.** The Debtors shall not be required to mail Solicitation Packages or other solicitation materials to Holders of Claims or Equity Interests that have already been paid in full during the Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

17.    **Approval of the Ballots and Procedures for Voting on the Plan.** The Ballots substantially in the form annexed hereto as **Exhibits D-1, D-2, D-3, D-4, and D-5** : (i) are sufficiently consistent with Official Form No. 14; (ii) adequately address the particular needs of these Chapter 11 Cases; and (iii) are appropriate for each of the Voting Classes, and are hereby approved. The Ballots will be sent to Holders of Claims in the Voting Classes who are entitled to vote on the Plan.

18.    **Voting Deadline.** The deadline by which all Ballots must be properly executed, completed, delivered to, and actually received by the Solicitation Agent shall be **June 10, 2024 at 4:30 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**") in order to be counted for Plan voting purposes. Ballots shall be returned to the Solicitation Agent by first-class mail postage prepaid, personal delivery or overnight courier. No Ballots shall be accepted by e-mail, facsimile or any other electronic format other than the E-Ballot Portal.

19.    **Procedures for Tabulating Acceptances and Rejections of the Plan.** Each Holder of a Claim in a Voting Class shall be entitled to vote the amount of its Claim as of the Voting Record Date. For purposes of voting on the Plan, with respect to all Holders of Claims against the Debtors, the amount of a Claim used to tabulate acceptance or rejection of the Plan shall be as follows:

a.  Each Holder of Class 1 Prepetition First Lien Claims and Class 2A FMO Secured Claims will be entitled to vote the principal amount held as of the Voting Record Date.  The amount of Class 1 Prepetition First Lien Claims has already been established by order of the Court (which may be supplemented by additional information provided by the administrative agent and such established Claim amount shall also be used for purposes of voting on account of the associated deficiency claim) and the amount of Class 2A FMO Secured Claims will be established by reference to (a) the Debtors' applicable books and records and/or (b) the list of record Holders maintained by the applicable administrative agent, dated as of the Voting Record Date, which shall reflect all principal outstanding amounts of the applicable positions held by such registered Holders as of the Voting Record Date. The applicable administrative agents shall provide the applicable registers of Holders and their respective Claim amounts for voting purposes as of the Voting Record Date to the Solicitation Agent in excel format no later than one business day following the Voting Record Date.  For voting purposes, any and all Proofs of Claim filed on account of Class 1 Prepetition First Lien Claims and Class 2A FMO Secured Claims shall be disregarded.

b.  In respect of Class 4A General Unsecured Claims, Class 4B Dutch Law SME Claims, and Class 5 Convenience Claims, the amount of the Claim listed in the applicable Debtors' schedules of assets and liabilities; <u>unless</u> (i) such Claim is not scheduled, (ii) the Claim is scheduled but listed (x) as contingent, unliquidated, undetermined or disputed (unless the applicable bar date established by the Court for filing proofs of claim has not yet passed) or (y) in the amount of $0.00, (iii) a Proof of Claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law), (iv) such Claim has been satisfied by the Debtors, (v) such Claim has been resolved pursuant to a stipulation or order entered by the Court or (vi) such Claim is the subject of a Bankruptcy Court order establishing the amount of such Claim (which amount may be supplemented by additional information provided by the administrative agent). If a Proof of Claim has been filed, then the undisputed, noncontingent and liquidated amount specified in such Proof of Claim shall be entitled to vote. If applicable, a different amount may be temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018, provided that any Rule 3018(a) motion to estimate a claim for voting purposes must be filed no **later than May 29, 2024, at 4:30 p.m. (prevailing Eastern Time).**

c.  A Ballot cast by an alleged Creditor who has timely filed a Proof of Claim in a wholly contingent, unliquidated, unknown or uncertain amount that is not the subject of a Claim Objection filed before the Claim Objection Deadline shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only in determining whether

the aggregate Claim Amount requirement of section 1126(c) of the Bankruptcy Code has been met.

d.  If a Claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed on or before the Voting Record Date; or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline; such Claim shall be disallowed for voting purposes; provided, however, no Claim shall be disallowed for voting purposes to the extent such Claim is the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim.

e.  Proofs of claim filed for $0.00 are not entitled to vote.

f.  Except as otherwise provided in subsection (c) hereof, if a Creditor casts a Ballot and has timely filed a Proof of Claim (or has otherwise had a Proof of Claim deemed timely filed by the Court under applicable law), but the Creditor's Claim is the subject of a Claim Objection filed by the Claim Objection Deadline, the Debtors request, in accordance with Bankruptcy Rule 3018(a), that the Creditor's Ballot not be counted.

g.  Except as otherwise provided in subsection (c) hereof, if the Debtors have requested by motion or objection at least **fourteen (14) days** prior to the Confirmation Hearing that a Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to a Claim Objection to such Claim, the Ballot of the Holder of such Claim shall be counted in the reduced amount requested by the Debtors and/or in the requested category.

20.  The following voting procedures and standard assumptions shall be used in tabulating the Ballots:

a.  For purposes of the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code, to the extent that it is possible to do so for all Voting Classes, separate Claims held by a single Creditor against a particular Debtor in each Voting Class will be aggregated as if such Creditor held a single Claim against such particular Debtor in such Voting Class, and the votes related to those Claims shall be treated as a single vote on the Plan.

b.  Creditors with multiple Claims within a particular Voting Class must vote all such Claims in any such Voting Class to either accept or reject the Plan, and may not split their vote(s) within a Voting Class. Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims within the same Voting Class will not be counted.

c.  In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Solicitation Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the

10

Holder of such transferred Claim as of the Voting Record Date, *provided* that nothing herein shall be deemed to be a consent by the Debtors to the transfer of any claim.

d.  The delivery of a Ballot will be deemed made only when the Solicitation Agent has actually received the original, executed Ballot.

e.  If a Holder of a Claim casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received before the Voting Deadline shall supersede and revoke any earlier received Ballot, and only the last Ballot received before the Voting Deadline shall be counted.

f.  Unless otherwise provided, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, and (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn. The Debtors intend to consult with the Solicitation Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. The Debtors expressly reserve the right to contest the validity of any such withdrawals of Ballots.

g.  Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Ballots that are not in proper form.

h.  Subject to any contrary order of the Court, the Debtors reserve the right to waive any defects, irregularities or conditions of delivery as to any particular Ballot, including failure to timely file such Ballot.

i.  Unless otherwise ordered by the Court or waived by the Debtors, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

j.  To assist in the solicitation process, the Debtors request that the Court grant the Voting Agent the authority to contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the Debtors, Solicitation Agent, nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any such party incur any liability for failure to provide such notification. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted (except as set forth in (g) above).

k.      The Solicitation Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, the Solicitation Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

l.      If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan will **not** be deemed accepted by the Holders of such Claims in such Class.

21.     To the extent a Holder of a Claim in a Voting Class has filed (i) duplicate Proofs of Claim with respect to a single Claim against a single Debtor, or (ii) Proofs of Claim amending previous Proofs of Claim with respect to a single Claim against a single Debtor, such Holder of a Claim shall only be entitled to cast one vote for such Claim, whether or not the Debtors have objected to such Claim(s). However, a Holder of Claims in more than one Voting Class under the Plan must execute and submit a separate Ballot for each Class of Claims in which the claimant holds a Claim.

22.     Notwithstanding the foregoing, the following types of Ballots shall not be counted in determining whether the Plan has been accepted or rejected:

a.      any Ballot that is otherwise properly completed, executed and timely returned to the Solicitation Agent, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan;

b.      any Ballot received after the Voting Deadline, except in the Debtors' discretion or by order of this Court;

c.      any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

d.      any Ballot that is illegible or contains insufficient information to permit the identification of the Creditor;

e.      any Ballot that partially accepts, or partially rejects, the Plan;

f.      any Ballot cast by a Person or Entity that does not hold a Claim in a Voting

Class;

g.      any unsigned Ballot or Ballot without an original signature, except in the Debtors' discretion; and

h.      any Ballot transmitted to the Solicitation Agent by facsimile, e-mail or other electronic means.

23.      Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim that has been temporarily allowed by this Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

24.      **Voting Tabulation Affidavit.** The Solicitation Agent shall file its affidavit verifying the mailing of Ballots and the results of its voting tabulations reflecting the votes cast to accept or reject the Plan no later than **June 24, 2024, at 4:30 p.m. (prevailing Eastern Time)**.

25.      **Confirmation Hearing.** The date set for the Confirmation Hearing shall be **June 28, 2024, at 11:00 a.m. (prevailing Eastern Time)**. The Confirmation Hearing may be continued by the Debtors from time to time without further notice to Creditors, Interest Holders or other parties in interest.

26.      **Notice of the Confirmation Hearing.** The Debtors shall provide all known Creditors and Interest Holders, parties filing a notice of appearance in these Cases, governmental units having an interest in these Cases, and indenture trustees each as of the Voting Record Date, with a copy of the Confirmation Hearing Notice as part of the Solicitation Packages, Non-Voting Packages or Information Packages, as applicable, as set forth above.

27.      **Objection Procedures Regarding Confirmation of the Plan.** The deadline for filing and serving written objections to Confirmation of the Plan (including any supporting memoranda) (the "**Objections**") shall be **June 20, 2024, at 4:30 p.m. (prevailing Eastern Time)**

(the "**Plan Objection Deadline**"). Any Objections must:

a)    Be in writing;

b)    State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

c)    State with particularity the basis and nature of any objection;

d)    Conform to the Bankruptcy Rules and the Local Rules;

e)    Be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and

f)    Be filed and served in accordance with General Order M-399 so as to be received by the Court and the following parties:

i.    The Chambers of the Honorable Judge Michael E. Wiles, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 617, New York, New York 10004; The Debtors, Counsel to the Debtors, Baker & McKenzie LLP (Attn: Paul J. Keenan Jr., and Reginald Sainvil, 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 and Blaire Cahn, 452 Fifth Avenue, New York, New York 10018);

ii.    Counsel to the Prepetition First Lien Agent, Cadwalader, Wickersham & Taft LLP (Attn: Ingrid Bagby and Andrew Greenberg), 200 Liberty Street, New York, New York 10281;

iii.    Counsel to the United States Trustee (Attn: Daniel Rudewicz), One Bowling Green, Suite 534, New York, New York 10004; and

iv.    Counsel to the Creditors Committee, O'Melveny & Myers LLP (Attn: Louis R. Strubeck, Jr. and Matthew P. Kremer), 7 Times Square, New York, New York 10036 and to O'Melveny & Myers LLP (Attn: Gregory M. Wilkes and Scott P. Drake), 2801 North Harwood Street, Suite 1600, Dallas, Texas 75201.

28.    The Debtors or any other party supporting Confirmation of the Plan, are authorized to file a response to any Objections no later than **June 12, 2024 at 4:30 p.m. (prevailing Eastern Time)**. At that time, the Debtors may file any additional memorandum of law in support of

Confirmation of the Plan.

29.     **Non-Substantive Changes.** The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Notices and any related documents without further order of this Court but with the consent of the Prepetition First Lien Agent and the Creditors Committee, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package, the Non-Voting Packages and/or the Information Packages prior to their distribution of such materials, and shall provide notice to the Notice Parties.

30.     **Copies and Review of Documents.** Copies of the Plan, the Disclosure Statement and the Disclosure Statement Order are available free of charge at the Debtors' case website at https://cases.ra.kroll.com/mercon or upon request to the Solicitation Agent by (i) writing to Mercon Coffee Corporation Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, (ii) emailing the Solicitation Agent at MerconBallots@ra.kroll.com (with "**Mercon Solicitation Inquiry**" in the subject line), or (iii) phoning the restructuring hotline maintained by Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll).

31.     The Debtors and the Solicitation Agent are authorized and empowered to take any and all actions necessary to implement the terms of this Disclosure Statement Order.

32.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a Claim or Interest after the Voting Record Date.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

35.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

36.     The Debtors are authorized to take all actions deemed necessary to effectuate the relief granted in this Order in accordance with the Motion.

37.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: New York, New York
      May 24, 2024

               /s/ **Michael E. Wiles**
               HONORABLE MICHAEL E. WILES
               UNITED STATES BANKRUPTCY JUDGE

**Exhibit A-1**

**Disclosure Statement**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

# FOURTH AMENDED DISCLOSURE STATEMENT
## FOR FOURTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS

Paul J. Keenan Jr. (admitted *pro hac vice*)
Mark D. Bloom (admitted *pro hac vice*)
John R. Dodd (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        mark.bloom@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors and Debtors-in Possession*

Dated: May 23, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

## IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

EXCEPT AS OTHERWISE PROVIDED HEREIN, CAPITALIZED TERMS NOT DEFINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN. UNLESS OTHERWISE NOTED, ALL DOLLAR AMOUNTS PROVIDED IN THIS DISCLOSURE STATEMENT AND THE PLAN ARE GIVEN IN UNITED STATES DOLLARS.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATING TO THE PLAN, CERTAIN EVENTS THAT HAVE OCCURRED IN THE CHAPTER 11 CASES, AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT ALL SUCH SUMMARIES ARE FAIR AND ACCURATE AS OF THE DATE HEREOF, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE UNDERLYING DOCUMENTS AND TO THE EXTENT THAT THEY MAY CHANGE AS PERMITTED BY THE PLAN AND APPLICABLE LAW. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT OR THIRD-PARTY ADVISORS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION. STATEMENTS IN THIS DISCLOSURE STATEMENT ARE NOT AND SHALL NOT BE DEEMED TO BE ADMISSIONS BY THE DEBTORS.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. EXCEPT AS OTHERWISE SPECIFICALLY AND EXPRESSLY STATED HEREIN, THIS DISCLOSURE STATEMENT DOES NOT REFLECT ANY EVENTS THAT MAY OCCUR AFTER THE DATE HEREOF AND THAT MAY HAVE A MATERIAL EFFECT ON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS DO NOT UNDERTAKE ANY OBLIGATION TO, AND DO NOT INTEND TO, UPDATE THE PROJECTIONS. THUS, THE PROJECTIONS WILL NOT REFLECT THE EFFECT OF ANY SUBSEQUENT EVENTS NOT ALREADY ACCOUNTED FOR IN THE ASSUMPTIONS UNDERLYING THE PROJECTIONS. THE DEBTORS DISCLAIM ANY OBLIGATION, EXCEPT AS SPECIFICALLY REQUIRED BY LAW, TO

PUBLICLY UPDATE OR REVISE ANY SUCH STATEMENTS TO REFLECT ANY CHANGE IN THE DEBTORS' EXPECTATIONS OR IN EVENTS, CONDITIONS OR CIRCUMSTANCES ON WHICH ANY SUCH STATEMENTS MAY BE BASED, OR THAT MAY AFFECT THE LIKELIHOOD THAT ACTUAL RESULTS WILL DIFFER FROM THOSE SET FORTH IN THE FORWARD-LOOKING STATEMENTS. FURTHER, THE DEBTORS DO NOT ANTICIPATE THAT ANY AMENDMENTS OR SUPPLEMENTS TO THIS DISCLOSURE STATEMENT WILL BE DISTRIBUTED TO REFLECT SUCH OCCURRENCES. ACCORDINGLY, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION HEREIN IS CORRECT OR COMPLETE AS OF ANY TIME AFTER THE DATE HEREOF. MOREOVER, THE PROJECTIONS ARE BASED ON ASSUMPTIONS THAT, ALTHOUGH BELIEVED TO BE REASONABLE BY THE DEBTORS, MAY DIFFER FROM ACTUAL RESULTS. ANY FORWARD-LOOKING STATEMENT SHOULD BE CONSIDERED IN LIGHT OF FACTORS DISCUSSED IN SECTION VIII "CERTAIN RISK FACTORS TO BE CONSIDERED" IN THIS DISCLOSURE STATEMENT. THE DEBTORS CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY SUCH FORWARD-LOOKING STATEMENTS, WHICH SPEAK AS OF THE DATE THEY ARE MADE.

PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS ANNEXED TO THE PLAN, THE PLAN SUPPLEMENT DOCUMENTS ONCE FILED, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, OR ANY STATE SECURITIES COMMISSION, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS IN THESE CASES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES. THIS DISCLOSURE STATEMENT

SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS IN THESE CHAPTER 11 CASES. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR WITH RESPECT TO ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

EACH HOLDER IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY THE DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE COURT, AND THE PLAN EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

**ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................ 1

II.     OVERVIEW OF THE PLAN ........................................................................................ 1

     A.    General Structure of the Plan ................................................................................ 1
     B.    Material Terms of the Plan .................................................................................... 2
     C.    Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution ..... 4
     D.    Summary of Classification and Estimated Recoveries of Claims and Interests .......... 4
     E.    Questions and Answers Regarding this Disclosure Statement ................................... 5

III.    SOLICITATION, PLAN VOTING INSTRUCTIONS AND VOTING PROCEDURES.... 9

     A.    Notice to Holders of Claims Against and Equity Interests in the Debtors.................. 9
     B.    Parties-in-Interest Entitled to Vote.................................................................... 10
     C.    Classes Entitled to Vote to Accept or Reject the Plan ............................................ 10
     D.    Calculation of Claims for Voting Purposes; Claim Objection Deadline .................. 10
     E.    Solicitation Materials ......................................................................................... 12
     F.    Voting Procedures, Ballots, and Voting Deadlines................................................ 12
     G.    Waiver of Defects, Irregularities, Etc. ................................................................ 14
     H.    Withdrawal of Ballots; Revocation .................................................................... 15
     I.     Request for Ballot(s); Further Information; Additional Copies............................... 15
     J.     Confirmation Hearing and Deadline for Objections to Confirmation ...................... 16

IV.     GENERAL INFORMATION CONCERNING THE DEBTORS ...................................... 17

     A.    Overview of Debtors' Corporate History and Business Operations ......................... 17
     B.    Debtors' Capital Structure.................................................................................. 18
     C.    Events Leading to the Filing of the Chapter 11 Cases ............................................ 26
     D.    The Search for Strategic Alternatives .................................................................. 30

V.      THE CHAPTER 11 CASES............................................................................................ 30

     A.    Commencement of the Chapter 11 Cases ............................................................. 30
     B.    The Debtors' Efforts to Obtain Postpetition Financing .......................................... 31
     C.    The Debtors' Use of Cash Collateral ................................................................... 31
     D.    First Day Orders................................................................................................ 32
     E.    Retention of Debtors' Professionals..................................................................... 33
     F.    Appointment of Official Committee of Unsecured Creditors.................................. 34
     G.    Postpetition Events in Nicaragua ........................................................................ 34
     H.    The Dutch WHOA Proceeding for Debtor Mercon B.V.......................................... 35
     I.     The Debtors' Recognition Proceedings in Brazil................................................... 35
     J.     The Debtors' Post-Petition Operations ................................................................ 36
     K.    Other Matters Addressed During the Chapter 11 Cases ......................................... 37
     L.    Litigation Claims of the Debtors and the Estates................................................... 39

VI.     OVERVIEW OF THE PLAN ........................................................................................ 39

A.    Proposed Timeline of Events Related to the Plan ....................................................... 39

VII.   DETAILED SUMMARY OF THE PLAN OF LIQUIDATION ....................................... 40

A.    Overall Structure of the Plan ................................................................................. 40
B.    Classification and Treatment of Claims and Equity Interests .................................... 41
C.    Reservation of Rights Regarding Claims ................................................................. 48
D.    Settlements and Compromises ............................................................................... 48
E.    Orders in Aid of Compromise and Settlement ........................................................ 48
F.    Means for Implementation of the Plan .................................................................... 49
G.    Allocation of Litigation Proceeds .......................................................................... 50
H.    Allocation of Proceeds of Non-Litigation Liquidating Trust Assets ......................... 51
I.    Nicaraguan Assets ............................................................................................... 52
J.    Corporate Action ................................................................................................. 52
K.    Directors, Officers and Managers ......................................................................... 52
L.    Debtors' Professionals .......................................................................................... 53
M.    Effectuating Documents; Further Transactions ...................................................... 53
N.    Privilege .............................................................................................................. 53
O.    Exemption from Certain Taxes and Fees ................................................................ 54
P.    Preservation, Pursuit and Resolution of Liquidating Trust Actions .......................... 54
Q.    The Surviving Debtor(s) Pending the Closing of the Cases ...................................... 55
R.    Closing of the Debtors' Cases ............................................................................... 56
S.    Treatment of Executory Contracts and Unexpired Leases ........................................ 57
T.    Provisions Governing Distributions ....................................................................... 60
U.    The Liquidating Trust .......................................................................................... 64
V.    Procedures for Resolving Contingent, Unliquidated, and Undisputed Claims and
       Interests ............................................................................................................. 71
W.    Retention of Jurisdiction ...................................................................................... 73
X.    Settlement, Release, Injunctions and Exculpations................................................. 75
Y.    Conditions Precedent to Confirmation and Effectiveness of the Plan ....................... 81
Z.    Miscellaneous Provisions ..................................................................................... 83

VIII.  CERTAIN RISK FACTORS TO BE CONSIDERED ..................................................... 87

A.    Certain Litigation Risks ....................................................................................... 87
B.    Certain Bankruptcy Considerations ....................................................................... 87
C.    Certain Tax Considerations ................................................................................... 90

IX.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............ 90

A.    U.S. Federal Income Tax Consequences to the Debtors and the Liquidating Trust .. 91
B.    U.S. Federal Income Tax Consequences to the Holders of Claims ............................ 92
C.    Information Reporting and Backup Withholding ..................................................... 93
D.    Importance of Obtaining Your Own Professional Tax Assistance ............................. 94

X.    FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS.................. 94

A.    Feasibility of the Plan........................................................................................... 94
B.    Acceptance of the Plan......................................................................................... 94

C.    Best Interests Test ........................................................................................ 94
D.    Application of the "Best Interests" of Creditors Test to the Liquidation Analysis and Valuation ....................................................................................................... 95
E.    Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative ..................................................................................................... 96

XI.    RELEASES ................................................................................................................ 97

XII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ... 99
A.    Alternative Plan(s) of Liquidation ............................................................. 99
B.    Liquidation Under Chapter 7 .................................................................... 100

XIII.    SANCTIONING AND CONSUMMATION OF THE DUTCH WHOA PLAN ............. 100
A.    Dutch Sanction Hearing ............................................................................ 100
B.    Effect of Sanctioning And Consummation of the Dutch WHOA Plan .................... 101
C.    Third Party Releases Under the Dutch Restructuring Law ...................................... 101
D.    Application of "Best Interests of Creditors" Test to the Dutch WHOA Plan .......... 101

XIV.    RECOMMENDATION AND CONCLUSION ............................................................ 101

## **<u>TABLE OF EXHIBITS</u>**

Exhibit A          Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee
Corporation and Certain Affiliated Debtors

Exhibit B          Liquidation Analysis

## I.    INTRODUCTION

Mercon Coffee Corporation and certain affiliated debtors, as debtors and debtors-in-possession (collectively, the "**Debtors**") submit this disclosure statement (as the same may be further amended, supplemented or modified from time to time, the "**Disclosure Statement**") pursuant to section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), for use in the solicitation of votes on the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as the same may be further amended, supplemented or modified from time to time, the "**Plan**"). A copy of the Plan is attached as **Exhibit A** to this Disclosure Statement. Unless otherwise provided herein, all capitalized terms used in this Disclosure Statement but not otherwise defined herein shall have the meanings ascribed to such terms in Article I of or elsewhere in the Plan. In the case of any inconsistency between this Disclosure Statement and the Plan, the Plan will govern. Unless otherwise specified, all docket numbers refer to the lead case of *In re Mercon Coffee Corporation, et al.*, No. 23-11945 (MEW).

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, their reasons for seeking protection under chapter 11 of the Bankruptcy Code, and significant events that have occurred during the Chapter 11 Cases, including, as relevant, filing of the Dutch WHOA Proceeding for Debtor Mercon B.V. in the Dutch Court and the Brazilian Ancillary Case. This Disclosure Statement also describes certain terms and provisions of the Plan, including certain features included solely with respect to Debtor Mercon B.V. in order to comply with Dutch Restructuring Law and obtain approval of the Dutch WHOA Plan in the Dutch Court, certain risk factors associated with the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the Confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

**THE DEBTORS BELIEVE THAT THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTORS' ESTATES, AND PROVIDE THE BEST RECOVERY TO HOLDERS OF CLAIMS. ACCORDINGLY, THE DEBTORS BELIEVE THAT THE PLAN IS THE BEST AVAILABLE ALTERNATIVE FOR COMPLETING THEIR CHAPTER 11 CASES. THE DEBTORS STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.**

## II.    OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan, which is qualified in its entirety by reference to the full text of the Plan.

### A.    General Structure of the Plan

The Plan proposed in these Chapter 11 Cases is the culmination of lengthy negotiations among the Debtors, Rabobank (in its own capacity and as administrative agent under the Prepetition First Lien Credit Agreement) together with the Lenders under the Prepetition First Lien Credit Agreement, the Creditors' Committee, FMO and other parties in interest. The Debtors believe that the terms of the Plan represent the best possible outcome for all Holders of Claims and

strongly urge all Holders that are entitled to vote on account of their Claims to vote to accept the Plan.

The Debtors filed these Chapter 11 Cases to use the benefits of the worldwide automatic stay to pursue an orderly sale of their assets in a manner designed to maximize value of the Debtors' Estates and confirm a plan providing for the orderly resolution of the Debtors' Estates. In an effort to maximize value for the benefit of all stakeholders, the Debtors determined, pursuant to the terms of use of cash collateral, to continue their limited operations for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving any possible claims, (c) filing appropriate tax returns, (d) complying with their continued business obligations, and (e) administering the asset sales in an efficacious manner; and thereafter to liquidate and dissolve. The events leading to the filing of these Chapter 11 Cases are described in more detail in Section IV(C) of this Disclosure Statement.

The Plan contemplates the liquidation of each of the Debtors. The Plan provides for the creation of a Liquidating Trust for the primary purpose of liquidating the Debtors' Assets, pursuing avoidance actions, insurance claims and litigation claims, and making Distributions to Creditors. As more fully described in this Disclosure Statement, on the Effective Date of the Plan, the Cash and other property of the Debtors will be transferred to the Liquidating Trust, and the Liquidating Trust will issue Liquidating Trust Interests. The trustee of the Liquidating Trust will be charged with monetizing this remaining property (including the investigation and pursuit of any avoidance actions, insurance claims and litigation claims for the benefit of the Liquidating Trust), conducting the claims-allowance process, and making Distributions.

The Debtors anticipate that the Plan will provide for recovery to Holders of Allowed Claims in the Chapter 11 Cases. If the Plan does not receive sufficient acceptances, then Distributions to Holders of Allowed Claims will be significantly delayed, and may be materially less than such Holders would receive under the Plan. The estimated recoveries set forth in this Disclosure Statement do not take into account potential proceeds of the Liquidating Trust Actions because they are unpredictable and highly contingent. Although the Debtors believe that strong litigation claims exist, projecting net recoveries of avoidance actions, insurance claims and litigation claims are subject to inherent uncertainty including the fees and expenses to be incurred investigating and litigating such claims and the ability to collect any judgment on those claims remains unknown at this time.

This Section II(A) of the Disclosure Statement only provides a summary of the Plan. The Debtors strongly urge you to read the entire Disclosure Statement in order to gain an understanding of the details of, and risks associated with, the Plan. In the event of any conflict with the descriptions herein and the terms of the Plan, the terms of the Plan shall govern.

### B.    Material Terms of the Plan

The Plan is centered around a global settlement, which was memorialized in a Stipulation dated March 29, 2024, between the Secured Parties and the Creditors' Committee (i) to resolve any actual or potential disputes amongst the Secured Parties and the Creditors' Committee and any potential Creditors' Committee challenges to the liens, obligations and claims of the lenders under the Prepetition First Lien Credit Agreement and (ii) in order to facilitate the

expeditious and efficient conclusion of these Chapter 11 Cases. The Plan's primary objective is to maximize the value of recoveries to all Holders of Allowed Claims and distribute all property recovered by the Liquidation Trustee on account of the Retained Causes of Action and other claims or property in accordance with the Plan and the priorities established by the Bankruptcy Code and applicable orders of the Bankruptcy Court.

---

**The Plan contains certain release provisions. You are advised to carefully review and consider the Plan, including the Third-Party Releases, as your rights may be affected. Holders of Claims may grant the Third-Party Releases.**

**YOU ARE NOT REQUIRED TO GRANT THE THIRD-PARTY RELEASES.**

**YOUR FAILURE TO GRANT THE THIRD-PARTY RELEASE WILL NOT IMPACT YOUR DISTRIBUTIONS.**

**GRANTING THE THIRD-PARTY RELEASE IS STRICTLY VOLUNTARY.**

---

The following is an overview of certain material terms of the Plan:

- Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date or agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

- On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests; *provided, however,* that as required under Dutch Restructuring Law the Equity Interests in Debtor Mercon B.V. shall be maintained until such time as Mercon B.V. is formally dissolved under Dutch Restructuring Law.

- The Liquidating Trust shall be established for the primary purpose of liquidating its assets, winding down the Debtors and wholly owned non-Debtors pursuant to applicable law, investigating and pursuing avoidance actions, insurance claims and litigation claims, and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

- The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and

interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the Plan, notwithstanding any prohibition on assignment under non-bankruptcy law, and all of the foregoing rights and interests shall vest in the Liquidating Trust on the Effective Date.

- On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors and the Estates, to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.

**C.    Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution**

Except as provided in Section 3.08 of the Plan if Debtor Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), the Plan provides for consolidation of the Estates, for purposes of voting, Confirmation, and making Distributions to the Holders of Allowed Claims under the Plan. Voting on the Plan shall be counted on a consolidated basis. On the Effective Date, and solely for purposes of voting, Confirmation and making Distributions to the Holders of Allowed Claims under the Plan (a) all guarantees of a Debtor for the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of more than one of the Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases. On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guaranties of collection, payment or performance made by either Debtor as to the obligation of the other Debtor shall be released and of no further force and effect. Except as set forth in this Section, such consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, each Debtor (and after the Effective Date of the Plan, the Liquidating Trustee) shall pay all U.S. Trustee Fee Claims on all Distributions in open Chapter 11 Cases, including any Distributions made as a result of the Plan, until the entry of a final decree in such Chapter 11 Cases, dismissal of such Chapter 11 Cases, or conversion of such Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

**D.    Summary of Classification and Estimated Recoveries of Claims and Interests**

The Plan proposes to modify the rights of certain Creditors and Equity Interest Holders of the Debtors. The following table summarizes (i) the treatment of Claims and Interests under the Plan, (ii) the Classes that are impaired by the Plan, (iii) the Classes that are entitled to vote on the Plan, and (iv) the estimated recoveries for holders of Allowed Claims and Interests.

Although every reasonable effort was made to be accurate, the projections of recoveries are only estimates. The final amounts of Claims allowed by the Bankruptcy Court may vary from the estimates contained in this Disclosure Statement. As a result of the foregoing and other uncertainties inherent in the estimates, the estimated recoveries in this Disclosure Statement may vary from the actual recoveries realized. In addition, the ability of Holders to receive Distributions under the Plan depends upon, among other things, the ability of the Debtors to (i) obtain confirmation of the Plan and (ii) meet the conditions to confirmation and effectiveness of the Plan.

| Class | Designation | Impairment | Entitlement to Vote | Estimated Recoveries |
|-------|-------------|------------|---------------------|----------------------|
| Class 1: | Prepetition First Lien Claims | Impaired | Yes | 25.7% - 30.6% |
| Class 2: | Other Secured Claims | Unimpaired | No (deemed to accept) | 2.6% - 5.8% |
| Class 2A | FMO Claims | Impaired | Yes | 3.9% - 7.1%[2] |
| Class 3 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100%[3] |
| Class 4A | General Unsecured Claims | Impaired | Yes | 3.9% - 7.1%[4] |
| Class 4B | Dutch Law SME Claims | Impaired | Yes | 20% |
| Class 5 | Convenience Claims | Impaired | Yes | 60% -100% |
| Class 6 | Intercompany Claims | Impaired | No (deemed to reject) | 0% |
| Class 7 | Subordinated Claims | Impaired | No (deemed to reject) | 0% |
| Class 8 | Equity Interests in the Debtors | Impaired | No (deemed to reject) | 0% |

### E.    Questions and Answers Regarding this Disclosure Statement

#### 1.    *What is Chapter 11?*

Chapter 11 is the principal business restructuring chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for

---

[2] This assumes that there is no recovery on FMO's Collateral in Nicaragua. Class 2A Claims are likely to be unsecured deficiency claims.
[3] This assumes that not every eligible Holder of A General Unsecured Claim elects to make the Convenience Claim Election.
[4] Any recovery is dependent almost entirely on the amount of Litigation Proceeds recovered by the Liquidating Trust. The return, therefore, is inherently uncertain.

creditors and similarly-situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

A bankruptcy court's confirmation of a chapter 11 plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of a debtor's liabilities in accordance with the terms of the confirmed plan. A plan may provide for reorganization of a debtor as a going concern or, as contemplated under the Plan in this case, the liquidation of a debtor.

## 2. *Why are the Debtors sending me this Disclosure Statement?*

The Debtors are seeking Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare (and the Court to approve) a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. The Plan contemplates a wind down of the Debtors' affairs, and this Disclosure Statement is being submitted to provide information about the Debtors' liquidation and related information concerning the Debtors, all in accordance with the requirements of the Bankruptcy Code.

## 3. *Am I entitled to vote on the Plan?*

Your ability to vote on, and your Distribution under, the Plan, if any, depends on what type of Claim or Interest you hold. Each category of Holders of Claims or Interests described in the Plan pursuant to section 1122(a) of the Bankruptcy Code is referred to as a "**Class**." If you are the Holder of a Claim against or Interest in Debtor Mercon B.V. you also are entitled and encouraged to vote on the Dutch WHOA Plan for which your vote will be solicited separately from this Plan.

## 4. *What will I receive from the Debtors if the Plan is consummated?*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or Liquidating Trustee and the Holder of any such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

5.      *What will I receive from the Debtors if I hold an Allowed Administrative Claim or an Allowed Priority Tax Claim?*

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Administrative Claims and the Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

Each Holder of an Allowed Administrative Claim or an Allowed Priority Tax Claim, other than Professional Fee Claims, and Priority Tax Claims, and except to the extent that an Administrative Claim or Priority Tax Claim has already been satisfied during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim or an Allowed Priority Tax Claim and the applicable Debtor(s) or Plan Administrator agree to less favorable treatment, shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, its Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim or Allowed Priority Tax Claim.

6.      *If the Plan provides that I get a Distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation?"*

"Confirmation" of the Plan refers to approval of the Plan by the Court. Confirmation of the Plan does not guarantee that you will receive the Distribution proposed under the Plan. After Confirmation of the Plan by the Court, there are conditions that need to be satisfied or waived so that the Plan can go effective. Distributions to Holders of Allowed Claims will be made only after the date the Plan becomes effective – the "Effective Date" – or as soon as practicable thereafter, as specified in the Plan. "Consummation" means the occurrence of the Effective Date.

7.      *Will there be releases and exculpation granted to parties in interest as part of the Plan?*

Yes, the Plan proposes to release the Released Parties and to exculpate the Exculpated Parties. The Debtors' releases, third-party releases, and exculpation provisions included in the Plan are an integral part thereof. The Debtors believe that the Released Parties and the Exculpated Parties have made substantial and valuable contributions before and during the Debtors' Chapter 11 Cases through efforts to negotiate and implement the Plan, which maximizes the value of the Debtors for the benefit of all parties in interest, and to pay down the amounts due under the Prepetition First Lien Credit Agreement. Accordingly, it is the Debtors' position that each of the Released Parties and the Exculpated Parties warrants the benefit of the release and exculpation provisions. The Debtors believe that the releases and exculpations in the Plan are necessary and appropriate and meet the requisite legal standard promulgated by the United States Court of Appeals for the Second Circuit. Moreover, the Debtors will present evidence at the Confirmation Hearing to demonstrate the basis for and propriety of the release and exculpation provisions.

**Importantly, the Debtors are not proposing a full release of their potential claims against all the Released Parties. RATHER, FOR ANY RELEASED PARTY THAT**

**IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES.**

### 8. *Opting In to Third Party Releases*

The Plan contains a series of releases. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs certain parties will be granting releases and certain parties will be giving releases as set forth in Sections 12.03 and 12.04 of the Plan and as further described in this Disclosure Statement.

In the Ballot provided to holders of General Unsecured Claims entitled to vote on the Plan, such holders may affirmatively "opt in" to providing a Third Party Release to the Released Parties and all of their potential rights and claims against the Released Parties as set forth in the Third Party Releases. If you wish to indicate your consent and approval to such releases and affirmatively provide a Third Party Release to the Released Parties, please do so by checking the "opt in" box on your Ballot and returning such Ballot in accordance with the voting procedures.

*No creditor or shareholder will release any claims belonging to that Person or Entity unless that Person or Entity has affirmatively consented to such release by executing and returning the "opt in" release form.*

### 9. *Do the Debtors recommend voting in favor of the Plan?*

Yes. The Debtors believe their Plan maximizes Distributions to the Debtors' creditors and is in the best interests of all Holders of Claims.

### 10. *Who Supports the Plan?*

The Plan is supported by the Debtors, Rabobank as agent under the Prepetition First Lien Credit Facility, together with the Lenders thereunder, and the Creditors' Committee.

### 11. *How are Claims Classified?*

A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. For the avoidance of doubt, in no event shall any Holder of an Allowed Claim be entitled to receive Distributions on account of such Allowed Claim under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim. Creditors that hold General Unsecured Claims against more than one Debtor other than the Holders of Dutch Law SME Claims will be classified in Class 4A and entitled to the treatment reserved for that class. Any creditor with a

Dutch Law SME Claim that is not participating in the Convenience Claim Pool will be classified in Class 4B and entitled to the treatment reserved for that class.

> **12.** ***Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?***

If you have any procedural questions regarding this Disclosure Statement or the packet of materials you have received in connection herewith, please contact Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent, and administrative advisor. Copies of this Disclosure Statement, the Plan, and the Plan Supplement (when filed) are available at https://cases.ra.kroll.com/mercon/Home-Index.

## III. SOLICITATION, PLAN VOTING INSTRUCTIONS AND VOTING PROCEDURES

### A. Notice to Holders of Claims Against and Equity Interests in the Debtors

IF THE PLAN IS APPROVED BY THE REQUISITE VOTE OF HOLDERS OF CLAIMS ENTITLED TO VOTE AND IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS, WHETHER OR NOT THEY WERE ENTITLED TO VOTE OR DID VOTE ON THE PLAN AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBUTIONS OR PROPERTY UNDER THE PLAN. THUS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS APPENDICES, SUPPLEMENTS AND EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT AND THE PLAN ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE EXCEPT AFTER DISTRIBUTION OF THIS DISCLOSURE STATEMENT, AND NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE DEBTORS OTHER THAN THE INFORMATION CONTAINED HEREIN OR THEREIN. NO SUCH INFORMATION SHOULD BE RELIED UPON IN MAKING A DETERMINATION TO VOTE TO ACCEPT OR REJECT THE PLAN.

TO THE EXTENT THERE IS ANY CONFLICT BETWEEN THE DISCLOSURE STATEMENT ORDER AND THE PROVISIONS OF THE DISCLOSURE STATEMENT, WHICH RELATE TO THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN AND/OR THE TABULATION OF VOTES RELATED THERETO, THE DISCLOSURE STATEMENT ORDER SHALL CONTROL.

B.        **Parties-in-Interest Entitled to Vote**

In general, a holder of a claim against or interest in a debtor may vote to accept or to reject a plan of liquidation if (a) the claim or interest is "allowed" and (b) the claim or interest is "impaired" by such plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan of liquidation unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before such default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan of liquidation on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan of liquidation. If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on such plan.

C.        **Classes Entitled to Vote to Accept or Reject the Plan**

Under the Bankruptcy Code, (a) a class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors that have accepted or rejected such plan, and (b) a class of interests has accepted a plan if such plan has been accepted by holders of such interests that hold at least two-thirds (2/3) in amount of the allowed interests of such class held by holders of such interests that have accepted or rejected such plan.

Pursuant to the Plan, **Class 1 Claims, Class 2A Claims, Class 4A Claims, Class 4B Claims, and Class 5 Claims** are Impaired by, and entitled to receive a Distribution under, the Plan, and therefore only the Holders of Claims in those Classes are entitled to vote to accept or reject the Plan. **Class 2 Claims and Class 3 Claims** are Unimpaired by the Plan. Holders of such Claims are conclusively presumed to have accepted the Plan; therefore, such Holders are not entitled to vote to accept or reject the Plan. **Class 6 Claims, Class 7 Claims, and Class 8 Claims** shall receive no Distribution under the Plan. Holders of such Claims and Equity Interests are conclusively presumed to have rejected the Plan; therefore, such Holders are not entitled to vote to accept or reject the Plan.

D.        **Calculation of Claims for Voting Purposes; Claim Objection Deadline**

Pursuant to Section 105(a) of the Bankruptcy Code and Rule 3003(c)(2) of the Bankruptcy Rules, any Holder of a Claim (a) that (I) is either (i) not scheduled, or (ii) scheduled as (x) contingent, unliquidated, undetermined or undisputed, (y) in the amount of $0.00 or (z) as unknown; and (II) is not the subject of a Proof of Claim filed by the applicable Bar Date set by the Bankruptcy Court or is not otherwise deemed timely filed by the Bankruptcy Court; (b) that is satisfied by the Debtors; (c) that is the subject of a proof of claim filed in the amount of $0.00; (d) that has been resolved pursuant to stipulation or order entered by the Bankruptcy Court; or (e) that

is subject to an objection filed before the Claims Objection Deadline (as defined below), will not be treated by the Debtors as a Creditor with respect to such Claim, for purposes of voting on the Plan. Notwithstanding the foregoing, any Holder of a Claim that is the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim will be treated by the Debtors as a Creditor with respect to such Claim, for purposes of voting on the Plan.

In order to calculate the amount of Claims for voting purposes, Class 4A Claims, Class 4B Claims, and Class 5 Claims will be (a) counted in the amount Allowed by the Plan; (b) counted in the amount listed on the Schedules if (i) the Claim is not scheduled (x) as contingent, unliquidated, disputed or undetermined or (y) in the amount of $0.00, (ii) no Proof of Claim has been timely filed (or otherwise deemed timely filed by the Bankruptcy Court under applicable law), (iii) such Claim has not been satisfied by the Debtors, and (iv) such Claim has not been resolved pursuant to a stipulation or order entered by the Bankruptcy Court; (c) counted in the amount listed in a timely filed Proof of Claim (or otherwise deemed timely filed by the Bankruptcy Court under applicable law) if (i) the Claim amount is not disputed, contingent, undetermined or unliquidated, (ii) the Claim was not filed in the amount of $0.00, (iii) the Proof of Claim has not been amended or superseded by another Proof of Claim, or (iv) the Claim is not the subject of a Claim Objection (as defined below); (d) allowed in the amount temporarily allowed by the Bankruptcy Court for voting purposes only pursuant to rule 3018(a) of the Bankruptcy Rules as set forth below; or (e) reclassified and/or allowed in a fixed, reduced amount if the Debtors have requested that such Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to a Claim Objection (as defined below) to such Claim.

Pursuant to Bankruptcy Rule 3018(a), the deadline for the Debtors to File and serve any objections (each a "**Claim Objection**") to a Claim for purposes of voting on the Plan in a different Class or different amount than is set forth in the Proof of Claim timely filed by the applicable Bar Date as set by the Bankruptcy Court, shall be **May 29, 2024 at 4:30 p.m. (Prevailing Eastern Time)** (the "**Claim Objection Deadline**"). For the avoidance of doubt, the Debtors (and after the Effective Date, the Liquidating Trustee) shall retain their right to object to a Claim at a later date on any ground(s) so long as such objection is not for voting purposes. Responses, if any, to the Claim Objection shall be filed no later than **June 12, 2024 at 4:30 p.m. (Prevailing Eastern Time)**. The Bankruptcy Court may conduct a hearing on any Claim Objection at the Confirmation Hearing or such earlier time as may be scheduled by the Bankruptcy Court. The ruling by the Bankruptcy Court on any Claim Objection will be considered a ruling with respect to the allowance of the Claim(s) under Bankruptcy Rule 3018 and such Claim(s) will be counted, if at all, for voting purposes only, in the amount determined by the Bankruptcy Court. Any party with a response to a Claim Objection may be heard at the Confirmation Hearing. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Claim Objection on or prior to the Confirmation Hearing, any such Claim Objection will be heard at the Confirmation Hearing.

Creditors seeking to have a Claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) must File a motion. The Bankruptcy Court shall hear such claims estimation motion at the Confirmation Hearing or such earlier time as may be scheduled by the Bankruptcy Court. Any such claims estimation motion may be resolved by agreement between the Debtors and the movant without the requirement for further order or approval of the Bankruptcy Court.

E.     **Solicitation Materials**

In soliciting votes for the Plan pursuant to this Disclosure Statement, the Debtors, through Kroll Restructuring Administration LLC (the "**Solicitation Agent**"), who also serve as Claims Agent, will send to Holders of Claims who are entitled to vote, a solicitation package (the "**Solicitation Package**"), which shall include, among other things copies of (a) this approved Disclosure Statement together with the Plan and all other exhibits annexed thereto (at the Debtors' discretion these may be provided in PDF format on a CD-ROM or USB flash drive, instead of in paper format), (b) the Disclosure Statement Order, excluding the exhibits annexed thereto, (c) a letter from the Creditors' Committee recommending acceptance of the Plan, (d) the notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Plan ((i) and (ii) collectively, the "**Confirmation Hearing Notice**"), (e) in the case of Voting Classes (as defined below), an appropriate form of Ballot (as defined below) to accept or reject the Plan along with a pre-addressed, postage prepaid return envelope, and (f) such other materials as the Court may direct or approve, including any supplemental solicitation materials the Debtors may file with the Court.

**Copies of the Disclosure Statement, the Plan, the Disclosure Statement Order and the other materials included in the Solicitation Package are also available free of charge from the Debtors' case website being maintained by the Solicitation Agent at** https://cases.ra.kroll.com/mercon/Home-Index.

Prior to the Confirmation Hearing, the Debtors intend to file a Plan Supplement that includes, among other things, a liquidation analysis. As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Debtors' restructuring website, without charge, at the Solicitation Agent's Website, at https://cases.ra.kroll.com/mercon/Home-Index.

F.     **Voting Procedures, Ballots, and Voting Deadlines**

The record date with respect to Holders of Claims is May 10, 2024 (the "**Voting Record Date**"). The Voting Record Date is the date used for determining (1) the Holders of Claims against and Equity Interests in (a) the Classes entitled to vote to accept or reject the Plan (each a "**Voting Class**"), who are entitled to receive Solicitation Packages and vote to accept or reject the Plan, and (b) the Classes not entitled to vote to accept or reject the Plan (each a "**Non-Voting Class**"), who shall receive a package (the "**Non-Voting Package**") consisting of the Confirmation Hearing Notice and notice of non-voting status, and (2) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote to accept or reject the Plan as the Holder of a Claim. However, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if the parties have completed all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) by the Voting Record Date. In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Solicitation Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Voting Record Date.

The Voting Record Date and all of the Debtors' solicitation and voting procedures shall apply to all of the Debtors' Creditors and other parties in interest.

In the event that any Holder of an Equity Interest in the Debtors assigns or otherwise transfers all or some of such Equity Interest, then the transferor shall promptly provide to Debtors' counsel written notice of such transfer. With respect to any transferred Equity Interest, the transferee shall be entitled to receive a Non-Voting Package on account of the transferred Equity Interest only if the transferor has provided written notice of such transfer to Debtors' counsel by the Voting Record Date.

After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

All votes to accept or reject the Plan must be cast by using the Ballot and Opt-In Notice enclosed with the Solicitation Packages. Unless the Debtors determine otherwise in their sole and absolute discretion, in order for your vote to be counted, your Ballot and Opt-In Notice must be properly completed as set forth below and in accordance with the voting instructions on the Ballot and received no later than **June 20, 2024, at 4:30 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**") at the following address:

> Mercon Coffee Corporation Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

**A customized electronic Ballot or Opt-In Notice may also be submitted through the Solicitation Agent's on-line electronic Ballot submission portal at https://cases.ra.kroll.com/Mercon (the "E-Ballot Portal") by no later than the Voting Deadline. Ballots cannot be sent via facsimile, electronic mail or other electronic means other than the E-Ballot Portal.**

Unless otherwise provided in the instructions accompanying the Ballots, the following Ballots will not be counted in determining whether the Plan has been accepted or rejected:

- any Ballot that is otherwise properly completed, executed and timely returned to the Solicitation Agent, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan;

- any Ballot received after the Voting Deadline, except in the Debtors' discretion or by order of this Court;

- any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

- any Ballot that, in the Debtors' discretion, is illegible or contains insufficient information to permit the Debtors to identify the Creditor;

- any Ballot that partially accepts, or partially rejects, the Plan;

- any Ballot cast by a Person or Entity that does not hold a Claim in a Voting Class;

- any unsigned Ballot or Ballot without an original signature, except in the Debtors' discretion; and

- any Ballot transmitted to the Solicitation Agent by facsimile, e-mail or other electronic means, except in the Debtors' discretion.

The Ballots do not require Holders of Claims to return any stock certificates, debt instruments, or other evidences of their Claim with their Ballot.

Except as otherwise provided herein, or in the Disclosure Statement Order, if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan will be deemed not to have been accepted by the Holders of such Claims in such Class.

Each Holder of a Claim must vote all of its Claim within a particular Class either to accept or reject the Plan and may not split such votes within a Voting Class. Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims within the same Voting Class shall not be counted. By signing and returning a Ballot, each Holder of a Claim will certify to the Bankruptcy Court and the Debtors that no other Ballots with respect to such Claim have been cast or, if any other Ballots have been cast with respect to such Class of Claims, such other Ballots indicated the same vote to accept or reject the Plan.

It is important that the Holder of a Claim in the Classes entitled to vote follow the specific instructions provided on such Holder's Ballot(s) and the accompanying instructions.

If you have any questions about (a) the procedure for voting your Claim, (b) the Solicitation Package that you have received, or (c) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, the Plan Supplement or any appendices or exhibits to such documents, please contact the Solicitation Agent at the address specified above.

For further information and general instructions on voting to accept or reject the Plan, see the instructions accompanying your Ballot.

### G.    Waiver of Defects, Irregularities, Etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Bankruptcy Court. As indicated below under "Withdrawal of Ballots; Revocation," effective withdrawals of Ballots must be delivered to the Solicitation Agent prior to the Voting Deadline. The Debtors reserve the right to contest the validity of any such withdrawals

of Ballots. Subject to any contrary order of the Bankruptcy Court, the Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful. The Debtors further reserve the right to waive, without notice, any defects, irregularities or conditions of delivery as to any particular Ballot, including failure to timely file such Ballot. Unless otherwise ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determine, and delivery of such Ballots shall not be deemed to have been made until such irregularities have been cured or waived. None of the Debtors nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor shall any such party incur any liability for failure to provide such notification. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted, except as otherwise provided herein or in the Disclosure Statement Order.

### H.      Withdrawal of Ballots; Revocation

Unless otherwise provided, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Solicitation Agent prior to the Voting Deadline. The Debtors intend to consult with the Solicitation Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. As stated above, the Debtors expressly reserve the right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots which is not received in a timely manner by the Solicitation Agent will not be effective to withdraw a previously timely cast Ballot.

Unless otherwise provided, any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change such vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the event where more than one timely, properly completed Ballot is received, the last valid Ballot received before the Voting Deadline will supersede and revoke any earlier received Ballot, provided that, if a Holder of Claims casts multiple Ballots on account of the same Claim or Class of Claims, which are received by the Solicitation Agent on the same day, but which are voted inconsistently, all such Ballots will not be counted.

### I.      Request for Ballot(s); Further Information; Additional Copies

If you have any questions or require further information about the voting procedures for voting your Claim or about the packet of material you received, if you wish to obtain an

additional copy of the Plan, this Disclosure Statement, Plan Supplement or any exhibits or appendices to such documents, or if you are the Holder of a Claim who believes you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, please contact the Solicitation Agent at:

> Mercon Coffee Corporation Claims Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232
>
> **If electronically:**
>
> The website established by Kroll, using the interface available on such website located https://cases.ra.kroll.com/mercon/EPOC-Index under the link entitled "Submit a Vote."

### J.    Confirmation Hearing and Deadline for Objections to Confirmation

Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing on Confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Confirmation Hearing will commence on **June 28, 2024, at 11:00 a.m.** before the Honorable Michael E. Wiles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York. The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors (with the consent of the Secured Parties and the Creditors' Committee) without further notice other than an adjournment announced in open court or as indicated in any notice or hearing agenda that is filed with the Court. Such date will give the Debtors sufficient time to solicit votes on the Plan and provide adequate notice of the Confirmation Hearing to all parties in interest and Entities or Persons who have filed an objection to the Plan ("**Plan Objection**"). The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.

The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

All Plan Objections must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in interest in accordance with the Disclosure Statement Order so that they are received on or before **June 20, 2024, at 4:30 p.m.** (prevailing Eastern Time) (the "**Plan Objection Deadline**"). The Debtors or any other party supporting Confirmation of the Plan, may file a response to any Plan Objections no later than **June 12, 2024 at 4:30 p.m.** (prevailing Eastern Time). At that same time, the Debtors may also file their proposed findings of fact and conclusions of law with a form of order confirming the Plan, and may file any memorandum of law in support of Confirmation of the Plan.

The Confirmation Order shall approve all provisions, terms, and conditions of the Plan, unless such provisions, terms or conditions are otherwise satisfied or waived pursuant to the Plan provisions described in Article XIII of the Plan.

## IV.    GENERAL INFORMATION CONCERNING THE DEBTORS

### A.    Overview of Debtors' Corporate History and Business Operations

Upon the commencement of these Chapter 11 Cases, Mercon Coffee Group operated as a global, green coffee supplier with the purpose of building a better coffee world. The company's history began 150 years ago, when Enrique Baltodano became one of the most prominent coffee growers in Nicaragua's Pacific region. In 1952, continuing with the family tradition, Duilio Baltodano Pallais, Enrique's grandson, founded CISA Exportadora, a coffee export company, which eventually became the first company of the Mercon Group.

In 1982, Jose Antonio Baltodano, launched the Mercon brand when he founded Mercon Coffee Corporation. The name "Mercon" is a combination of the two words "merchant" and "consultant." As of the Petition Date, the Debtors were vertically integrated in the coffee industry with businesses located all over the world. The Debtors maintained a presence throughout the coffee supply chain—from sourcing and sales and exporting to farming and nursery businesses.

As one of the leading coffee companies in the world, the Debtors had broad experience from farming and production to trading, logistics, and risk management. Over the years, the Debtors created solutions from the producer to the roaster that rely on the innovation and technology of the entire organization. With global access to the coffee supply chain, the Debtors endeavored to deliver the best customer experience. This means sourcing coffee (Arabica and Robusta) from farmers, cooperatives, local exporters and international traders, to milling and selling green coffee to roasters, brokers and importers. The Debtors also provided a vast range of services such as financing, market information, and sustainability to generate value for the upstream and downstream actors in the supply chain.

Prior to the Petition Date, the Debtors pioneered the development of coffee-specific farming, nurseries, and farming financing. More specifically, the Debtors led the production of Robusta coffee in Nicaragua—creating a whole new industry in the country. By expanding their production and providing technical assistance and financing to other producers, the Debtors created thousands of jobs in Nicaragua. In addition, the Debtors made financing available to farmers through Mercapital. Mercapital historically provided financial services, including coffee and consumer loans and mortgages, and offered a currency exchange service that allowed producers to access a competitive rate in the exchange market of Nicaragua.

Over the years, the Debtors continued to grow. In 2019, the Debtors became one of the first commodity suppliers in the US -- and the first coffee-only company -- to close a $450 million sustainability-linked senior secured revolving credit facility. Since then, however, the Debtors have faced several market challenges.

B.     **Debtors' Capital Structure**

The Debtors have a complicated capital structure involving approximately twenty-six (26) different debt facilities and debt obligations (the "**Mercon Credit Facilities**"). The Mercon Credit Facilities are both secured and unsecured and are guaranteed by certain of the Debtors. There is no cross collateralization and no intercreditor agreement among the Mercon Credit Facilities. As of the Petition Date, the Debtors had outstanding funded debt obligations in the aggregate principal amount of approximately $363,339,800.00 in United Stated dollars. The Debtors financing obligations are described in greater detail below.

1.     *Outstanding Funded Debt Obligations*

As of the Petition Date, the Debtors had outstanding funded debt obligations in the aggregate principal amount of approximately $363,339,800.00 in United Stated dollars ("**USD**") or USD-equivalent debt obligations, which includes, among other indebtedness, the following:

- $203,532,929.89 in secured borrowings under the Prepetition First Lien Credit Agreement (as defined herein);

- $25,000,000.00 in secured borrowings under the 2022 FMO Facility (as defined herein);

- $2,448,657.00 in secured borrowings under the 2016 BFP Facility (as defined herein);

- $500,000.00 in secured borrowings under the 2018 BFP Facility (as defined herein);

- $4,000,000.00 in secured borrowings under the 2020 BFP Facility (as defined herein);

- $3,333,802.00 in secured borrowings under the 2019 FMO Facility (as defined herein);

- $7,500,000.00 in unsecured borrowings under the Starbucks Coffee Facility (as defined herein);

- $1,474,419.24 in unsecured borrowings under the BAC Nicaragua Facility (as defined herein);

- $2,000,000.00 in unsecured borrowings under the BDF Facility (as defined herein);

- $3,500,000.00 in unsecured borrowings under the BICSA Facility (as defined herein);

- $19,490,776.00 in unsecured borrowings under the Lafise Nicaragua Facility (as defined herein);

- $3,000,000.00 in unsecured borrowings under the BAC Panama Facility (as defined herein);

- $4,000,000.00 in unsecured borrowings under the CFC Facility (as defined herein);

- $13,000,000.00 in unsecured borrowings under the London Forfaiting Notes (as defined herein);

- $1,207,729.00 in unsecured borrowings under the ABC Bank Facility (as defined herein);

- $3,000,000.00 in unsecured borrowings under the Banco Safra Facility (as defined herein);

- $800,000.00 in unsecured borrowings under the Banco Santander Facility (as defined herein);

- $9,000,000.00 in unsecured borrowings under the Banco Agromercantil Facility (as defined herein);

- $3,640.00 of unsecured indebtedness owing under the ABC Bank Non-Deliverable Forward Contract (as defined herein);

- $5,000,000.00 in subordinated debt borrowings under the 2018 FMO Facility (as defined herein);

- $8,900,000.00 in subordinated debt borrowings under the Mercon Ventures and World Consultants Promissory Notes (as defined herein);

- $2,000,000.00 in subordinated debt borrowings under the Horizon Overseas Facility (as defined herein);

- $20,000,000.00 in subordinated debt borrowings under the Stichting Facility (as defined herein); and

- $20,000,000.00 in subordinated debt borrowings under the Crowdout Facility (as defined herein). The Debtors financing obligations are described in greater detail below

## 2.    *Prepetition First Lien Credit Agreement*

As of the Petition Date, Debtors, Mercon B.V., a Dutch private company with limited liability, registered with the Dutch commercial register under number 61741140 ("**Mercon B.V.**"), and Mercon Coffee Corporation, a New York corporation ("**Mercon US**"), as borrowers, and the other Debtors, were party to that certain Third Amended and Restated Credit Agreement, dated as of June 30, 2023 (as amended, the "**Prepetition First Lien Credit Agreement**"), with

the lenders party thereto from time to time, and Coöperatieve Rabobank U.A., New York Branch ("**Rabobank**"), as administrative agent, collateral agent, swingline lender and issuing lender. The Prepetition First Lien Credit Agreement provides for revolving credit commitments in an aggregate principal amount of up to $325,000,000.00, maturing on June 28, 2024. The Prepetition First Lien Credit Agreement is secured by substantially all of the personal property of the Debtors (subject to certain customary exceptions). Proceeds of the loans were used to refinance existing debt and to pay for general working capital expenses of the loan parties in the ordinary course of business. As of the Petition Date, the aggregate amount outstanding under the Prepetition First Lien Credit Agreement was approximately $203,532,929.89 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 3.     *2022 FMO Facility*

As of the Petition Date, Debtors, Comercial Internacional Exportadora S.A., ("**CISA**") a corporation existing under the laws of Nicaragua, as borrower and Mercon B.V., Mercon US, Mercapital de Nicaragua S.A., a corporation existing under the laws of Nicaragua ("**Mercapital Nicaragua**"), Mercon Brasil Comercio de Café Ltda, a limited liability company existing under the laws of Brazil ("**Mercon Brazil**"), and Mercon Guatemala, a sociedad anonima, existing under the laws of Guatemala ("**Mercon Guatemala**"), as guarantors, were party to that certain Term Facility Agreement, dated as of May 19, 2022 (the "**2022 FMO Credit Agreement**"), with Nederlandse Financierings- Maatschappij Voor Ontwikkelingslanden N.V. ("**FMO**"), as lender. The 2022 FMO Credit Agreement provides for a USD term facility in an aggregate principal amount of $25,000,000.00, maturing on March 15, 2029 (the "**2022 FMO Agreement**"). The 2022 FMO Agreement is secured by certain real property of CISA. Proceeds of the loan were used to prepay the entire outstanding balance owed in respect of certain existing credit facilities with FMO. As of the Petition Date, the aggregate amount outstanding under the 2022 FMO Agreement was approximately $25,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 4.     *2016 BFP Facility*

As of the Petition Date, Debtors, Distribuidora de Granos de Nicaragua S.A., a corporation existing under the laws of Nicaragua ("**Digranisa**"), as borrower, and CISA, as guarantor, were party to that certain Credit Agreement (Escritura Publica Numero Doscientos Veintidos (No. 222). Otorgamiento de Linea de Credito Garantizado con Hipoteca, Prenda y Fianza Solidaria), dated as of November 4, 2016 (the "**2016 BFP Credit Agreement**"), with Banco de Fomento a la Produccion ("**BFP**"), as lender. The 2016 BFP Credit Agreement provides for a USD term facility in an aggregate principal amount of $6,700,000.00, maturing on November 4, 2026 (the "**2016 BFP Facility**"). The 2016 BFP Facility is secured by certain fixed and biological assets. Proceeds of the loan were used for the investment plan presented by the loan parties. As of the Petition Date, the aggregate amount outstanding under the 2016 BFP Facility was approximately $2,448,657.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 5.      *2018 BFP Facility*

As of the Petition Date, Debtors, Mercapital Nicaragua, as borrower, and CISA, as guarantor were party to that certain *Credit Agreement (Escritura Publica Numero Treinta y Siete (No. 37). Contrato de Linea de Credito no Revolvente con Obligacion de Constitucion de Garantia Mobiliaria Sobre Cartera de Credito y Fianza Solidaria)*, dated as of April 4, 2018 (the "**2018 BFP Credit Agreement**"), with BFP, as lender. The 2018 BFP Credit Agreement provides for a credit facility in an aggregate principal amount of $1,000,000.00, maturing April 4, 2028 (the "**2018 BFP Facility**"). The 2018 BFP Facility is secured by certain short- and long-term loans to growers in Nicaragua. Proceeds of the loan were used for working capital for the business of coffee production. As of the Petition Date, the aggregate amount outstanding under the 2018 BFP Facility was approximately $500,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 6.      *2020 BFP Facility*

As of the Petition Date, Debtors, Mercapital Nicaragua, as borrower, and CISA, as guarantor were party to that certain Credit Agreement (Escritura Publica Numero Noventa y Nueve (No. 99). Otorgamiento de Linea de Credito Revolvente Garantizado con Fianza Solidaria y con Obligacion de Constituir Garantia Mobiliaria Sobre Cartera de Credito), dated as of November 27, 2020 (the "**2020 BFP Credit Agreement**"), with BFP, as lender. The 2020 BFP Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $5,000,000.00, maturing November 27, 2030 (the "**2020 BFP Facility**"). The 2020 BFP Facility is secured by certain short- and long-term loans to growers in Nicaragua. Proceeds of the loan were used for working capital for the business of coffee production. As of the Petition Date, the aggregate amount outstanding under the 2020 BFP Facility was approximately $4,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 7.      *2019 FMO Facility*

As of the Petition Date, Debtors, Mercapital Nicaragua, as borrower, and Mercon B.V., Mercon US, and CISA, as guarantors, were party to that certain *Term Facility Agreement,* dated as of November 1, 2019 (the "**2019 FMO Credit Agreement**"), with FMO, as lender. The 2019 FMO Facility provides for a credit facility in an aggregate principal amount of $5,000,000.00, maturing June 15, 2025 (the "**2019 FMO Facility**"). The 2019 FMO Facility is secured by certain short- and long-term loans to growers in Nicaragua. Proceeds of the loan were used to make loans to coffee producers in Nicaragua. As of the Petition Date, the aggregate amount outstanding under the 2019 FMO Facility was approximately $3,333,802.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

### 8.      *Unsecured Debt*

Below is a summary of the Debtors' unsecured debts. Creditors and interested parties should review the Debtors' Schedules filed with the Bankruptcy Court for more complete information concerning the nature and amount of the Debtors' liabilities as of the Petition Date

As of the Petition Date, Debtors Mercon US, as borrower and Mercon B.V., as guarantor were party to that certain Third Amendment to Amended and Restated Credit Agreement,

dated as of May 12, 2020 (the "**Starbucks Coffee Credit Agreement**"), with Starbucks Coffee Trading Company Sarl ("**Starbucks Coffee**"), as lender. The Starbucks Coffee Credit Agreement provides for a credit facility in an aggregate principal amount of $7,500,000.00, maturing May 11, 2029 (the "**Starbucks Coffee Facility**"). The Starbucks Coffee Facility is an unsecured facility. Proceeds of the loan were used to make advances to farmers. As of the Petition Date, the aggregate amount outstanding under the Starbucks Coffee Facility was approximately $7,500,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor CISA, as borrower, was a party to that certain Revolving Credit Facility (Contrato de Apertura de Línea de Crédito Revolvente No Comprometida en Cuenta Corriente), dated as of September 3, 2020 (the "**BAC Nicaragua Credit Agreement**"), with Banco de America Central, S.A. ("**BAC Nicaragua**"), as lender. The BAC Nicaragua Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $2,000,000.00, maturing November 2, 2023 (the "**BAC Nicaragua Facility**"). The BAC Nicaragua Facility is an unsecured facility. Proceeds of the loan were used for working capital expenses. As of the Petition Date, the aggregate amount outstanding under the BAC Nicaragua Facility was approximately $1,474,419.24 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor CISA, as borrower, was a party to that certain Credit Agreement (Crédito Abierto en Cuenta Corriente con Limitación de Suma), dated as of May 9, 2022 (the "**BDF Credit Agreement**"), with Banco de Finanzas, S.A. ("**BDF**"), as lender. The BDF Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $2,000,000.00, maturing April 30, 2026 (the "**BDF Facility**"). The BDF Facility is an unsecured facility. Proceeds of the loan were used for coffee gathering expenses. As of the Petition Date, the aggregate amount outstanding under the BDF Facility was approximately $2,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtors CISA, as borrower and Mercon B.V., as guarantor were party to that certain Revolving Credit Facility (Contrato de Apertura de Line de Crédito Revolvente), dated as of February, 25 2021 (the "**BICSA Credit Agreement**"), with Banco Internacional de Costa Rica, S.A. ("**BICSA**"), as lender. The BICSA Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $4,500,000.00, maturing July 30, 2025 (the "**BICSA Facility**"). The BICSA Facility is an unsecured facility. Proceeds of the loan were used for the purchase of raw material (pre-exportation of coffee). As of the Petition Date, the aggregate amount outstanding under the BICSA Facility was approximately $3,500,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtors CISA, as borrower and Mercon B.V., as guarantor were party to that certain Credit Agreement, dated as of February 15, 2022 (the "**Lafise Nicaragua Credit Agreement**"), with Banco Lafise Bancentro, S.A. ("**Lafise Nicaragua**"), as lender. The Lafise Nicaragua Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $26,000,000.00 (the "**Lafise Nicaragua Facility**"). The Lafise Nicaragua Facility is an unsecured facility. Proceeds of the loan were used for working capital expenses. As of the Petition Date, the aggregate amount outstanding under the Lafise Nicaragua Facility was approximately $19,490,776.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses, which is composed of that certain (i) promissory note, dated April 25, 2023, with

an outstanding principal amount of $3,000,000.00 and maturing on October 25, 2023, (ii) promissory note, dated July 11, 2023, with an outstanding principal amount of $4,400,000.00 and maturing on January 11, 2024, (iii) promissory note, dated August 17, 2023, with an outstanding principal amount of $1,500,000.00 and maturing on February 17, 2024, (iv) promissory note, dated August 25, 2023, with an outstanding principal amount of $3,090,776.00 and maturing on October 9, 2023; and (v) promissory note, dated September 8, 2023, with an outstanding principal amount of $7,500,000.00 and maturing on October 9, 2023.

As of the Petition Date, Debtor Mercon B.V., as borrower, was a party to that certain Revolving Credit Facility, dated as of March 21, 2022 (the "**BAC Panama Credit Agreement**"), with BAC International Bank Inc. ("**BAC Panama**"), as lender. The BAC Panama Credit Agreement provides for a revolving credit facility in an aggregate principal amount of $3,000,000.00 (the "**BAC Panama Facility**"). The BAC Panama Facility is an unsecured facility. Proceeds of the loan were used for payment of vendors and working capital loans. As of the Petition Date, the aggregate amount outstanding under the BAC Panama Facility was approximately $3,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtors Mercon B.V., as borrower, CISA, CIGRAH, Mercon Guatemala, Mercafe Vietnam Ltd., a corporation existing under the laws of the British Virgin Islands ("**Mercafe Vietnam BVI**"), Mercon Brazil, Mercapital Nicaragua, CISA Export S.A. ("**Cisa Export**"), a corporation existing under the laws of the British Virgin Islands, Digranisa, Agro International Corp., a corporation existing under the laws of Curacao ("**AIC**"), and Mercon US, as guarantors, were party to that certain $5,000,000 Working Capital Loan Agreement, dated as of May 24, 2022 (the "**CFC Credit Agreement**"), with Common Fund for Commodities ("**CFC**"), as lender. The CFC Credit Agreement provides for a working capital loan in an aggregate principal amount of $5,000,000.00 (the "**CFC Facility**"). The CFC Facility is an unsecured facility. Proceeds of the loan were used for working capital expenses for coffee trading in Brazil, Guatemala, Honduras and Nicaragua. As of the Petition Date, the aggregate amount outstanding under the CFC Facility was approximately $4,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon B.V., was a party to certain Promissory Notes, dated as of June 8, 2022, and December 8, 2022, respectively (the "**London Forfaiting Promissory Notes**"), with London Forfaiting Company Ltd. ("**London Forfaiting**"), as issuer. The London Forfaiting Notes provides for promissory notes in the principal amounts of $3,000,000.00 and $10,000,000.00, respectively, each maturing on December 15, 2023 (the "**London Forfaiting Notes**"). The London Forfaiting Notes are unsecured. The London Forfaiting Notes were issued to finance the purchase, processing and sale of green coffee beans. As of the Petition Date, the aggregate amount outstanding under the London Forfaiting Notes was approximately $13,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon Brazil, was a party to certain Foreign Exchange Agreement No. 314235737, dated as of August 4, 2022 (the "**ABC Bank Agreement**"), with ABC Brasil S.A. ("**ABC Bank**"), as financial institution/bank. The ABC Bank Agreement provides for the purchase of Brazilian Reais in the principal amount of USD $1,089,866.16,

- 23 -

converted at the exchange rate of USD $1.0000/ R $ 5.2300, maturing January 31, 2023 (the "**ABC Bank Facility**"). The ABC Bank Facility is an unsecured facility. Proceeds were used for the exports of goods/merchandise. As of the Petition Date, the aggregate amount outstanding under the ABC Bank Facility was approximately $1,207,729.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon Brazil, as borrower, was a party to certain Foreign Exchange Agreement No. 318242573, dated as of September 8, 2022 (the "**Banco Safra Agreement**"), with Banco Safra SA ("**Banco Safra**"), as financial institution/bank. The Banco Safra Agreement provides for the purchase of Brazilian Reais in the principal amount of USD $3,000,000.00, converted at the exchange rate of USD $1.0000/ R $ 5.2010 (the "**Banco Safra Facility**"). The Banco Safra Facility is an unsecured facility. Proceeds were used for the exports of goods/ merchandise. As of the Petition Date, the aggregate amount outstanding under the Banco Safra Facility was approximately $3,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon Brazil, as borrower, was a party to that certain Credit Agreement, dated as of September 21, 2023 (the "**Banco Santander Agreement**"), with Banco Santander ("**Banco Santander**"), as financial institution/bank. The Banco Santander Agreement provides for a term loan credit facility in an aggregate principal amount of $800,000.00, maturing September 16, 2024 (the "**Banco Santander Facility**"). The Banco Santander Facility is an unsecured facility. Proceeds of the loan were used for the export of goods. As of the Petition Date, the aggregate amount outstanding under the Banco Santander Facility was approximately $800,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtors Mercon Guatemala, as borrower, and Mercon B.V., as guarantor, were party to that certain Revolving Credit Facility, dated as of December 17, 2021 (the "**Banco Agromercantil Agreement**"), with Banco Agromercantil de Guatemala, SA ("**Banco Agromercantil**"), as lender. The Banco Agromercantil Agreement provides for a revolving credit facility in an aggregate principal amount of $9,000,000.00, maturing December 14, 2024 (the "**Banco Agromercantil Facility**"). The Banco Agromercantil Facility is an unsecured facility. Proceeds of the loan were used for working capital expenses. As of the Petition Date, the aggregate amount outstanding under the Banco Agromercantil Facility was approximately $9,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses, which composed of that certain (i) promissory note, dated June 9, 2023, with an outstanding principal amount of $3,000,000.00 and maturing on March 5, 2024, and (ii) promissory note, dated June 20, 2023, with an outstanding principal amount of $6,000,000.00 and maturing on June 16, 2024.

As of the Petition Date, Debtor Mercon Brazil, has unsecured indebtedness in the amount of (i) $3,640.00 owing under that certain non-deliverable forward contract, dated as of September 27, 2021 (the "**ABC Bank Non-Deliverable Forward Contract**"), between Mercon Brazil and ABC Bank, (ii) $(262,031.00) owing under that certain non-deliverable forward contract, dated as of August 9, 2021 (the "**Banco Santander Non-Deliverable Forward Contract**"), between, Mercon Brazil and Banco Santander, (iii) $0.00 of unsecured indebtedness owing under the non-deliverable forward contract, dated as of October 7, 2015 (the "**Bank of America Non-Deliverable Forward Contract**"), between, Mercon Brazil and Bank of America; (iv) $(22,974.00) of unsecured indebtedness owing under the non-deliverable forward contract,

dated as of September 8, 2022 (the "**Voiter Non-Deliverable Forward Contract**"), between, Mercon Brazil and Banco Voiter S.A., and (v) $0.00 of unsecured indebtedness owing under the non-deliverable forward contract, dated as of June 10, 2020 (the "**Marex Non-Deliverable Forward Contract**"), between, Mercon Brazil and Marex Financial.

### 9.    *Subordinated Debt Obligations*

As of the Petition Date, Debtors Mercapital Nicaragua, as borrower, and Mercon B.V., Mercon US, and CISA, as guarantors, were party to that certain Term Facility Agreement-Micro and Small Enterprise Fund ("**MASSIF**"), dated as of December 17, 2018 (the "**2018 FMO Credit Agreement**"), with FMO as lender. The 2018 FMO Credit Agreement provides for a USD term facility in an aggregate principal amount of $5,000,000.00, maturing on June 15, 2025 (the "**2018 FMO Facility**"). The 2018 FMO Facility is a subordinated debt facility. Proceeds of the loan were used to make loans to eligible growers in line with Mercapital Nicaragua's credit policy. As of the Petition Date, the aggregate amount outstanding under the 2018 FMO Facility was approximately $5,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon B.V., as borrower, was a party to that certain (i) Second Amended Promissory Note 2017-003, with World Consultants S.A., as lender, issued on March 1, 2017, for the original principal amount of $3.0 million, (ii) Amended Promissory Note 2021-001, with World Consultants S.A., as lender, issued on August 3, 2021, for the original principal amount of $4.0 million, and (iii) Amended Promissory Note 2021-001, with Mercon Ventures International Corp. B.V., as lender, issued on December 10, 2021, for the original principal amount of $1.9 million (the promissory notes in the foregoing clauses (i), (ii) and (iii), the "**Mercon Ventures and World Consultants Promissory Notes**"). The Mercon Ventures and World Consultants Promissory Notes are subordinated and junior in right of payment to the indefeasible payment in full in cash of the Prepetition First Lien Credit Agreement. As of the Petition Date, the aggregate amount outstanding under the Mercon Ventures and World Consultants Promissory Notes was approximately $8,900,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon B.V., as borrower was a party to that certain Promissory Note, dated as of September 30, 2023 (the "**Horizon Overseas Promissory Note**"), with Horizon Overseas, Inc., as lender. The Horizon Overseas Promissory Note provides for a USD loan in an aggregate principal amount of $2,000,000.00, maturing December 28, 2024 (the "**Horizon Overseas Facility**"). The Horizon Overseas Facility is a subordinated debt facility. As of the Petition Date, the aggregate amount outstanding under the Horizon Overseas Facility was approximately $2,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtor Mercon B.V., as borrower, was a party to that certain *Facility Agreement*, dated as of December 15, 2022 (the "**Stichting Facility Agreement**"), with Stichting and Green Fund, as lender. The Stichting Facility Agreement provides for a USD loan in an aggregate principal amount of $20,000,000.00, maturing December 31, 2024 (the "**Stichting Facility**"). The Stichting Facility is a subordinated debt facility. Proceeds of the loan were used for its coffee value chain in Vietnam. As of the Petition Date, the aggregate amount outstanding

under the Stichting Facility was approximately $20,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

As of the Petition Date, Debtors Mercon B.V. and Mercon US, as borrowers, were a party to that certain Credit Agreement, dated as of February 23, 2022 (the "**Crowdout Credit Agreement**"), with Crowdout Capital LLC, as lender. The Crowdout Credit Agreement provides for a USD loan in an aggregate principal amount of $30,000,000.00, maturing December 30, 2024 (the "**Crowdout Facility**"). The Crowdout Facility is a subordinated debt facility. Proceeds of the loan were used for working capital expenses and other general business purposes. As of the Petition Date, the aggregate amount outstanding under the Crowdout Facility was approximately $20,000,000.00 in unpaid principal, plus accrued and unpaid interest, fees, and other expenses.

10.    *Equity Interests*

The Debtors' ultimate parent, Mercon Ventures International Corp. B.V. ("**Mercon Ventures International**"), was formed in Curacao on October 20, 2022. Collectively, the shareholders, Sunloved Java Holdings LLC, a Cayman limited liability company ("**Sunloved Java**"), and Mercon Ventures, S.A., a sociedad anónima, existing under the laws of Panama ("**Mercon Ventures**"), own 100% of Mercon Ventures International, with Sunloved Java owning approximately 70% and Mercon Ventures owning approximately 30%. Mercon Ventures International owns 100% of the equity in Mercon Coöperatief U.A., a Co-operative U.A. existing under the laws of the Netherlands ("**Mercon Coöperatief**") and Mercon Coöperatief owns 100% of the equity in Mercon B.V. As of the Petition Date, there were 25 entities in the Debtors' organizational structure.

C.    **Events Leading to the Filing of the Chapter 11 Cases**

In the few years leading up to the Petition Date, the Debtors faced several external challenges and were negatively impacted by the adverse market trends described below. These extrinsic factors had a profound negative impact on the effectiveness of the Debtors' traditional hedging strategy. The Debtors, like any business involved in the export and import of commodities, must enter into commodities futures contracts in order to protect its margins that derive from the prices at which the Debtors purchase green coffee inventory and the price at which they sell it to roasters in the future based on their sales contracts. While coffee is produced and largely acquired by the Debtors during a 3 to 4 month harvest season, the Debtors' customers purchase coffee on a more even basis throughout the year. Thus, the Debtors' hedging strategy was centered upon the principle that any coffee inventory, purchase and sales contract should be matched with a futures contract with a similar time period.

1.    *Extreme Weather Events in in Brazil in 2021*

Brazil is the largest coffee producing country in the world – it provides approximately 40% of worlds coffee supply. As a result, wide-scale weather events in Brazil that are adverse to the cultivation of coffee can cause supply disruptions that are significant enough to cause drastic swings in coffee prices. In July 2021, there were two widespread and unusual frosts in Brazil that disrupted the production of 5 to 10 million bags of coffee in the state of Minas Gerais alone. (One "bag" of coffee is generally 60kg, although the exact amount can vary from country

to country.) This amount is equivalent to approximately 30% of the Arabica production in Brazil, which is about 5% to 10% of global Arabica production. The last frost event of this magnitude occurred in 1994. Irregular and below average rains from September to November 2021 in Brazil exacerbated the disruption in supply by reducing Arabica production in Brazil for the upcoming July 2022 crop.

The combined effect of the significant frost followed by drought was unprecedented. The price volatility that resulted from these events moved the price of coffee from USD 1.26/lb. in January 2021 to a high of USD 2.60/lb. in February 2022. The rapid rise in coffee prices required the Debtors to secure additional financing to procure the same amount of coffee and cover the margin call requirements to maintain futures coverage.

2.      *Prolonged Global Supply Logistic Disruptions (November 2021-December 2022)*

In addition to the unusual weather events in Brazil, in late 2021 and in 2022 there were prolonged disruptions in global supply logistics due to the post 2020 global pandemic. During this time period, all major producing coffee origins experienced an extreme lack of container availability, which significantly delayed the Debtor's ability to convert inventory into cash and reduce inventory levels as planned. The lack of container availability relative to demand drove the shipping prices to unprecedented levels (10 times higher). The considerable delay in the cash cycle of the business had a major impact on the Debtor's Brazilian coffee inventories, which was the largest in country inventory position held by the Debtors at that time due to the timing with the harvest cycle in Brazil.

These supply chain disruptions caused physical inventories to expand well beyond planned seasonal levels for the Debtors, and the Debtors' contracted sales for that harvest year. The global lack of supply and significant price increases caused by the meteorological events described above required additional debt financing to maintain an appropriate protection of the Debtors' gross margin through its futures portfolio.

3.      *Supply and Logistical Distortions lead to Prolonged Inversion in Coffee Futures Market*

The unusual events described above, and other events as well, led to a profound "inversion" of the coffee futures market.

While rare, any commodities futures market can become inverted.  In a normal coffee futures market, which is referred to as a "contango market," the price of coffee to be delivered in the future increases the further that the delivery dates are from the spot market. (The spot market is the market in which commodities are traded for immediate delivery.)  The underlying reason for higher prices for future deliveries is that green coffee may not yet be available, or the seller may be required to hold the inventory.  These are reflected in higher future prices. It is very uncommon in the futures market to pay more for a short-term future than for a long-term future - as the latter has more risks for the issuer. In an inverted market, a commodity's price for future delivery is below the price for immediate delivery.  This makes it very difficult for a company to cover its carrying costs.

The inverted coffee futures market that began in November 2021 was initially driven by the lack of exports from Brazil due to meteorological and logistical disruptions described above.   The market inversion continues to this day. The last inversion of this magnitude occurred in 1997. The sustained inversion of the futures market led to substantial and ongoing losses for the Debtors.  This included a loss in value of unsold inventory of approximately 5%-10% per year.

### 4.      *Sustained High Interest Rates*

2023 also saw the most rapid increase in interest rates since 1980. The cost of borrowing for the Debtors increased significantly.  As a result, the finance expense necessary to carry inventory positions rose significantly. The Debtors have very limited ability to pass this additional expense on to customers.  In addition to increasing the Debtors' costs of financing, higher interest rates also led to lower or delayed customer demand arising from a movement to just-in-time inventory.  Global supply chain disruptions and higher interest rates have caused purchasers of goods across many industries to move closer to a just-in-time method of managing inventory.  Of course, once a customer of the Debtors moves to a just-in-time strategy of managing inventory, the effect is to cause the Debtors to hold the same inventory for a longer period.

### 5.      *Combined Effect of the Extrinsic Events Caused Losses that Eroded Debtors' Net Worth*

The combination of high market prices, an inverted futures market, and high interest rates led to lower coffee purchases from customers as they sought to reduce inventories to just in time.  Lower demand from customers impeded the Debtors' ability to reduce inventory and forward purchase contracts in order to reduce financial losses. Additionally, Lower demand negatively impacted the Debtors' revenue and profits on anticipated new sales.

The combined effect of higher financing costs, higher inventory carrying costs and losses on trading due to delayed customer demand, led to constrained liquidity and a deterioration of the Debtors' tangible net worth.

The perfect storm of all these extrinsic factors led to the Debtors' experiencing sustained monthly losses due to the inability to rapidly lower inventory and forward contract positions due to the lower demand from clients, market inversion, and higher financial expenses in a very volatile market.

These developments have had a significant adverse impact on the financial performance of the Debtors' business. Notably, they led to breaches under the Debtors' financing arrangements, beginning with the Second Amended and Restated Uncommitted Credit Agreement, which Mercon B.V. and Mercon US entered into as of April 30, 2021, as borrowers, with the lenders party thereto and Rabobank, as administrative agent, collateral agent, swingline lender and issuing lender (the "**Second A&R Rabobank Credit Agreement**"). In particular, the loan parties were in breach of certain covenants related to tangible net worth and consolidated leverage ratios under the Second A&R Rabobank Credit Agreement, for which the borrowers requested a waiver from the Agent. In late April and early May 2023 the parties entered into a series of waivers and amendments to the Second A&R Rabobank Credit Agreement, to provide the Debtors breathing room to source additional debtor or equity financing, and restructure their balance sheets.

In June 2023, Sunloved Java Holdings LLC ("**SJH**") closed on the purchase of a 70% interest in Mercon Ventures International, the Debtors' ultimate parent, for approximately $27 million. This investment by SJH provided a critical equity injection to support the working capital needs of the business, and the SJH funds were used to pay down outstanding amounts to create availability under the Second A&R Rabobank Credit Agreement. Shortly afterwards, on June 30, 2023, Mercon B.V. and Mercon US, as well as the other Debtors, entered into an amendment and restatement of the Second A&R Rabobank Credit Agreement (referred to herein as the Prepetition First Lien Credit Agreement).

The Debtors soon found themselves in renewed financial difficulties. For the period commencing on July 1, 2023, and ending on October 9, 2023, certain of the Debtors notified the Agent and the Lenders that there were or may have been breaches under the Prepetition First Lien Credit Agreement, including a breach of the minimum consolidated tangible net worth covenant. In order to address any such breaches, the Debtors requested a waiver from the Agent and the Lenders. Accordingly, the first amendment and waiver to the Prepetition First Lien Credit Agreement was entered into on August 30, 2023 (the "**First Amendment**"). Section 3(b) of the First Amendment provided that its waivers of the covenant breaches and cross defaults would terminate and be of no further force and effect upon the occurrence of certain events of default, including a default due to the failure to pay principal or interest when due.

Shortly after entry into the First Amendment, the Debtors encountered additional difficulty in complying with the terms of the Prepetition First Lien Credit Agreement. Given the persistence of the negative macroeconomic and other factors and, specifically, a deterioration in the value of the borrowing base collateral, the revolving credit facility was overdrawn and accordingly the Debtors were required to make a mandatory prepayment in the amount overdrawn. However, the Debtors did not have sufficient liquidity in order to make this mandatory prepayment, necessitating a negotiation with Rabobank as agent under the Prepetition First Lien Credit Agreement and the other Secured Parties for an agreement on a second amendment and waiver to the Prepetition First Lien Credit Agreement. However, while such negotiations were ongoing, the value in the borrowing base collateral, which primarily consists of coffee inventory, accounts receivable, net liquidating value of the brokerage accounts continued to deteriorate, causing the overdrawn amount to increase substantially. By late October, the revolving credit facility was overdrawn by approximately $16.0 million and the borrowing base deficiency under the Prepetition First Lien Credit Facility had grown to $36.9 million by November 20, 2023.

In addition, the Debtors had breached certain other covenants and certain other events of default occurred under the Prepetition First Lien Credit Agreement, including breach of the negative covenant bi-lateral collar, the tangible net worth financial covenant, the Debtors' cash and cash equivalents held in deposit accounts not subject to a deposit account control agreement in favor of Rabobank, as agent, exceeding $2.0 million, and a cross-default occurring as the result for the failure to pay principal on certain bi-lateral credit agreements. As a result of the foregoing events of default, on November 3, 2023, the Debtors received a notice of acceleration from Rabobank, at the direction of the "Majority Lenders," terminating the commitments and accelerating the outstanding loans under the Prepetition First Lien Credit Agreement.

D.     **The Search for Strategic Alternatives**

Prior to the Petition Date, before and after receipt of the notice of acceleration, the Debtors worked diligently to solicit and develop strategic alternatives to maximize the Debtors' value for the benefit of all of their stakeholders. While the Debtors searched for new debt or equity financing, a strategic partner, or other restructuring alternative, they also worked diligently to maintain their operations in the face of declining liquidity and increasing financing challenges. The Debtors repeatedly attempted to engage in a comprehensive out-of-court restructuring of its funded indebtedness, but the extremely high debt load, coupled with the large number of bi-lateral lenders and banks in the syndicate for the Prepetition First Lien Credit Agreement, most of which are based in jurisdictions outside the United States, complicated such efforts. During the time period prior to these Chapter 11 Cases, the Debtors also made certain paydowns under the Prepetition First Lien Credit Agreement and other credit facilities. Ultimately, the Debtors' efforts did not yield any viable strategic transaction and the Debtors commenced the Chapter 11 Cases to effectuate an orderly liquidation of their assets and maximize the value of their estates for the benefit of their stakeholders.

## V.     THE CHAPTER 11 CASES

A.     **Commencement of the Chapter 11 Cases**

On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing the Voluntary Petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Since the Petition Date, the Debtors have continued to operate as debtors in possession subject to the supervision of the Bankruptcy Court, and in accordance with the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties in the ordinary course, with transactions outside of the ordinary course of business requiring Bankruptcy Court approval.

An immediate effect of commencement of the Chapter 11 Cases was the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all collection efforts by Creditors, the enforcement of Liens against property of the Debtors, and the continuation of litigation against the Debtors during the pendency of the Chapter 11 Cases. The relief provided the Debtors with the breathing room necessary to assess their business and prevent Creditors from obtaining an unfair recovery advantage while the Chapter 11 Cases are continuing. The automatic stay will remain in effect, unless modified by the Bankruptcy Court, until the entry of a final decree closing the Chapter 11 Cases.

While the automatic stay arising under the Bankruptcy Code is worldwide in its scope, as a practical matter the Debtors had concerns about the enforceability of that stay against certain non-US creditors whose actions in violation of the stay might cause loss of value or disruption of their operations in certain countries. In an effort to preserve value in certain of those countries where legal remedies were available, certain of the Debtors commenced cases in foreign courts to forestall value-destructive actions and enforcement of remedies by those creditors. Those proceedings, in the form of the recognition proceeding in Brazil and the Dutch WHOA Proceeding, are described below.

**B.      The Debtors' Efforts to Obtain Postpetition Financing**

         The Debtors entered chapter 11 with limited available liquidity. On the Petition Date, the Debtors requested to obtain immediate access to a proposed debtor-in-possession financing to ensure (i) sufficient working capital to operate their business and to administer their Estates during the Chapter 11 cases, (ii) the timely payment of administrative expenses to be incurred, (iii) the consummation of a plan of liquidation, (iv) sufficient liquidity to pay margin calls, and (v) a positive message to the Debtors' vendors, suppliers, and customers that these Chapter 11 Cases are sufficiently funded. Prior to the Petition Date, the Debtors, in consultation with their professional advisors, reviewed and analyzed the Debtors' projected cash needs and prepared an initial budget outlining the Debtors' postpetition cash needs in the initial thirteen weeks of the Chapter 11 Cases. The proposed postpetition financing would provide the Debtors with the liquidity necessary to, among other things, make payroll, satisfy their other working capital and general corporate purposes, including essential payments to vendors and service providers during the Chapter 11 Cases, and effect a liquidation plan. For reasons stated on the record, the Court denied the request to obtain postpetition financing on the terms proposed in the *Motion of the Debtors for (I) Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic Stay, and (F) Schedule a Final Hearing and (II) Related Relief* [Doc. No. 5]. After the Bankruptcy Court's ruling, there were no further proposals for DIP financing from the Secured Parties. However, the Debtors, through their investment banker, Rothschild (as defined below), did continue to search for DIP financing proposals from other parties. No viable proposals materialized, which required the Debtors to fund these Chapter 11 Cases through the consensual use of cash collateral on terms negotiated with Rabobank as agent under the Prepetition First Lien Credit Agreement and the Secured Parties.

**C.      The Debtors' Use of Cash Collateral**

         Although the postpetition financing was rejected, the Court approved the use of all cash collateral of the Prepetition First Lien Secured Parties. On December 13, 2023, the Court entered that certain *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, (V) Scheduling a Further Hearing, and (VII) Granting Related Relief* [Doc. No. 58]. On January 12, 2024, the Court entered that certain *Second Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, (V) Scheduling a Further Hearing, and (VII) Granting Related Relief* [Doc. No. 113] **(the "Second Interim Cash Collateral Order").**

         Section 3 of the Second Interim Cash Collateral Order provided that the Debtors' authority to use Cash Collateral shall terminate on February 2, 2024 (the "**Second Interim Cash Collateral Expiration Date**"), provided that the Second Interim Cash Collateral Expiration Date may be extended pursuant to the terms of Section 3(a) of the Second Interim Cash Collateral Order. The Second Interim Cash Collateral Expiration Date was continued seven times [Doc Nos. 168, 184, 222, 234, 250, and 299]. On April 8, 2024, the Debtors use of cash collateral was approved on a final basis [Doc. No. 320], which final cash collateral order provides for the release of certain

excess cash collateral proceeds to Rabobank as agent for distribution to the Lenders under the Prepetition First Lien Credit Facility

**D.    First Day Orders**

Shortly after the Petition Date, the Debtors filed certain requests with the Bankruptcy Court seeking immediate relief to aid in the efficient administration of these Chapter 11 Cases and to facilitate the transition between the Debtors' prepetition and postpetition business operations. The Bankruptcy Court held hearings in connection with these requests, and after due deliberation, entered the following orders:

- Order Authorizing and Directing the Joint Administration of the Debtors' Chapter 11 Cases for Procedural Purposes Only [Docket No. 28];

- Order Authorizing Debtor Mercon Coffee Corporation to Act as Foreign Representative of the Debtors [Docket No. 53];

- Order (I) Enforcing the Protections of 11 U.S.C. §§ 362, 365, 525, and 541; (II) Approving the Form and Manner of Notice; and (III) Granting Related Relief [Docket No. 54];

- Order (I) Waiving the Requirement that Each Debtor File a List of Creditors and Authorizing the Debtors to File a Consolidated Master List of Creditors, (II) Authorizing Debtors to File a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors, (III) Authorizing the Debtors (on an interim basis) to Redact Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying Creditors of Commencement of these Chapter 11 Cases, and (V) Granting Related Relief [Docket No. 55];

- Order (I) Authorizing Harve Light to Act on Behalf of Estates in Foreign Countries and Commencement of Dutch WHOA Proceeding, and (II) Granting Related Relief [Docket No. 56];

- Final Order (I) Authorizing the Debtors to Pay (A) Prepetition Employee Obligations and (B) Maintain and Continue Employee Benefits and (II) Granting Related Relief [Docket No. 102];

- Final Order Authorizing, But Not Directing, Debtors to Maintain Existing Insurance Policies, Pay All Insurance Policy Premiums Arising Thereunder, and Renew or Enter Into New Insurance Policies [Docket No. 103];

- Final Order (I) Authorizing the Debtors to (A) Continue Prepetition Hedging Practices, (B) Commence Postpetition Hedging Practices, (C) Grant Superpriority Claims, and (D) Pay Prepetition Hedging Obligations, and (II) Granting Related Relief [Docket No. 104];

- Final Order Authorizing (A) the Debtors to Pay Certain Prepetition Sales, Franchise, and Similar Taxes and Regulatory Fees and (B) Banks and Financial Institutions to Honor and Process Checks and Transfers Related Thereto [Docket No. 106]; and

- Final Order (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Bank Forms and Checks, (B) Authorizing the Continued Use of Cash Management System, and (C) Granting Administrative Expense Status to Postpetition Intercompany Claims [Docket No. 215].

**E.    Retention of Debtors' Professionals**

During the Chapter 11 Cases, the Bankruptcy Court has authorized the retention of various professionals by the Debtors, including:

- Kroll Restructuring Administration LLC ("**Kroll**"), as claims and noticing agent [Docket No. 57] and administrative advisor [Docket No. 254];

- Baker & McKenzie LLP ("**Baker McKenzie**"), as bankruptcy counsel [Docket No. 170];

- Ordinary Course Professionals [Docket No. 216] ("**OCP Order**");

- Chipman Brown Cicero & Cole ("**Chipman Brown**"), as co-counsel [Docket No. 218];

- Rothschild & Co. US Inc. and Rothschild & Co. Mexico S.A. de C.V. ("**Rothschild**"), as financial advisor and investment banker [Docket No. 294];

- Great Southern Cross Commodities Pty Ltd, as chief liquidating officer [Docket No. 245]; and

- RESOR NV ("**RESOR**"), as special Dutch counsel [Docket No. 179].

The fees and expenses of the professionals retained by the Debtors are entitled to be paid by the Debtors subject to approval by the Bankruptcy Court and in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 108].

In addition, by order dated February 7, 2024, the Bankruptcy Court approved the retention of Riveron Management Services, LLC. to provide restructuring advisory services, including appointing Harve Light as the Chief Restructuring Officer [Docket No. 178].

### F.    Appointment of Official Committee of Unsecured Creditors

On December 21, 2023, the U.S. Trustee appointed an Official Committee of Unsecured Creditors [Docket No. 74] (the "**Creditors' Committee**"). The creditors designated to serve on the Creditors' Committee are Aklilu Kassa Chirrissa, Banapina de Nicaragua, S.A., London Forfaiting Company Ltd., Banco Agromercantil de Guatemala S.A., and CrowdOut Capital.

The members of the Creditors' Committee are Holders of Unsecured Claims against the Debtors. The members have served on the Creditors' Committee without compensation, other than reimbursement for out of pocket expenses. The members of the Creditors Committee agreed to serve pursuant to the Creditors' Committee bylaws, which the Debtors understand to include, but are not limited to, (i) the duty to disclosure by members of any potential conflicts of interest that may arise; (ii) the screening of any member from access to any information in which a potential conflict may exist; and (iii) the confidentiality of any non-public information shared with the Creditors' Committee.

The Bankruptcy Court has authorized the retention of O'Melveny & Myers LLP as counsel to the Creditors' Committee [Docket No. 223] and Ankura Consulting Group, LLC as Financial Advisor [Docket No. 224].

### G.    Postpetition Events in Nicaragua

On December 16, 2023, the Debtors learned that the Nicaraguan Attorney General's Office appointed an Intervenor, equivalent to an Administrator in the U.S., to seize the assets of Mercapital de Nicaragua, S.A. and CISA on account of an alleged $30 million dollar tax claim on behalf of the National Taxing Authority against Mercapital de Nicaragua, S.A. and CISA, the merits of which have always been disputed by the Debtors.

Even though the alleged tax claim was subject to adjudication and was being challenged by CISA and Mercapital in the Nicaraguan courts, the Intervenor took physical control of the assets in Nicaragua and began to pressure employees in Nicaragua to provide him with the information he requested to continue the Debtors' operations in Nicaragua. Accordingly, many of the employees who did not have such information began to resign. Yet, in turn, Nicaraguan police and other individuals not in uniform visited the residence of many of those employees and demanded that the employees return to work. The Nicaraguan police warned the employees that failure to return to work and comply with their demands would result in severe legal and other repercussions which could include seizure of the employee's home and other assets, raiding of the employee's home (and those of their immediate family), and initiating extradition proceedings if the employee decided to leave the country.

In response, the Debtors tried to establish near daily communication with the Intervenor to persuade the Nicaraguan government to cooperate with the Chapter 11 Cases. Unfortunately, the Intervenor failed to cooperate with anyone in the United States and stated that the Nicaraguan government solely wanted to speak to the Debtors' employees in Nicaragua. Further, by February 28, 2024, the Nicaraguan government went from not communicating with Debtors' representatives in the United States to giving some affirmative indications that the

government would not cooperate with any sale or other value maximizing efforts, including taking actions contrary to the Chapter 11 Cases.

Additionally, since January 2024, the Debtors have dealt with multiple creditors (including but not limited to Lafise) outside the United States taking actions that violate or are inconsistent with the automatic stay, 11 U.S.C. § 362(a)(1). Such actions include, *inter alia,* (i) the commencement of judicial actions in foreign court to collect amounts owed; (ii) accounts receivable counterparties failing to pay amounts owed to the Debtors, and/or reducing or offsetting against such accounts receivable; (iii) foreign banks improperly refusing to provide access to the Debtors' accounts and funds on deposit; and (iv) service providers of the Debtors such as insurance companies seeking to modify the Debtors' coverage under existing insurance policies. The Debtors have responded with correspondence informing the parties of the violations of law and possible consequences, including litigation before the Bankruptcy Court.  The Debtors continue to reserve all rights with respect to such parties, including but not limited to enforcing the Debtors' contract rights, seeking sanctions or damages, and claim disallowance or subordination.

## H.      The Dutch WHOA Proceeding for Debtor Mercon B.V.

Unlike the United States and Brazil The Netherlands has not adopted the UNCITRAL Model Law on Cross-Border Insolvency. Accordingly, in order to protect the significant interests of Debtor Mercon B.V. in The Netherlands and other EU countries in which it had assets, and especially to forestall creditor action threatened in writing in The Netherlands that could have resulted in the filing of an involuntary case against Debtor Mercon B.V. and the appointment of a bankruptcy trustee to take control its assets and operations, Debtor Mercon B.V. opened the Dutch WHOA Proceeding under the Dutch *Wet Homologatie Onderhands Akkoord* in the Dutch Court. The initiation of that proceeding and relief granted by the Dutch Court were automatically recognized in every European Union member state (other than Denmark), thus preventing any creditor action in any of those countries that would have disrupted the conduct of the Mercon B.V. chapter 11 case and, importantly, the appointment of a bankruptcy trustee in The Netherlands who may have acted to countermand business decisions by the authorized representatives of Mercon B.V., interfere with that company's business operations, and collect debts owed to it.

## I.      The Debtors' Recognition Proceedings in Brazil

In order to protect substantial assets in Brazil against actions by local creditors in that country, the Debtors commenced an ancillary proceeding in the Civil Court of the Varginha District under Brazil's codification of the UNCITRAL Model Law on Cross-Border Insolvency and filed a lawsuit seeking recognition of these Chapter 11 Cases and the entry of a stay coextensive with the automatic stay arising under the Bankruptcy Code. By ruling dated February 1, 2024, the Brazilian court granted the requested recognition and imposed a stay against creditor action under Brazilian law.

### J.      The Debtors' Post-Petition Operations

#### 1.      *Management and Employees*

Following the filing of the Voluntary Petitions, the Debtors' management team developed and then implemented plans to rationalize staffing and reduce headcount to minimize overhead costs, while still maintaining key business operations. The Debtors' management team immersed themselves into management of the areas most important to asset value maximization by providing oversight and management to the collection, legal, accounting and information technology functions.

#### 2.      *Workforce and Cost Reductions*

As of the Petition Date, the Debtors incurred obligations to their employees in the form of employee compensation, employee benefits, and termination-related payments. Certain non-Debtor employers incurred these same obligations with respect to the non-Debtor employees. Other than certain very limited assistance to non-Debtor affiliates, the non-Debtor employees exclusively provided services to the Debtors. For example, Semulosa employees administered a shared services function providing finance, legal, information technology, logistics, and human resources support for all of the Debtor entities. Although these services have been provided to the Debtors and non-Debtor affiliates, the non-Debtor affiliates have not been revenue-generating entities and accordingly the level of support required was much lower for them. These functions have been critical to the ongoing operations of the Debtors.

At the time of the commencement of these Chapter 11 Cases, Semulosa had 67 employees, all of whom resided in Nicaragua. All of these employees resigned. In Europe, certain non-Debtors employ seven (7) employees in Spain. The European employees manage the relationships for all of the Debtors' clients in Europe, supplying services related to sales, logistics, and quality management, including serving as the primary point of contact for the Debtors' clients in Europe. The region for which the European employees are responsible accounts for approximately 63% of the Debtors' total revenue by destination.

Employees of non-Debtor Mercafe Trading, historically served three different functions. First, similar to Semulosa, some employees provide services to the Debtors, including finance, legal, information technology, logistics, and human resources support. Second, other Mercafe Trading employees primarily provide entity-to-entity operational support to Debtors Cisa Export S.A., Comercial Internacional de Granos de Honduras, S.A. de C.V., and Mercon Guatemala, S.A., beyond the shared services described above. Third, similar to Mercafe Europe, some employees provide sales support to Central America, by supplying services related to sales and relationship management of the Debtors' clients who buy coffee from the Central America region. Mercafe Trading employees support the Debtors in regions from which the Debtors derive approximately 32% of their total revenues by origin. These Employees have thus been critical to maintaining the Debtors' going concern value. At the time these Chapter 11 Cases commenced, Mercafe Trading had 19 Employees, with 12 located in Nicaragua, four (4) in Panama, two (2) in Spain, and one (1) in each of Ethiopia, Guatemala, and Honduras. Eight (8) of the Employees in Nicaragua have recently resigned.

Employees of non-Debtor Transplanta have also provided services for the Debtors. Transplanta operates a nursery that grows coffee plants and related goods, which promote sustainable practices. The goods are sold to producers and growers, who ultimately sell the coffee back to the Debtors. CISA, a Debtor entity, owns the land on which this nursery operates and grants use of that land to Transplanta. Transplanta employees have been working to maintain these coffee plants during the course of the Chapter 11 Cases, so they do not perish and in turn, can continue to provide a benefit to the Debtors. As of the Petition Date, Transplanta employed 27 employees in Nicaragua, including 17 non-field employees and 10 field employees. Five (5) non-field employees resigned during the course of the Chapter 11 Cases.

Since the commencement of these Chapter 11 Cases, the appointment of an intervenor in Nicaragua over Mercapital de Nicaragua, S.A. and CISA, led to a rash of resignations from Semulosa, Transplanta, and Mercafe Trading. These resignations triggered the obligation for the applicable non-Debtor employers to pay statutorily-required amounts under Nicaraguan law with respect to severance obligations, PTO, and the employee's pro-rata share of the thirteen month payment required by statute.

The Debtors requested, and the Court authorized the Debtors, to effectuate certain intercompany transfers of funds from the Debtors to non-Debtor affiliates for the purpose of (i) paying employee compensation, employee benefits, and termination-related payments to non-Debtor employees that arise in the ordinary course, and (ii) paying employer taxes owed to certain taxing authorities. The Debtors have also made significant cost saving changes by rationalizing overhead and operating costs to continue the Debtors' liquidation.

3.    *Claims*

A summary of the claims is as follows:

| Total Value of Claims Filed | $2,906,006,290 |
|---|---|
| Total Number of Claims Filed | 168 |
| Estimated Value of General Unsecured Claims | TBD |
| Projected Claims Pool | TBD |

This claims pool projection is only an estimate. This estimate and any projected recoveries in this Disclosure Statement is a preliminary estimate based on the filed Claims. Upon the completion of further analyses and any Claims litigation, the total amount of the Claims pool may differ from the Debtors' estimates, and such difference could be material.

**K.    Other Matters Addressed During the Chapter 11 Cases**

In addition to the first day relief sought in the Chapter 11 Cases, the Debtors have sought authority with respect to matters designed to assist in the administration of the Chapter 11 Cases, maximize the value of the Debtors' Estates, and facilitate the wind-down of the Debtors'

- 37 -

operations. Set forth below is a brief synopsis of certain of the principal motions the Debtors have filed during the pendency of the Chapter 11 Cases and ongoing and resolved disputes concerning the Debtors.

**1.**      *Claims Process*

     **a.**      **Schedules of Assets and Liabilities and Statements of Financial Affairs**

         The Debtors timely filed their Schedules of Assets and Liabilities and Statements of Financial Affairs on January 13, 2024 (the "**Schedules and Statements**"). Among other things, the Schedules and Statements set forth the Claims of known Creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

     **b.**      **Bar Dates**

         On April 3, 2024, pursuant to the *Order Establishing Deadlines for Filing Proofs of Claim Against Debtors and Approving Form and Manner of Notice Thereof* [Docket No. 318], the deadline for all creditors to file a proof of claim was fixed as May 10, 2024 at 5:00 p.m. (prevailing Eastern time) (the "**Bar Date**"), and the deadline for Governmental Units to file a proof of claim was fixed as June 3, 2024 at 5:00 p.m. (prevailing Eastern time) (the "**Governmental Unit Bar Date**").

**2.**      *Sale Transactions*

         On April 9, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving the Stock Purchase Agreement By and Among COCFO Ltd., Mercon B.V. and Agro International Holding B.V., (II) Authorizing the Private Sale of the Equity Interests of Mercafe Vietnam Ltd., and (III) Granting Related Relief* [Docket No. 321] (the "**Vietnam Sale Motion**"). A hearing to consider the Vietnam Sale Motion took place on May 8, 2024. On May 10, 2024, the Court entered an order granting the Vietnam Sale [Docket No. 426].

         The Debtors identified a buyer for their Specialty business, and entered into an asset purchase agreement to complete the sale of that business. On May 2, 2024, the Debtors filed a motion [Docket No. 381] (the "**Specialty Sale Motion**"), seeking entry of an order (a) authorizing and approving the Asset Purchase Agreement, by and among StoneX Commodity Solutions LLC, a Delaware limited liability company, and Mercon Coffee Corporation, a New York corporation. A hearing to consider the Specialty Sale Motion is scheduled to take place on May 29, 2024.

**3.**      *The Protocol and New Protocol*

         On January 10, 2024, the Bankruptcy Court entered its *Order Establishing, Approving and Implementing the Protocol for Cooperation and Direct Communication with Foreign Courts* [Docket No. 105], approving that certain Protocol pursuant to the Judicial Insolvency Network Guidelines and Modalities, which then was submitted to the Dutch Court for approval in the Dutch WHOA Proceeding. For technical reasons the Dutch Court initially rejected

the Protocol, and thereafter approved a modified version presented to it as the New Protocol on April 2, 2024.

As a result of this activity, a process has been established to provide for court-to-court communication between the Bankruptcy Court and Dutch Court, which communication may include one or more joint hearings on confirmation of or to address issues concerning this Chapter 11 Plan and the Dutch WHOA Plan. To date, no Protocol has been presented to the Brazilian court for approval in the Brazil ancillary proceeding.

### L.    Litigation Claims of the Debtors and the Estates

The Plan provides for the creation of the Liquidating Trust for, *inter alia*, preservation, investigation, retention and pursuit of the Causes of Action of the Debtors and their Estates, including Avoidance Actions, and for the Distribution of any recoveries on such Causes of Action to Holders of Allowed Claims by the Liquidating Trustee pursuant to the Plan and the Liquidating Trust Agreement. As set forth below and in the Plan, the right of the Liquidating Trustee to bring all Causes of Action against any party, including those that may be listed in the Plan Supplement, is expressly and entirely preserved and retained.

## VI.    OVERVIEW OF THE PLAN

THIS SECTION AND <u>SECTION VII</u> PROVIDE A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN (WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT) AND THE EXHIBITS ATTACHED TO THE PLAN.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS, THE LIQUIDATING TRUST, AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE CONFIRMATION ORDER OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN, THE CONFIRMATION ORDER AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

### A.    Proposed Timeline of Events Related to the Plan

The following is the anticipated schedule for the Plan.[5]

| Event | Date / Deadline |
|---|---|
| Hearing to Consider Approval of the Disclosure Statement | May 14 and 16, 2024 |
| Voting Record Date | May 10, 2024 |

---

[5] The dates contained in this section are anticipated dates and are subject to the Court's approval and availability.

| Event | Date / Deadline |
|---|---|
| Entry of Disclosure Statement Order | May 23, 2024 |
| Solicitation Commencement Date | Three business days after entry of Disclosure Statement Order approving the Disclosure Statement (or as soon as reasonably practicable thereafter) |
| Plan Supplement Deadline | 5 business days before the Voting Deadline |
| Claims Estimation Motion Deadline | June 6, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Deadline to file the Confirmation Brief and Supporting Evidence | June 12, 2024, at 4:30 p.m. |
| Plan Objection Deadline | June 20, 2024 at 4:30 p.m. (prevailing Eastern Time) |
| Voting Deadline | June 20, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Voting Tabulations Affidavit | June 24, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Deadline to file Omnibus Reply to Plan Objections | June 22, 2024, at 4:30 p.m. (prevailing Eastern Time) |
| Confirmation Hearing | June 28, 2024, at 11:00 a.m. (prevailing Eastern Time), subject to the Court's availability |
| Proposed Entry of order confirming the Plan | No later than June 30, 2024 |
| Proposed Effective Date of the Plan | No later than July 6, 2024 (subject to all conditions to effectiveness being satisfied or waived pursuant to the Plan) |

## VII.    DETAILED SUMMARY OF THE PLAN OF LIQUIDATION

### A.    Overall Structure of the Plan

The consummation of a plan is the principal objective of a chapter 11 case. A plan of reorganization or liquidation sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of liquidation by the bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or equity security holder in, the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan. Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes for such debt the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

The terms of the Plan in these Chapter 11 Cases are based upon, among other things, the Debtors' assessment of their ability to achieve the goals of their plan and make the Distributions contemplated under the Plan. In framing certain features of the Plan applicable to Debtor Mercon

B.V., the Debtors also have had to consider and conform the Plan to certain provisions of Dutch Restructuring Law that govern the terms and requirements for approval of the Dutch WHOA Plan, which is offered in conjunction with this Plan. In accordance with Bankruptcy Code Section 1123(b)(6), the Debtors believe that the inclusion of those terms and provisions is appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

Under the Plan, Claims against and Equity Interests in the Debtors are divided into Classes according to their relative seniority and other criteria.

If the Plan is confirmed by the Bankruptcy Court and consummated, the Debtors or the Liquidating Trust will distribute Cash and other property in respect of certain Classes of Claims as provided in the Plan. The Classes of Claims against and Equity Interests in the Debtors created under the Plan, the treatment of those Classes under the Plan, and the other property to be distributed under the Plan, are described below.

## B.    Classification and Treatment of Claims and Equity Interests

Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies under the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies under the description of that different Class. A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### 1.    *Formation of Debtor Groups for Convenience Only*

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as explicitly provided in the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

### 2.    *Treatment of Unclassified Claims Under the Plan*

#### a.    Administrative Claims

All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; (ii) Administrative Claims that have been Allowed on or before the Effective Date; and (iii) 503(b)(9) Claims must be in writing and filed with the Bankruptcy Court and served on the Debtors, the Creditors' Committee, Rabobank, the Liquidating Trustee, and the U.S. Trustee so as to be received by 4:30 p.m. (prevailing Eastern Time) on or before the Administrative Claims Bar Date.

Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date or agrees with the Debtors or the Liquidating Trustee, as applicable, to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, or (iv) the date on which such Holder of an Allowed Administrative Claim may agree with either the Debtors or the Liquidating Trustee.

**Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any trust created under or in connection with the Plan, or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date.**

### b.      Professional Fee Claims

To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such good faith estimate to the Debtors, the Creditors' Committee and Rabobank no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash from their operating account equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow Account in any way. The Professional Fee Escrow Account (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtors or the Liquidating Trust and (y) shall be held in trust for Professionals; provided that any amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidating Trust as Prepetition First Lien Collateral.

Allowed Professional Fee Claims shall be paid in Cash to such Professionals from the funds held in the Professional Fee Escrow Account when such Claims are

Allowed by a Final Order of the Bankruptcy Court; provided that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow Account. Payment of Professional Fee Claims out of the Secured Parties' cash collateral for services provided (and expenses incurred in relation thereto) during the Chapter 11 Cases shall be limited to the extent authorized by the Final Cash Collateral Order or other order of the Bankruptcy Court and for the avoidance of doubt shall not come from the Convenience Claim Pool, the Dutch Law SME Claim Pool, the Initial Litigation Funding or the Initial Non-Litigation Funding.

### c.    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.

### d.    U.S. Trustee Fee Claims

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. All monthly reports due before the Effective Date shall be Filed by the Debtors on the Effective Date. The U.S. Trustee shall not be required to File any Administrative Claim in the Chapter 11 Case and shall not be treated as providing any release under the Plan in connection therewith.

### 3.    *Classes of Claims and Interests*

### (a)    *Prepetition First Lien Claims (collectively, "Class 1 Claims")*

Classification: Class 1 Claims consist of all Prepetition First Lien Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, its Pro Rata Share of the assets transferred to the Liquidating Trust that prior to the Petition Date were, or pursuant to an order of the Bankruptcy Court became, subject to Rabobank's Lien (including, but not limited to, inventory, accounts receivable, and certain sale proceeds) or the proceeds thereof, in the amount of such Allowed Prepetition First Lien Claim without interest or premium on or as soon as reasonably practicable following the Effective Date. On or after the Effective Date, and prior to or simultaneously with the Debtors' transfer to the Liquidating Trust of the Liquidating Trust Assets, any and all Cash in the Debtors' possession that comprises the Secured Parties' cash collateral that is not necessary to (i) establish reserves, including but not limited to the Professional Fee Escrow Account, (ii) fund other amounts required to be transferred to the Liquidating Trust or (iii) make Distributions under this Plan shall be distributed to Rabobank, as agent under the Prepetition First Lien Credit Agreement, for distribution to the Secured Parties

pursuant to the Prepetition First Lien Credit Agreement. To the extent any Allowed Prepetition First Lien Claim is not paid in full in Cash on or after the Effective Date, the remaining portion of such Allowed Prepetition First Lien Claim shall be treated for all purposes under the Plan as an Allowed Prepetition First Lien Deficiency Claim in accordance with Class 4A hereof.

Voting: Class 1 Claims are Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as applicable to the Dutch WHOA Proceeding, Holders of Class 1 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(b)      *Other Secured Claims (collectively, "Class 2 Claims")***

Classification: Class 2 Claims consist of all Other Secured Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee. Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

Voting: Class 2 Claims are Unimpaired by the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law as made applicable to the Dutch WHOA Proceeding, Holders of Class 2 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(c)      *FMO Claims (collectively, "Class 2A Claims")***

Classification: Class 2A Claims consist of all FMO Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 2A Claim shall receive, on account of such Claim, Class 2A Trust Interests on or as soon as reasonably practicable following the later of: (a) the Effective Date, and (b) such other date as may be agreed upon between FMO and the Debtors or the Liquidating Trustee and contemporaneous with the distribution of Class 2A Trust Interests to FMO, all of the Debtors' rights, title and interest in the FMO Collateral shall be transferred to the Liquidating Trust; provided that, FMO may elect in writing prior to the Effective Date, to instead receive an assignment of all of the Debtors' rights, title and interest in the FMO Collateral to FMO or another party as designated in writing by FMO.

The Debtors or the Liquidating Trustee, as applicable, may and shall, as soon as reasonably practicable and at FMO's sole expense, take such actions required under the relevant foreign law to achieve the assignment of the Debtors' rights, title and interest in the FMO Collateral to the Liquidating Trust or FMO, as applicable, which shall include obtaining all relevant approvals and

satisfying any and all perfection requirements under the relevant foreign law, and no Holders of Claims or Equity Interests may object to or frustrate such actions.

To the extent the FMO Collateral is transferred to the Liquidating Trust, FMO shall retain a Lien on such collateral or the proceeds of such collateral (to the extent that such collateral is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date, although FMO shall have no claims against the Liquidating Trustee or any other Liquidating Trust Assets as set forth in the Liquidating Trust Agreement, until such time as FMO (i) has been paid Cash equal to the amount of its Allowed Class 2A Claim, (ii) has received a transfer of the FMO Collateral from the Liquidating Trust, or (iii) has been afforded such other treatment as to which FMO and the Liquidating Trustee shall have agreed upon in writing.

To the extent any Allowed FMO Claim is not paid in full in Cash on or after the Effective Date, the remaining portion of such Allowed FMO Claim shall be treated under the Plan as an Allowed FMO Deficiency Claim in accordance with Class 4A hereof; provided that the FMO Collateral shall be deemed to have a value of zero as of the Effective Date if FMO elects to receive Class 2A Trust Interests and the underlying FMO Collateral is not in the Debtors' possession or control as of the Confirmation Date; provided further that notwithstanding the value of the FMO Collateral, whether deemed zero or otherwise, FMO shall still receive Class 2A Interests based on the amount of its Allowed FMO Claim in the event that the Debtors' right, title and interest is transferred to the Liquidating Trust.

Voting: Class 2A Claims are Impaired under the Plan. Holders of Allowed Class 2A Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 2A Claims that hold Claims against Mercon B.V. are entitled to vote on the Dutch WHOA Plan.

**(d)** ***Other Priority Claims (collectively, "Class 3 Claims")***

Classification: Class 3 Claims consist of all Other Priority Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee, as applicable.

Voting: Class 3 Claims are Unimpaired by the Plan. Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan; provided, however, that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 3 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(e)** ***General Unsecured Claims (collectively, "Class 4A Claims").***

Classification: Class 4A consists of all General Unsecured Claims against the Debtors.

Treatment: Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4A Claim (other than a Holder of an Allowed Prepetition First Lien Deficiency Claim) shall receive a Pro Rata Share of Class B Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee. Holders of Allowed Prepetition First Lien Deficiency Claims shall receive a Pro Rata Share of Class A Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee. On a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement.

Voting: Class 4A Claims are Impaired under the Plan. Holders of Class 4A Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 4A Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(f)     *Dutch Law SME Claims (collectively, "Class 4B Claims")***

Classification: Class 4B consists of all Dutch Law SME Claims, other than those Claims that are Convenience Claims or whose Holders make the Convenience Class Election.

Treatment: In accordance with Dutch Restructuring Law and as required to obtain confirmation of the Dutch WHOA Plan by the Dutch Court, Holders of Allowed Dutch Law SME Claims will receive, on or within 30 days from the Effective Date of the Plan, cash in the amount of 20% of their Allowed Claims along with Class B Trust Interests for the balance of their Claims; *provided, however,* that no Distribution shall be made from the Liquidating Trust in respect of those Class B Trust Interests until such time as the Holders of Allowed General Unsecured Claims in Class 4A of the Plan shall have received Distributions in respect of their Class B Trust Interests totaling 20% of the amount of their Allowed Claims.

Voting: Holders of Class 4B Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 4B Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(g)     *Convenience Claims (collectively, "Class 5 Claims")***

Classification: Class 5 consists of all Convenience Claims.

Treatment: Except to the extent that a Holder of an Allowed Class 5 Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 5 Claim is Allowed on the Effective Date or (ii) the date on which such Class 5 Claim becomes an Allowed Class 5 Claim, each Holder of an Allowed Class 5 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 5 Claim such Holder's Pro Rata Share of the Convenience Claims Pool.

Voting: Class 5 Claims are Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 5 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(h)** ***Intercompany Claims (collectively, "Class 6 Claims")***

Classification: Class 6 Claims consist of all Intercompany Claims against the Debtors.

Treatment: Holders of Class 6 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting: Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however,* that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 6 Claims against Mercon B.V. may be entitled to vote on the WHOA Plan.

**(i)** ***Subordinated Claims (collectively, "Class 7 Claims")***

Classification: Class 7 Claims consist of all Subordinated Claims against the Debtors.

Treatment: Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting: Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however,* that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 7 Claims that hold Subordinated Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

**(j)** ***Equity Interests (collectively, "Class 8 Equity Interests")***

Classification: Class 8 Equity Interests consist of all Equity Interests in the Debtors.

Treatment: On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests; *provided, however*, that in accordance with Dutch law the Equity Interests in Debtor Mercon B.V. shall not be cancelled until such time as Mercon B.V. is formally dissolved under Dutch law.

Voting: Class 8 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Class 8 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 8 Equity Interests that hold Equity Interests in Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

### C.    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in Section 3.07 of the Plan, nothing herein shall affect the Debtors' or the Liquidating Trustee' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

Notwithstanding anything to the contrary in Section 3.07, in the event the Dutch WHOA Plan is not sanctioned by the Dutch Court, or Mercon B.V. does not seek approval of the Dutch WHOA Plan from the Dutch Court, and Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor) shall not be entitled to any distribution from the Dutch Law SME Claim Pool or any Pro Rata Share of the assets transferred to the Liquidating Trust beyond what such Holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V. and as such will become Liquidating Trust Beneficiaries with Class C Trust Interests, unless the Liquidating Trustee and such Holder agree otherwise. This applies only in respect of Claims against Mercon B.V. and not against any other Debtor, and does not affect the rights of any Holders of Claims in respect of any other Debtor. For the avoidance of doubt, the treatment of Claims against Debtors other than Mercon B.V. is not being modified by this Section 3.08.

### D.    Settlements and Compromises

#### 1.    *Compromise and Settlement of Claims*

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. All Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

#### 2.    *Orders in Aid of Compromise and Settlement*

### E.    Orders in Aid of Compromise and Settlement

Pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and other applicable law, the Liquidating Trustee may request, and the Bankruptcy Court retains the authority for, the entry of a bar order or channeling injunction in connection with the compromise and settlement of any Cause of Action relating to the Debtors or the Liquidating Trust.

F.    **Means for Implementation of the Plan**

1.    *Liquidating Trust*

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to receive post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer – and will be authorized to execute, deliver, receive and exchange such other and further steps and documents under the applicable law as may be necessary to transfer –to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets free and clear of all Liens, Claims and encumbrances except as otherwise set forth in this Plan, and all such Liquidating Trust Assets shall be deemed to vest in the Liquidating Trust pursuant to Section 1141(b) of the Bankruptcy Code. The Liquidating Trust shall have such rights, powers, duties and obligations as set forth in Article IX of the Plan, other provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the liquidating purpose of the Liquidating Trust. To the extent the transfer of Liquidating Trust Assets to the Liquidating Trust under foreign law is incompatible or invalid pursuant to such foreign law, any of the Debtors or the Liquidating Trustee may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.01 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan; provided however, that as to FMO Collateral transferred to the Liquidating Trust such transfer shall be in compliance with Section 3.07(c) of the Plan.

2.    *Liquidating Trust Board*

On the Effective Date, a five (5) member board shall be established pursuant to this Plan to consult with the Liquidating Trustee in the implementation of the Plan (the "**Liquidating Trust Board**"). As set forth in the Liquidating Trust Agreement, the Liquidating Trust Board shall have: (i) two members selected by the holders of Prepetition First Lien Claims; (ii) two members selected by representatives of the Creditors' Committee; and (iii) one member mutually selected by the holders of Prepetition First Lien Claims and the Creditors' Committee. The Liquidating Trust Board shall have access to and the right to consult with the Liquidating Trustee in connection with the implementation of the Plan and administration of the Liquidating Trust on and after the Effective Date. Governance rights as to all assets are set forth in detail in the Liquidating Trust Agreement. Notwithstanding the foregoing or anything else to the contrary herein, the two members of the Liquidating Trust Board selected by the holders of Class A Trust Interests shall have sole governance rights with respect to any matters relating to Prepetition First Lien Collateral.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Board may remove the Liquidating Trustee for, among other things, Cause (as defined in the Liquidating Trust Agreement). Upon the resignation, removal, or inability of the Liquidating

Trustee to serve, then the Liquidating Trust Board shall appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court.

### 3.    *Funding for the Plan*

The Plan shall be funded from the Debtors' Cash on hand and other Liquidating Trust Assets.

### 4.    *Funding of Liquidating Trust and Disputed Claims Reserves*

(a)    On or prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall cause to be funded from Cash on hand the Disputed Claims Reserve. After the Effective Date, the Liquidating Trustee may fund other reserves, as he or she deems necessary or appropriate; *provided, however*, that FMO Collateral (and any proceeds thereof) may only be used to fund such other reserves to the extent that FMO Collateral (or any proceeds thereof) are paid to the Liquidating Trust pursuant to Section 6.05(c) or Section 12.09 of the Plan.

(b)    On or prior to the Effective Date, $500,000 of the Secured Parties' existing cash collateral in the possession of the Debtors shall be earmarked as the Initial Litigation Funding and used to fund initial administrative costs of the pursuit of Claims and Causes of Action by the Liquidating Trust and will be the first amounts deposited into the Litigation Funding Reserve.

(c)    On or prior to the Effective Date, $500,000 of the Secured Parties' existing cash collateral in the possession of the Debtors shall be earmarked as the Initial Non-Litigation Funding and used to fund initial administrative costs of the Liquidating Trust's non-litigation activities.

(d)    Other than the Initial Litigation Funding and Initial Non-Litigation Funding, the Secured Parties and holders of Class A Trust Interests shall have no further obligation to provide funding to the Liquidating Trust from cash collateral or otherwise.

### G.    **Allocation of Litigation Proceeds**

*Litigation Proceeds will be Distributed as follows:*

(i)    First, the Litigation Proceeds will be deposited into the Litigation Funding Reserve until the amount in the Litigation Funding Reserve is restored to $500,000, <u>provided that</u> no more than 10% of the Litigation Proceeds received from any one recovery will be deposited into the Litigation Funding Reserve. The amount in the Litigation Funding Reserve at any one time shall not be greater than $500,000;

(ii)    Until the Initial Litigation Funding has been repaid to the Secured Parties in full, after the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 70% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 30% of any remaining Litigation Proceeds shall be allocated to holders of Class B Trust Interests and, when applicable, Class C Trust Interests.

(iii)    After the Initial Litigation Funding has been repaid to the holders of Class A Trust Interests in full, 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 50% of any remaining Litigation Proceeds shall be allocated to the

holders of Class B and, when applicable, Class C Trust Interests. The Creditors' Committee believes that given the size of the Prepetition First Lien Deficiency Claim (which is estimated to be greater than 50% of the total estimated amount of Allowed General Unsecured Claims) and the subordination of certain General Unsecured Claims to the Claims held by the Secured Parties, the Plan's 50/50 split with respect to Distributions of Litigation Proceeds between Claims held by the Secured Parties and General Unsecured Claims with respect to Distributions of Litigation Proceeds is fair and reasonable.

*(iv)*      To the extent any amounts of the Litigation Funding Reserve remain after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests and the distribution of all remaining assets of the Trust, such amounts shall be distributed 50% to the holders of Class A Trust Interests and 50% to the holders of Class B Trust Interests and, when applicable, Class C Trust Interests.

*(v)*      In the event a Holder of an Allowed Class 2A Claim elects to receive Class 2A Trust Interests pursuant to Section 3.07(c), such Holder will receive 100% of Litigation Proceeds that constitute FMO Collateral on account of such Allowed Class 2A Claim, but not exclusive of any other distributions such Holder may be entitled to on account of such Allowed Class 2A Claim or any other Allowed Claim, in each case, subject to Section 6.05(c) of the Plan.

*(vi)*      Notwithstanding the other provisions of this Article VI, as a result of the Secured Parties' funding of the Convenience Claim Pool, holders of Class A Trust Interests shall be subrogated to the Claims of holders of Allowed Class 5 Claims that receive distributions out of the Convenience Claim Pool to the extent of such distributions (up to the amount of $1,000,000 less the amount transferred from the Convenience Claim Pool to the Dutch Law SME Claim Pool), such that holders of Class A Trust Interests shall participate in distributions to be made pursuant to Section 6.05(a)(ii)-(iv) and Section 6.05(b)(ii) of the Plan to holders of Class B Trust Interests and Class C Trust Interests as if the holders of Allowed Class 5 Claims had received Class B Trust Interests rather than distributions out of the Convenience Claim Pool.

### H.      Allocation of Proceeds of Non-Litigation Liquidating Trust Assets

(i)      Proceeds of Prepetition First Lien Collateral shall be allocated to the holders of Class A Trust Interests until the claims of such holders have been satisfied in full.

(ii)      Proceeds (other than Litigation Proceeds) of Liquidating Trust Assets that do not constitute Prepetition First Lien Collateral shall be used to repay the Initial Non-Litigation Funding to the holders of Class A Trust Interests. Once the Initial Non-Litigation Funding has been repaid to the holders of Class A Trust Interests, all holders of Liquidating Trust Interests will receive a Pro Rata Share of proceeds (other than Litigation Proceeds) of Liquidating Trust Assets that do not constitute Prepetition First Lien Collateral.

(iii)      In the event a Holder of an Allowed Class 2A Claim elects to receive Class 2A Trust Interests pursuant to Section 3.07(c) of the Plan, proceeds of FMO Collateral shall be allocated to the holders of Class 2A Trust Interests until the claims of such holders have been satisfied in full, subject to Section 6.05(c) of the Plan.

I.      **Nicaraguan Assets**

The Liquidating Trust Agreement contains provisions regarding allocation of (i) proceeds for any monetization of the Debtors' assets (including real property) and inventory located in Nicaragua, including from applicable insurance policies or the proceeds thereof, and (ii) Litigation Proceeds from Causes of Action arising out of the Debtors' assets (including real property) and inventory located in Nicaragua, to ensure that the rights of parties with Liens on assets in Nicaragua, including, without limitation, the Secured Parties and FMO, are preserved. For the avoidance of doubt, to the extent that the Liquidating Trustee liquidates any FMO Collateral with the written consent of FMO, any reasonable and documented fees and expenses incurred by the Liquidating Trustee in connection therewith shall be surcharged against any recoveries on such FMO Collateral and the Liquidating Trustee shall be authorized to allocate those surcharged proceeds to repayment of the Initial Litigation Funding and Initial Non-Litigation Funding, as applicable, or otherwise as provided in the Liquidating Trust Agreement.

J.      **Corporate Action**

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, the Liquidating Trustee or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates or the Liquidating Trustee. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as appropriate, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by Section 6.06 of the Plan as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

K.      **Directors, Officers and Managers**

As of the Effective Date, each of the Debtors' existing officers, directors, and managers with the exception of Mercon B.V.'s managing director shall be deemed to be dismissed (unless previously dismissed or terminated), in their respective capacities before the Effective Date, in each case without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers, directors or managers of such Debtor and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). Thereafter, the Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidating Trust Assets. To the extent the dismissal of

such Debtor's officers, directors or managers by virtue of (the Confirmation of) this Plan is incompatible or invalid pursuant to the relevant foreign corporate law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law at the sole expense of the Liquidating Trust to achieve the same result as contemplated by Section 6.07 of the Plan as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

## L.    Debtors' Professionals

On the Effective Date, the Professionals retained by the Debtors shall be deemed to have completed their services as Professionals to the Debtors, but they shall be able to File final applications for reasonable compensation and reimbursement of expenses through the Effective Date as provided for in this Plan and file objections to other final applications filed by any Professional. Among other things, the Liquidating Trust may retain its own Professionals to appear in the Dutch WHOA Proceeding and the Brazilian Ancillary Case in accordance with the Liquidating Trust Agreement. The Professionals to the Debtors may be retained by the Liquidating Trustee by mutual agreement.

## M.    Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court order, approvals, authorization, or consents, unless such an order is expressly required pursuant to the Plan.

## N.    Privilege

The Transferred Privileges shall be transferred, assigned, and delivered to the Liquidating Trust, at the sole expense of the Liquidating Trust, including but not limited to reasonable attorneys' fees and costs incurred in connection with such transfers or request for transfer of documents or communications containing privileged material, without waiver, limitation, or release, and shall vest with the Liquidating Trust on the Effective Date and be jointly held by the Debtors and the Liquidating Trust on and after the Effective Date; *provided, however*, that notwithstanding the foregoing or anything in this Plan to the contrary, the Transferred Privileges do not and shall not include any privileges relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction. Notwithstanding the establishment of the Liquidating Trust or the appointment of the Liquidating Trustee, the Liquidating Trustee on behalf of the Liquidating Trust will share and be entitled to use all privileges of the Debtors. No such privilege will be deemed waived by the disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to the attorney-client privilege, work product privilege or other immunities, or protections from disclosure held by the Debtors. The Debtors' privileges will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. For the avoidance of

doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer, assignment and delivery and sharing and use of the Transferred Privileges as provided herein do not impair or waive any privilege. Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed a waiver of the work product privilege by any party who may be entitled to assert such privilege.

**O.      Exemption from Certain Taxes and Fees**

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**P.      Preservation, Pursuit and Resolution of Liquidating Trust Actions**

Other than Causes of Action and Avoidance Actions against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, including but not limited to the Final Cash Collateral Order, the Debtors and their Estates reserve and do not waive, any and all Causes of Action and Avoidance Actions, including any actions specifically enumerated in the Disclosure Statement or the Plan Supplement to the fullest extent permitted by the law.

On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors and the Estates may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement. In accordance with Bankruptcy Code Section 1123(b)(3), the Liquidating Trustee shall also serve as a representative of the Estates with respect to any and all Liquidating Trust Actions that were Estate Assets and, subject to the Liquidating Trust Agreement, shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidating Trust Actions in any court or other tribunal.

The Liquidating Trust shall retain Liquidating Trust Actions notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Liquidating Trust Actions that a Debtor may hold against any Entity shall vest in the Liquidating

Trust, except as otherwise expressly provided in the Plan or as expressly released during the pendency of the Debtors' Chapter 11 Cases.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action or Avoidance Action against them as any indication that the Debtors, the Liquidating Trustee will not pursue any and all available Causes of Action or Avoidance Actions against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or Avoidance Actions upon, after, or as a consequence of the Confirmation or Consummation. The Debtors or the Liquidating Trustee, as applicable, reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates unless as otherwise provided in the Final Cash Collateral Order.

**Q.    The Surviving Debtor(s) Pending the Closing of the Cases**

Each Surviving Debtor shall continue in existence after the Effective Date as a post-Effective Date entity. Without the need for any corporate action and without the need for any corporate or limited liability company filings, (a) all Equity Interests of the Surviving Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, new membership interests of each Surviving Debtor, representing all of the issued and outstanding membership interests of each such Surviving Debtor, shall be issued to the Liquidating Trust, which new membership interests so issued shall be deemed to have been offered and sold to the Liquidating Trust in reliance on the exemption from registration under the Securities Act of 1933 afforded by section 4(a)(2) thereof. Notwithstanding the foregoing, the Surviving Debtors and/or Liquidating Trustee as appropriate may take such other and further actions as may be necessary to cancel, extinguish and/or transfer such Equity Interests and membership interests as may be required under applicable foreign laws, and to wind up and dissolve the Surviving Debtors under such laws.

On and after the Effective Date, each Surviving Debtor will be a wholly-owned subsidiary of the Liquidating Trust, and the Liquidating Trust may expend with respect to such Surviving Debtor such amounts as the Liquidating Trust determines is appropriate, in its discretion. The sole manager of each Surviving Debtor shall be the Liquidating Trustee whose rights and powers with respect to operations, employment, compensation, indemnity and exculpation as to each Surviving Debtor shall, to the greatest extent possible, be the same as the Liquidating Trustee's rights and powers in connection with the Liquidating Trust. The Liquidating Trustee may take such steps as appropriate to maintain the good standing of the applicable Surviving Debtor. Until a Surviving Debtor is dissolved, all cash or property received by the Surviving Debtor, net of any expenses of the Surviving Debtor incurred after the Effective Date, shall be transferred to the Liquidating Trust. Each Surviving Debtor (a) shall have the Liquidating Trust as its sole member and the Liquidating Trust shall be deemed to be admitted as a member of each Surviving Debtor on the Effective Date, (b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the Liquidating Trust as set forth in Section 9.02 of the Plan, and (d) shall be subject to the same limitations imposed on the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement. To the extent the provisions of this Plan and the Confirmation Order (automatically) replacing any corporate action required by the Debtors under foreign law are incompatible or invalid pursuant to

such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by Section 6.13 of the Plan as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

R.    **Closing of the Debtors' Cases**

The Confirmation Order shall authorize, pursuant to Section 350 of the Bankruptcy Code, that on the Effective Date and except as set forth herein, the Dissolving Debtors' Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court. For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Liquidating Trust Actions that the Liquidating Trust may assert in accordance with the Plan. Notwithstanding anything to the contrary in the Bankruptcy Rules, when all Liquidating Trust Assets have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the cases of any Surviving Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.    *Cancellation of Existing Agreements and Existing Stock and/or Membership Interests*

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests shall be canceled, and shall be of no further force as to the Debtors, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by Section 6.15 of this Plan as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

2.    *Operations of the Debtors Between the Confirmation Date and the Effective Date*

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, with authority to sell assets of the Debtors in accordance with Section 363 of the Bankruptcy Code or otherwise, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

3.    *Dissolution of Debtors*

On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the

Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of the Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by Section 6.17 of the Plan as soon as reasonably practicable and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

### 4.  *Dissolution of the Creditors' Committee*

On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Creditors' Committee shall be deemed to have completed their services as Professionals to the Creditors' Committee. As provided for in this Plan, the Creditors' Committee and its Professionals shall be able to File final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section 6.18, the Creditors' Committee shall have standing and a right to be heard following the dissolution of the Creditors' Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. The Professionals to the Creditors' Committee may be retained by the Liquidating Trustee.

### S.  **Treatment of Executory Contracts and Unexpired Leases**

### 1.  *Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or the Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan.

Each Executory Contract and Unexpired Lease in relation to Mercon B.V. shall only be deemed automatically rejected to the extent that and under the condition precedent that as part of the Dutch WHOA Proceeding, the Dutch Court provides consent to Mercon B.V. to terminate such Executory Contract or Unexpired Lease (as provided for under Dutch law).

### 2.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure under each Executory Contract and Unexpired Lease, if any, to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (a) the amount of the Cure, (b) the ability of the Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the Cure required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court. In the absence of such consent, the Liquidating Trustee may seek approval of any such settlement from the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption pursuant to the Plan and proposed Cure to be sent to applicable counterparties, the Creditors' Committee and Rabobank. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than seven (7) days after service of notice of the Debtors' proposed assumption and associated Cure. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 3.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Claims Agent and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (c) participate in any Distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

4.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.    *Indemnification Obligations*

Indemnification Obligations owed to any Professionals to the extent that such Indemnification Obligations relate to the period after the Petition Date, excluding claims resulting from gross negligence, fraud, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort, and breach of their contracts with the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of the Plan.

6.    *Insurance Policies*

Each insurance policy, including the D&O Policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a

Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

### 7. *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

### T. Provisions Governing Distributions

### 1. *Calculation of Amounts to be Distributed*

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trust, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

### 2. *Rights and Powers of the Debtors and Liquidating Trustee*

All Distributions required to be made under the Plan on or before the Effective Date shall be made by the Debtors or thereafter by the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall have the right to object, allow, or otherwise resolve any Claim as provided herein and in the Liquidating Trust Agreement.

The Debtors and the Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of their duties except as ordered by the Bankruptcy Court. Additionally, in the event that the Debtors or Liquidating Trust, as applicable, is ordered to provide such a bond, insurance or surety, all costs and expenses of procuring any such bond, insurance or surety shall be paid with Cash from the Liquidating Trust Assets.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code, including, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including the right (subject to the provisions of the Plan and the Liquidating Trust Agreement) to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (b) sell or otherwise liquidate any of the Liquidating Trust Assets in accordance with Section 363 of the Bankruptcy Code or otherwise; (c) prosecute, settle, abandon or compromise any Claims or Liquidating Trust Actions; (d) make Distributions contemplated by

the Plan; (e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (g) employ and compensate professionals, including professionals previously retained by the Debtors and/or the Creditors' Committee, provided that any such employment and compensation shall comply with the procedures set forth in the Liquidating Trust Agreement and any such compensation shall be made only out of the Liquidating Trust Assets; and (h) file all federal, state and local tax returns if necessary.

The Liquidating Trustee shall assume any outstanding responsibility of the Debtors under the Plan.

The Liquidating Trustee shall have the full authority, subject to the provisions of the Plan and the Liquidating Trust Agreement, to take any steps necessary to administer the Plan, including the duty and obligation to liquidate, sell or otherwise dispose of Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Claims and Liquidating Trust Actions. For the avoidance of doubt, nothing within the Order Authorizing the Debtors to Establish Procedures for Settling Certain Claims shall apply to or otherwise bind the Liquidating Trustee.

From and after the Effective Date, and subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle any dispute relating to any Claims or any Liquidating Trust Actions, without any further approval by the Bankruptcy Court or any other Entity. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses (including reasonable attorneys' fees and expenses) incurred by the Liquidating Trustee, and expenses incurred by the Liquidating Trust Board, on or after the Effective Date shall be paid in Cash from the Liquidating Trust Assets.

### 3.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

#### a.    **Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Nothing in this Section 8.03 shall impair or limit the transferability of Liquidating Trust Interests in accordance with Section 9.12 of the Plan and the Liquidating Trust Agreement.

#### b.    **Delivery of Distributions in General**

##### 1.    *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Liquidating Trustee on the one hand, and the Holder of a Disputed Claim,

on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, an amount in Cash as would have been distributed to such Holder (on account of such Holder's Liquidating Trust Interests) on the Initial Distribution Date (plus any subsequent Distributions that would have been paid as of that date) if its Claim had been an Allowed Claim on the Effective Date. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

Upon a Disputed Claim becoming a Disallowed Claim in whole or in part, any Cash held in the Disputed Claims Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

### 2. *Distributions*

On and after the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall make the Distributions required to be made on account of Allowed Claims under the Plan.

The Liquidating Trustee, may make periodic Distributions of additional Cash to certain or all Liquidating Trust Beneficiaries at any time following the Initial Distribution Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the other terms of, the Plan, the Liquidating Trust Agreement and applicable law.

### c.    Minimum; *De Minimis* Distributions

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtors or the Liquidating Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $1,000,000, in which case such Distributions shall be deferred to the next Distribution Date; provided, however, that the foregoing minimum aggregate Distribution threshold shall not apply to Distributions from the Disputed Claim Reserve made on account of a Disputed Claim becoming an Allowed Claim in accordance with Section 8.03(b)(1) of the Plan, (ii) if the amount to be distributed to that Holder on the particular Distribution Date is less than $250.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to any such Holder is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

### d.    Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder; *provided*, *however*, that the Liquidating Trustee may deem such Distributions unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the Initial Distribution Date. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### e.    Manner of Payment Pursuant to the Plan

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

### 4.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee is authorized to require each Creditor and Liquidating Trust Beneficiary to provide the Liquidating Trustee with an executed an IRS Form W-9 or (if the payee is a foreign Entity) an executed IRS Form W-8 and any other forms or documents reasonably requested as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim or Liquidating Trust Beneficiary does not provide an appropriate IRS Form W-9 or (if the payee is a foreign Entity) an appropriate IRS Form W-8 or any other tax-related forms or documents reasonably requested by the Liquidating

Trustee within 90 days of written request, the Liquidating Trustee may deem said Creditor or Liquidating Trust Beneficiary to have forfeited their Distribution with no further notice required.

**5.    *Claims Paid or Payable by Third Parties***

**a.    Claims Paid by Third Parties; Recourse to Collateral**

The Liquidating Trustee shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without an objection to the Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidating Trustee, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**b.    Claims Payable by Insurance, Third Parties; Recourse to Collateral**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**c.    Applicability of Insurance Policies**

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policies.

**U.    The Liquidating Trust**

**1.    *Liquidating Trust Creation***

On the Effective Date, the Liquidating Trust shall be established and become effective. The Liquidating Trust Agreement shall (a) be in form and substance consistent in all respects with this Plan and (b) contain customary provisions for trust agreements utilized in

comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All relevant parties (including the Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

### 2. *Purpose of the Liquidating Trust*

The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

### 3. *Transfer of Assets to the Liquidating Trust*

The Debtors and the Liquidating Trustee shall establish the Liquidating Trust for the benefit of and on behalf of the Liquidating Trust Beneficiaries pursuant to the Liquidating Trust Agreement, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the provisions herein, notwithstanding any prohibition on assignment under non-bankruptcy law.

The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date, all Liquidating Trust Assets shall vest and be deemed to vest in the Liquidating Trust in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any Assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trustee, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors shall not transfer or be deemed to have transferred to the Liquidating Trust any claims or

Causes of Action (a) released pursuant to the Plan or (b) exculpated pursuant to Article XII of the Plan to the extent of any such exculpation.

To the extent the transfer, assignment and delivery of Liquidating Trust Assets to the Liquidating Trust under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors may, to the extent necessary to comply with the terms of the Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by  Section 9.03 of the Plan as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under the Plan.

### 4.   *Tax Treatment of the Liquidating Trust*

For all federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a Liquidating Trust under 26 C.F.R.§ 301.7701–4 and that the Liquidating Trust is owned by the Liquidating Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the Liquidating Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Liquidating Trust's duration. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to any Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671 4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative Liquidating Trust Interest.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trustee may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall send annually to each Liquidating Trust Beneficiaries who is the holder of an Allowed Claim a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instructing all such Liquidating Trust Beneficiaries to report such items on their Federal tax returns (and state tax returns if required by applicable law).

### 5.    *Distribution; Withholding*

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee shall make, or cause to be made, all Distributions under the Plan and the Liquidating Trust Agreement other than those Distributions made by the Debtors on or before the Effective Date.

The Liquidating Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Trustee's sole discretion, required by the Plan or Liquidating Trust Agreement, or applicable law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidating Trustee may require any Liquidating Trustee Beneficiary to furnish to the Liquidating Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9, IRS Form W8-BEN or similar tax form, and the Liquidating Trustee may condition any Distribution upon receipt of such identification number or executed document.

### 6.    *Insurance*

The Liquidating Trust shall maintain customary insurance coverage for the protection of Persons or Entities serving as administrators and overseers of the Liquidating Trust and directors and officers of any Surviving Debtor on and after the Effective Date and costs associated therewith shall come out of the Initial Non-Litigation Funding.

### 7.    *Liquidating Trustee Duties*

The powers and duties of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to make Distributions thereunder and wind down the business and affairs of the Debtors. The salient terms of the Liquidating Trustee's powers, rights and duties, shall be set forth in the Liquidating Trust Agreement.

### 8.    *Other Rights and Duties of the Liquidating Trustee*

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust under the Plan and Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy; and (b)

provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

The Liquidating Trustee shall be authorized to collect and liquidate all uncollected and unliquidated Liquidating Trust Assets, including the Liquidating Trust Actions and tax refunds. The Liquidating Trustee shall be authorized to accept Third-Party recoveries, and to make Distributions.

Any and all rights to conduct investigations with respect to Causes of Action, Avoidance Actions or claims not released by the Debtors shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

The Liquidating Trustee shall be entitled to reasonable compensation in an amount determined by the Liquidating Trust Board as set forth in the Liquidating Trust Agreement.

### 9. *Disputed Claims Reserve*

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve. The Liquidating Trustee may, in his or her reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as Disputed Claims are resolved, and such amounts may be distributed on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. For the purposes of Section 9.09 of the Plan, Disputed Claims may also include claims of creditors of Mercon B.V. that are entitled to payment under the Dutch WHOA Plan but that are not qualified as Allowed Claims under this Plan (e.g. claims of creditors that were not filed before the Claims Bar Date).

### 10. *Wind-Down*

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any Surviving Debtor and any non-Debtor Entity directly or indirectly owned or controlled by any of the Debtors. To the extent any such Entity is not necessary to carry out the purposes of the Plan or the Liquidating Trust Agreement, the Liquidating Trustee shall commence the wind down and dissolution of all such Entities as soon as practicable after the Effective Date.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) in the Liquidating Trustee's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (2) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors for all purposes shall be deemed to have withdrawn their

- 68 -

business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, shall be deemed to have cancelled pursuant to this Plan all Equity Interests, and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action and Avoidance Actions that the Liquidating Trustee may assert or substitute into as plaintiff in accordance with the Plan and the Liquidating Trust Agreement and notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims and as otherwise provided for in the Plan.

### 11.    *Post-Effective Date Reporting*

Beginning twenty (20) days after the first full quarter-end following the Effective Date and continuing thereafter so long as the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File but not serve a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee. Among other things, the report shall include a schedule of (a) the Liquidating Trust's receipts and disbursements, (b) all Liquidating Trust Assets held by the Liquidating Trust, and (c) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's quarterly report shall be provided to the Liquidating Trust Board upon Filing, and shall be posted on the Website.

### 12.    *Termination of the Liquidating Trust and Liquidating Trust Board*

The Liquidating Trustee and members of the Liquidating Trust Board shall be discharged and the Liquidating Trust and Liquidating Trust Board shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidating Trust Assets have been liquidated, (c) all duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Liquidating Trust Assets. The Liquidating Trustee may seek such an extension in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement.

### 13.    *Transfer of Liquidating Trust Interests*

Notwithstanding anything to the contrary in the Plan, Liquidating Trust Interests shall not be transferrable except upon death of the interest holder, by operation of law, or as permitted by the Liquidating Trust Agreement. Any purported transfer or assignment in violation of Section 9.13 of the Plan shall be null and void.

### 14.    *Termination of the Liquidating Trustee*

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

### 15.    *Exculpation; Indemnification*

The Liquidating Trust Indemnified Parties will be exculpated and indemnified by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement; <u>provided</u>, that the Liquidating Trust Agreement shall not include indemnification for gross negligence, willful misconduct or fraud and shall not include indemnification or exculpation for breach of contract claims.

### 16.    *Release of Liens*

Except as otherwise provided by the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, Liens, pledges or other security interests against the property of the Debtors' Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the applicable Estate. The Debtors and relevant holder of such security shall take all necessary steps under the applicable law to complete the release of Liens.

### 17.    *Subordination*

#### a.    **Preservation of Subordination Rights by Estates**

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

#### b.    **Waiver by Creditors of all Subordination Rights**

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have—whether arising under general principles of equitable subordination, Section 510(b) or (c) of the Bankruptcy Code, or otherwise—with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined.

V.     **Procedures for Resolving Contingent, Unliquidated, and Undisputed Claims and Interests**

1.     *Resolution of Disputed Claims*

a.     **Allowance of Claims and Equity Interests**

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

b.     **Prosecution of Objections to Claims or Equity Interests**

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, shall have the authority to File objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

Subject to the foregoing and the other provisions of the Plan, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement; and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

c.     **Claims Estimation**

Prior to the Effective Date the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim

that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Liquidating Trustee may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 2.    *Disallowance of Claims*

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Liquidating Trustee (or the Claims Agent at the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.    *Amendments*

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority, except as provided in Section 7.03 of this Plan.

### 4.    *No Post-Petition Interest*

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.

### W.    Retention of Jurisdiction

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with Section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(I)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(II)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(III)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(IV)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(V)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any litigation rights or the Plan whether Filed or commenced before or after the Confirmation Hearing;

(VI)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(VII)    hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(VIII)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(IX)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(X)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(XI)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(XII)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases (whether or not these Chapter 11 Cases have been closed);

(XIII)    except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(XIV)    hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(XV)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(XVI)    resolve any cases, controversies, suits, or disputes related to the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, any Surviving Debtor, and any Debtor, including to enter any orders resolving such cases, controversies, suits, or disputes and any attendant bar order or channeling injunction relating thereto; and

(XVII)    enter a final decree closing these Chapter 11 Cases.

## 1.    *Reserved Rights to Seek Bankruptcy Court Approval*

Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust, including the administration, distribution, or proposed sale of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidating Trust, as applicable.

## 2.    *Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction (as, for example, with respect to a matter solely affecting Debtor Mercon B.V. that is within the jurisdiction of the Dutch Court in the Dutch WHOA Proceeding) or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 11.01 of the Plan, the provisions of this Article XI shall

- 74 -

have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## X.    Settlement, Release, Injunctions and Exculpations

### 1.    *Compromise and Settlement of Claims, Equity Interests, and Controversies*

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and Bankruptcy Rule 9019, and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan shall, on the Effective Date, constitute a compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of such compromise and settlement and the Bankruptcy Court's finding that such compromise and settlement are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

### 2.    *Release of Liens*

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

### 3.    *Releases by the Debtors*

**Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released by each and all of the Debtors and their Estates, and the Liquidating Trust and Liquidating Trustee, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and**

liabilities whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their Estates or affiliates would have been legally entitled to assert, in their own right (whether individually or collectively) or on behalf of the Holder of any claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors; PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; and provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.03 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.03 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

4.    *Third-Party Release*

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR

PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

5.    *Exculpation*

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

6.      *Non-Discharge of Debtors; Property Dealt With by the Plan*

In accordance with Section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors. As such, except as otherwise expressly provided herein or in the Plan, including in connection with enforcing any rights pursuant to the Plan, no Person or Entity holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

7.      *Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER

AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION

**DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**8.**     *Setoffs*

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may reduce, diminish, discount, compromise, or setoff against, and reduce the amount of, any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, Causes of Action and Avoidance Actions of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under Section 502(d) of the Bankruptcy Code, provided that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, Causes of Action and Avoidance Actions that the Debtors' Estates may possess against such Holder. In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity

Interest against any claim, right, Cause of Action or Avoidance Actions of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff. Further, nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date and that the filing of a Proof of Claim was not sufficient.

### 9.  *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Debtors' bankruptcy cases are all closed except for the injunctions provided in Section 12.04, which shall be permanent injunctions.

Notwithstanding the foregoing, to the extent the FMO Collateral is transferred to the Liquidating Trust pursuant to Section 3.07(c), any injunction or stay provided for in these Chapter 11 Cases under Sections 105 or 362 shall be lifted upon entry of the Confirmation Order solely to permit FMO to enforce any of its rights and remedies under the Finance Documents as defined in the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement, as applicable, and under applicable law, including the right to foreclose upon the FMO Security (as defined in the 2022 FMO Credit Agreement) and the Allocation (as defined in the 2018 FMO Credit Agreement, and together with the FMO Security, the "**FMO Collateral**") and, at FMO's sole expense, the Liquidating Trustee will cooperate with any reasonable request by FMO to transfer the FMO Collateral to FMO or its designee; provided that FMO shall (i) promptly report to the Liquidating Trustee FMO's receipt of any proceeds outside of the Liquidating Trust on account of the FMO Collateral, promptly report on any actions or proceedings taken by FMO with respect to the FMO Collateral and any material developments in connection therewith so that the Liquidating Trustee may take any actions necessary to preserve the rights of the Liquidating Trust therein, and make reasonable efforts to otherwise coordinate and cooperate with the Liquidating Trustee as may be reasonably requested by the Liquidating Trustee in connection with the efforts of the Liquidating Trustee to recover assets in or pursue Causes of Action relating to Nicaragua or otherwise provided that such efforts do not prevent or impede FMO's enforcement of its rights and remedies under the Finance Documents, (ii) make reasonable efforts to report to the Liquidating Trustee on the status of any such actions taken by FMO to enforce its rights and remedies under the Finance Documents to the extent not prohibited by law or the terms of any agreement, and (iii) turn over to the Liquidating Trustee (A) any proceeds its recovers from the applicable FMO Collateral in excess of the FMO Claims or any proceeds it recovers that does not constitute FMO Collateral or proceeds thereof, in each case to the extent not prohibited by applicable law, (B) amounts necessary to reimburse the Liquidating Trust for reasonable and documented fees and expenses incurred by the Debtors or Liquidating Trust (1) in the pursuit of Causes of Action on account of FMO Collateral with the written consent of FMO or (2) for taking any corporate actions under foreign law that are requested or consented to in writing by FMO and (C) any amounts required so that FMO does not receive recoveries in excess of its proper allocation of Liquidating Trust Assets (or proceeds thereof) on account of its Liquidating Trust Interests that it received in respect of FMO Claims when taking into account any FMO recovery on account of FMO Collateral and the corresponding reduction to the amount of the Allowed FMO Deficiency Claim.

10.    *Limitation on Recoveries*

In the event that any acts or omissions of a Person constitute fraud, gross negligence, or willful misconduct, then solely with respect to such acts and omissions, such Person shall not be entitled to the benefit of any language in the Plan, including but not limited to the definition of "Released Parties" herein, that limits the liability of such Person to the proceeds of D&O Policies.

**Y.    Conditions Precedent to Confirmation and Effectiveness of the Plan**

**1.    *Conditions to Confirmation and Effectiveness***

**a.    Conditions to Confirmation**

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived in accordance with Section 13.03 of the Plan:

(i)    The Final Cash Collateral Order shall remain in full force and effect;

(ii)    The Confirmation Order, in form and substance acceptable to the Creditors' Committee and the Majority Lenders (as defined in the Prepetition First Lien Credit Agreement), shall have been entered by the Bankruptcy Court;

(iii)    The Liquidating Trust Agreement and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with this Plan in all respects and acceptable in form to the Creditors' Committee and Rabobank as agent under the Prepetition First Lien Credit Agreement;

(iv)    The amount of the Dutch Law SME Claims shall be acceptable to the Majority Lenders (as defined in the Prepetition First Lien Credit Agreement); and

(v)    The Bankruptcy Court finds that adequate information and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).

**b.    Conditions to Effectiveness**

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived in accordance with Section 13.03 of the Plan:

(i)    the Confirmation Order, in a form approved by Rabobank and the Creditors' Committee, shall have been entered by the Bankruptcy Court and shall be a Final Order;

(ii)     all actions and all agreements, instruments and other documents necessary to implement the Plan and any Plan Transaction shall have been effected or executed;

(iii)    the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or other approvals or documents necessary to implement the Plan and any Plan Transactions, including but not limited to the transfer of the Debtors' right, title and interest in their assets to the Liquidating Trust or their creditors, that are required by law, regulation or order, if any;

(iv)    the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions.

(v)     the Liquidating Trust Agreement shall be executed and effective;

(vi)    the Disputed Claims Reserve shall be fully funded as provided in the Plan;

(vii)   the Litigation Funding Reserve shall be fully funded by the deposit of the Initial Litigation Funding into the Liquidating Trust as provided in the Plan;

(viii)  the Convenience Claim Pool shall be available for distribution to Holders of Allowed Convenience Claims as provided in the Plan;

(ix)    the Dutch SME Claim Pool shall be available for distribution to Holders of Allowed Dutch Law SME Claims as provided in the Plan;

(x)     the Initial Non-Litigation Funding shall be deposited into the Liquidating Trust as provided in the Plan;

(xi)    the Professional Fee Escrow Account shall be fully funded as provided in the Plan;

(xii)   the Dutch Court shall have entered an order sanctioning the Dutch WHOA Plan; and

(xiii)  the conditions to Confirmation shall have been satisfied or waived.

## 2.    *Notice of Occurrence of the Effective Date*

The Debtors shall File a notice of the occurrence of the Effective Date within five (5) Business Days after the Effective Date; provided, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

## 3.    *Waiver of Conditions*

Each of the conditions precedent to the occurrence of the Effective Date may be waived in writing by the Debtors, with the consent of Rabobank and the Creditors' Committee,

without leave of or order of the Bankruptcy Court. If any such condition precedent is waived pursuant to Section 13.03 of the Plan and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge this Plan in any court. If this Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which this Plan is confirmed must be satisfied or waived for the Effective Date to occur.

### 4. *Consequences of Non-Occurrence of Effective Date*

If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of forty-five (45) days after the date the Confirmation Order is vacated.

### Z. **Miscellaneous Provisions**

### 1. *Administrative Claims*

**ALL ADMINISTRATIVE CLAIMS (OTHER THAN PROFESSIONAL FEE CLAIMS AND 503(B)(9) CLAIMS) MUST BE MADE BY APPLICATION FILED WITH THE BANKRUPTCY COURT AND SERVED ON COUNSEL FOR THE DEBTORS AND THE LIQUIDATING TRUSTEE, AS APPLICABLE, NO LATER THAN THE ADMINISTRATIVE CLAIMS BAR DATE OR THEIR ADMINISTRATIVE CLAIM SHALL BE FOREVER BARRED. IN THE EVENT THAT THE LIQUIDATING TRUSTEE OR DEBTORS OBJECT TO AN ADMINISTRATIVE CLAIM, THE BANKRUPTCY COURT SHALL DETERMINE THE ALLOWED AMOUNT OF SUCH ADMINISTRATIVE CLAIM.**

**WITH RESPECT TO ADMINISTRATIVE CLAIMS, THE LAST DAY FOR FILING AN OBJECTION TO ANY ADMINISTRATIVE CLAIM WILL BE THE CLAIMS OBJECTION DEADLINE.**

### 2. *Modifications and Amendments*

Subject to the limitations contained in the Plan, the Debtors reserve the right, subject to the prior consent of the Creditors' Committee and the Majority Lenders under the Prepetition First Lien Credit Agreement, to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, and subject to the prior consent of the Creditors' Committee and the Majority Lenders under the Prepetition First Lien Credit Agreement, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy

Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIV hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with Section 1127 of the Bankruptcy Code, the terms of the Liquidating Trust, and applicable law.

### 3.    *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 4.    *Successors and Assigns and Binding Effect*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests and the Liquidating Trust Beneficiaries.

### 5.    *Revocation, Withdrawal or Non-Consummation*

Subject to the prior written consent of the Creditors' Committee and the Majority Lenders under the First Lien Credit Agreement, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Actions, litigation rights or other claims by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity.

6.     *Plan Supplement*

The Plan Supplement shall be Filed with the Bankruptcy Court and posted on the Website at least five (5) days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court. Upon such Filing and posting on the Website, all documents set forth in the Plan Supplement may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtors in accordance with Section 14.08 of the Plan.

7.     *Continued Confidentiality Obligations*

Notwithstanding any other provision of the Plan, all members of and advisors to the Creditors' Committee, any other holder of a Claim or Equity Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date for a period of one (1) year.

8.     *Notices*

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

**BAKER & MCKENZIE LLP**

Paul J. Keenan Jr.
John R. Dodd
Reginald Sainvil
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

If to the Creditors' Committee:

**O'MELVENY & MYERS LLP**

Louis R. Strubeck, Jr.
Matthew P. Kremer
7 Times Square
New York, NY 10036

Gregory M. Wilkes
Scott P. Drake
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201

Telephone: (212)-326-2000
Email: lstrubeckjr@omm.com
        mkremer@omm.com

Telephone: (972)-360-1900
Email: gwilkes@omm.com
        sdrake@omm.com

### 9.    *Computation of Time*

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

### 10.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of New York shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

### 11.    *Exhibits*

All exhibits to the Plan and Disclosure Statement or the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be Filed with the Bankruptcy Court on or before the date of the Filing of the Plan Supplement, and will then be posted on the Website. Upon such Filing and posting on the Website, all exhibits may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 14.08 of the Plan. To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

### 12.    *Conflicts*

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control. To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

### 13.    *Exemption*

Under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests and any other securities under this Plan shall be exempt from registration under the Securities Act of 1933, as amended and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and

Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

14.    ***Substitution of the Liquidating Trust for the Debtors***

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including (a) motions, contested matters and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court, including without limitation the Brazilian Court and Dutch Court, without the need or requirement for the Liquidating Trust to file motions or substitutions of parties and counsel.

## VIII.    CERTAIN RISK FACTORS TO BE CONSIDERED

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF MATERIAL RISKS, INCLUDING, AMONG OTHERS, THOSE ENUMERATED BELOW. IN EVALUATING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE IN THE PLAN), BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS ASSOCIATED WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

### A.    Certain Litigation Risks

The implementation of the Plan is subject to a number of material risks. In light of these risks and uncertainties, certain events and circumstances discussed in this Disclosure Statement may not occur, and the Debtors cannot guarantee that the ultimate resolution of any claims or legal actions will not have a material adverse effect on the implementation of the Plan. Prior to voting on the Plan, each party entitled to vote should carefully consider these risks, as well as all of the information contained in this Disclosure Statement.

The Liquidating Trust may be subject to various claims and legal actions arising in the ordinary course of their businesses. The Debtors are not able to predict the nature and extent of any such claims or legal actions and cannot guarantee that the ultimate resolution of such claims or legal actions will not have a material adverse effect on the Liquidating Trust.

### B.    Certain Bankruptcy Considerations

#### 1.    ***Non-Confirmation or Delay of Confirmation of the Plan***

The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion when deciding whether to confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan of reorganization or liquidation. Although the Debtors believe that the Plan will satisfy all of the requirements for Confirmation under Section

1129 of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not be sufficiently material as to require the resolicitation of votes on the Plan.

In the event that any Class of Claims entitled to vote fails to accept the Plan in accordance with Section 1126(c) and 1129(a)(8) of the Bankruptcy Code, the Debtors reserve the right to: (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code; and/or (b) modify the Plan in accordance with the terms thereof. The Debtors believe that the Plan satisfies the requirements for non-consensual Confirmation set forth in Section 1129(b) of the Bankruptcy Code because it does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that reject or are deemed to reject the Plan, however, there can be no assurance that the Bankruptcy Court will reach the same conclusion, or that any other party in interest in the Chapter 11 Cases will not challenge Confirmation on such grounds.

There can be no assurance that the Plan will be confirmed. If the Plan is not confirmed, there can be no assurance that the Chapter 11 Cases will continue rather than be converted to chapter 7 liquidation cases or that any alternative plan of reorganization or liquidation would be on terms as favorable to the Holders of Claims against and Equity Interests in the Debtors as the terms of the Plan. If a liquidation or protracted reorganization of the Debtors' Estates were to occur, there is a substantial risk that the Debtors' going concern value would be substantially eroded to the detriment of all stakeholders.

Likewise, there can be no assurance with respect to timing of the Effective Date, or as to whether the Effective Date will, in fact, occur. The occurrence of the Effective Date is subject to certain conditions precedent as described in the Plan, and consummation of the Plan may not occur if any of these conditions are not met. In the event that the Effective Date does not occur, there can be no assurance that the Chapter 11 Cases will continue rather than be converted to chapter 7 liquidation cases or that any alternative plan of reorganization or liquidation would be on terms as favorable to the Holders of Claims against or Equity Interests in the Debtors as the terms of the Plan. If a liquidation or protracted reorganization of the Debtors' Estates were to occur, there is a substantial risk that the Debtors' going concern value or the value of its assets would be eroded to the detriment of all stakeholders.

If the Confirmation Order is vacated or the Plan does not become effective, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of one forty-five (45) days after the date the Confirmation Order is vacated.

## 2.    *Failure of Proceedings Before Foreign Courts*

### a.    *The Dutch WHOA Plan.*

Debtor Mercon B.V. may submit the Dutch WHOA Plan for voting by Holders of Claims and Interests, and then to the Dutch Court for approval or sanction at a hearing to be scheduled, all as required under Dutch Restructuring Law. The terms and provisions of the Dutch WHOA Plan in respect of those Holders will be consistent with those of the Plan.

There can be no assurance that the Dutch Court will approve or grant sanction to the Dutch WHOA Plan. While the approval of the Dutch WHOA Plan by the Dutch Court is a condition precedent to the occurrence of the Effective Date that can be waived, the failure of the Dutch Court to approve the Dutch WHOA Plan may lead to the appointment of a Dutch bankruptcy trustee with the statutory task to wind down the bankruptcy estate of Mercon B.V. In such event, the Dutch bankruptcy trustee may argue against the authority of the Liquidating Trustee to take and exercise control over assets of Mercon B.V. in The Netherlands and outside the United States.

### b.    *The Brazilian Ancillary Case*

In connection with Confirmation of the Plan, the Foreign Representative may seek relief and/or additional assistance from the Brazilian Court to enforce the provisions of the Plan in that jurisdiction. The Brazilian adoption of the UNCITRAL Model Law on Cross-Border Insolvency is new and untested, and there can be no assurance that the Brazilian Court will grant such relief or additional assistance, or that the scope of any such relief or additional assistance will be sufficiently broad to protect the Debtors' assets in Brazil from enforcement actions that may be undertaken by certain creditors in that country.

While the grant of such relief and additional assistance by the Brazilian Court is not a condition precedent to the occurrence of the Effective Date, the failure of the Brazilian Court to grant that relief and/or assistance may interfere with or prevent the transfer and vesting of the Debtors' assets within the jurisdiction of the Brazilian Court in the Liquidating Trust, and raise questions about the authority of the Liquidating Trustee to take and exercise control over those assets. To the extent that action must be taken in the Brazilian Ancillary Case after the Effective Date, the Plan provides that the Bankruptcy Court will appoint the Liquidating Trustee as successor Foreign Representative so as to establish his standing and right to appear in the Brazilian Court in furtherance of the Confirmed Plan.

### 3.    *Classification and Treatment of Claims and Equity Interests*

Section 1122 of the Bankruptcy Code requires that a plan of reorganization or liquidation classify claims against, and interests in, a debtor. The Bankruptcy Code also provides that a plan of liquidation may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtors believe that all Claims against and Equity Interests in the Debtors have been appropriately classified in the Plan.

To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors presently anticipate that they would seek (i) to modify the Plan to provide for any reclassification that may be required for Confirmation and (ii) to use the acceptances received from any Creditor pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Creditor ultimately is deemed to be a member. Any such reclassification of Creditors, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Creditor was initially a member, or any other Class under the Plan, by changing the composition of such Class and, as a result, the votes required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan after such reclassification. Except to the extent that a modification of classification in the Plan requires resolicitation, the Debtors will, in accordance

with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules they would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim of any Creditor or Equity Interest Holder.

The Bankruptcy Code also requires that a plan of reorganization or liquidation provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Plan meets this requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court may deny Confirmation of the Plan.

Issues or disputes relating to classification and/or treatment may delay Confirmation and consummation of the Plan, and may increase the risk that the Plan will not be confirmed or consummated.

### 4.    *Claims Estimation*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, reserve the right to object to or seek to estimate the amount or classification of any Claim or Equity Interest except any such Claim or Equity Interest that is deemed Allowed under the Plan or except as otherwise provided in the Plan. There can be no assurance that any estimated Claim amounts set forth in this Disclosure Statement are correct. The actual Allowed amount of Claims will likely differ in some respect from the estimates set forth herein, or in any exhibit attached hereto, including the Plan. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should the underlying assumptions prove incorrect, the actual Allowed amount of Claims may differ in some respect from the estimates set forth herein, or in any exhibit attached hereto, including the Plan.

### C.    Certain Tax Considerations

There are a number of income tax considerations, risks, and uncertainties associated with consummation of the Plan. Interested parties should read carefully the discussions set forth in this Disclosure Statement regarding certain U.S. federal income tax consequences of the transactions proposed by the Plan to the Debtors and the Liquidating Trust and to certain Holders of Claims and Equity Interests in the Debtors who are entitled to vote to accept or reject the Plan.

## IX.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain anticipated U.S. federal income tax consequences of the Plan to the Debtors and Holders of Claims and Equity Interests. This summary is provided for information purposes only and is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), Treasury regulations promulgated thereunder, judicial authorities, and current administrative rulings and practice, all as in effect as of the date hereof, and all of which are subject to change, possibly with retroactive effect, that could adversely affect the U.S. federal income tax consequences described below.

This summary does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of a Claim or Equity Interest in the Debtors in light of its particular facts and circumstances or to certain types of Holders of Claims or Equity Interests subject to special treatment under the Tax Code (for example, non-U.S. taxpayers, financial institutions, broker-dealers, life insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, grantor trusts, persons holding a Claim as part of a "hedging," "integrated," or "constructive" sale or straddle transaction, persons holding claims through a partnership or other pass through entity, persons that have a "functional currency" other than the U.S. dollar, and persons who acquired or expect to acquire either an equity interest or other security in a Debtor or a Claim in connection with the performance of services). In addition, this summary does not discuss any aspects of state, local, estate and gift or non-U.S. taxation.

A substantial amount of time may elapse between the date of this Disclosure Statement and the receipt of a final Distribution under the Plan. Events occurring after the date of this Disclosure Statement, such as additional tax legislation, court decisions, or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated thereunder. There can be no assurance that the IRS will not take a contrary view with respect to one or more of the issues discussed below. No ruling will be sought from the IRS with respect to any of the tax aspects of the Plan, and no opinion of counsel has been or will be obtained by the Debtors with respect thereto.

Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim or Equity Interest in the Debtors. All Holders of Claims or Equity Interests in the Debtors are urged to consult their own tax advisors for the federal, state, local and other tax consequences applicable to them under the Plan.

**EACH HOLDER IS HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREBY BY THE DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN OR THE PLAN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

A.    **U.S. Federal Income Tax Consequences to the Debtors and the Liquidating Trust**

The Liquidating Trust is a grantor trust and as such, it is not subject to tax, but rather the grantors of the trust recognize the income of the trust as their interests appear. The contributions of the claims to the Liquidating Trust in exchange for the Liquidating Trust units is a taxable exchange measured by the value of the interest received reduced by the basis of the claim contributed. Typically, accrual basis tax payers recognized the income when they rendered their services, and the recognition gives them a basis equal to their claim, thus the receipt of the

Liquidating Trust interest or the case on the redemption of the unit, up to the amount of claimed basis, is not taxable. If the claim holder had written off the claim as a bad debt or is a cash basis tax payer, the receipt of the Liquidating Trust unit will be taxable to the amount of the claim and the receipt of the cash on liquidation of the unit will not be taxable up-to the amount of claimed basis.

### B.     U.S. Federal Income Tax Consequences to the Holders of Claims

The U.S. federal income tax consequences to Holders of Allowed Claims in the Debtors arising from the Distributions to be made in satisfaction of their Claims pursuant to the Plan may vary, depending upon, among other things: (a) the type of consideration received by the Holder of a Claim in the Debtors in exchange for such Claim; (b) the nature of such Claim; (c) whether the Holder has previously claimed a bad debt or worthless security deduction in respect of such Claim; (d) whether such Claim constitutes a security; (e) whether the Holder of such Claim in the Debtors is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the Holder of such Claim in the Debtors reports income on the accrual or cash basis; and (g) whether the Holder of such Claim in the Debtors receives Distributions under the Plan in more than one taxable year. For tax purposes, the modification of a Claim may represent an exchange of the Claim for a new Claim, even though no actual transfer takes place. In addition, where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, whether the Claim constitutes a capital asset in the hands of the Holder and how long it has been held or is treated as having been held, whether the Claim was acquired at a market discount, and whether and to what extent the Holder previously claimed a bad debt deduction with respect to the underlying Claim. A Holder who purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the Tax Code, as described below.

### 1.     *Accrued but Unpaid Interest*

In general, to the extent a Holder of a Claim receives property in satisfaction of interest accrued during the holding period of such instrument, if any, such amount will be taxable to the Holder as interest income (if not previously included in the holder's gross income). Conversely, such a Holder generally recognizes a deductible loss to the extent that any accrued interest claimed was previously included in its gross income and is not paid in full.

The extent to which property received by a Holder of a Claim will be attributable to accrued but unpaid interest is unclear. Pursuant to the Plan, all Distributions in respect of any Allowed Claim will be allocated first to the principal amount of such Allowed Claim, and thereafter to accrued but unpaid interest, if any. Certain legislative history indicates that an allocation of consideration between principal and interest provided for in a chapter 11 plan is binding for U.S. federal income tax purposes. There is no assurance, however, that such allocation will be respected by the IRS for U.S. federal income tax purposes. If a distribution with respect to a Claim is allocated entirely to the principal amount of such Claim, a Holder may be entitled to claim a loss to the extent of any accrued but unpaid interest on the Claim that was previously included in the Holder's gross income.

Each Holder of an Allowed Claim is urged to consult its tax advisor regarding the allocation of consideration and the deductibility of previously included unpaid interest and OID for tax purposes.

### 2.    *Market Discount*

Holders of Claims who receive consideration in exchange for their claims may be affected by the "market discount" provisions of Sections 1276 through 1278 of the Tax Code. Under these provisions, some or all of the gain realized by a Holder may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on such Allowed Claims.

In general, a debt obligation with a fixed maturity of more than one year that is acquired by a holder on the secondary market (or, in certain circumstances, upon original issuance) is considered to be acquired with "market discount" as to that holder if the debt obligation's stated redemption price at maturity (or revised issue price as defined in Section 1278 of the Tax Code, in the case of a debt obligation issued with original issue discount) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition. However, a debt obligation is not a "market discount bond" if the excess is less than a statutory de minimis amount (equal to 0.25% of the debt obligation's stated redemption price at maturity or revised issue price, in the case of a debt obligation issued with original issue discount, multiplied by the number of complete years remaining until maturity at the time of the acquisition).

Any gain recognized by a Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

### C.    **Information Reporting and Backup Withholding**

Certain payments, including certain payments of Claims pursuant to the Plan, payments of interest, and the proceeds from the sale or other taxable disposition of the Claims and Equity Interests may be subject to information reporting to the IRS. Moreover, such reportable payments may be subject to backup withholding unless the taxpayer: (i) comes within certain exempt categories (which generally include corporations) or (ii) provides a correct taxpayer identification number and otherwise complies with applicable backup withholding provisions. In addition, Treasury regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.

Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against a Holder's U.S. federal income tax liability, provided that the required information is furnished to the IRS on a timely basis. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns. The Liquidating Trust Beneficiaries will be required to provide appropriate withholding forms.

D.    **Importance of Obtaining Your Own Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ASSOCIATED WITH THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## X.    **FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS**

A.    **Feasibility of the Plan**

Section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Bankruptcy Court should consider that the objective of the Plan is to fund and implement the Liquidating Trust.

B.    **Acceptance of the Plan**

A condition to Confirmation, the Bankruptcy Code requires that each Class of Claims or Equity Interests that is Impaired, but still receives a Distribution under the Plan vote to accept the Plan, except under certain circumstances set forth in Section 1129(b) of the Bankruptcy Code.

A class is impaired unless the plan of reorganization or liquidation leaves unaltered the legal, equitable and contractual rights of the holder of such claim. Pursuant to Sections 1126(c) and 1126(d) of the Bankruptcy Code, and except as otherwise provided in Section 1126(e) of the Bankruptcy Code: (i) an impaired class of claims has accepted the plan of reorganization if the holders of at least two-thirds (2/3) in amount and more than half (1/2) in number of the voting allowed claims have voted to accept the plan of reorganization and (ii) an impaired class of interests has accepted the plan of reorganization if the holders of at least two-thirds (2/3) in amount of the allowed interests of such class have voted to accept the plan. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

C.    **Best Interests Test**

As noted above, even if a plan of reorganization or liquidation is accepted by each class of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that such plan of liquidation is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that all members of

an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

        To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a chapter 7 trustee.

        The amount of liquidation value available to unsecured creditors would be reduced first, by the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 case and the chapter 11 case. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in its chapter 11 case (such as compensation of attorneys, financial advisors, and accountants) that are allowed in the chapter 7 case, litigation costs, and claims arising from the operations of the debtor during the pendency of the chapter 11 case. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity security interests. The liquidation would also prompt the rejection of a large number of executory contracts and unexpired leases and thereby significantly enlarge the total pool of unsecured claims by reason of resulting rejection damages claims.

        Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

**D.**      **Application of the "Best Interests" of Creditors Test to the Liquidation Analysis and Valuation**

        The Debtors believe that the Plan described in this Disclosure Statement will result in a substantially greater recovery to Holders of Claims in Impaired Classes than the recovery available in a chapter 7 liquidation as is set forth in the Liquidation Analysis. The Liquidation Analysis is subject to numerous assumptions and there can be no guarantee that the Liquidation Analysis will be accurate. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors have projected an amount of Allowed Claims that represents their best estimate of the chapter 7 liquidation dividend to Holders of Allowed Claims. The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including, without limitation,

any determination of the value of any Distribution to be made on account of Allowed Claims under the Plan.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Debtors believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in a chapter 7 case. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, all unpaid expenses incurred by the Debtors in the Chapter 11 Cases that are allowed in the chapter 7 cases, litigation costs, and claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases.

Appointment of a chapter 7 trustee and the hiring of new professionals would add additional costs and delays, and likely significantly reduce potential distributions to Holders of Claims against the Debtors. Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which could result in new Claims being asserted against the Estates, which could further reduce potential Creditor recoveries. Finally, absent the Plan, the Debtors would be forced to expend Estate resources to litigate Estate Causes of Action and Avoidance Actions, reducing the value available to Creditors in these Chapter 11 Cases. Accordingly, the Debtors believe that the Plan satisfies the "best interests" test of Section 1129 of the Bankruptcy Code.

If necessary, the Debtors may present additional evidence to the Bankruptcy Court and Dutch Court in order to establish that the Chapter 11 Plan and WHOA Plan satisfy the best interests test under the applicable laws of the respective countries.

**E.      Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative**

In the event that any impaired Class does not vote to accept the Plan, the Debtors may seek Confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code. Specifically, Section 1129(b) of the Bankruptcy Code provides that a plan of reorganization may be confirmed even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. A bankruptcy court may confirm a plan of reorganization at the request of the debtors, if the plan of reorganization "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank. The Debtors believe that the Plan does not discriminate unfairly with respect to the Claims in Class 4A and Class 4B.

A plan of reorganization or liquidation is fair and equitable as to a class of unsecured claims that rejects such a plan if the plan provides: (i) for each holder of a claim that is a member of the rejecting class to receive or retain, on account of that claim, property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim or (ii) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain, on account of such junior claim or interest, any property at all.

A plan of reorganization or liquidation is fair and equitable as to a class of equity interests that rejects such a plan if the plan provides: (i) that each holder of an interest that is a member of the rejecting class receive or retain, on account of that interest, property that has a value, as of the effective date of the plan, equal to the greatest of (a) the allowed amount of any fixed liquidation preference to which such holder is entitled, (b) any fixed redemption price to which such holder is entitled, or (c) the value of such interest; or (ii) that the holder of any interest that is junior to the interests of such class will not receive or retain, on account of such junior interest, any property at all.

The Debtors believe that they will meet the "fair and equitable" requirements of Section 1129(b) of the Bankruptcy Code with respect to Holders of Claims and Equity Interests in Class 8 and that the Plan satisfies the foregoing requirements for nonconsensual Confirmation.

## XI.    RELEASES

Section 12.03 of the Plan and Section 12.04 of the Plan contain release provisions. The Debtors believe that the releases set forth in the Plan are appropriate because, among other things, the releases are expressly or impliedly consensual. ***You are advised to carefully review and consider the release provisions, as your rights may be affected.***

Section 12.03 of the Plan provides for a release and waiver of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, against any Released Party, subject to the limitation set forth below and in Section 12.03 of the Plan.

**FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES.**

In addition, the release contained in Section 12.03 of the Plan does not release any Claims or Causes of Action arising after the Effective Date against any party or affect the rights of the Debtors or the Liquidating Trust to enforce the terms of the Plan, the Plan Supplement or Confirmation Order or rights that remain in effect from and after the Effective Date to enforce the Plan, the Plan Supplement and Confirmation Order. The Plan does not provide a release for the Released Parties for fraud, gross negligence or willful misconduct.

The Debtors believe that the releases contained in Section 12.03 of the Plan constitute a sound exercise of the Debtors' business judgment and are an essential component of the Plan. It is well-settled that debtors are authorized to settle or release their claims in a chapter 11 plan. *See* 11 U.S.C. § 1123(b)(3)(A) (permitting a plan to provide for the "settlement or adjustment of any claim or interest belonging to the debtor or to the estate"); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 263 n.289 (Bankr. S.D.N.Y. 2007) (debtor has "considerable leeway" in releasing its own claims); *In re Spiegel, Inc.*, Case No. 03-11540 (BRL), 2005 WL 1278094, at *11 (Bankr. S.D.N.Y. May 25, 2005) (approving debtor releases pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a)); *In re Bally Total Fitness of*

- 97 -

*Greater New York, Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) ("To the extent that a release or other provision in the Plan constitutes a compromise of a controversy, this Confirmation Order shall constitute an order under Bankruptcy Rule 9019 approving such compromise."). Debtor releases are granted by courts in the Second Circuit where the Debtors establish that such releases are a valid exercise of the Debtors' business judgment and in the best interests of the estate. *See JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 257-61 (Bankr. S.D.N.Y. 2009) ("When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate."); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009), aff'd, Case No. 09 CIV. 10156 (LAK), 2010 WL 1223109 (S.D.N.Y. Mar. 24 2010), *aff'd in part, rev'd in part*, 627 F.3d 496 (2d Cir. 2010) (finding debtor releases appropriate where they represented a valid exercise of the debtors' business judgment and were in the best interests of the estate).

As the Debtors will demonstrate at the Confirmation Hearing, the current and former, directors, officers, agents, members of management and other employees of the Debtors made significant efforts on behalf of the Debtors, prior to, and continuing throughout, the Chapter 11 Cases to effectuate the transactions set forth in the Plan. These efforts included, among other things, overseeing a year-long effort (both prior to and during the bankruptcy proceeding) to maximize the Debtors' value for the benefit of all of their stakeholders.

Moreover, the Debtors' current and former, directors, officers, agents, members of management and other employees of the Debtors were critical to maintaining and preserving the value of the Debtors' business under extreme risk to their own personal safety. Upon the commencement of these Chapter 11 Cases, the officers and directors spearheaded efforts to maximize the value of the Debtors' remaining assets, including the sale transactions outlined in the Plan. These efforts became substantially more difficult on December 16, 2023, once the Debtors learned that the Nicaraguan Attorney General's Office had appointed an Intervenor, equivalent to an Administrator in the U.S., to seize the assets of Mercapital de Nicaragua, S.A. and CISA on account of an alleged $30 million dollar tax claim on behalf of the National Taxing Authority against Mercapital de Nicaragua, S.A. and CISA, the merits of which have always been disputed by the Debtors.

Even though the alleged tax claim was subject to adjudication and was being challenged by CISA and Mercapital in the Nicaraguan courts, the Intervenor took physical control of the assets in Nicaragua and began to pressure employees in Nicaragua to provide him with the information he requested to continue the Debtors' operations in Nicaragua. Accordingly, many of the employees who did not have such information began to resign. Yet, in turn, Nicaraguan police and other individuals not in uniform visited the residence of many of those employees and demanded that the employees return to work. The Nicaraguan police warned the employees that failure to return to work and comply with their demands would result in severe legal and other repercussions which could include seizure of the employee's home and other assets, raiding of the employee's home (and those of their immediate family), imprisonment, and initiating extradition proceedings if the employee decided to leave the country. Indeed, such actions were taken in some instances and are continuing as of the date of this Disclosure Statement. Even in the face of risks to their own personal safety and that of their family members, the Debtors' directors, officers, agents, members of management and other employees, continued to provide crucial support to prosecute these Chapter 11 Cases to maximize the return to creditors.

The Chief Restructuring Officer, on behalf of the Debtors, has evaluated the potential claims of the Debtors against the Released Parties and considered the relative merits and economic benefit of any potential claims for personal liability. Viewed in in light of the past and ongoing contributions of the Released Parties with respect to the efforts to maximize recovery for the creditors in these Chapter 11 Cases under the circumstances described above, it is the Debtors' business judgment that the releases contained in Section 12.03 of the Plan are warranted and in the best interests of the Debtors' estates.

Section 12.04 of the Plan provides that the following entities may grant a release to the Released Parties: (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Release. The release contained in Section 12.04 of the Plan does not release any Claims or Causes of Action arising after the Effective Date against any party or affect the rights of the Debtors or the Liquidating Trust to enforce the terms of the Plan, the Plan Supplement or Confirmation Order or rights that remain in effect from and after the Effective Date to enforce the Plan, the Plan Supplement and Confirmation Order.

**Voting creditors are included among the "Releasing Parties" only if they affirmatively manifest their consent to grant releases by checking a box that manifested such consent. In addition, and for the avoidance of doubt, creditors who are not themselves "Released Parties" shall not be bound by any releases of claims against non-Debtors except to the extent such creditors checked a box indicating his, her or its willingness to grant such releases. Creditors who are not Released Parties are not giving third party releases except to the extent they elected to do so by providing a release even though they did not vote in favor of the Plan.**

## XII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors believe that the Plan affords Holders of Claims the potential for the greatest realization on the Assets and, therefore, is in the best interests of such Holders. If, however, the requisite acceptances are not received or the Plan is not confirmed and consummated, certain restructuring alternatives may exist including, but not limited to, (a) formulation of an alternative plan or plans of reorganization or (b) liquidation of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

### A.    Alternative Plan(s) of Liquidation

If the requisite acceptances to confirm the Plan are not received from the Holders entitled to vote to accept or reject the Plan, or if the Plan is not confirmed by the Bankruptcy Court, the Debtors could formulate and propose a different plan of liquidation.

The Debtors believe that the Plan enables Creditors to realize the greatest possible value under the circumstances and has the greatest likelihoods of consummation.

## B.    Liquidation Under Chapter 7

If no plan of liquidation, including the Plan, is confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Assets for distribution in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective Holders of Claims against or Equity Interests in the Debtors.

As described above, the Debtors believe that, in a liquidation under chapter 7, additional administrative expenses involved with the appointment of a trustee or trustees and attorneys, accountants, and other professionals to assist such trustees would cause a substantial diminution in the value of the Estates. The assets available for distribution to Creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, arising by reason of the liquidation and from the rejection of Unexpired Leases and other Executory Contracts in connection with the cessation of operations and the failure to realize the greater going concern value of the Assets.

## XIII.   SANCTIONING AND CONSUMMATION OF THE DUTCH WHOA PLAN

In parallel with this Plan, Debtor Mercon B.V. may offer the Dutch WHOA Plan to its creditors only, for approval of those creditors and the Dutch Court in the Dutch WHOA Proceeding, and request that the Dutch Court hold a Dutch Sanction Hearing to consider the Dutch WHOA Plan. The Dutch Court will set the date of the hearing as soon as possible after the request (section 383(4) of the Dutch Restructuring Law). The time frames governing the submission of the Dutch WHOA Plan to Mercon B.V. creditors and the Dutch court may differ from those applicable to the Chapter 11 Cases in which this Plan is proposed.

Prior to the Dutch Sanction Hearing, the Holders of Claims will have the opportunity to submit a written objection or other statement in support of or opposition to the Dutch WHOA Plan to the Dutch Court. The deadline for any such submission will be the start of the Dutch Sanction Hearing ("*tot aan de dag van de zitting*," section 383(8) of the Dutch Restructuring Law). The Dutch Sanction Hearing will take place within 8 to 14 days after Mercon B.V. requests the Dutch Court to sanction the Dutch WHOA Plan (section 383(6) of the Dutch Restructuring Law). Mercon B.V. intends to make such a request in May 2024.

## A.    Dutch Sanction Hearing

During the Dutch Sanction Hearing, Holders of Claims against Mercon B.V. will be provided with an opportunity to express their views on the Dutch WHOA Plan orally. Afterwards, the Dutch Court will determine whether all statutory requirements have been met as set out in section 384(2) of the Dutch Restructuring Law and whether any Holder of a Claim has rightfully objected to the sanctioning of the Dutch WHOA Plan in accordance with section 384(3) or (4) of the Dutch Restructuring Law. Under the Dutch Restructuring Law, objections by Holders of Claims against Mercon B.V. to the Dutch WHOA Plan must be made known to Mercon B.V. in a timely fashion. If the Holder of any such Claim was familiar with the ground for

- 100 -

objection/rejection but has not made its objection known prior to the Dutch Sanction Hearing, the right to reject, or object to, the Dutch WHOA Plan on those grounds may be forfeited (section 383(9) of the Dutch Restructuring Law). The judgment of the Dutch Court with respect to the Sanctioning will generally be rendered within five (5) days after the Dutch Sanction Hearing, although the exact timing will depend on the Dutch Court.

### B.  Effect of Sanctioning And Consummation of the Dutch WHOA Plan

If the Dutch Court sanctions the Dutch WHOA Plan, it will be binding on all Holders of Claims that were included in the Dutch WHOA Plan and that had the right to vote on it (section 385 of the Dutch Restructuring Law). The Dutch WHOA Plan will become effective upon the satisfaction or waiver of the conditions precedent set forth in the Dutch WHOA Plan. The rights of Holders of Claims against Mercon B.V. may be limited in the event the Dutch WHOA Plan is not sanctioned.

### C.  Third Party Releases Under the Dutch Restructuring Law

Third party releases outside the scope of section 372 of the Dutch Restructuring Law (which only deals with the releases of non-debtor group companies under certain conditions) are common practice under Dutch insolvency law, but their binding effect on non-consenting creditors has not been finally ruled on by the Dutch Supreme Court (de Hoge Raad). The Dutch Court will determine whether the Dutch WHOA Plan satisfies the requirements as set out in Article 384 and 372(2)(b) of the Dutch Restructuring Law.

### D.  Application of "Best Interests of Creditors" Test to the Dutch WHOA Plan

The "best interest of creditors" test under Dutch Restructuring Law requires that the Holders of Claims will receive more value if the WHOA Plan is executed than they would receive in a bankruptcy liquidation of the relevant debtor under the laws of its jurisdiction (section 384(3) of the Dutch Restructuring Law). The Debtors believe that value awarded to Holders of Claims against Mercon B.V. under the Dutch WHOA Plan is more than the liquidation value on an individual, creditor-by-creditor basis. The Dutch Court will only determine whether this condition is met if a Holder of a Claim against Mercon B.V. objects to the sanctioning of the Dutch WHOA Plan based on section 384(3) of the Dutch Restructuring Law. If necessary, the Debtors may present additional evidence to the Bankruptcy Court and Dutch Court in order to establish that the Chapter 11 Plan and WHOA Plan satisfy the best interests test under the applicable laws of the respective countries.

## XIV.  RECOMMENDATION AND CONCLUSION

In the opinion of the Debtors, the Plan is preferable to any potential alternatives described in this Disclosure Statement because the Plan provides for a larger distribution to the Holders of Allowed Claims than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than proposed under the Plan. Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Plan support Confirmation of the Plan and vote to accept the Plan.

Mercon Coffee Corporation on behalf
of itself and all other Debtors

*/s/ Harve Light*
By: Harve Light, solely in his capacity
as Chief Restructuring Officer

Dated: May 23, 2024

NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST. THE PLAN IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CERTAIN OTHER CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

/

## FOURTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS

Paul J. Keenan Jr. (admitted *pro hac vice*)
Mark D. Bloom (admitted *pro hac vice*)
John R. Dodd (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        mark.bloom@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors and Debtors-in Possession*

Dated: May 22, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION ................................... 1

ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS......................... 17

    Section 2.01   Classification................................................................................................ 17
    Section 2.02   Consolidation of Debtors for Purposes of Voting, Confirmation
                 and Distributions ........................................................................................ 18

ARTICLE III: TREATMENT OF CLAIMS AND EQUITY INTERESTS ............................... 19

    Section 3.01   General ........................................................................................................ 19
    Section 3.02   Formation of Debtor Groups for Convenience Only ..................................... 19
    Section 3.03   Administrative Claims .................................................................................. 19
    Section 3.04   Professional Fee Claims ............................................................................... 20
    Section 3.05   Priority Tax Claims ...................................................................................... 20
    Section 3.06   U.S. Trustee Fee Claims............................................................................... 21
    Section 3.07   Classes of Claims and Interests.................................................................... 21
    Section 3.08   Reservation of Rights Regarding Claims ...................................................... 25

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 26

    Section 4.01   Impaired Classes of Claims Entitled to Vote ............................................... 26
    Section 4.02   Parallel Vote on Dutch WHOA Plan ( Mercon B.V. Holders of Allowed
                 Claims Only) ............................................................................................... 26
    Section 4.03   Acceptance by an Impaired Class ................................................................. 26
    Section 4.04   Presumed Acceptances by Unimpaired Classes............................................ 26
    Section 4.05   Presumed Rejection by Certain Classes ........................................................ 26
    Section 4.06   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............. 27
    Section 4.07   Subordinated Claims .................................................................................... 27
    Section 4.08   Elimination of Vacant Classes ..................................................................... 27

ARTICLE V: SETTLEMENTS AND COMPROMISES ........................................................... 27

    Section 5.01   Compromise and Settlement of Claims......................................................... 27
    Section 5.02   Orders in Aid of Compromise and Settlement .............................................. 27

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 28

    Section 6.01   Liquidating Trust......................................................................................... 28
    Section 6.02   Liquidating Trust Board............................................................................... 28
    Section 6.03   Funding for the Plan..................................................................................... 29
    Section 6.04   Funding of Liquidating Trust and Disputed Claims Reserves ...................... 29
    Section 6.05   Allocation of Proceeds of Liquidating Trust Assets ..................................... 29
    Section 6.06   Corporate Action ......................................................................................... 31
    Section 6.07   Directors, Officers and Managers ................................................................ 31
    Section 6.08   Debtors' Professionals ................................................................................. 32
    Section 6.09   Effectuating Documents; Further Transactions............................................. 32

Section 6.10    Privilege ........................................................................................ 32
Section 6.11    Exemption from Certain Taxes and Fees ....................................... 32
Section 6.12    Preservation, Pursuit and Resolution of Liquidating Trust Actions ............. 33
Section 6.13    The Surviving Debtor(s) Pending the Closing of the Cases ........................ 34
Section 6.14    Closing of the Debtors' Cases ........................................................ 34
Section 6.15    Cancellation of Existing Agreements and Existing Stock and/or
                Membership Interests ..................................................................... 35
Section 6.16    Operations of the Debtors Between the Confirmation Date and the
                Effective Date ................................................................................ 35
Section 6.17    Dissolution of Debtors ................................................................... 35
Section 6.18    Dissolution of the Creditors' Committee ..................................... 36

ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                ......................................................................................................... 36

Section 7.01    Executory Contracts and Unexpired Leases ................................ 36
Section 7.02    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases . 36
Section 7.03    Claims Based on Rejection of Executory Contracts and Unexpired Leases .. 37
Section 7.04    Modifications, Amendments, Supplements, Restatements, or
                Other Agreements .......................................................................... 38
Section 7.05    Indemnification Obligations........................................................ 38
Section 7.06    Insurance Policies ......................................................................... 38
Section 7.07    Reservation of Rights .................................................................... 39

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 39

Section 8.01    Calculation of Amounts to be Distributed .................................. 39
Section 8.02    Rights and Powers of the Debtors and Liquidating Trustee ........................ 39
Section 8.03    Delivery of Distributions and Undeliverable or Unclaimed Distributions .... 40
Section 8.04    Compliance with Tax Requirements/Allocations ......................... 42
Section 8.05    Claims Paid or Payable by Third Parties...................................... 43

ARTICLE IX: THE LIQUIDATING TRUST.................................................................... 43

Section 9.01    Liquidating Trust Creation ........................................................... 43
Section 9.02    Purpose of the Liquidating Trust.................................................. 44
Section 9.03    Transfer of Assets to the Liquidating Trust ................................ 44
Section 9.04    Tax Treatment of the Liquidating Trust...................................... 45
Section 9.05    Distribution; Withholding ............................................................ 46
Section 9.06    Insurance ...................................................................................... 46
Section 9.07    Liquidating Trustee Duties............................................................ 46
Section 9.08    Other Rights and Duties of the Liquidating Trustee .................... 46
Section 9.09    Disputed Claims Reserve .............................................................. 47
Section 9.10    Wind-Down.................................................................................... 47
Section 9.11    Post-Effective Date Reporting ..................................................... 48
Section 9.12    Termination of the Liquidating Trust and Liquidating Trust Board ............. 48
Section 9.13    Transfer of Liquidating Trust Interests ...................................... 48
Section 9.14    Termination of the Liquidating Trustee ...................................... 49
Section 9.15    Exculpation; Indemnification........................................................ 49

Section 9.16  Release of Liens .................................................................................. 49
Section 9.17  Subordination ..................................................................................... 49

ARTICLE X: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS AND INTERESTS.......................................................... 49

Section 10.01  Resolution of Disputed Claims ........................................................ 49
Section 10.02  Disallowance of Claims ................................................................... 51
Section 10.03  Amendments ..................................................................................... 51
Section 10.04  No Post-Petition Interest ................................................................. 51

ARTICLE XI: RETENTION OF JURISDICTION.......................................................... 51

Section 11.01  Retention of Jurisdiction ................................................................. 51
Section 11.02  Reserved Rights to Seek Bankruptcy Court Approval..................... 53
Section 11.03  Failure of the Bankruptcy Court to Exercise Jurisdiction ............... 53

ARTICLE XII: SETTLEMENT, RELEASE, INJUNCTIONS AND EXCULPATIONS........... 54

Section 12.01  Compromise and Settlement of Claims, Equity Interests, and Controversies 54
Section 12.02  Release of Liens .............................................................................. 54
Section 12.03  Releases by the Debtors .................................................................. 54
Section 12.04  Third-Party Release.......................................................................... 55
Section 12.05  Exculpation ...................................................................................... 56
Section 12.06  Non-Discharge of Debtors; Property Dealt With by the Plan........... 56
Section 12.07  Injunction ......................................................................................... 57
Section 12.08  Setoffs .............................................................................................. 58
Section 12.09  Term of Injunctions or Stays........................................................... 58
Section 12.10  Limitation on Recoveries ................................................................ 59

ARTICLE XIII: CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS
OF THE PLAN .............................................................................................. 60

Section 13.01  Conditions to Confirmation and Effectiveness ............................... 60
Section 13.02  Notice of Occurrence of the Effective Date .................................... 61
Section 13.03  Waiver of Conditions ....................................................................... 61
Section 13.04  Consequences of Non-Occurrence of Effective Date ...................... 61

ARTICLE XIV: MISCELLANEOUS PROVISIONS.......................................................... 62

Section 14.01  Administrative Claims ..................................................................... 62
Section 14.02  Modifications and Amendments ...................................................... 62
Section 14.03  Severability of Plan Provisions ...................................................... 62
Section 14.04  Successors and Assigns and Binding Effect ................................... 63
Section 14.05  Revocation, Withdrawal or Non-Consummation............................. 63
Section 14.06  Plan Supplement............................................................................... 63
Section 14.07  Continued Confidentiality Obligations ........................................... 63
Section 14.08  Notices.............................................................................................. 64
Section 14.09  Computation of Time ....................................................................... 64
Section 14.10  Governing Law................................................................................. 64

Section 14.11  Exhibits ........................................................................................................ 65
Section 14.12  Conflicts ........................................................................................................ 65
Section 14.13  Exemption ...................................................................................................... 65
Section 14.14  Substitution of the Liquidating Trust for the Debtors .................................... 65

## INTRODUCTION

Mercon Coffee Corporation and certain debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby propose the following Joint Chapter 11 Plan of Liquidation pursuant to Section 1121 of the Bankruptcy Code for the resolution of the outstanding Claims (defined below) against, and Equity Interests (defined below) in, the Debtors. The Chapter 11 Cases (defined below) have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Court.

On December 7, 2023, Debtor Mercon B.V. opened the Dutch WHOA Proceeding in the Dutch Court, a parallel proceeding with the jointly administered Chapter 11 case for Debtor Mercon B.V. for which the Bankruptcy Court's cooperation and coordination with the Dutch Court is required under Section 1529 of the Bankruptcy Code.  In deference to this requirement,  this Chapter 11 Plan contains certain provisions relating to Mercon BV creditors only, that are included in order to ensure compliance with Dutch Restructuring Law so as to achieve confirmation of the Dutch WHOA Plan (if Mercon B.V. seeks such confirmation) that is interrelated with this Chapter 11 Plan, are "not inconsistent with the applicable provisions of" the Bankruptcy Code as provided under section 1123(b)(6), and are consistent with the principles of "cooperation and coordination" that are required by section 1529(a) in respect of the parallel proceedings for "the same debtor," Mercon B.V. IN RESPECT OF THE DUTCH WHOA PROCEEDING FOR DEBTOR MERCON B.V., ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS IN MERCON BV WILL BE INVITED TO VOTE ON THE WHOA PLAN.

Reference is made to the Disclosure Statement (defined below) for a discussion of (i) the Debtors' history, businesses and properties, (ii) a summary of this Plan (defined below), and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions (defined below) to be made under this Plan.

Capitalized terms used herein without definition shall have the meanings set forth in Article I hereof. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, (a) all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in the Disclosure Statement (or any exhibit hereto or thereto), (b) any capitalized term used in the Plan that is not defined in the Plan or Disclosure Statement (or any exhibit hereto or thereto), but is defined in the Bankruptcy Code or the

Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (c) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (d) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (e) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (f) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (g) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (h) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor. Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required); or (c) at the Debtors' case website at https://cases.ra.kroll.com/mercon (no registration required). The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**1.1** **"2018 FMO Credit Agreement"** has the meaning ascribed to it in Section 12.09.

**1.2** **"2022 FMO Credit Agreement"** has the meaning ascribed to it in Section 12.09.

**1.3** **"Administrative Claim"** means a Claim for costs and expenses of administration of these Chapter 11 Cases under Sections 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for leased equipment and premises) and Claims by Governmental Units for taxes that accrued after the Petition Date and through the Effective Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are otherwise entitled to be treated as administrative claims under the Bankruptcy Code; (b) Allowed Professional Fee Claims and any other compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under Sections 327, 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under Section 1930, chapter 123 of Title 28 of the United States Code; and (d) any Claims that have been designated "Administrative Claims" by order of this Court.

**1.4** "**Administrative Claims Bar Date**" means the date by which Holders of Administrative Claims (other than Section 503(b)(9) Claims) shall File with the Claims Agent and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules, which date shall be the thirtieth (30th) day following the Effective Date or such earlier date as fixed by the Bankruptcy Court; provided that no filing is required for the following: (i) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (ii) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid in accordance with the terms and conditions of the particular transactions giving rise to such Administrative Claims. The foregoing shall not apply to Professional Fee Claims.

**1.5** "**Affiliate**" means "affiliate" as defined in Section 101(2) of the Bankruptcy Code.

**1.6** "**Allowed**" means with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court or its duly appointed claims agent by the Bar Date, (ii) was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (a) and (b) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, dispute, disallow, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) (i) any General Unsecured Claim in the amount set forth on the Ballot received by the Holder of such Claim, but only if such Holder is not a Disputing Claimant, and (ii) any other Claim or Equity Interest allowed under or pursuant to the terms of the Plan; or (e) which is a Professional Fee Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

**1.7** "**Assets**" means any and all rights, title, and interests of the Debtors in property of whatever type or nature.

**1.8** "**Available Trust Cash**" means the net Cash in the Liquidating Trust available for Distribution following payment of (i) all U.S. Trustee Fee Claims, (ii) Allowed Administrative Claims, (iii) Allowed Priority Claims, (iv) Allowed Secured Claims, (v) the Disputed Claims Reserve, (vi) reserves established in accordance with Section 6.04 of the Plan, and (vii) costs of administration of the Liquidating Trust.

**1.9** "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or its Estates or other authorized parties in interest under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan) under Sections 502, 510, 541, 542, 543, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under related local, state, federal, or

foreign statutes and common law, including fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including a Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

**1.10**   "**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan and make any other elections as may be made thereon, if applicable.

**1.11**   "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as now in effect, together with all subsequent amendments and modifications thereto that are made applicable to these Chapter 11 Cases.

**1.12**   "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over these Chapter 11 Cases or any aspect thereof.

**1.13**   "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

**1.14**   "**Bar Date**" means (a) May 10, 2024 as to any Claim that is not an Administrative Claim or a Claim asserted by a Governmental Unit, (b) June 3, 2024 as to any Claim asserted by a Governmental Unit, and (c) for any Administrative Claim, the applicable Administrative Claims Bar Date; provided that Professional Fee Claims shall be Filed in accordance with Section 14.02 of the Plan.

**1.15**   "**Brazilian Ancillary Case**" means that certain case commenced in and pending before the Brazilian Court as case number 5017501-52.2023.8.13.0707 under the UNCITRAL Model Law on Cross Border Insolvency adopted in that country as Brazilian Judicial Recovery and Bankruptcy Law (Brazilian Federal Law 11,101/2005).

**1.16**   "**Brazilian Court**" means the Court of First Instance in the 3rd Civil Court of the District of Varginha located at Avenida Isaltina Moraes Braga, 125, Fórum Dr. Antônio Pinto de Oliveira, Vale das Palmeiras, Varginha, Brazil.

**1.17**   "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

**1.18**   "**Cash or $**" means legal tender of the United States of America including bank deposits, checks and cash equivalents, and other similar items.

**1.19**   "**Causes of Action**" means, other than those that are released or dismissed as part of and pursuant to this Plan, any and all actions, causes of action, Avoidance Actions, claims, rights,

defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. For the avoidance of doubt, "Cause of Action" includes, without limitation, (i) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity; (ii) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims; (iii) any claim pursuant to section 362 of the Bankruptcy Code; and (v) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**1.20** "**Chapter 11 Cases**" means the chapter 11 cases commenced by the Debtors and jointly administered under case number 23-11945 in the Bankruptcy Court.

**1.21** "**Claim**" or "**Claims**" means a claim or claims against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

**1.22** "**Claims Agent**" means the Debtors' court-appointed claims agent, Kroll Restructuring Administration LLC.

**1.23** "**Claims Objection Deadline**" means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court on request of the Liquidating Trustee; and (b) such other objection deadline as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

**1.24** "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

**1.25** "**Class**" means a category of Holders of Claims or Equity Interests pursuant to Section 1122(a) of the Bankruptcy Code, as described in Articles II and III of the Plan.

**1.26** "**Class A Trust Interests**" means the Liquidating Trust Interests allocable to Liquidating Trust Beneficiaries that are Secured Parties.

**1.27** "**Class 2A Trust Interests**" means the Liquidating Trust Interests allocable to Liquidating Trust Beneficiaries that are Holders of Allowed Class 2A Claims.

**1.28** "**Class B Trust Interests**" means the Liquidating Trust Interests allocable to Liquidating Trust Beneficiaries other than the Secured Parties or Holders of Allowed Class 2A Claims.

**1.29** "**Class C Trust Interests**" means the Liquidating Trust Interests allocable to Liquidating Trust Beneficiaries that are creditors of Mercon B.V., only if Mercon B.V. becomes subject to Dutch bankruptcy proceedings (*faillissement*).

**1.30**   "**Compensation Procedures Order**" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 108] in the Chapter 11 Cases.

**1.31**   "**Confirmation**" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

**1.32**   "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

**1.33**   "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.34**   "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, Section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Creditors' Committee and Majority Lenders as defined in the Prepetition First Lien Credit Agreement.

**1.35**   "**Consummation**" means the occurrence of the Effective Date.

**1.36**   "**Convenience Claim**" means any Allowed prepetition, liquidated, and unsecured Claim against the Debtors that as of the Confirmation Date is unsecured and less than or equal to $40,000 or any Allowed General Unsecured Claim or Allowed Dutch Law SME Claim that makes the Convenience Claim Election.

**1.37**   "**Convenience Claim Election**" means the option provided to each Holder of a General Unsecured Claim or Holder of a Dutch Law SME Claim, as applicable, on their Ballot to elect to reduce their Allowed General Unsecured Claim or Allowed Dutch Law SME Claim, as applicable, to an Allowed amount of $40,000 and receive the treatment provided to Convenience Claims as set forth in Section 3.07 hereof.

**1.38**   "**Convenience Claim Pool**" means the $1,000,000 of the Secured Parties' cash collateral in the possession of the Debtors as of the Effective Date that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein; *provided, however,* that the amount in the Convenience Claim Pool shall be reduced by no more than $70,053 on or immediately after the Effective Date to make Distributions equal to 20% of the Allowed amount of Dutch Law SME Claims that are not Convenience Claims and do not make the Convenience Class Election; *provided, further,* that any additional payments necessary to make such Distributions shall be paid out of the Secured Parties' cash collateral in the possession of the Debtors as of the Effective Date. Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Secured Parties for application pursuant to the Prepetition First Lien Credit Agreement.

**1.39**   "**Creditor**" means any Holder of a Claim against any Debtor or its Estate.

**1.40**   "**Creditors' Committee**" means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

**1.41**   "**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and

assignment of an Executory Contract or Unexpired Lease, pursuant to Bankruptcy Code Section 365(b), in an amount equal to all unpaid monetary obligations, without interest, under such Executory Contract or Unexpired Lease, or such other amount as may be agreed upon by the parties, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.42    "**D&O Policy**" or "**D&O Policies**" means any or collectively, all liability insurance policies (including any "tail policy") covering directors, managers, members, trustees, and officers maintained or held by any Debtor at any time on or prior to the Effective Date.

1.43    "**Debtors**" has the meaning ascribed to it in the Introduction.

1.44    "**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in Section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under Section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest. In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.45    "**Disclosure Statement**" means the disclosure statement for the Plan approved by the Bankruptcy Court by entry of the Disclosure Statement Order, as amended, supplemented or modified from time to time, describing the Plan, which is prepared and distributed in accordance with, among others, Sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

1.46    "**Disclosure Statement Order**" means any order entered by the Bankruptcy Court approving the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code and approving solicitation procedures in connection with Confirmation of the Plan.

1.47    "**Disputed**" means with respect to any Claim or any portion thereof (a) that is not Allowed; (b) as to which the Debtors or the Liquidating Trustee, as applicable, or any other party in interest, has Filed an objection or sought to subordinate such Claim by the Claims Objection Deadline, and

such objection has not been withdrawn or overruled by a Final Order; (c) that is listed on the Debtors' Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been Filed in a non-contingent and liquidated amount; (d) asserted by a Disputing Claimant or an Insider; or (e) that is a tort Claim.

**1.48**    "**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim, (ii) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, or (iii) if a request for estimation is Filed by any party, then the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, then (i) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim, or (iii) in the event the Holder of such Disputed Claim does not timely seek estimation, zero; (c) if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero; or (d) notwithstanding anything herein to the contrary, if the Disputed Claim is (i) asserted by an Insider, or (ii) the subject of a request to subordinate the Disputed Claim or to disallow such Claim under Section 502(e) of the Bankruptcy Code, and such Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero.

**1.49**    "**Disputed Claims Reserve**" means a Cash reserve sufficient to pay a Pro Rata Share to all Disputed Claim Amounts, other than with respect to General Unsecured Claims, which shall be maintained by the Liquidating Trustee and which may be funded with a Cash portion of the Liquidating Trust Assets for distribution to Holders of Disputed Claims to the extent such Disputed Claims become Allowed Claims. The initial amount of the Disputed Claims Reserve shall be determined prior to the Effective Date based on the Debtors' good faith estimates or an order of the Bankruptcy Court estimating such Disputed Claims, and shall be established on or about the Effective Date. Thereafter, the Disputed Claims Reserve shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, _provided_ that the Liquidating Trustee may request the Bankruptcy Court to determine the appropriate amount of the Disputed Claims Reserve.

**1.50**    "**Disputing Claimant**" means a Holder of a Claim that has disputed the amount set forth on such Holder's Ballot by checking the "dispute" box in accordance with the procedures set forth in the Disclosure Statement Order and applicable Ballot until such dispute is resolved by a compromise and settlement or Final Order.

**1.51**    "**Dissolving Debtors**" means all Debtors other than the Surviving Debtors.

**1.52**    "**Distribution**" means any distribution or disbursement pursuant to the Plan to Holders of Allowed Claims or Liquidating Trust Beneficiaries.

**1.53**    "**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan or the Liquidating Trust Agreement, as applicable.

1.54    "**Distribution Record Date**" means the date established for determining the Holders of Claims entitled to Distributions pursuant to the Plan, which shall be the Effective Date.

1.55    "**District Court**" means the United States District Court for the Southern District of New York.

1.56    "**Dutch Court**" means the district court of Amsterdam, the Netherlands.

1.57    "**Dutch Law SME Claim**" means any Claim held by a creditor of Mercon B.V. that qualifies as a creditor within the meaning of article 374 section 2 of the Dutch Bankruptcy Act.

1.58    "**Dutch Law SME Claim Pool**" means the amount of the Secured Parties' cash collateral in the possession of the Debtors as of the Effective Date that shall be transferred from the Convenience Class Pool or otherwise to be made available for Distribution to Holders of Dutch SME Claims in order to provide the 20% payment required under Dutch law. Any Cash remaining in the Dutch Law SME Pool after all Distributions on account of Dutch Law SME Claims have been made shall be transferred in the following manner: (i) the first $70,053 shall be transferred to the Convenience Class Pool to be distributed in accordance with its terms; and (ii) all remaining amounts shall be transferred to the Secured Parties for application pursuant to the Prepetition First Lien Credit Agreement.

1.59    "**Dutch Restructuring Law**" means the Dutch Act on Confirmation of Extrajudicial Plans (*Wet homologatie onderhands akkoord*).

1.60    "**Dutch Sanction Hearing**" means the hearing before the Dutch Court to consider the Dutch WHOA Plan.

1.61    "**Dutch WHOA Plan**" means a plan presented by Mercon B.V. to its creditors and equity holders within the meaning of the Dutch Bankruptcy Act art. 370.

1.62    "**Dutch WHOA Proceeding**" means the Dutch (pre-)insolvency plan proceedings, referenced as the Dutch WHOA Proceeding in previous motions that have been opened before the Dutch Court on 7 December 2023.

1.63    "**Effective Date**" means the first Business Day selected by the Debtors, in consultation with Rabobank and the Creditors' Committee, following the date on which all conditions to consummation set forth in Section 13.01 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 13.03 of the Plan, any conditions to the occurrence of consummation set forth in the Plan has been satisfied or waived.

1.64    "**Entity**" shall have the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

1.65    "**Equity Interests**" or "**Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in any of the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in any of the Debtors, membership interests, partnership interests in the Debtors'

stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating any of the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.66** "**Estate(s)**" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

**1.67** "**Exculpated Parties**" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

**1.68** "**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.69** "**Federal Judgment Rate**" means the interest rate set forth in 28 U.S.C. § 1961.

**1.70** "**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.71** "**Final Cash Collateral Order**" means that certain *Final Order (i) Authorizing the Debtors to use Cash Collateral, (ii) Granting Liens and Providing Superpriority Administrative Expense Claims, (iii) Granting Adequate Protection, (iv) Modifying Automatic Stay, and (v) Granting Related Relief* [ECF No. 320] in the Chapter 11 Cases.

**1.72** "**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.73** "**FMO**" means Nederlandse Financierings-Maatschappij Voor Ontwikkelingslanden N.V. FMO will be the initial recipient of the entirety of Class 2A Trust Interests to the extent such Class 2A Trust Interests are issued by the Liquidating Trust in accordance with this Plan.

**1.74** **"FMO Claim"** means any Claim arising in connection with the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement other than an FMO Deficiency Claim.

**1.75** **"FMO Collateral"** has the meaning ascribed to it in Section 12.09.

**1.76** **"FMO Deficiency Claim"** means any FMO Claim to the extent such Claim is not paid in full in Cash on or after the Effective Date.

**1.77** **"General Unsecured Claim"** means, except to the extent otherwise set forth in the Plan, any Claim arising prior to the Petition Date against the Debtors, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease and, that is not (i) a Secured Claim; (ii) a Priority Tax Claim; (iii) an Other Priority Claim; (iv) a Subordinate Claim; (v) an Intercompany Claim, (vi) an Administrative Claim; (vii) the secured portion of a Prepetition First Lien Claim; (viii) a Dutch Law SME Claim; or (ix) a Convenience Claim. For the avoidance of doubt, Allowed Prepetition First Lien Deficiency Claims and Allowed FMO Deficiency Claims are General Unsecured Claims.

**1.79** **"Governmental Unit"** means all governmental units, which shall include all entities defined in Section 101 (27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

**1.80** **"Holder"** or **"Holders"** means an Entity holding a Claim solely in its capacity as such.

**1.81** **"Impaired"** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.82** **"Impaired Class"** means a Class of Claims or Equity Interests that are Impaired.

**1.83** **"Indemnification Obligations"** means all obligations of the Debtors as provided in the Debtors' certificates of formation or incorporation, bylaws or other organization documents, board resolutions, employment contracts, applicable law or other agreements as of the Effective Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of, members, managers, directors, officers, employees, attorneys, other professionals and agents of the Debtors and their Affiliates who were in place as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted, without prejudice to any parties' rights to object to any such claim for Indemnification Obligations.

**1.84** **"Initial Distribution Date"** means the date on which the Liquidating Trustee makes initial Distributions to Holders of Allowed Claims pursuant to the Plan, which date shall be as soon as reasonably practicable following the date that is thirty (30) days from Effective Date.

**1.85** **"Initial Litigation Funding"** means $500,000 of the Secured Parties' existing cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the pursuit of litigation claims by the Liquidating Trust.

**1.86** **"Initial Non-Litigation Funding"** means $500,000 of the Secured Parties' cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the Liquidating Trust's non-litigation activities.

**1.87** "**Insider**" means "insider" as defined in Section 101(31) of the Bankruptcy Code.

**1.88** "**Insider Claims**" means any Claim held by an Insider against a Debtor.

**1.89** "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

**1.90** "**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of General Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a Lien hereunder.

**1.91** "**Liquidating Trust**" means the trust to be established on the Effective Date in accordance with this Plan.

**1.92** "**Liquidating Trust Actions**" means, collectively, all Avoidance Actions and all Causes of Action held by the Debtors or the Estates.

**1.93** "**Liquidating Trust Agreement**" means the agreement governing, among other things, the retention and duties of the Liquidating Trustee as described therein, which shall be in form and substance materially consistent with the Plan, the Stipulation dated March 29, 2024, between Rabobank and the Creditors Committee, approved by Rabobank (at the direction of the Majority Lenders under the Prepetition First Lien Credit Agreement) and the Creditors' Committee, and included in the Plan Supplement

**1.94** "**Liquidating Trust Assets**" means, in the aggregate, all of the assets of the Debtors and their Estates existing as of the Effective Date (after giving effect to all Distributions required to be made on or prior to the Effective Date, if any), and any other assets transferred to the Liquidating Trust as Liquidating Trust Assets; provided, however, the Liquidating Trust Assets shall not include (1) any claims or Causes of Action expressly released or exculpated pursuant to Article XII hereof, and (2) any Privileged Documents relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction.

**1.95** "**Liquidating Trust Beneficiary**" means a beneficial Holder of a Liquidating Trust Interest. Liquidating Trust Interests are to be distributed to Holders of Allowed Claims as set forth in this Plan.

**1.96** "**Liquidating Trust Indemnified Parties**" means the Liquidating Trust, the Liquidating Trust Board, and their respective Related Parties, each solely in their respective capacity as such.

**1.97** "**Liquidating Trust Interest**" means a beneficial interest in the Liquidating Trust, which interest shall be uncertificated and shall not be assignable or transferable except (i) upon death of

a Holder of a Liquidating Trust Interest or by operation of law and (ii) in accordance with the provisions of the Liquidating Trust Agreement.

**1.98**   "**Liquidating Trust Board**" has the meaning provided in Section 6.02 of the Plan.

**1.99**   "**Liquidating Trustee**" means the Person or Entity, or any successor thereto, designated by the Secured Parties and the Creditors' Committee reasonably acceptable to the Debtors, who shall have all powers and authorities to act as liquidating trustee as provided in the Plan and the Liquidating Trust Agreement solely in its capacity as such.

**1.100**   "**Litigation Funding Reserve**" means the reserve established to fund the pursuit of claims and Causes of Action in the Liquidating Trust.  The maximum amount to be on deposit in the Litigation Funding Reserve at any one time is $500,000, subject to the terms of the Liquidating Trust Agreement.

**1.101**   "**Litigation Proceeds**" means any and all recoveries by the Liquidating Trust on account of any litigation claims or Causes of Action transferred or assigned to the Liquidating Trust.

**1.102**   "**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

**1.103**   "**Other Secured Claims**" means any Secured Claim, other than a Secured Tax Claim, an FMO Claim, or a Prepetition First Lien Claim.

**1.104**   "**Person**" shall have the meaning provided in Section 101(41) of the Bankruptcy Code.

**1.105**   "**Petition Date**" means December 6, 2023, the date on which the Debtors Filed their petitions for relief commencing these Chapter 11 Cases.

**1.106**   "**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

**1.107**   "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each of which shall be in form and substance materially consistent with this Plan, as may be amended, modified, or supplemented from time to time, including, as applicable: (a) the form of Liquidating Trust Agreement; (b) a schedule of assumed Executory Contracts and Unexpired Leases; (c) the Retained Causes of Action Schedule, (d) the form and notice of Effective Date; and (e) any other documentation necessary to effectuate of that is contemplated by this Plan. The Debtors shall File the Plan Supplement no later than five (5) Business Days before the Voting Deadline. Prior to the Effective Date and in accordance with the terms hereof, the Plan Supplement may be modified, amended, supplemented, restated, or withdrawn after it is Filed and such changes shall be made publicly available.

**1.108**   "**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

**1.109**   "**Plan Transaction**" means any transaction described in, approved by, contemplated by or necessary to effectuate the Plan.

**1.110** "**Privileged Documents**" means all documents and communications maintained by the Debtors or any of their Affiliates subject to any attorney-client, work product, or common interest privilege claims.

**1.111** "**Prepetition First Lien Adequate Protection Claim**" means a Claim that is entitled to administrative expense priority status senior to all Administrative Claims, in accordance with the Final Cash Collateral Order, subject to and subordinate to the Carve Out (as defined in the Final Cash Collateral Order).

**1.112** "**Prepetition First Lien Claim**" means any Claim arising in connection with the Prepetition First Lien Credit Agreement other than a Prepetition First Lien Deficiency Claim.

**1.113** "**Prepetition First Lien Collateral**" means the assets, claims and rights and other property that are collateral or proceeds of collateral for the Prepetition First Lien Claims.

**1.114** "**Prepetition First Lien Credit Agreement**" means that certain Third Amended and Restated Credit Agreement, dated as of June 30, 2023 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified). Allowed Adequate Protection Claims shall be indefeasibly paid in full in Cash on the Effective Date or as otherwise may be agreed to by the Debtors and Rabobank.

**1.115** "**Prepetition First Lien Deficiency Claim**" means any Prepetition First Lien Claim to the extent such Claim is not paid in full in Cash on or after the Effective Date.

**1.116** "**Professional**" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court and for the avoidance of doubt shall not include the Liquidating Trustee.

**1.117** "**Professional Fee Claim**" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and on or before the Effective Date. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then any such reduced or denied amount shall not constitute an Allowed Professional Fee Claim.

**1.118** "**Professional Fee Escrow Account**" means an interest-bearing escrow account maintained at the direction of the Liquidating Trustee to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

**1.119** "**Professional Fee Escrow Amount**" means (a) the aggregate amount of unpaid Professional Fee Claims incurred through the Effective Date as estimated by the Professionals and (b) the aggregate accrued U.S. Trustee Fee Claims as estimated by the Debtors.

**1.120** "**Proof of Claim**" means a proof of a Claim against the Debtors Filed with the Bankruptcy Court or the Claims Agent in these Chapter 11 Cases.

**1.121** "**Pro Rata Share**" means with respect to any Distribution to a Class of Claims under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the

aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims that are Disputed in the same Class; provided, that to the extent any Disputed Claims are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims in such Class shall be adjusted to take into account the Disputed Claim Amount that are Disputed (or portion thereof) associated with the Disputed Claim that was not Allowed.

**1.122 "Rabobank"** means Coöperative Rabobank U.A., New York Branch, as administrative agent under the Debtors' Prepetition First Lien Credit Agreement.

**1.123 "Rejection Damages Claims Bar Date"** means the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be established by order of the Bankruptcy Court or as otherwise agreed to in writing by the Liquidating Trustee and the applicable claimant.

**1.124 "Released Parties"** means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

**1.125 "Releasing Parties"** means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

**1.126 "Related Parties"** means, collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the reference Person or Entity.

**1.127 "Retained Causes of Action Schedule"** means a schedule of retained Causes of Action filed in connection with the Plan Supplement. For the avoidance of doubt, the Retained Causes of Action Schedule shall not include any Cause of Action that has been settled, released, or exculpated by entry of a Final Order of the Bankruptcy Court, or is settled, released, or exculpated under the Plan on the Effective Date.

**1.128 "Sale Order"** means the orders of the Bankruptcy Court approving the Sale Transactions.

**1.129 "Sale Transactions"** means any sale transactions pursued by the Debtors pursuant to section 363 of the Bankruptcy Code and approved by the Bankruptcy Court.

**1.130** "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

**1.131** "**SEC**" means the U.S. Securities and Exchange Commission.

**1.132** "**Secured Claim**" means a Claim that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Liquidating Trust and the Holder of such Claim; provided, however, if the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, it shall be treated as a General Unsecured Claim.

**1.133** "**Secured Tax Claim**" means a Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code. For avoidance of doubt, Secured Tax Claim does not include any penalty except as provided under Section 507(a)(8)(G) of the Bankruptcy Code.

**1.134** "**Secured Parties**" means the lender parties to the Prepetition First Lien Credit Agreement and the agent thereunder, together with their respective successors and assigns. The Secured Parties will be the initial recipients of the entirety of Class A Trust Interests.

**1.135** "**Subordinated Claim**" means any Insider Claim and any other Claim against any of the Debtors that is subordinated pursuant to applicable law (other than Section 510(b) of the Bankruptcy Code), including Section 510(a) or 510(c) of the Bankruptcy Code.

**1.136** "**Surviving Debtor**" means a Debtor for so long as the Liquidating Trustee determines such entity must be maintained.

**1.137** "**Third Party**" means a Person or Entity other than a Debtor or the Liquidating Trustee.

**1.138** "**Transferred Privileges**" means, subject to the limitations in Section 6.10, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections solely relating to the Liquidating Trust Actions, in each instance arising before the Petition Date and on or after the earlier of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Liquidating Trust Action (but in no event more than six (6) years prior to the Petition Date).

**1.139** "**Unexpired Lease**" means a lease of non-residential real property to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.140** "**Unimpaired**" means Claims that are unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.141** "**Unimpaired Class**" means a Class containing Unimpaired Claims.

**1.142** "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of New York.

**1.143** "**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to these Chapter 11 Cases.

**1.144** "**Voluntary Petitions**" means the voluntary petitions for relief under chapter 11 of the Bankruptcy Code Filed by the Debtors, which were executed on the Petition Date.

**1.145** "**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Disclosure Statement Order.

**1.146** "**Website**" means the website maintained by the Claims Agent and available at https://cases.ra.kroll.com/mercon.

## ARTICLE II:
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 2.01   Classification**

Claims against the Debtors, other than Administrative Claims, Priority Tax Claims and U.S. Trustee Fee Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| 1 | Prepetition First Lien Claims | Impaired | Yes |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 2A | FMO Claims | Impaired | Yes |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4A | General Unsecured Claims | Impaired | Yes |
| 4B | Dutch Law SME Claims | Impaired | Yes |
| 5 | Convenience Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (deemed to reject) |
| 7 | Subordinated Claims | Impaired | No (deemed to reject) |
| 8 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

**Section 2.02 Consolidation of Debtors for Purposes of Voting, Confirmation and Distributions**

Except as provided in Section 3.08 if Debtor Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), the Plan provides for consolidation of the Estates for purposes of voting, Confirmation, and making Distributions to the Holders of Allowed Claims under the Plan. Voting on the Plan shall be counted on a consolidated basis.

On the Effective Date, and solely for purposes of voting, Confirmation and making Distributions to the Holders of Allowed Claims under the Plan (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases. On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the Debtors, all General Unsecured Claims based upon guaranties of collection, payment or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect. Except as set forth in this Section, such consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, each Debtor (and after the Effective Date the Liquidating Trustee) shall pay all U.S. Trustee Fee Claims on all Distributions, including any Distributions made as a result of this Plan, until the entry of a final decree in these Chapter 11 Cases, dismissal of these Chapter 11 Cases, or conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, Mercon B.V. may (in parallel with this Plan) offer the Dutch WHOA Plan to its creditors only, for approval of those creditors and the Dutch Court in the Dutch WHOA Proceeding. The Holders of Allowed Claims that are also identified as parties eligible to vote on the Dutch WHOA Plan shall cast two votes: one under this Plan and one under the Dutch WHOA Plan. Voting on the two Plans may take place simultaneously, or as otherwise coordinated by this Court and the Dutch Court.

In this regard, creditors and parties in interest should note that the voting requirements for acceptance of the Dutch WHOA Plan differ from those under Bankruptcy Code Section 1126(c), in that approval under Dutch law requires the vote of Holders of Allowed Claims and Equity Interests holding two-thirds in amount of the claims and interests in each Class, without regard to the number of Holders voting to accept. IN RESPECT OF THE DUTCH WHOA PROCEEDING FOR DEBTOR MERCON B.V., ALL CREDITORS OF AND HOLDERS OF EQUITY INTERESTS IN MERCON B.V. WILL BE INVITED TO VOTE ON THE DUTCH WHOA PLAN IN THE EVENT THAT MERCON B.V. SEEKS APPROVAL OF THE DUTCH WHOA PLAN FROM THE DUTCH COURT.

## ARTICLE III:
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**Section 3.01   General**

Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies under the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies under the description of that different Class. A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**Section 3.02   Formation of Debtor Groups for Convenience Only**

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as explicitly provided in the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

**Section 3.03   Administrative Claims**

(a)        All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; (ii) Administrative Claims that have been Allowed on or before the Effective Date; and (iii) 503(b)(9) Claims must be in writing and filed with the Bankruptcy Court and served on the Debtors, the Creditors' Committee, Rabobank, the Liquidating Trustee, and the U.S. Trustee so as to be received by 4:30 p.m. (prevailing Eastern Time) on or before the Administrative Claims Bar Date.

(b)        Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date or agrees with the Debtors or the Liquidating Trustee, as applicable, to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, or (iv) the date on which such Holder of an Allowed Administrative Claim may agree with either the Debtors or the Liquidating Trustee.

**Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any trust created under or in connection with the Plan, or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date.**

**Section 3.04   Professional Fee Claims**

(a)     To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)     Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such good faith estimate to the Debtors, the Creditor's Committee and Rabobank no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

(c)     As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash from their operating account equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow Account in any way. The Professional Fee Escrow Account (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtors or the Liquidating Trust and (y) shall be held in trust for Professionals; provided that any amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidating Trust as Prepetition First Lien Collateral.

(d)     Allowed Professional Fee Claims shall be paid in Cash to such Professionals from the funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order of the Bankruptcy Court; provided that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow Account. Payment of Professional Fee Claims out of the Secured Parties' cash collateral for services provided (and expenses incurred in relation thereto) during the Chapter 11 Cases shall be limited to the extent authorized by the Final Cash Collateral Order or other order of the Bankruptcy Court and for the avoidance of doubt shall not come from the Convenience Claim Pool, the Dutch Law SME Claim Pool, the Initial Litigation Funding or the Initial Non-Litigation Funding.

**Section 3.05   Priority Tax Claims**

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.

**Section 3.06   U.S. Trustee Fee Claims**

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. All monthly reports due before the Effective Date shall be Filed by the Debtors on the Effective Date. The U.S. Trustee shall not be required to File any Administrative Claim in the Chapter 11 Case and shall not be treated as providing any release under the Plan in connection therewith.

**Section 3.07   Classes of Claims and Interests**

(a)      *Prepetition First Lien Claims (collectively, "**Class 1 Claims**")*

Classification: Class 1 Claims consist of all Prepetition First Lien Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, its Pro Rata Share of the assets transferred to the Liquidating Trust that prior to the Petition Date were, or pursuant to an order of the Bankruptcy Court became, subject to Rabobank's Lien (including, but not limited to, inventory, accounts receivable, and certain sale proceeds) or the proceeds thereof, in the amount of such Allowed Prepetition First Lien Claim without interest or premium on or as soon as reasonably practicable following the Effective Date. On or after the Effective Date, and prior to or simultaneously with the Debtors' transfer to the Liquidating Trust of the Liquidating Trust Assets, any and all Cash in the Debtors' possession that comprises the Secured Parties' cash collateral that is not necessary to (i) establish reserves, (ii) fund other amounts required to be transferred to the Liquidating Trust or (iii) make Distributions under this Plan shall be distributed to Rabobank, as agent under the Prepetition First Lien Credit Agreement for distribution to the Secured Parties pursuant to the Prepetition First Lien Credit Agreement.  To the extent any Allowed Prepetition First Lien Claim is not paid in full in Cash on or after the Effective Date, the remaining portion of such Allowed Prepetition First Lien Claim shall be treated for all purposes under the Plan as an Allowed Prepetition First Lien Deficiency Claim in accordance with Class 4A hereof.

Voting: Class 1 Claims are Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.  In accordance with Dutch Restructuring Law, as applicable to the Dutch WHOA Proceeding, Holders of Class 1 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(b)      *Other Secured Claims (collectively, "**Class 2 Claims**")*

Classification: Class 2 Claims consist of all Other Secured Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee.

Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

Voting: Class 2 Claims are Unimpaired by the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law as made applicable to the Dutch WHOA Proceeding, Holders of Class 2 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(c)   *FMO Claims (collectively, "**Class 2A Claims**")*

Classification: Class 2A Claims consist of all FMO Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 2A Claim shall receive, on account of such Claim, Class 2A Trust Interests on or as soon as reasonably practicable following the later of: (a) the Effective Date, and (b) such other date as may be agreed upon between FMO and the Debtors or the Liquidating Trustee and contemporaneous with the distribution of Class 2A Trust Interests to FMO, all of the Debtors' rights, title and interest in the FMO Collateral shall be transferred to the Liquidating Trust; provided that, FMO may elect in writing prior to the Effective Date, to instead receive an assignment of all of the Debtors' rights, title and interest in the FMO Collateral to FMO or another party as designated in writing by FMO.

The Debtors or the Liquidating Trustee, as applicable, may and shall, as soon as reasonably practicable and at FMO's sole expense, take such actions required under the relevant foreign law to achieve the assignment of the Debtors' rights, title and interest in the FMO Collateral to the Liquidating Trust or FMO, as applicable, which shall include obtaining all relevant approvals and satisfying any and all perfection requirements under the relevant foreign law, and no Holders of Claims or Equity Interests may object to or frustrate such actions.

To the extent the FMO Collateral is transferred to the Liquidating Trust, FMO shall retain a Lien on such collateral or the proceeds of such collateral (to the extent that such collateral is sold by the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date, although FMO shall have no claims against the Liquidating Trustee or any other Liquidating Trust Assets as set forth in the Liquidating Trust Agreement, until such time as FMO (i) has been paid Cash equal to the amount of its Allowed Class 2A Claim, (ii) has received a transfer of the FMO Collateral from the Liquidating Trust, or (iii) has been afforded such other treatment as to which FMO and the Liquidating Trustee shall have agreed upon in writing.

To the extent any Allowed FMO Claim is not paid in full in Cash on or after the Effective Date, the remaining portion of such Allowed FMO Claim shall be treated under the Plan as an Allowed FMO Deficiency Claim in accordance with Class 4A hereof; provided that the FMO Collateral shall be deemed to have a value of zero as of the Effective Date if FMO elects to receive Class 2A Trust Interests and the underlying FMO Collateral is not in the Debtors' possession or control as of the Confirmation Date; provided further that notwithstanding the value of the FMO Collateral, whether deemed zero or otherwise, FMO shall still receive Class 2A Interests based on the amount of its Allowed FMO Claim in the event that the Debtors' right, title and interest is transferred to the Liquidating Trust.

<u>Voting</u>: Class 2A Claims are Impaired under the Plan. Holders of Allowed Class 2A Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 2A Claims that hold Claims against Mercon B.V. are entitled to vote on the Dutch WHOA Plan.

(d)    *Other Priority Claims (collectively, "**Class 3 Claims**")*

<u>Classification</u>: Class 3 Claims consist of all Other Priority Claims against the Debtors.

<u>Treatment</u>: Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee, as applicable.

<u>Voting</u>: Class 3 Claims are Unimpaired by the Plan. Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 3 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(e)    *General Unsecured Claims (collectively, "**Class 4A Claims**").*

<u>Classification</u>: Class 4A consists of all General Unsecured Claims against the Debtors.

<u>Treatment</u>: Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4A Claim (other than a Holder of an Allowed Prepetition First Lien Deficiency Claim) shall receive a Pro Rata Share of Class B Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee. Holders of Allowed Prepetition First Lien Deficiency Claims shall receive a Pro Rata Share of Class A Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee. On a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement.

<u>Voting</u>: Class 4A Claims are Impaired under the Plan. Holders of Class 4A Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 4A Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(f)    *Dutch Law SME Claims (collectively, "**Class 4B Claims**")*

23-

Classification: Class 4B consists of all Dutch Law SME Claims other than those Claims that are Convenience Claims or whose Holders make the Convenience Class Election.

Treatment: In accordance with Dutch Restructuring Law and as required to obtain confirmation of the Dutch WHOA Plan by the Dutch Court, Holders of Allowed Dutch Law SME Claims will receive, on or within 30 days from the Effective Date of the Plan, cash in the amount of 20% of their Allowed Claims along with Class B Trust Interests for the balance of their Claims; *provided, however,* that no Distribution shall be made from the Liquidating Trust in respect of those Class B Trust Interests until such time as the Holders of Allowed General Unsecured Claims in Class 4A of the Plan shall have received Distributions in respect of their Class B Trust Interests totaling 20% of the amount of their Allowed Claims.

Voting: Holders of Class 4B Claims are entitled to vote to accept or reject the Plan. In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 4B Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(g)    *Convenience Claims (collectively, "**Class 5 Claims**")*

Classification: Class 5 consists of all Convenience Claims.

Treatment: Except to the extent that a Holder of an Allowed Class 5 Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 5 Claim is Allowed on the Effective Date or (ii) the date on which such Class 5 Claim becomes an Allowed Class 5 Claim, each Holder of an Allowed Class 5 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 5 Claim such Holder's Pro Rata Share of the Convenience Claims Pool.

Voting: Class 5 Claims are Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.  In accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 5 Claims that hold Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(h)    *Intercompany Claims (collectively, "**Class 6 Claims**")*

Classification: Class 6 Claims consist of all Intercompany Claims against the Debtors.

Treatment: Holders of Class 6 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting: Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 6 Claims against Mercon B.V. may be entitled to vote on the WHOA Plan.

(i)    *Subordinated Claims (collectively, "**Class 7 Claims**")*

Classification: Class 7 Claims consist of all Subordinated Claims against the Debtors.

Treatment: Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting: Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however,* that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 7 Claims that hold Subordinated Claims against Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

(j)　　*Equity Interests (collectively, "**Class 8 Equity Interests**")*

Classification: Class 8 Equity Interests consist of all Equity Interests in the Debtors.

Treatment: On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests; *provided, however*, that in accordance with Dutch law the Equity Interests in Debtor Mercon B.V. shall not be cancelled until such time as Mercon B.V. is formally dissolved under Dutch law.

Voting: Class 8 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan. Holders of Class 8 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan; *provided, however*, that in accordance with Dutch Restructuring Law, as made applicable to the Dutch WHOA Proceeding, Holders of Class 8 Equity Interests that hold Equity Interests in Mercon B.V. may be entitled to vote on the Dutch WHOA Plan.

## Section 3.08    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in Section 3.07, nothing herein shall affect the Debtors' or the Liquidating Trustee' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

Notwithstanding anything to the contrary in Section 3.07, in the event the Dutch WHOA Plan is not sanctioned by the Dutch Court, or Mercon B.V. does not seek approval of the Dutch WHOA Plan from the Dutch Court, and Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor) shall not be entitled to any distribution from the Dutch Law SME Claim Pool or any Pro Rata Share of the assets transferred to the Liquidating Trust beyond what such Holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V. and as such will become Liquidating Trust Beneficiaries with Class C Trust Interests, unless the Liquidating Trustee and such Holder agree otherwise. This applies only in respect of Claims against Mercon B.V. and not against any other Debtor, and does not affect the rights of any Holders of Claims in respect of any other Debtor. For the avoidance of doubt, the treatment of Claims against Debtors other than Mercon B.V. is not being modified by this Section 3.08.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

### Section 4.01   Impaired Classes of Claims Entitled to Vote

Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan are entitled to vote and any such properly submitted vote shall be counted in determining whether such Impaired Class of Claims has voted to accept or reject the Plan. Accordingly, only the votes of Holders of Class 1, Class 2A, Class 4A, Class 4B, and Class 5 Claims shall be solicited with respect to the Plan.

### Section 4.02   Parallel Vote on Dutch WHOA Plan ( Mercon B.V. Holders of Allowed Claims Only)

In parallel with this Chapter 11 Plan, Mercon B.V. intends to offer the Dutch WHOA Plan solely to its creditors and equity holders who are eligible to vote on that Plan under Dutch Restructuring Law as described below. Certain features of this Plan have been included with respect to Debtor Mercon B.V. so as to comply with Dutch Restructuring Law and thereby promote the acceptance and approval of both Plans.

The Holders of Allowed Claims against and Equity Interests in Mercon B.V. that are also identified as parties eligible to vote on the Dutch WHOA Plan shall cast two separate votes: one on this Plan and one on the Dutch WHOA Plan. Voting may take place simultaneously, or otherwise as provided by the Bankruptcy Court and the Dutch Court.

Under the Dutch WHOA Plan, all creditors and equity holders of Mercon B.V. may be entitled to vote, including those creditors and equity holders that for the purposes of this Plan are deemed to accept or reject and not entitled to vote on this Plan. Under the Dutch WHOA Plan, all votes of holders of claims and interests shall be solicited with respect to the Plan, even if such holders receive no distribution under the WHOA Plan, as Dutch Restructuring Law does not accommodate a presumption of acceptance or rejection in lieu of a vote.

### Section 4.03   Acceptance by an Impaired Class

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

### Section 4.04   Presumed Acceptances by Unimpaired Classes

Holders of Class 2 and Class 3 Claims are Unimpaired under the Plan. Under Section 1126(f) of the Bankruptcy Code, Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of Holders of such Unimpaired Claims shall not be solicited.

### Section 4.05   Presumed Rejection by Certain Classes

Holders of Class 6, Class 7, and Class 8 Claims are Impaired under the Plan and are receiving no Distribution on account of their Claims and Equity Interests. Holders of such Claims

or Equity Interests are conclusively presumed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### Section 4.06   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

### Section 4.07   Subordinated Claims

Except as may be the result of the settlement, allowance, classification, and treatment of all Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidating Trustee, as applicable, reserve the right to reclassify any Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

### Section 4.08   Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V:
## SETTLEMENTS AND COMPROMISES

### Section 5.01   Compromise and Settlement of Claims

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. All Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

### Section 5.02   Orders in Aid of Compromise and Settlement

Pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and other applicable law, the Liquidating Trustee may request, and the Bankruptcy Court retains the authority for, the entry of a bar order or channeling injunction in connection with the compromise and settlement of any Cause of Action relating to the Debtors or the Liquidating Trust.

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 6.01   Liquidating Trust**

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to receive post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer – and will be authorized to execute, deliver, receive and exchange such other and further steps and documents under the applicable law as may be necessary to transfer – to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets free and clear of all Liens, Claims and encumbrances except as otherwise set forth in this Plan, and all such Liquidating Trust Assets shall be deemed to vest in the Liquidating Trust pursuant to Section 1141(b) of the Bankruptcy Code. The Liquidating Trust shall have such rights, powers, duties and obligations as set forth in Article IX of the Plan, other provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the liquidating purpose of the Liquidating Trust. To the extent the transfer of Liquidating Trust Assets to the Liquidating Trust under foreign law is incompatible or invalid pursuant to such foreign law, any of the Debtors or the Liquidating Trustee may , to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.01 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan; provided however, that as to FMO Collateral transferred to the Liquidating Trust such transfer shall be in compliance with Section 3.07(c) of the Plan.

**Section 6.02   Liquidating Trust Board**

On the Effective Date, a five (5) member board shall be established pursuant to this Plan to consult with the Liquidating Trustee in the implementation of the Plan (the "**Liquidating Trust Board**"). As set forth in the Liquidating Trust Agreement, the Liquidating Trust Board shall have: (i) two members selected by the holders of Prepetition First Lien Claims; (ii) two members selected by representatives of the Creditors' Committee; and (iii) one member mutually selected by the holders of Prepetition First Lien Claims and the Creditors' Committee.  The Liquidating Trust Board shall have access to and the right to consult with the Liquidating Trustee in connection with the implementation of the Plan and administration of the Liquidating Trust on and after the Effective Date. Governance rights as to all assets are set forth in detail in the Liquidating Trust Agreement.  Notwithstanding the foregoing or anything else to the contrary herein, the two members of the Liquidating Trust Board selected by the holders of Class A Trust Interests shall have sole governance rights with respect to any matters relating to Prepetition First Lien Collateral.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Board may remove the Liquidating Trustee for, among other things, Cause (as defined in the Liquidating Trust Agreement). Upon the resignation, removal, or inability of the Liquidating Trustee to serve, then the Liquidating Trust Board shall appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court.

### Section 6.03    Funding for the Plan

The Plan shall be funded from the Debtors' Cash on hand and other Liquidating Trust Assets.

### Section 6.04    Funding of Liquidating Trust and Disputed Claims Reserves

(a)    On or prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall cause to be funded from Cash on hand the Disputed Claims Reserve. After the Effective Date, the Liquidating Trustee may fund other reserves, as he or she deems necessary or appropriate; *provided, however*, that FMO Collateral (and any proceeds thereof) may only be used to fund such other reserves to the extent that FMO Collateral (or any proceeds thereof) are paid to the Liquidating Trust pursuant to Section 6.05(c) or Section 12.09.

(b)    On or prior to the Effective Date, $500,000 of the Secured Parties' existing cash collateral in the possession of the Debtors shall be earmarked as the Initial Litigation Funding and used to fund initial administrative costs of the pursuit of Claims and Causes of Action by the Liquidating Trust and will be the first amounts deposited into the Litigation Funding Reserve.

(c)    On or prior to the Effective Date, $500,000 of the Secured Parties' existing cash collateral in the possession of the Debtors shall be earmarked as the Initial Non-Litigation Funding and used to fund initial administrative costs of the Liquidating Trust's non-litigation activities.

(d)    Other than the Initial Litigation Funding and Initial Non-Litigation Funding, the Secured Parties and holders of Class A Trust Interests shall have no further obligation to provide funding to the Liquidating Trust from cash collateral or otherwise.

### Section 6.05    Allocation of Proceeds of Liquidating Trust Assets

(a)    <u>**Allocation of Litigation Proceeds**</u>

*Litigation Proceeds will be Distributed as follows:*

(i)    First, the Litigation Proceeds will be deposited into the Litigation Funding Reserve until the amount in the Litigation Funding Reserve is restored to $500,000, <u>provided that</u> no more than 10% of the Litigation Proceeds received from any one recovery will be deposited into the Litigation Funding Reserve. The amount in the Litigation Funding Reserve at any one time shall not be greater than $500,000;

(ii)    Until the Initial Litigation Funding has been repaid to the Secured Parties in full, after the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 70% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 30% of any remaining Litigation Proceeds shall be allocated to holders of Class B Trust Interests and, when applicable, Class C Trust Interests.

(iii)    After the Initial Litigation Funding has been repaid to the holders of Class A Trust Interests in full, 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class B and, when applicable, Class C Trust Interests.

(iv)    To the extent any amounts of the Litigation Funding Reserve remain after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests and the distribution of all remaining assets of the Trust, such amounts shall be distributed 50% to the holders of Class A Trust Interests and 50% to the holders of Class B Trust Interests and, when applicable, Class C Trust Interests.

(v)    In the event a Holder of an Allowed Class 2A Claim elects to receive Class 2A Trust Interests pursuant to Section 3.07(c), such Holder will receive 100% of Litigation Proceeds that constitute FMO Collateral on account of such Allowed Class 2A Claim, but not exclusive of any other distributions such Holder may be entitled to on account of such Allowed Class 2A Claim or any other Allowed Claim, in each case, subject to subsection (c) below.

(vi)    Notwithstanding the other provisions of this Article VI, as a result of the Secured Parties' funding of the Convenience Claim Pool, holders of Class A Trust Interests shall be subrogated to the Claims of holders of Allowed Class 5 Claims that receive distributions out of the Convenience Claim Pool to the extent of such distributions (up to the amount of $1,000,000), such that holders of Class A Trust Interests shall participate in distributions to be made pursuant to Section 6.05(a)(ii)-(iv) and Section 6.05(b)(ii) to holders of Class B Trust Interests and Class C Trust Interests as if the holders of Allowed Class 5 Claims had received Class B Trust Interests rather than distributions out of the Convenience Claim Pool.

(b)    **Allocation of Proceeds of Non-Litigation Liquidating Trust Assets**

(i)    Proceeds of Prepetition First Lien Collateral shall be allocated to the holders of Class A Trust Interests until the claims of such holders have been satisfied in full.

(ii)    Proceeds (other than Litigation Proceeds) of Liquidating Trust Assets that do not constitute  Prepetition First Lien Collateral shall be used to repay the Initial Non-Litigation Funding to the holders of Class A Trust Interests.  Once the Initial Non-Litigation Funding has been repaid to the holders of Class A Trust Interests, all holders of Liquidating Trust Interests will receive a Pro Rata Share of proceeds (other than Litigation Proceeds) of Liquidating Trust Assets that do not constitute Prepetition First Lien Collateral.

(iii)    In the event a Holder of an Allowed Class 2A Claim elects to receive Class 2A Trust Interests pursuant to Section 3.07(c), proceeds of FMO Collateral shall be allocated to the holders of Class 2A Trust Interests until the claims of such holders have been satisfied in full, subject to subsection (c) below.

(c)    **Nicaraguan Assets**

(i)    The Liquidating Trust Agreement contains provisions regarding allocation of (i) proceeds for any monetization of the Debtors' assets (including real property) and inventory located in Nicaragua, including from applicable insurance policies or the

proceeds thereof, and (ii) Litigation Proceeds from Causes of Action arising out of the Debtors' assets (including real property) and inventory located in Nicaragua, to ensure that the rights of parties with Liens on assets in Nicaragua, including, without limitation, the Secured Parties and FMO, are preserved. For the avoidance of doubt, to the extent that the Liquidating Trustee liquidates any FMO Collateral with the written consent of FMO, any reasonable and documented fees and expenses incurred by the Liquidating Trustee in connection therewith shall be surcharged against any recoveries on such FMO Collateral and the Liquidating Trustee shall be authorized to allocate those surcharged proceeds to repayment of the Initial Litigation Funding and Initial Non-Litigation Funding, as applicable, or otherwise as provided in the Liquidating Trust Agreement.

**Section 6.06   Corporate Action**

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, the Liquidating Trustee or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates or the Liquidating Trustee. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as appropriate, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.06 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

**Section 6.07   Directors, Officers and Managers**

As of the Effective Date, each of the Debtors' existing officers, directors, and managers, with the exception of Mercon B.V.'s managing director provided that the Dutch Court sanctions the Dutch WHOA Plan, shall be deemed to be dismissed (unless previously dismissed or terminated), in their respective capacities before the Effective Date, in each case without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers, directors or managers of such Debtor and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). Thereafter, the Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidating Trust Assets. To the extent the dismissal of such Debtor's officers, directors or managers by virtue of (the Confirmation of) this Plan is incompatible or invalid pursuant to the relevant foreign corporate law, the Debtors or the Liquidating Trustee, as applicable, shall, to the extent necessary to comply with the terms of this Plan,  take any such reasonable corporate actions compatible with the relevant foreign law at the sole expense of the Liquidating Trust to achieve

the same result as contemplated by this Section 6.07 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

**Section 6.08   Debtors' Professionals**

On the Effective Date, the Professionals retained by the Debtors shall be deemed to have completed their services as Professionals to the Debtors, but they shall be able to File final applications for reasonable compensation and reimbursement of expenses through the Effective Date as provided for in this Plan and file objections to other final applications filed by any Professional. Among other things, the Liquidating Trust may retain its own Professionals to appear in the Dutch WHOA Proceeding and the Brazilian Ancillary Case in accordance with the Liquidating Trust Agreement. The Professionals to the Debtors may be retained by the Liquidating Trustee by mutual agreement.

**Section 6.09   Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court order, approvals, authorization, or consents, unless such an order is expressly required pursuant to the Plan.

**Section 6.10   Privilege**

The Transferred Privileges shall be transferred, assigned, and delivered to the Liquidating Trust, at the sole expense of the Liquidating Trust, including but not limited to reasonable attorneys' fees and costs incurred in connection with such transfers or request for transfer of documents or communications containing privileged material, without waiver, limitation, or release, and shall vest with the Liquidating Trust on the Effective Date and be jointly held by the Debtors and the Liquidating Trust on and after the Effective Date; *provided, however*, that notwithstanding the foregoing or anything in this Plan to the contrary, the Transferred Privileges do not and shall not include any privileges relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction. Notwithstanding the establishment of the Liquidating Trust or the appointment of the Liquidating Trustee, the Liquidating Trustee on behalf of the Liquidating Trust will share and be entitled to use all privileges of the Debtors. No such privilege will be deemed waived by the disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to the attorney-client privilege, work product privilege or other immunities, or protections from disclosure held by the Debtors. The Debtors' privileges will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer, assignment and delivery and sharing and use of the Transferred Privileges as provided herein do not impair or waive any privilege. Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed a waiver of the work product privilege by any party who may be entitled to assert such privilege.

**Section 6.11   Exemption from Certain Taxes and Fees**

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## Section 6.12   Preservation, Pursuit and Resolution of Liquidating Trust Actions

Other than Causes of Action and Avoidance Actions against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, including but not limited to the Final Cash Collateral Order, the Debtors and their Estates reserve and do not waive, any and all Causes of Action and Avoidance Actions, including any actions specifically enumerated in the Disclosure Statement or the Plan Supplement to the fullest extent permitted by the law.

On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors and the Estates may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement. In accordance with Bankruptcy Code Section 1123(b)(3), the Liquidating Trustee shall also serve as a representative of the Estates with respect to any and all Liquidating Trust Actions that were Estate Assets and, subject to the Liquidating Trust Agreement, shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidating Trust Actions in any court or other tribunal.

The Liquidating Trust shall retain Liquidating Trust Actions notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Liquidating Trust Actions that a Debtor may hold against any Entity shall vest in the Liquidating Trust, except as otherwise expressly provided in the Plan or as expressly released during the pendency of the Debtors' Chapter 11 Cases.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action or Avoidance Action against them as any indication that the Debtors, the Liquidating Trustee will not pursue any and all available Causes of Action or Avoidance Actions against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or

33-

otherwise), or laches, shall apply to such Causes of Action or Avoidance Actions upon, after, or as a consequence of the Confirmation or Consummation. The Debtors or the Liquidating Trustee, as applicable, reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates unless as otherwise provided in the Final Cash Collateral Order.

**Section 6.13    The Surviving Debtor(s) Pending the Closing of the Cases**

Each Surviving Debtor shall continue in existence after the Effective Date as a post-Effective Date entity. Without the need for any corporate action and without the need for any corporate or limited liability company filings, (a) all Equity Interests of the Surviving Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, new membership interests of each Surviving Debtor, representing all of the issued and outstanding membership interests of each such Surviving Debtor, shall be issued to the Liquidating Trust, which new membership interests so issued shall be deemed to have been offered and sold to the Liquidating Trust in reliance on the exemption from registration under the Securities Act of 1933 afforded by section 4(a)(2) thereof. Notwithstanding the foregoing, the Surviving Debtors and/or Liquidating Trustee as appropriate may take such other and further actions as may be necessary to cancel, extinguish and/or transfer such Equity Interests and membership interests as may be required under applicable foreign laws, and to wind up and dissolve the Surviving Debtors under such laws.

On and after the Effective Date, each Surviving Debtor will be a wholly-owned subsidiary of the Liquidating Trust, and the Liquidating Trust may expend with respect to such Surviving Debtor such amounts as the Liquidating Trust determines is appropriate, in its discretion. The sole manager of each Surviving Debtor shall be the Liquidating Trustee whose rights and powers with respect to operations, employment, compensation, indemnity and exculpation as to each Surviving Debtor shall, to the greatest extent possible, be the same as the Liquidating Trustee's rights and powers in connection with the Liquidating Trust. The Liquidating Trustee may take such steps as appropriate to maintain the good standing of the applicable Surviving Debtor. Until a Surviving Debtor is dissolved, all cash or property received by the Surviving Debtor, net of any expenses of the Surviving Debtor incurred after the Effective Date, shall be transferred to the Liquidating Trust. Each Surviving Debtor (a) shall have the Liquidating Trust as its sole member and the Liquidating Trust shall be deemed to be admitted as a member of each Surviving Debtor on the Effective Date, (b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the Liquidating Trust as set forth in Section 9.02 of the Plan, and (d) shall be subject to the same limitations imposed on the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement. To the extent the provisions of this Plan and the Confirmation Order (automatically) replacing any corporate action required by the Debtors under foreign law are incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.13 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

**Section 6.14    Closing of the Debtors' Cases**

The Confirmation Order shall authorize, pursuant to Section 350 of the Bankruptcy Code, that on the Effective Date and except as set forth herein, the Dissolving Debtors' Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court. For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Liquidating Trust Actions that the Liquidating Trust may assert in accordance with the Plan. Notwithstanding anything to the contrary in the Bankruptcy Rules, when all Liquidating Trust Assets have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the cases of any Surviving Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## Section 6.15 Cancellation of Existing Agreements and Existing Stock and/or Membership Interests

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests shall be canceled, and shall be of no further force as to the Debtors, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.15 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

## Section 6.16 Operations of the Debtors Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, with authority to sell assets of the Debtors in accordance with Section 363 of the Bankruptcy Code or otherwise, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

## Section 6.17 Dissolution of Debtors

On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation. To the extent the construct of this Plan and the Confirmation Order replacing any corporate action required by the Debtors under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors or the Liquidating Trustee, as applicable, may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 6.17 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object

to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

## Section 6.18  Dissolution of the Creditors' Committee

On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Creditors' Committee shall be deemed to have completed their services as Professionals to the Creditors' Committee. As provided for in this Plan, the Creditors' Committee and its Professionals shall be able to File final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section 6.18, the Creditors' Committee shall have standing and a right to be heard following the dissolution of the Creditors' Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. The Professionals to the Creditors' Committee may be retained by the Liquidating Trustee.

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## Section 7.01  Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan or the Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan.

Any Executory Contract and Unexpired Lease in relation to Mercon B.V. shall only be deemed automatically rejected to the extent that and under the condition precedent that as part of the Dutch WHOA Proceeding, the Dutch Court provides consent to Mercon B.V. to terminate such Executory Contract or Unexpired Lease (as provided for under Dutch law).

## Section 7.02  Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure under each Executory Contract and Unexpired Lease, if any, to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (a) the amount of the Cure, (b) the ability of the Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining

to assumption, the Cure required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court. In the absence of such consent, the Liquidating Trustee may seek approval of any such settlement from the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption pursuant to the Plan and proposed Cure to be sent to applicable counterparties, the Creditors' Committee and Rabobank. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than seven (7) days after service of notice of the Debtors' proposed assumption and associated Cure. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**Section 7.03   Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Claims Agent and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (c) participate in any Distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without**

**the need for any objection by the Debtors or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

## Section 7.04 Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## Section 7.05 Indemnification Obligations

Indemnification Obligations owed to any Professionals to the extent that such Indemnification Obligations relate to the period after the Petition Date, excluding claims resulting from gross negligence, fraud, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort, and breach of their contracts with the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of the Plan.

## Section 7.06 Insurance Policies

Each insurance policy, including the D&O Policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

**Section 7.07    Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**ARTICLE VIII:**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**Section 8.01    Calculation of Amounts to be Distributed**

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trust, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VIII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

**Section 8.02    Rights and Powers of the Debtors and Liquidating Trustee**

All Distributions required to be made under the Plan on or before the Effective Date shall be made by the Debtors or thereafter by the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall have the right to object, allow, or otherwise resolve any Claim as provided herein and in the Liquidating Trust Agreement.

The Debtors and the Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of their duties except as ordered by the Bankruptcy Court. Additionally, in the event that the Debtors or Liquidating Trust, as applicable, is ordered to provide such a bond, insurance or surety, all costs and expenses of procuring any such bond, insurance or surety shall be paid with Cash from the Liquidating Trust Assets.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code, including, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including the right (subject to the provisions of the Plan and the Liquidating Trust Agreement) to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (b) sell or otherwise liquidate any of the Liquidating Trust Assets in accordance with Section 363 of the Bankruptcy Code or otherwise; (c) prosecute, settle, abandon or compromise any Claims or Liquidating Trust Actions; (d) make Distributions contemplated by the Plan; (e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner

approved by the Bankruptcy Court such objections; (g) employ and compensate professionals, including professionals previously retained by the Debtors and/or the Creditors' Committee, *provided* that any such employment and compensation shall comply with the procedures set forth in the Liquidating Trust Agreement and any such compensation shall be made only out of the Liquidating Trust Assets; and (h) file all federal, state and local tax returns if necessary.

The Liquidating Trustee shall assume any outstanding responsibility of the Debtors under the Plan.

The Liquidating Trustee shall have the full authority, subject to the provisions of the Plan and the Liquidating Trust Agreement, to take any steps necessary to administer the Plan, including the duty and obligation to liquidate, sell or otherwise dispose of Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Claims and Liquidating Trust Actions. For the avoidance of doubt, nothing within the *Order Authorizing the Debtors to Establish Procedures for Settling Certain Claims* signed on April 16, 2024 [Doc. No. 353], shall apply to or otherwise bind the Liquidating Trustee.

From and after the Effective Date, and subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle any dispute relating to any Claims or any Liquidating Trust Actions, without any further approval by the Bankruptcy Court or any other Entity. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

In exercise of all of the foregoing rights and powers, the Liquidating Trustee shall file a motion with the Bankruptcy Court seeking the entry of an order appointing the Liquidating Trustee or his or her designee as successor foreign representative in the Brazilian Ancillary Case.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses (including reasonable attorneys' fees and expenses) incurred by the Liquidating Trustee, and expenses incurred by the Liquidating Trust Board, on or after the Effective Date shall be paid in Cash from the Liquidating Trust Assets.

**Section 8.03  Delivery of Distributions and Undeliverable or Unclaimed Distributions**

(a)    *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Nothing in this Section 8.03 shall impair or limit the transferability of Liquidating Trust Interests in accordance with Section 9.12 of the Plan and the Liquidating Trust Agreement.

(b)    *Delivery of Distributions in General*

1.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Liquidating Trustee on the one hand, and the Holder of a Disputed Claim, on the

other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, an amount in Cash as would have been distributed to such Holder (on account of such Holder's Liquidating Trust Interests) on the Initial Distribution Date (plus any subsequent Distributions that would have been paid as of that date) if its Claim had been an Allowed Claim on the Effective Date. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

Upon a Disputed Claim becoming a Disallowed Claim in whole or in part, any Cash held in the Disputed Claims Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

2.      Distributions

On and after the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall make the Distributions required to be made on account of Allowed Claims under the Plan.

The Liquidating Trustee, may make periodic Distributions of additional Cash to certain or all Liquidating Trust Beneficiaries at any time following the Initial Distribution Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the other terms of, the Plan, the Liquidating Trust Agreement and applicable law.

(c)     *Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtors or the Liquidating Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $1,000,000, in which case such Distributions shall be deferred to the next Distribution Date; provided, however, that the foregoing minimum aggregate Distribution threshold shall not apply to Distributions from the Disputed Claim Reserve made on account of a Disputed Claim becoming an Allowed Claim in accordance with Section 8.03(b)(1) of the Plan, (ii) if the amount to be distributed to that Holder on the particular Distribution Date is less than $250.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to any such Holder is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims;

(d)     *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder; *provided*, *however*, that the Liquidating Trustee may deem such Distributions unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the Initial Distribution Date. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

(e)    *Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

## Section 8.04   Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee is authorized to require each Creditor and Liquidating Trust Beneficiary to provide the Liquidating Trustee with an executed an IRS Form W-9 or (if the payee is a foreign Entity) an executed IRS Form W-8 and any other forms or documents reasonably requested as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim or Liquidating Trust Beneficiary does not provide an appropriate IRS Form W-9 or (if the payee is a foreign Entity) an appropriate IRS Form W-8 or any other tax-related forms or documents reasonably requested by the Liquidating Trustee within 90 days of written request, the Liquidating Trustee may deem said Creditor or Liquidating Trust Beneficiary to have forfeited their Distribution with no further notice required.

**Section 8.05   Claims Paid or Payable by Third Parties**

(a)      *Claims Paid by Third Parties; Recourse to Collateral*

The Liquidating Trustee shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without an objection to the Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidating Trustee, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

(b)      *Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)      *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policies.

**ARTICLE IX:
THE LIQUIDATING TRUST**

**Section 9.01   Liquidating Trust Creation**

On the Effective Date, the Liquidating Trust shall be established and become effective. The Liquidating Trust Agreement shall (a) be in form and substance consistent in all respects with this Plan and (b) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All relevant parties (including the Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will take

all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

**Section 9.02    Purpose of the Liquidating Trust**

The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

**Section 9.03    Transfer of Assets to the Liquidating Trust**

The Debtors and the Liquidating Trustee shall establish the Liquidating Trust for the benefit of and on behalf of the Liquidating Trust Beneficiaries pursuant to the Liquidating Trust Agreement, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the provisions herein, notwithstanding any prohibition on assignment under non-bankruptcy law.

The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date, all Liquidating Trust Assets shall vest and be deemed to vest in the Liquidating Trust in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any Assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trustee, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors shall not transfer or be deemed to have transferred to the Liquidating Trust any claims or Causes of Action (a) released pursuant to this Plan or (b) exculpated pursuant to Article XII hereof to the extent of any such exculpation.

To the extent the transfer, assignment and delivery of Liquidating Trust Assets to the Liquidating Trust under foreign law is incompatible or invalid pursuant to such foreign law, the Debtors may, to the extent necessary to comply with the terms of this Plan, take any such reasonable corporate actions compatible with the relevant foreign law to achieve the same result as contemplated by this Section 9.03 as soon as reasonably practicable, and no Holders of Claims or Equity Interests may object to or frustrate such action unless such action would modify the treatment of such Holders of Claims or Equity Interests under this Plan.

## Section 9.04   Tax Treatment of the Liquidating Trust

For all federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a Liquidating Trust under 26 C.F.R.§ 301.7701–4 and that the Liquidating Trust is owned by the Liquidating Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the Liquidating Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Liquidating Trust's duration. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to any Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative Liquidating Trust Interest.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trustee may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing

45-

authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall send annually to each Liquidating Trust Beneficiaries who is the holder of an Allowed Claim a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instructing all such Liquidating Trust Beneficiaries to report such items on their Federal tax returns (and state tax returns if required by applicable law).

## Section 9.05   Distribution; Withholding

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee shall make, or cause to be made, all Distributions under the Plan and the Liquidating Trust Agreement other than those Distributions made by the Debtors on or before the Effective Date.

The Liquidating Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Trustee's sole discretion, required by the Plan or Liquidating Trust Agreement, or applicable law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidating Trustee may require any Liquidating Trustee Beneficiary to furnish to the Liquidating Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9, IRS Form W8-BEN or similar tax form, and the Liquidating Trustee may condition any Distribution upon receipt of such identification number or executed document.

## Section 9.06   Insurance

The Liquidating Trust shall maintain customary insurance coverage for the protection of Persons or Entities serving as administrators and overseers of the Liquidating Trust and directors and officers of any Surviving Debtor on and after the Effective Date and costs associated therewith shall come out of the Initial Non-Litigation Funding.

## Section 9.07   Liquidating Trustee Duties

In addition to the rights and powers set forth in section 8.02, the powers and duties of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to make Distributions thereunder and wind down the business and affairs of the Debtors. The salient terms of the Liquidating Trustee's powers, rights and duties, shall be set forth in the Liquidating Trust Agreement.

## Section 9.08   Other Rights and Duties of the Liquidating Trustee

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust under the Plan and Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy; and (b) provide for the retention and storage of such books, records, and files until such time as the

Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

The Liquidating Trustee shall be authorized to collect and liquidate all uncollected and unliquidated Liquidating Trust Assets, including the Liquidating Trust Actions and tax refunds. The Liquidating Trustee shall be authorized to accept Third-Party recoveries, and to make Distributions.

Any and all rights to conduct investigations with respect to Causes of Action, Avoidance Actions or claims not released by the Debtors shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

The Liquidating Trustee shall be entitled to reasonable compensation in an amount determined by the Liquidating Trust Board as set forth in the Liquidating Trust Agreement.

**Section 9.09   Disputed Claims Reserve**

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve. The Liquidating Trustee may, in his or her reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as Disputed Claims are resolved, and such amounts may be distributed on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. For the purposes of this Section 9.09, Disputed Claims may also include claims of creditors of Mercon B.V. that are entitled to payment under the Dutch WHOA Plan but that are not qualified as Allowed Claims under this Plan (e.g. claims of creditors that were not filed before the Claims Bar Date).

**Section 9.10   Wind-Down**

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any Surviving Debtor and any non-Debtor Entity directly or indirectly owned or controlled by any of the Debtors.  To the extent any such Entity is not necessary to carry out the purposes of the Plan or the Liquidating Trust Agreement, the Liquidating Trustee shall commence the wind down and dissolution of all such Entities as soon as practicable after the Effective Date.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) in the Liquidating Trustee's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (2) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are

registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, shall be deemed to have cancelled pursuant to this Plan all Equity Interests, and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action and Avoidance Actions that the Liquidating Trustee may assert or substitute into as plaintiff in accordance with the Plan and the Liquidating Trust Agreement and notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims and as otherwise provided for in the Plan.

**Section 9.11   Post-Effective Date Reporting**

Beginning twenty (20) days after the first full quarter-end following the Effective Date and continuing thereafter so long as the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File but not serve a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee. Among other things, the report shall include a schedule of (a) the Liquidating Trust's receipts and disbursements, (b) all Liquidating Trust Assets held by the Liquidating Trust, and (c) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's quarterly report shall be provided to the Liquidating Trust Board upon Filing, and shall be posted on the Website.

**Section 9.12   Termination of the Liquidating Trust and Liquidating Trust Board**

The Liquidating Trustee and members of the Liquidating Trust Board shall be discharged and the Liquidating Trust and Liquidating Trust Board shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidating Trust Assets have been liquidated, (c) all duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Liquidating Trust Assets. The Liquidating Trustee may seek such an extension in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement.

**Section 9.13   Transfer of Liquidating Trust Interests**

Notwithstanding anything to the contrary in the Plan, Liquidating Trust Interests shall not be transferrable except upon death of the interest holder, by operation of law, or as permitted by the Liquidating Trust Agreement. Any purported transfer or assignment in violation of this Section 9.13 shall be null and void.

48-

**Section 9.14   Termination of the Liquidating Trustee**

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

**Section 9.15   Exculpation; Indemnification**

The Liquidating Trust Indemnified Parties will be exculpated and indemnified by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement; provided, that the Liquidating Trust Agreement shall not include indemnification for gross negligence, willful misconduct or fraud and shall not include indemnification or exculpation for breach of contract claims.

**Section 9.16   Release of Liens**

Except as otherwise provided by the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, Liens, pledges or other security interests against the property of the Debtors' Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the applicable Estate. The Debtors and relevant holder of such security shall take all necessary steps under the applicable law to complete the release of Liens.

**Section 9.17   Subordination**

(a)      *Preservation of Subordination Rights by Estates*

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

(b)      *Waiver by Creditors of all Subordination Rights*

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have—whether arising under general principles of equitable subordination, Section 510(b) or (c) of the Bankruptcy Code, or otherwise—with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined.

## ARTICLE X:
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

**Section 10.01 Resolution of Disputed Claims**

(a)      *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

(b)    *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, shall have the authority to File objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

Subject to the foregoing and the other provisions of the Plan, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement; and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Claims Estimation*

Prior to the Effective Date the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Board as set forth in the Liquidating Trust Agreement, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for

purposes of Distributions, and the Liquidating Trustee may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**Section 10.02 Disallowance of Claims**

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Liquidating Trustee (or the Claims Agent at the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 10.03 Amendments**

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority, except as provided in Section 7.03 of this Plan.

**Section 10.04 No Post-Petition Interest**

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.

<div align="center">

**ARTICLE XI:**
**RETENTION OF JURISDICTION**

</div>

**Section 11.01 Retention of Jurisdiction**

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings

arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with Section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(I)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(II)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(III)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(IV)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(V)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any litigation rights or the Plan whether Filed or commenced before or after the Confirmation Hearing;

(VI)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(VII)    hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(VIII)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(IX)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(X)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(XI)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(XII)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases (whether or not these Chapter 11 Cases have been closed);

(XIII)    except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(XIV)    hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(XV)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(XVI)    resolve any cases, controversies, suits, or disputes related to the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, any Surviving Debtor, and any Debtor, including to enter any orders resolving such cases, controversies, suits, or disputes and any attendant bar order or channeling injunction relating thereto; and

(XVII)    enter a final decree closing these Chapter 11 Cases.

## Section 11.02 Reserved Rights to Seek Bankruptcy Court Approval

Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust, including the administration, distribution, or proposed sale of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidating Trust, as applicable.

## Section 11.03 Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction (as, for example, with respect to a matter solely affecting Debtor Mercon B.V. that is within the jurisdiction of the Dutch Court in the Dutch WHOA Proceeding) or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 11.01 of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII:
## SETTLEMENT, RELEASE, INJUNCTIONS AND EXCULPATIONS

**Section 12.01 Compromise and Settlement of Claims, Equity Interests, and Controversies**

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and Bankruptcy Rule 9019, and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan shall, on the Effective Date, constitute a compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of such compromise and settlement and the Bankruptcy Court's finding that such compromise and settlement are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

**Section 12.02 Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**Section 12.03 Releases by the Debtors**

**Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released by each and all of the Debtors and their Estates, and the Liquidating Trust and Liquidating Trustee, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their Estates**

or affiliates would have been legally entitled to assert, in their own right (whether individually or collectively) or on behalf of the Holder of any claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors; PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; and provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.03 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.03 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

Section 12.04 Third-Party Release

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by

a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

Section 12.05 Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Section 12.06 Non-Discharge of Debtors; Property Dealt With by the Plan

In accordance with Section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors. As such, except as otherwise expressly provided herein or in the Plan, including in connection with enforcing any rights pursuant to the Plan, no Person or Entity holding a Claim or an Equity Interest may receive any payment from, or

seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

**Section 12.07 Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR

**SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

## Section 12.08 Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may reduce, diminish, discount, compromise, or setoff against, and reduce the amount of, any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, Causes of Action and Avoidance Actions of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under Section 502(d) of the Bankruptcy Code, provided that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, Causes of Action and Avoidance Actions that the Debtors' Estates may possess against such Holder. In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any claim, right, Cause of Action or Avoidance Actions of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff. Further, nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date and that the filing of a Proof of Claim was not sufficient.

## Section 12.09 Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Debtors' bankruptcy cases are all closed except for the injunctions provided in Section 12.04, which shall be permanent injunctions.

Notwithstanding the foregoing, to the extent the FMO Collateral is transferred to the Liquidating Trust pursuant to Section 3.07(c), any injunction or stay provided for in these Chapter 11 Cases under Sections 105 or 362 shall be lifted upon entry of the Confirmation Order solely to permit FMO to enforce any of its rights and remedies under the Finance Documents as defined in the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement, as applicable, and under applicable law, including the right to foreclose upon the FMO Security (as defined in the 2022 FMO Credit Agreement) and the Allocation (as defined in the 2018 FMO Credit Agreement, and together with the FMO Security, the "**FMO Collateral**") and, at FMO's sole expense, the Liquidating Trustee will cooperate with any reasonable request by FMO to transfer the FMO Collateral to FMO or its designee; provided that FMO shall (i) promptly report to the Liquidating Trustee FMO's receipt of any proceeds outside of the Liquidating Trust on account of the FMO Collateral, promptly report on any actions or proceedings taken by FMO with respect to the FMO Collateral and any material developments in connection therewith so that the Liquidating Trustee may take any actions necessary to preserve the rights of the Liquidating Trust therein, and make reasonable efforts to otherwise coordinate and cooperate with the Liquidating Trustee as may be reasonably requested by the Liquidating Trustee in connection with the efforts of the Liquidating Trustee to recover assets in or pursue Causes of Action relating to Nicaragua or otherwise provided that such efforts do not prevent or impede FMO's enforcement of its rights and remedies under the Finance Documents, (ii) make reasonable efforts to report to the Liquidating Trustee on the status of any such actions taken by FMO to enforce its rights and remedies under the Finance Documents to the extent not prohibited by law or the terms of any agreement, and (iii) turn over to the Liquidating Trustee (A) any proceeds its recovers from the applicable FMO Collateral in excess of the FMO Claims or any proceeds it recovers that does not constitute FMO Collateral or proceeds thereof, in each case to the extent not prohibited by applicable law, (B) amounts necessary to reimburse the Liquidating Trust for reasonable and documented fees and expenses incurred by the Debtors or Liquidating Trust (1) in the pursuit of Causes of Action on account of FMO Collateral with the written consent of FMO or (2) for taking any corporate actions under foreign law that are requested or consented to in writing by FMO and (C) any amounts required so that FMO does not receive recoveries in excess of its proper allocation of Liquidating Trust Assets (or proceeds thereof) on account of its Liquidating Trust Interests that it received in respect of FMO Claims when taking into account any FMO recovery on account of FMO Collateral and the corresponding reduction to the amount of the Allowed FMO Deficiency Claim.

## Section 12.10 Limitation on Recoveries

In the event that any acts or omissions of a Person constitute fraud, gross negligence, or willful misconduct, then solely with respect to such acts and omissions, such Person shall not be entitled to the benefit of any language in the Plan, including but not limited to the definition of "Released Parties" herein, that limits the liability of such Person to the proceeds of D&O Policies.

**ARTICLE XIII:**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND EFFECTIVENESS OF THE PLAN**

**Section 13.01 Conditions to Confirmation and Effectiveness**

(a)      *Conditions to Confirmation*

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived in accordance with Section 13.03 of the Plan:

(i)      The Final Cash Collateral Order shall remain in full force and effect;

(ii)      The Confirmation Order, in form and substance acceptable to the Creditors' Committee and the Majority Lenders (as defined in the Prepetition First Lien Credit Agreement), shall have been entered by the Bankruptcy Court;

(iii)      The Liquidating Trust Agreement and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with this Plan in all respects and acceptable in form to the Creditors' Committee and Rabobank as agent under the Prepetition First Lien Credit Agreement;

(iv)      The amount of the Dutch Law SME Claims shall be acceptable to the Majority Lenders (as defined in the Prepetition First Lien Credit Agreement); and

(v)      The Bankruptcy Court finds that adequate information and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).

(b)      *Conditions to Effectiveness*

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived in accordance with Section 13.03 of the Plan:

(i)      the Confirmation Order, in a form approved by Rabobank and the Creditors' Committee, shall have been entered by the Bankruptcy Court and shall be a Final Order;

(ii)      all actions and all agreements, instruments and other documents necessary to implement the Plan and any Plan Transaction shall have been effected or executed;

(iii)      the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or other approvals or documents necessary to implement the Plan and any Plan Transactions, including but not limited to the transfer of the Debtors' right, title and interest in their assets to the Liquidating Trust or their creditors, that are required by law, regulation or order, if any;

(iv)    the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions.

(v)    the Liquidating Trust Agreement shall be executed and effective;

(vi)    the Disputed Claims Reserve shall be fully funded as provided in the Plan;

(vii)    the Litigation Funding Reserve shall be fully funded by the deposit of the Initial Litigation Funding into the Liquidating Trust as provided in the Plan;

(viii)    the Convenience Claim Pool shall be available for distribution to Holders of Allowed Convenience Claims as provided in the Plan;

(ix)    the Dutch Law SME Claim Pool shall be available for distribution to Holders of Allowed Dutch Law SME Claims as provided in the Plan;

(x)    the Initial Non-Litigation Funding shall be deposited into the Liquidating Trust as provided in the Plan;

(xi)    the Professional Fee Escrow Account shall be fully funded as provided in the Plan;

(xii)    the Dutch Court shall have entered an order sanctioning the Dutch WHOA Plan; and

(xiii)    the conditions to Confirmation shall have been satisfied or waived.

## Section 13.02 Notice of Occurrence of the Effective Date

The Debtors shall File a notice of the occurrence of the Effective Date within five (5) Business Days after the Effective Date; *provided*, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

## Section 13.03 Waiver of Conditions

Each of the conditions precedent to the occurrence of the Effective Date may be waived in writing by the Debtors, with the consent of Rabobank and the Creditors' Committee, without leave of or order of the Bankruptcy Court. If any such condition precedent is waived pursuant to this Section 13.03 and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge this Plan in any court. If this Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which this Plan is confirmed must be satisfied or waived for the Effective Date to occur.

## Section 13.04 Consequences of Non-Occurrence of Effective Date

If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code,

the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of forty-five (45) days after the date the Confirmation Order is vacated.

## ARTICLE XIV:
## MISCELLANEOUS PROVISIONS

**Section 14.01 Administrative Claims**

**ALL ADMINISTRATIVE CLAIMS (OTHER THAN PROFESSIONAL FEE CLAIMS AND 503(B)(9) CLAIMS) MUST BE MADE BY APPLICATION FILED WITH THE BANKRUPTCY COURT AND SERVED ON COUNSEL FOR THE DEBTORS AND THE LIQUIDATING TRUSTEE, AS APPLICABLE, NO LATER THAN THE ADMINISTRATIVE CLAIMS BAR DATE OR THEIR ADMINISTRATIVE CLAIM SHALL BE FOREVER BARRED. IN THE EVENT THAT THE LIQUIDATING TRUSTEE OR DEBTORS OBJECT TO AN ADMINISTRATIVE CLAIM, THE BANKRUPTCY COURT SHALL DETERMINE THE ALLOWED AMOUNT OF SUCH ADMINISTRATIVE CLAIM.**

**WITH RESPECT TO ADMINISTRATIVE CLAIMS, THE LAST DAY FOR FILING AN OBJECTION TO ANY ADMINISTRATIVE CLAIM WILL BE THE CLAIMS OBJECTION DEADLINE.**

**Section 14.02 Modifications and Amendments**

Subject to the limitations contained in the Plan, the Debtors reserve the right, subject to the prior consent of the Creditors' Committee and the Majority Lenders under the Prepetition First Lien Credit Agreement, to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, and subject to the prior consent of the Creditors' Committee and the Majority Lenders under the Prepetition First Lien Credit Agreement, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIV hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with Section 1127 of the Bankruptcy Code, the terms of the Liquidating Trust, and applicable law.

**Section 14.03 Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to

be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Section 14.04 Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests and the Liquidating Trust Beneficiaries.

## Section 14.05 Revocation, Withdrawal or Non-Consummation

Subject to the prior written consent of the Creditors' Committee and the Majority Lenders under the First Lien Credit Agreement, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Actions, litigation rights or other claims by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity.

## Section 14.06 Plan Supplement

The Plan Supplement shall be Filed with the Bankruptcy Court and posted on the Website at least five (5) days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court. Upon such Filing and posting on the Website, all documents set forth in the Plan Supplement may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtors in accordance with Section 14.08 of the Plan.

## Section 14.07 Continued Confidentiality Obligations

Notwithstanding any other provision of the Plan, all members of and advisors to the Creditors' Committee, any other holder of a Claim or Equity Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any

confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date for a period of one (1) year.

## Section 14.08 Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

**BAKER & MCKENZIE LLP**

Paul J. Keenan Jr.
Mark D. Bloom
John R. Dodd
Reginald Sainvil
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
    mark.bloom@bakermckenzie.com
    john.dodd@bakermckenzie.com
    reginald.sainvil@bakermckenzie.com

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

If to the Creditors' Committee:

**O'MELVENY & MYERS LLP**

Louis R. Strubeck, Jr.
Matthew P. Kremer
7 Times Square
New York, NY 10036
Telephone: (212)-326-2000
Email: lstrubeckjr@omm.com
    mkremer@omm.com

Gregory M. Wilkes
Scott P. Drake
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: (972)-360-1900
Email: gwilkes@omm.com
    sdrake@omm.com

## Section 14.09 Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## Section 14.10 Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of New York shall govern the construction

and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

## Section 14.11 Exhibits

All exhibits to the Plan and Disclosure Statement or the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be Filed with the Bankruptcy Court on or before the date of the Filing of the Plan Supplement, and will then be posted on the Website. Upon such Filing and posting on the Website, all exhibits may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 14.08 of the Plan. To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

## Section 14.12 Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control. To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

## Section 14.13 Exemption

Under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests and any other securities under this Plan shall be exempt from registration under the Securities Act of 1933, as amended and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## Section 14.14 Substitution of the Liquidating Trust for the Debtors

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including (a) motions, contested matters and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court, including without limitation the Brazilian Court and Dutch Court, without the need or requirement for the Liquidating Trust to file motions or substitutions of parties and counsel.

*[Remainder of Page Intentionally Left Blank]*

Mercon Coffee Corporation on behalf of
itself and all other Debtors

*/s/ Harve Light*
By: Harve Light, solely in his capacity as
Chief Restructuring Officer

Dated: May 22, 2024

[*Signature Page to  Joint Chapter 11 Plan of Liquidation*]

## Liquidation Analysis



## Mercon Liquidation Analysis
## Overview

### Overview

- On December 7, 2023, Mercon Coffee Corporation and certain debtor affiliates (including Mercon BV) filed a petition for relief under Chapter 11 of the US bankruptcy code.
- On December 7, 2023, Debtor Mercon B.V. opened the Dutch WHOA Proceeding in the Dutch Court, a parallel proceeding with the jointly administered Chapter 11 case for Debtor Mercon B.V. for which the Bankruptcy Court's cooperation and coordination with the Dutch Court is required under Section 1529 of the Bankruptcy Code.
- In both the US and the Netherlands, the plan must demonstrate that it is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan.
- The "best interests" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.
- A Chapter 7 liquidation is presented.

### Key Assumptions

- Mercon converts to a Chapter 7 in June 2024.
- The February 2024 balance sheet was adjusted to create a projected balance sheet at the effective date.
- Liquidation values under high and low scenarios were applied to the projected June 2024 balance sheet.
    - Cash is assumed to be recovered at 100%.
    - Remaining A/R is assumed to recovered based on the insurance proceeds (low scenario) or in excess of that (high scenario).
    - Recovery on Investment in Shares is from the sale of the Eximware stock.
    - Recovery on Prepaid Expenses and Other Receivables is from Guatemala tax refunds.
    - Recovery on Insurance Proceeds is from the D&O insurance.
    - Recovery from Causes of Actions are unable to be determined at this time.
    - No other assets provide a material recovery.
- Under a Chapter 7 liquidation, the syndicated senior facility would have priority over substantially all of Mercon BV's assets.
- The segregated cash account is subject to a valid, perfected lien by the syndicated secured lender and would be unavailable for the general unsecured creditors in a Chapter 7.
- Certain liquidation costs (including administrative claims) are included, which reduce the gross proceeds available to distribute.

### Conclusion

- Unsecured creditors are no worse off under the Plan of Liquidation than in a Chapter 7 liquidation.
- Under a Chapter 7 liquidation, recovery for unsecured creditors is less than under the Plan of Liquidation.

SUBJECT TO MATERIAL CHANGE

| Mercon Liquidation Analysis - Summary | | Chapter 7 - Consolidated Mercon | |
|---|---|---|---|
| | Class | Low | High |
| Percent Recovery | Syndicated Senior Facility | 23.0% | 26.8% |
| | Secured Debt | – | 1.5% |
| | Unsecured Debt | – | 1.5% |
| | | | |
| $MM Recovery | Syndicated Senior Facility | $39.4 | $45.9 |
| | Secured Debt | – | 0.7 |
| | Unsecured Debt | – | 1.1 |
| | Total | 39.4 | 47.7 |

Additional Potential Recovery for the GUCs:

| | Nicaragua | – | – |
|---|---|---|---|

Notes:

1) Syndicated Senior Facility includes recovery on their deficiency c

2) Chapter 7 trustees are assumed to not pursue Nicaragua claims

3) Chapter 7 would take additional time compared with the plan of li

SUBJECT TO MATERIAL CHANGE

**Mercon Liquidation Analysis - Chapter 7 Liquidation ($MM)**

| Account | Priority | Projected June 2024 Balance | Plan of Liquidation | | | | Comments |
|---|---|---|---|---|---|---|---|
| | | | Low Recovery Rate (%) | High Recovery Rate (%) | Low Recovery Rate ($) | High Recovery Rate ($) | |
| Segregated Account | Syndicated Senior Facility | 35.5 | 100.0% | 100.0% | 35.5 | 35.5 | |
| Cash and Cash Equivalents | Syndicated Senior Facility | 13.9 | 100.0% | 100.0% | 13.9 | 13.9 | Adjusted for final professional fee payme |
| Derivative financial instruments | Syndicated Senior Facility | (1.7) | – | – | – | – | Negative Balance |
| Accounts Receivable | Syndicated Senior Facility | 0.3 | – | – | – | – | |
| Accounts Receivable (Customers) | Syndicated Senior Facility | 21.2 | 27.5% | 37.5% | 5.8 | 7.9 | Low case based on insurance proceeds |
| Financing for Coffee Growers | Syndicated Senior Facility | 1.7 | – | – | – | – | No value in liquidation |
| Forward Book | Syndicated Senior Facility | – | – | – | – | – | |
| Inventory | Syndicated Senior Facility | – | – | – | – | – | |
| Biological Assets | Syndicated Senior Facility | (0.0) | – | – | – | – | |
| Prepaid Expenses and Other Receiv | Syndicated Senior Facility | 16.2 | – | 5.0% | – | 0.8 | Professional fee deposits, prepaid VAT |
| Net AR Related Parties | Syndicated Senior Facility | – | – | – | – | – | |
| Restricted Cash | Syndicated Senior Facility | – | – | – | – | – | |
| Financing to Coffee Growers LT | Syndicated Senior Facility | – | – | – | – | – | |
| Net AR Related Parties LT | Syndicated Senior Facility | (2.6) | – | – | – | – | Negative Balance |
| Investment in Shares | Syndicated Senior Facility | 0.7 | 23.7% | 23.7% | 0.2 | 0.2 | |
| Digranisa Farm PP&E | Secured Debt | 10.8 | – | – | – | – | |
| Other PP&E | Syndicated Senior Facility | 0.8 | – | 5.0% | – | 0.0 | |
| Biological Assets LT | Syndicated Senior Facility | – | – | – | – | – | |
| Assets available for Sale | Syndicated Senior Facility | 0.3 | – | – | – | – | |
| Intangible Assets | Syndicated Senior Facility | 0.3 | – | – | – | – | |
| Long term Tax Receivable | Syndicated Senior Facility | 0.3 | – | – | – | – | |
| Other Assets | Syndicated Senior Facility | 0.1 | – | – | – | – | Rent, utilities, and other deposits |
| Insurance Proceeds | Unsecured | 15.0 | – | 33.0% | – | 5.0 | |
| Causes of Action | | | | | TBD | TBD | |
| | | | | | | | |
| Total | | 112.5 | 49.2% | 56.3% | 55.4 | 63.3 | |
| | | | | | | | |
| **Total Distributable Value Before Expenses** | | | | | **$55.4** | **$63.3** | |

**Illustrative Wind-Down & Liquidation Costs**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Trust Administration | | | 3% | 3% | (1.7) | (1.9) | |
| Professional Fees | | | 5% | 5% | (2.8) | (3.2) | |
| Professional Fees (Carve-Out) | | | | | (8.5) | (8.5) | Final professional fee payment |
| Other Admin Claims | | | | | (3.0) | (2.0) | |
| Deferred Taxes | | | – | – | – | – | |
| Total Wind-Down Costs | | | | | (16.0) | (15.6) | |
| | | | | | | | |
| **Net Distributable Value** | | | | | **$39.4** | **$47.7** | |
| | | | | | | | |
| **Remaining Distributable Value** | | | | | **$39.4** | **$47.7** | |
| | | | | | | | |
| FMO | | 28.3 | – | – | – | – | |
| BFP | | 2.4 | – | – | – | – | |
| BFP - Mercapital | | 4.5 | – | – | – | – | |
| Starbucks | | 7.5 | – | – | – | – | |
| Total Secured Debt | | 42.8 | – | – | – | – | |
| | | | | | | | |
| **Remaining Distributable Value** | | | | | **$39.4** | **$47.7** | |

**Recovery by Tranche**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Syndicated Senior Facility | | 171.7 | 23.0% | 25.6% | 39.4 | 44.0 | |
| Total Syndicated Senior Facility | | 171.7 | 23.0% | 25.6% | 39.4 | 44.0 | |
| | | | | | | | |
| **Remaining Distributable Value** | | | | | **–** | **$3.7** | |
| | | | | | | | |
| AP | | 11.5 | – | 1.5% | – | 0.2 | |
| Unsecured Debt | | 60.5 | – | 1.5% | – | 0.9 | |
| Secured Lender Deficiency Claim | | 42.8 | – | 1.5% | – | 0.7 | |
| Syndicate (Deficiency Claim) - High | | 127.7 | | 1.5% | – | 2.0 | |
| Syndicate (Deficiency Claim) - Low | | 132.2 | | | – | – | |
| Total Unsecured Debt - High | | 242.5 | – | 1.5% | – | 3.7 | |
| Total Unsecured Debt - Low | | 247.0 | – | | – | | |
| | | | | | | | |
| **Remaining Distributable Value** | | | | | **–** | **–** | |
| | | | | | | | |
| **Total Syndicate Recovery** | | **$171.7** | **23.0%** | **26.8%** | **$39.4** | **$45.9** | |
| **Secured Debt** | | **$42.8** | | **1.5%** | **–** | **$0.7** | |
| **GUCs excluding Deficiency Claim** | | **$72.0** | **–** | **1.5%** | **–** | **$1.1** | |

SUBJECT TO MATERIAL CHANGE

**<u>Exhibit A-2</u>**

**Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT
OF VOTING RECORD DATE, (III) HEARING ON CONFIRMATION OF THE PLAN,
(IV) PROCEDURES FOR OBJECTING TO CONFIRMATION OF THE PLAN; AND
(V) SOLICITATION, VOTING, AND RELATED PROCEDURES FOR THE PLAN**

**PLEASE TAKE NOTICE** that:

1.     **Approval of Disclosure Statement**. By order dated [__], 2024 [Doc. No. [__]] (the "**Order**"), the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* dated May 2, 2024 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [__]) filed by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). The Bankruptcy Court authorized the Debtors to solicit votes with regard to the approval or rejection of the *Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors*, dated May 2, 2024 (as it may be amended, modified, and supplemented, the "**Plan**"),[2] annexed as <u>Exhibit A</u> to the Disclosure Statement.

2.     **Confirmation Hearing**. A hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **June [●], 2024 at [●]:00 _.m. (prevailing Eastern Time),** before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York 10004. The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors (with the consent of the Secured Parties and the Creditors' Committee) without further notice other than the announcement in open court or as indicated in any notice or hearing agenda that is filed with the Bankruptcy Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

3.     The Disclosure Statement and the Plan are on file with the Clerk of the Bankruptcy Court (the "**Clerk**") and may be examined during normal business hours, subject to and in accordance with the General Order M-543, at the office of the Clerk. Copies of the Disclosure Statement and the Plan may also be obtained, for a fee, from the Court's electronic docket for the Debtors' Chapter 11 Cases, which can be found at https://www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

4.     Copies of the Disclosure Statement and the Plan may also be obtained by written request free of charge by visiting the website maintained by the Debtors' solicitation agent, Kroll Restructuring Administration (the "**Solicitation Agent**"), at https://cases.ra.kroll.com/mercon, or by request as follows:

| If by standard or overnight mail or personal delivery: | If by e-mail to: |
|---|---|
| Mercon Coffee Corporation<br>Ballot Processing Center<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232 | MerconInfo@ra.kroll.com<br>with a reference to "Mercon Solicitation Inquiry" in the subject line.<br>If by telephone: (844) 974-4369<br>(U.S./Canada, toll free) or +1 (646) 586-9785<br>(international, toll) |

5.     **Record Date for Voting**. Only parties who are eligible to vote and hold Claims against the Debtors as of May 10, 2024 (the "**Voting Record Date**") are entitled to vote on the Plan.

6.     **Parties in Interest Not Entitled to Vote**. The following holders of Claims and Interests are not entitled to vote on the Plan: (i) holders of unimpaired Claims or Interests that are presumed to accept the Plan (Class 2 – Other Secured Claims and Class 3 - Other Priority Claims), (ii) holders of impaired Claims or Interests that are deemed to reject the Plan (Class 6 - Intercompany Claims, Class 7 – Subordinated Claims, and Class 8 – Equity Interests in the Debtors), and (iii) holders of Claims that are the subject of filed objections or requests for estimation.

7.     **Rule 3018(a) Motions**. If you have timely filed a proof of Claim and disagree with the Debtors' classification of, objection to, or request for estimation of, your Claim and believe that you should be entitled to vote on the Plan, then you must serve on the Debtors and file with the Bankruptcy Court (with a copy to chambers) a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing such Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before [●]. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's ballot will not be counted except as may be otherwise ordered by the Bankruptcy Court at least five (5) days prior to the Voting Deadline or as the Bankruptcy Court may direct. Creditors may contact the Solicitation Agent to receive an appropriate ballot for any Claim for which a proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

8. **Voting Deadline**. All votes to accept or reject the Plan must be actually received by the Solicitation Agent by no later than **4:30 p.m. (prevailing Eastern Time) on June [●], 2024** (the "**Voting Deadline**"), unless extended by the Debtors. Any failure to follow the voting instructions included with your ballot may disqualify your ballot and your vote.

9. **Objections to Confirmation.** Responses and objections, if any, to confirmation of the Plan must:

    a.    Be in writing in the English language;

    b.    State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

    c.    Conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court;

    d.    State with particularity the legal and factual basis and nature of any objection to confirmation of the Plan;

    e.    Be filed with the Bankruptcy Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

        i.    *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov); or

        ii.    *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, New York 10004; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF);

        NOTE: *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with a separate hard copy of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

    f.    Be served in accordance with General Order M-399 so as to be received **<u>no later than [●], 2024 at 4:30 p.m. (prevailing Eastern Time)</u>** (the "**Plan Objection Deadline**") by the Court and the following parties (the "**Standard Parties**")—

i.  The Chambers of the Honorable Judge Michael E. Wiles, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 617, New York, New York 10004;

ii. Counsel to the Debtors, Baker & McKenzie LLP (Attn: Paul J. Keenan Jr., John. R. Dodd, and Reginald Sainvil, 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 and Blaire Cahn, 452 Fifth Avenue, New York, New York 10018);

iii. Counsel to the United States Trustee (Attn: Daniel Rudewicz, Alexander Hamilton Custom House, One Bowling Green, Suite 534, New York, New York 10004);

iv. Counsel to the Official Committee of Unsecured Creditors, O'Melveny & Myers LLP (Attn: Louis R. Strubeck, Jr. and Matthew P. Kremer), 7 Times Square, New York, New York 10036, and to O'Melveny & Myers LLP (Attn: Gregory M. Wilkes and Scott P. Drake), 2801 North Harwood Street, Suite 1600, Dallas, Texas 75201; and

v.  Counsel to the Prepetition First Lien Agent, Cadwalader, Wickersham & Taft LLP (Attn: Ingrid Bagby and Andrew Greenberg), 200 Liberty Street, New York, New York 10281.

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

10.  **Parties Who Will Not Be Treated as Creditors**. Any holder of a Claim that (i) is scheduled in the Debtors' schedules of assets and liabilities at $0.00, or in an unknown amount, or as disputed, contingent, or unliquidated, and (A) is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court or (B) is not the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim, or (ii) is not scheduled and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, shall not be treated as a creditor with respect to such Claim for purposes of voting on the Plan.

11.  **Releases**. Please be advised that under the Plan, the "Releasing Parties" (as defined in the Plan and set forth on Annex A hereto) are deemed to have granted the releases contained in Section 12.04 of the Plan, which is set forth for convenience on Annex A hereto.

---

**IMPORTANT INFORMATION**
**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

---

> **YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**
>
> **YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

12.    **The Plan also contains other discharge, injunction, release, and exculpation provisions that may affect your rights such as those set forth in Annex A. Annex A is qualified in its entirety by reference to the Plan**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.    YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED**.

13.    **Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan. Any Executory Contract and Unexpired Lease in relation to Mercon B.V. shall only be deemed automatically rejected to the extent that and under the condition precedent that as part of the Dutch WHOA Proceeding, the Dutch Court provides consent to Mercon B.V. to terminate such Executory Contract or Unexpired Lease (as provided for in Dutch Restructuring Law).

14.    **Additional Information**. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Solicitation Agent, at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll), or may view and download such documents, free of charge, by accessing the Debtors' Chapter 11 website: https://cases.ra.kroll.com/mercon or, for a fee, at the Bankruptcy Court's website:    https://www.nysb.uscourts.gov.    As    previously    noted    above,    a    PACER (https://pacer.uscourts.gov) password and login are needed to access documents on the Bankruptcy Court's website (https://www.nysb.uscourts.gov).

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

Dated: _____, 2024
New York, New York

**BAKER & McKENZIE LLP**

By:_____
Paul J. Keenan Jr. (admitted *pro hac vice*)
John R. Dodd (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4875
Facsimile: 212-310-1695
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors and Debtors-in-Possession*

## Annex A

### Selected Excerpts of Plan Releases, Exculpations and Injunctions

#### Select Defined Terms

"*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"*Released Party*" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"*Releasing Parties*" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

#### Section 12.03 of the Plan: Releases by the Debtors

**Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released by each and all of the Debtors and their Estates, and the Liquidating Trust and Liquidating Trustee, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their Estates or affiliates would have been legally entitled to assert, in their own right (whether**

individually or collectively) or on behalf of the Holder of any claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors; PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; and provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.03 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.03 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

<u>Section 12.04 of the Plan: Third Party Release</u>

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by

a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

## Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

## Section 12.07 of the Plan: Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN

SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR

**COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**Exhibit B-1**

**Cover Letter from the Debtors**



**Via First-Class Mail**

RE:      *In re Mercon Coffee Corporation., et al*., Chapter 11 Case No. 23-11945 (MEW)
(Bankr. S.D.N.Y.)

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

On December 6, 2023, Mercon Coffee Corporation and 10 affiliated debtors (collectively, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The cases are pending before the Honorable Michael E. Wiles, and are jointly administered under Case No. 23-11945.

You have received this letter and the enclosed materials because you are entitled to vote on the *Second Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"). On May [●] 2024, the Court entered an order (the "**Disclosure Statement Orde**r") (i) authorizing the Debtors to solicit acceptances for the Plan, (ii) approving the *Second Amended Disclosure Statement Second Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (the "**Disclosure Statement**") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (iii) approving the solicitation materials and documents (the "**Solicitation Package**"), and (iv) approving procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

> **You are receiving this letter because you are entitled to vote on the Plan, and the Debtors strongly urge you to accept the Plan. The Plan contains certain release provisions.**
> **YOU ARE NOT REQUIRED TO GRANT THE RELEASES.**
> **You should read this letter carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one.**

The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in these Chapter 11 Cases.

The Solicitation Package, which includes this cover letter was approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan. The Solicitation Package consists of the following:

i.      The approved form of Disclosure Statement, together with the Plan and all other exhibits annexed thereto;

ii.     the Disclosure Statement Order, in the final form entered by the Court, excluding the exhibits annexed thereto;

iii.    a notice of the Confirmation Hearing;

iv.     an appropriate form of Ballot to accept or reject the Plan, including an ability to opt-in to certain releases, along with a pre-addressed, postage prepaid return envelope;

v.      a letter from the Creditors' Committee recommending acceptance of the Plan; and

vi.     such other materials as the Court may direct or approve, including any supplemental solicitation materials the Debtors may file with the Court.

> **The Debtors strongly urge you to properly and timely submit your Ballot casting a vote to <u>accept the Plan</u> and in accordance with the instructions in your Ballot.  The Voting Deadline is _____, 2024, at _:00 P.M., prevailing <u>Eastern Time</u>.**

The Solicitation Package is intended to be self-explanatory. If you should have any questions, however, please feel free to contact Kroll Restructuring Administration, LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases by (i) writing to Mercon Coffee Corporation Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, or (ii) emailing the Solicitation Agent at MerconBallots@ra.kroll.com (with "**Mercon Solicitation Inquiry**" in the subject line), or (iii) phoning the restructuring hotline maintained by Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll). **Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of Solicitation Package, but may not advise you as to whether you should vote to accept or reject the Plan.**

**<u>Exhibit B-2</u>**

**Letter from the Creditors' Committee**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
MERCON COFFEE CORPORATION, ET AL.**

**May [], 2024**

TO:         All Holders of Class 4A General Unsecured Claims, Class 4B Dutch Law SME
Claims Unsecured Claims, and Class 5 Convenience Claims against Mercon Coffee Corporation,
*et al.* (the "**Debtors**")

FROM:         The Official Committee of Unsecured Creditors of Mercon Coffee Corporation, *et
al.* (the "**Creditors' Committee**")

**RECOMMENDATION[1]**

The Debtors have filed the *Joint Chapter 11 Plan of Liquidation for Mercon Coffee
Corporation and Certain Affiliated Debtors* (as the same may be amended, modified or
supplemented from time to time, the "**Plan**"), which is supported by all of the major stakeholders
in these Chapter 11 Cases including, among others, Coöperative Rabobank U.A., New York
Branch ("**Rabobank**"), as administrative agent and collateral agent for the prepetition senior
secured loan facility, and the Creditors' Committee.  If you are the Holder of a general unsecured
claim in either Class 4A, Class 4B, or Class 5, the Debtors have sent you a Ballot to vote on the
Plan.

The Plan reflects the terms of a settlement reached between Rabobank and the Creditors'
Committee, embodied in a Stipulation dated March 29, 2024, which provides for:[2]

- Establishment of a Liquidating Trust to preserve, investigate, and pursue Claims
  and Causes of Action of the Debtors and their Estates, including Avoidance
  Actions;

- Distributions of Litigation Proceeds from the pursuit by the Liquidating Trustee of
  such Claims and Causes of Action, with 50% being allocated to senior secured
  lenders and 50% being allocated to general unsecured creditors as further described
  in the Plan and the Liquidating Trust Agreement, provided that, until the $500,000
  in funding that the senior secured lenders provided is repaid the senior secured
  lenders will receive an initial 70% allocation of such proceeds; and

- Establishment of a $1,000,000 Convenience Class Claim Pool, which will be
  available to pay (i) unsecured creditors to the extent such creditor's Allowed
  prepetition, liquidated, and unsecured Claim against the Debtors that as of the
  Confirmation Date is unsecured and less than or equal to $40,000; or (ii) any other
  Allowed General Unsecured Claim, including Class 4A General Unsecured Claims
  and Class 4B Dutch Law SME Claims, that makes the Convenience Claim Election.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] The following is a summary of certain provisions of the Plan, and Holders of Claims should carefully read the
Disclosure Statement and Plan.  To the extent there is a conflict between the following summary and the Plan, the
Plan controls in all respects.

2

**The Creditors' Committee strongly encourages all general unsecured creditors to vote to ACCEPT the Plan**, as it provides for significant recoveries to unsecured creditors that the Creditors' Committee believes far exceed what unsecured creditors would likely receive in a chapter 7 liquidation or under any alternative plan of liquidation.  Specifically, the Creditors' Committee believes that given the size of the senior secured lenders' unsecured deficiency claim (which is estimated to be greater than 50% of the total general unsecured claims pool) and the subordination of certain general unsecured claims to the senior secured lenders' claims, the 50/50 split between the senior secured lenders and the general unsecured creditors with respect to Distributions of Litigation Proceeds is fair and reasonable.  Accordingly, the Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors.  Moreover, the Creditors' Committee believes that the Plan constitutes a reasonable compromise of complex disputes and will avoid the expense and delay that would have been incurred had certain of the disputed issues been litigated. Your vote in favor of the Plan will help to ensure that the Plan is approved by the Bankruptcy Court and allow the Litigation Trust to be established and funded for the benefit of unsecured creditors.  The Creditors' Committee supports the Plan and will continue to do so even if one or more classes of general unsecured claims vote to reject the Plan.

The Committee recommends that you vote to **ACCEPT** the Plan by marking your ballot as follows:

☑    **ACCEPT (vote FOR) the Plan**

Please send in your Ballot to the address provided on the Ballot or through the Solicitation Agent's on-line electronic Ballot submission portal at https://cases.ra.kroll.com/Mercon. **PLEASE READ THE DIRECTIONS ON THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE SOLICITATION AGENT.**

---

**IF YOU ARE A HOLDER OF A CLASS 4A GENERAL UNSECURED CLAIM OR CLASS 4B DUTCH LAW SME CLAIM, YOU ARE ELIGIBLE TO VOLUNTARILY ELECT TO HAVE YOUR CLAIM TREATED IN THE CLASS 5 CONVENIENCE CLASS TO RECEIVE A CASH PAYMENT IN SATISFACTION OF YOUR CLAIM.**

---

**Your Ballot must be received by June [], 2024 at 4:30 p.m. (prevailing Eastern Time) to be counted**.

The foregoing is not intended as, and shall not constitute, a substitute for the Disclosure Statement.  Holders of Claims should read the Disclosure Statement and the Plan in their entirety, and then make their own respective independent decisions whether to accept the Plan.

Sincerely,

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MERCON COFFEE CORPORATION, ET AL.**

**<u>Exhibit C-1</u>**

**Form of Notice of Non-Voting Status for Unimpaired Classes**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |
| _____ / | **Ref. Doc. Nos. ___, ___, and __** |

### NOTICE OF (I) NON-VOTING STATUS FOR UNIMPAIRED CLASSES[2] AND (II) OPPORTUNITY TO OPT-IN TO THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT** on [●], 2024 the United States Bankruptcy Court for the Southern District of New York approved the *Fourth Amended Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for use by the Debtors in soliciting acceptances or rejections of the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**"), from holders of impaired Claims against the Debtors (each, as defined in the Plan), who are (or may be) entitled to receive distributions under the Plan.[3]

**UNDER THE TERMS OF THE PLAN, YOUR CLASS 2 – OTHER SECURED CLAIMS OR CLASS 3 – OTHER PRIORITY CLAIMS ARE NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (I) PRESUMED TO HAVE ACCEPTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN WITH RESPECT TO YOUR CLASS 2 – OTHER SECURED CLAIMS, AND/OR CLASS 3 – OTHER PRIORITY CLAIMS.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S), OR WISH TO REQUEST A COPY OF THE PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTORS' SOLICITATION AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC BY ONE OF THE METHODS BELOW. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 1410, Coral Gables, FL 33134.

[2] The Unimpaired Classes under the Plan are Class 2 Other Secured Claims and Class 3 Other Priority Claims.

[3] Unless otherwise provided herein, any capitalized terms in this notice shall have the meanings ascribed to them in the Plan.

| **If by standard or overnight mail or hand delivery:** | **If by e-mail to:** |
|---|---|
| Mercon Coffee Corporation<br>Ballot Processing Center<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232 | MerconInfo@ra.kroll.com<br>with a reference to "Mercon Solicitation Inquiry" in the subject line.<br><br>**If by telephone:**<br><br>(844) 974-4369 (U.S./Canada, toll free) or<br>+1 (646) 586-9785 (international, toll) |

## RELEASE OPT-IN NOTICE

**Section 12.04 of the Plan contains certain release, injunction, and exculpation provisions, including the third-party releases (the "Third-Party Releases") set forth below. You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.**

**If you choose to opt-in to the Third-Party Releases set forth in Section 12.04 of the Plan, you may submit your election to opt-in by submitting the electronic version of this opt-in form (the "Opt-In Notice") through the Solicitation Agent's online E-Ballot Portal, which can be accessed via the Debtors' restructuring case website, https://cases.ra.kroll.com/mercon/, according to instructions provided below.**

**IF YOU CHOOSE TO OPT-IN TO THE THIRD-PARTY RELEASES SET FORTH IN THE PLAN, THIS OPT-IN NOTICE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [●], 2024, AT _:00 P.M. (PREVAILING EASTERN TIME) (THE "OPT-IN DEADLINE").**

<u>Item 1.</u> **Important Information Regarding Release Provisions of the Plan.** Section 12.04 of the Plan contains the following Third-Party Releases. The Bankruptcy Court has not yet approved the Third-Party Releases and such a decision will not be made until the Confirmation Hearing.

**Third-Party Releases**

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.**

**For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.**

**Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.**

**FOR THE AVOIDANCE OF DOUBT, THE ONLY PARTIES THAT ARE BOUND BY THE RELEASES CONTAINED IN THIS <u>SECTION 12.04</u> ARE THE RELEASING PARTIES.**

<u>**DEFINITIONS:**</u>

"**Released Parties**" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"**Releasing Parties**" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

---

**IMPORTANT INFORMATION**
**<u>REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS</u>:**

**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**

**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

---

Check the following box only if you wish to opt in to the Third-Party Releases set forth above and in Section 12.04 of the Plan:

☐

**Opt In to Third-Party Releases**

Item 2. **Acknowledgements and Certification**. By signing this Opt-In Notice, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a)      as of the Voting Record Date, the undersigned is either (i) the Person that is the holder of Claim(s) or Equity Interests against one or more of the Debtors or (ii) the Person that is an authorized signatory for the Person that is the holder of such Claim(s) or Equity Interests;

b)      the Person has received a copy of the Notice of (I) Non-Voting Status For Unimpaired Classes, and (II) Opportunity to Opt-In to the Third-Party Releases, and that this Opt-In Notice is submitted pursuant to the terms and conditions set forth therein;

c)      the Person has submitted the same respective election concerning the releases with respect to all Claims or Equity Interests held by the undersigned; and

d)      no other Opt-In Notice with respect to the amount of Claims or Equity Interests held by the undersigned have been submitted or, if any other Opt-In Notices have been submitted with respect to such Claims, then any such earlier Opt-In Notices are hereby revoked.

Print or Type Name of Holder:

_____

Signature

_____

Name of Signatory:

_____

If by Authorized Agent, Title of Agent:

_____

Street Address:

_____

City, State, Zip Code:

_____

Telephone Number:

_____

E-mail Address:

_____

Date Completed:

_____

If you would like to change your address information for future notice mailings or distributions, if any, upon your Claim in these chapter 11 cases, please send an email with the revised address to merconinfo@ra.kroll.com.

**IF YOU WISH TO MAKE THE OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN NOTICE AND RETURN IT (WITH A SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED OR VIA FIRST-CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

<div align="center">

**Mercon Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

</div>

**To arrange hand delivery of your Opt-In Notice, please email the Solicitation Agent at MerconBallots@ra.kroll.com (with "Mercon Solicitation Opt-In Notice Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.**

**In the alternative, to properly submit this Opt-In Notice via the Solicitation Agent's online E-Ballot Portal, please visit https://cases.ra.kroll.com/mercon/, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your customized electronic Opt-In Notice.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Notice:**

**Unique E-Opt-In Notice ID#:_____**

Each Unique E-Opt-In Notice ID# is to be used solely in relation to those Claims held against one or more of the Debtors. Please complete and submit an Opt-In Notice for each Unique E-Opt-In Notice ID# you receive, as applicable.

**If you choose to submit your Opt-In Notice using the E-Ballot Portal, you should NOT also submit a paper Opt-In Notice.**

**The Solicitation Agent's E-Ballot Portal is the only acceptable means of submission of Opt-In Notices via electronic or online transmission. Opt-In Notices submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**<u>Exhibit C-2</u>**

**Form of Notice of Non-Voting Status for Impaired Classes**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |
| _____/ | **Ref. Doc. Nos. ___, ___, and __** |

### NOTICE OF (I) NON-VOTING STATUS FOR IMPAIRED CLASSES[2] AND (II) OPPORTUNITY TO OPT-IN TO THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT:**

**PLEASE TAKE NOTICE** that on May ___, 2024, the United States Bankruptcy Court for the Southern District of New York approved the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**") [ECF No. ●], filed by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for use by the Debtors in soliciting acceptances or rejections of the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as may be amended, modified, or supplemented from time to time, the "**Plan**") [ECF No. ●].[3]

UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) OR EQUITY INTERESTS AGAINST THE DEBTORS ARE IMPAIRED WITHOUT THE ABILITY TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF YOUR CLAIM OR INTEREST AND, THEREFORE, PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE, YOU ARE DEEMED TO HAVE REJECTED THE PLAN.

IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR EQUITY INTERESTS, OR WISH TO REQUEST A COPY OF THE PLAN AND DISCLOSURE

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] The Impaired Classes that are not entitled to vote under the Plan are *Class 6 – Intercompany Claims, Class 7 – Subordinated Claims and Class 8 Equity Interests in the Debtors*. Per the Court's Disclosure Statement Approval Order (Doc. No. [ ]), dated [ ], Class 6 – Intercompany Claims are deemed to have received all notices approved therein upon entry of the Disclosure Statement Approval Order without actual delivery thereof and, thus, are not being served with this Notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan, Disclosure Statement, or the Disclosure Statement Order (as defined herein), as applicable.

STATEMENT (AT NO COST TO YOU), CONTACT THE DEBTORS' SOLICITATION AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC (THE "**SOLICITATION AGENT**"), BY TELEPHONE AT (844) 974-4369 (U.S./CANADA, TOLL-FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL); (B) VISITING THE WEBSITE MAINTAINED BY THE SOLICITATION AGENT AT HTTPS://CASES.RA.KROLL.COM/MERCON (THE "**CASE WEBSITE**") AND CONTACTING THE SOLICITATION AGENT VIA THE "LIVE CHAT" FEATURE AT THE "INFO CENTER" PANEL OF THE LANDING PAGE; (C) CONTACTING THE SOLICITATION AGENT BY MAIL AT MERCON COFFEE CORPORATION CLAIMS PROCESSING CENTER, C/O KROLL RESTRUCTURING ADMINISTRATION, LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; OR (D) EMAILING MERCONINFO@RA.KROLL.COM WITH "MERCON SOLICITATION PACKAGE REQUEST" IN THE SUBJECT LINE. YOU MAY ALSO OBTAIN COPIES OF THESE MATERIALS OR ANY PLEADINGS FILED IN THESE CHAPTER 11 CASES FOR A FEE VIA PACER AT HTTPS://WWW.NYSB.USCOURTS.GOV/.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### <u>RELEASE OPT-IN NOTICE</u>

**Section 12.04 of the Plan contains certain release, injunction, and exculpation provisions, including the third-party releases (the "Third-Party Releases") set forth below. You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.**

**If you choose to opt-in to the Third-Party Releases set forth in Section 12.04 of the Plan, you may submit your election to opt-in by submitting the electronic version of this opt-in form (the "Opt-In Notice") through the Solicitation Agent's online E-Ballot Portal, which can be accessed via the Debtors' restructuring case website, https://cases.ra.kroll.com/mercon/, according to instructions provided below.**

**IF YOU CHOOSE TO OPT-IN TO THE THIRD-PARTY RELEASES SET FORTH IN THE PLAN, THIS OPT-IN NOTICE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [●], 2024, AT _:00 P.M. (PREVAILING EASTERN TIME) (THE "OPT-IN DEADLINE").**

<u>Item 1.</u> **Important Information Regarding Release Provisions of the Plan.** Section 12.04 of the Plan contains the following Third-Party Releases. The Bankruptcy Court has not yet approved the Third-Party Releases and such a decision will not be made until the Confirmation Hearing.

**Third-Party Releases**

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.**

**For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.**

**Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.**

**FOR THE AVOIDANCE OF DOUBT, THE ONLY PARTIES THAT ARE BOUND BY THE RELEASES CONTAINED IN THIS <u>SECTION 12.04</u> ARE THE RELEASING PARTIES.**

**DEFINITIONS:**

"**Released Parties**" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"**Releasing Parties**" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

---

**IMPORTANT INFORMATION**
**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**

**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

---

Check the following box only if you wish to opt in to the Third-Party Releases set forth above and in Section 12.04 of the Plan:

☐

**Opt In to Third-Party Releases**

Item 2. **Acknowledgements and Certification**. By signing this Opt-In Notice, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a)    as of the Voting Record Date, the undersigned is either (i) the Person that is the holder of Claim(s) or Equity Interests against one or more of the Debtors or (ii) the Person

that is an authorized signatory for the Person that is the holder of such Claim(s) or Equity Interests;

b)        the Person has received a copy of the Notice of (I) Non-Voting Status For Impaired Classes, and (II) Opportunity to Opt-In to the Third-Party Releases, and that this Opt-In Notice is submitted pursuant to the terms and conditions set forth therein;

c)        the Person has submitted the same respective election concerning the releases with respect to all Claims or Equity Interests held by the undersigned; and

d)        no other Opt-In Notice with respect to the amount of Claims or Equity Interests held by the undersigned have been submitted or, if any other Opt-In Notices have been submitted with respect to such Claims, then any such earlier Opt-In Notices are hereby revoked.

Print or Type Name of Holder:

_____

Signature

_____

Name of Signatory:

_____

If by Authorized Agent, Title of Agent:

_____

Street Address:

_____

City, State, Zip Code:

_____

Telephone Number:

_____

E-mail Address:

_____

Date Completed:

_____

If you would like to change your address information for future notice mailings or distributions, if any, upon your Claim in these chapter 11 cases, please send an email with the revised address to merconinfo@ra.kroll.com.

**IF YOU WISH TO MAKE THE OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN NOTICE AND RETURN IT (WITH A SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED OR VIA FIRST-CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

<div align="center">

**Mercon Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

</div>

**To arrange hand delivery of your Opt-In Notice, please email the Solicitation Agent at MerconBallots@ra.kroll.com (with "Mercon Solicitation Opt-In Notice Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.**

**In the alternative, to properly submit this Opt-In Notice via the Solicitation Agent's online E-Ballot Portal, please visit https://cases.ra.kroll.com/mercon/, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your customized electronic Opt-In Notice.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Notice:**

**Unique E-Opt-In Notice ID#:**_____

Each Unique E-Opt-In Notice ID# is to be used solely in relation to those Claims held against one or more of the Debtors. Please complete and submit an Opt-In Notice for each Unique E-Opt-In Notice ID# you receive, as applicable.

**If you choose to submit your Opt-In Notice using the E-Ballot Portal, you should NOT also submit a paper Opt-In Notice.**

**The Solicitation Agent's E-Ballot Portal is the only acceptable means of submission of Opt-In Notices via electronic or online transmission. Opt-In Notices submitted by facsimile, email, or other means of electronic transmission will not be counted.**

## **Exhibit D-1**

**Form of Ballot for Class 1 – Prepetition First Lien Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

### BALLOT FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS

**BALLOT FOR:** *Class 1 – Prepetition First Lien Claims*

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

---

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") PRIOR TO 4:30 P.M., PREVAILING EASTERN TIME ON JUNE [●], 2024 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

This Ballot is provided to you by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [●]), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll), or email MerconInfo@ra.kroll.com with a reference to "Mercon – Voting" in the subject line. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 1 – Prepetition First Lien Claims**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 1 – Prepetition First Lien Claims.

## <u>INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto.

**PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Solicitation Agent (i) at an appropriate address listed below or (ii) via the Solicitation Agent's E-Ballot platform by visiting https://cases.ra.kroll.com/mercon, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.**

---

**<u>If by U.S. Postal Service mail, overnight delivery, or personal delivery by hand</u>:**

> Mercon Coffee Corporation
> Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email MerconBallots@ra.kroll.com (with "Mercon Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the expected date and time of delivery

**To submit your customized electronic Ballot online:**

> Please visit the Debtors' Chapter 11 website maintained by the Solicitation Agent at https://cases.ra.kroll.com/Mercon, click on the "Submit E-Ballot" section of the website and follow instructions provided on the website to submit your electronic Ballot

> **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

> **Unique E-Ballot ID#: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission. Holders that submit an electronic Ballot via the E-Ballot platform SHOULD NOT also submit their paper Ballot.**

---

**Ballots will not be accepted by telecopy, facsimile, electronic mail or other electronic means of transmission (except via the Solicitation Agent's E-Ballot platform).**

**The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the beneficial holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed and which is not the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim; and (v) any Ballot transmitted to the Solicitation Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Solicitation Agent's E-Ballot platform). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To complete the Ballot, you must follow the procedures described below:

a.  Make sure that the information contained in Item 1 is correct;

b.  If you have a Claim in Class 1 – Prepetition First Lien Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.  if you elect to opt-in to the Third-Party Release, clearly indicate your decision in the applicable box in Item 3 of your Ballot;

d.  If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

e.  If you hold other Class 1 – Prepetition First Lien Claims, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

f.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

g.  If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

h.     If you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately;

i.     Provide your name, mailing address, and any remaining information requested;

j.     Sign and date your Ballot; and

k.     Return your Ballot with a signature to the Solicitation Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 974-4369 (U.S./CANADA, TOLL FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL) , OR BY E-MAILING MERCONINFO@RA.KROLL.COM WITH A REFERENCE TO "MERCON – VOTING" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

**IMPORTANT INFORMATION REGARDING THE**
<u>**INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN**</u>

<u>**Select Plan Provisions**</u>

<u>**Select Defined Terms**</u>

"*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"*Released Parties*" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"*Releasing Parties*" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

<u>**Section 12.04 of the Plan: Third Party Release**</u>

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would**

have been legally entitled to assert (whether individually or collectively), **PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES;** provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

### Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

**Section 12.07 of the Plan: Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER

AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO

3

**PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Class 1 – Prepetition First Lien Claims** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned is the Holder of the Class 1 – Prepetition First Lien Claims against the Debtor(s) listed below in the aggregate amount set forth below. Except as otherwise provided in the Plan, to the extent you hold a Claim that may be asserted against more than one Debtor, your vote in connection with such Claims will be counted as a vote of such Claim against each Debtor against which you have a Claim.

| | |
|---|---|
| **Claim Amount:**[1] | $_____ |
| **Debtor(s):** | _____ |

**Item 2. Vote on the Plan.** The undersigned holder of a Class 1 – Prepetition First Lien Claims in the amount set forth in Item 1 above hereby votes to (please check one):

☐ ACCEPT (vote FOR) the Plan          ☐ REJECT (vote AGAINST) the Plan

> **PLEASE NOTE THAT YOUR VOTE ON ACCOUNT OF YOUR CLASS 1 – PREPETITION FIRST LIEN CLAIM WILL ALSO BE APPLIED TO YOUR CLASS 4A – GENERAL UNSECURED CLAIM ON ACCOUNT OF THE DEFICIENCY CLAIM, IF ANY.**

**Item 3. Third-Party Release Election.**

> <u>**IMPORTANT INFORMATION**</u>
> <u>**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS**</u>:
>
> **YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**
>
> **YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

Check this box if you elect to grant the release contained in Section 12.04 of the Plan.

☐ The undersigned elects to grant the releases contained in Section 12.04 of the Plan.

**Item 4. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Order approving the Disclosure Statement without exhibits. The undersigned certifies that (i) it is

---

[1] The amount indicated here is only for voting purposes and subject to the Solicitation Agent's tabulation rules.

the holder of the Class 1 – Prepetition First Lien Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Signature: _____

Name of Signatory (if different than claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**<u>Exhibit D-2</u>**

**Form of Ballot for Class 2A – FMO Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

**BALLOT FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN**
**OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND**
**CERTAIN AFFILIATED DEBTORS**

**BALLOT FOR:** *Class 2A – FMO Claims*

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS**
**CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

---

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") PRIOR TO 4:30 P.M., PREVAILING EASTERN TIME ON JUNE [●], 2024 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

This Ballot is provided to you by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [●]), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll) , or email MerconInfo@ra.kroll.com with a reference to "Mercon – Voting" in the subject line. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 2A – FMO Claims**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 2A – FMO Claims.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto.

**PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Solicitation Agent (i) at an appropriate address listed below or (ii) via the Solicitation Agent's E-Ballot platform by visiting https://cases.ra.kroll.com/mercon, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.**

---

**If by U.S. Postal Service mail, overnight delivery, or personal delivery by hand:**

> Mercon Coffee Corporation
> Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

> To arrange hand delivery of your Ballot, please email MerconBallots@ra.kroll.com (with "Mercon Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the expected date and time of delivery

**To submit your customized electronic Ballot online:**

> Please visit the Debtors' Chapter 11 website maintained by the Solicitation Agent at https://cases.ra.kroll.com/Mercon, click on the "Submit E-Ballot" section of the website and follow instructions provided on the website to submit your electronic Ballot

> **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

> **Unique E-Ballot ID#: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission. Holders that submit an electronic Ballot via the E-Ballot platform SHOULD NOT also submit their paper Ballot.**

---

**Ballots will not be accepted by telecopy, facsimile, electronic email or other electronic means of transmission (except via the Solicitation Agent's E-Ballot platform).**

**The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the beneficial holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed and which is not subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim; and (v) any Ballot transmitted to the Solicitation Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Solicitation Agent's E-Ballot platform). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To complete the Ballot, you must follow the procedures described below:

a.    Make sure that the information contained in Item 1 is correct;

b.    If you have a Claim in Class 2A – FMO Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.    if you elect to opt-in to the Third-Party Release, clearly indicate your decision in the applicable box in Item 3 of your Ballot;

d.    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

e.    If you hold other Class 2A – FMO Claims, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

f.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

g.    If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Claims Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

    h.      If you believe that you have received the wrong Ballot, please contact the Claims Agent immediately;

    i.      Provide your name, mailing address, and any remaining information requested;

    j.      Sign and date your Ballot; and

    k.      Return your Ballot with a signature to the Solicitation Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 974-4369 (U.S./CANADA, TOLL FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL) , OR BY E-MAILING MERCONINFO@RA.KROLL.COM WITH A REFERENCE TO "MERCON – VOTING" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT INFORMATION REGARDING THE**
**INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN**

**Select Plan Provisions**

**Select Defined Terms**

"*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"*Released Parties*" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"*Releasing Parties*" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

**Section 12.04 of the Plan: Third Party Release**

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would**

have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

### Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

2

**Section 12.07 of the Plan: Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER**

**AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO**

**PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Class 2A – FMO Claims** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned is the Holder of the Class 2A – FMO Claims against the Debtor listed below in the aggregate amount set forth below. Except as otherwise provided in the Plan, to the extent you hold a Claim that may be asserted against more than one Debtor, your vote in connection with such Claims will be counted as a vote of such Claim against each Debtor against which you have a Claim.

| | |
|---|---|
| **Claim Amount:**[3] | $_____ |
| **Debtor(s):** | _____ |

**Item 2. Vote on the Plan.** The undersigned holder of a Class 2A – FMO Claims in the amount set forth in Item 1 above hereby votes to (please check one):

☐ ACCEPT (vote FOR) the Plan          ☐ REJECT (vote AGAINST) the Plan

**Item 3. Third-Party Release Election.**

<div style="border:1px solid">

**IMPORTANT INFORMATION**
**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**

**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

</div>

Check this box if you elect to grant the releases contained in Section 12.04 of the Plan.

☐          The undersigned elects to grant the releases contained in Section 12.04 of the Plan.

**Item 4. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Order approving the Disclosure Statement without exhibits. The undersigned certifies that (i) it is the holder of the Class 2A – FMO Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the

---

[3] The amount indicated here is only for voting purposes and subject to the Solicitation Agent's tabulation rules.

Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Signature: _____

Name of Signatory (if different than claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**<u>Exhibit D-3</u>**

**Form of Ballot for Class 4A – General Unsecured Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |
| _____/ | |

### BALLOT FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS

**BALLOT FOR:** *Class 4A – General Unsecured Claims*

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY _BEFORE_ COMPLETING THIS BALLOT.**

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") PRIOR TO 4:30 P.M., PREVAILING EASTERN TIME ON JUNE [●], 2024 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

This Ballot is provided to you by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [●]), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll) , or email MerconInfo@ra.kroll.com with a reference to "Mercon – Voting" in the subject line. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 4A – General Unsecured Claims**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 4A – General Unsecured Claims.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto.

**PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Solicitation Agent (i) at an appropriate address listed below or (ii) via the Solicitation Agent's E-Ballot platform by visiting https://cases.ra.kroll.com/mercon, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot**.

---

**If by U.S. Postal Service mail, overnight delivery, or personal delivery by hand:**

> Mercon Coffee Corporation
> Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

> To arrange hand delivery of your Ballot, please email MerconBallots@ra.kroll.com (with "Mercon Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the expected date and time of delivery

**To submit your customized electronic Ballot online:**

> Please visit the Debtors' Chapter 11 website maintained by the Solicitation Agent at https://cases.ra.kroll.com/Mercon, click on the "Submit E-Ballot" section of the website and follow instructions provided on the website to submit your electronic Ballot

> **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

> **Unique E-Ballot ID#: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission. Holders that submit an electronic Ballot via the E-Ballot platform SHOULD NOT also submit their paper Ballot.**

---

**Ballots will not be accepted by telecopy, facsimile, electronic mail or other electronic means of transmission (except via the Solicitation Agent's E-Ballot platform).**

**The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the beneficial holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed and which is not the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim; and (v) any Ballot transmitted to the Solicitation Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Solicitation Agent's E-Ballot platform). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To complete the Ballot, you must follow the procedures described below:

a.     Make sure that the information contained in Item 1 is correct;

b.     If you have a Claim in Class 4A – General Unsecured Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.     if you elect to opt-in to the Third-Party Release, clearly indicate your decision in the applicable box in Item 3 of your Ballot;

d.     If you vote to accept the Plan in Item 2, you may check the box in Item 4 to voluntary elect to receive the treatment provided to Class 5 Convenience Claims;

e.     If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

f.     If you hold other Class 4A – General Unsecured Claims, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

g.     You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

h.      If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

i.      If you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately;

j.      Provide your name, mailing address, and any remaining information requested;

k.      Sign and date your Ballot; and

l.      Return your Ballot with a signature to the Solicitation Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 974-4369 (U.S./CANADA, TOLL FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL), OR BY E-MAILING MERCONINFO@RA.KROLL.COM WITH A REFERENCE TO "MERCON – VOTING" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

**IMPORTANT INFORMATION REGARDING THE**
**INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN**

**Select Plan Provisions**

**Select Defined Terms**

"***Exculpated Parties***" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"***Released Parties***" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"***Releasing Parties***" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

**Section 12.04 of the Plan: Third Party Release**

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would**

have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released. For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

### Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

2

**Section 12.07 of the Plan: Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER**

**AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO**

**PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Class 4A – General Unsecured Claims** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned was the Holder of the Class 4A – General Unsecured Claims against the Debtor listed below in the aggregate amount set forth below. Except as otherwise provided in the Plan, to the extent you hold a Claim that may be asserted against more than one Debtor, your vote in connection with such Claims will be counted as a vote of such Claim against each Debtor against which you have a Claim.

| | |
|---|---|
| **Claim Amount:[3]** | $_____ |
| **Debtor(s):** | _____ |

**Item 2. Vote on the Plan.** The undersigned holder of a Class 4A – General Unsecured Claims in the amount set forth in Item 1 above hereby votes to (please check one):

☐  ACCEPT (vote FOR) the Plan          ☐  REJECT (vote AGAINST) the Plan

**Item 3. Third-Party Release Opt-In Election.**

| |
|---|
| **IMPORTANT INFORMATION**<br>**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**<br><br>**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**<br><br>**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.** |

Check this box if you wish to grant the releases contained in Section 12.04 of the Plan.

☐     The undersigned elects to grant the releases contained in Section 12.04 of the Plan.

**Item 4. Convenience Claim Election**. **Optional and Voluntary Election to Receive the Treatment Provided to Class 5 Convenience Claims.**

If you have voted to ACCEPT the Plan in Item 2 above, you are eligible to make the Convenience Claim Election. If you check the box below, your Claim (if Allowed) will be reduced to an Allowed

---

[3] The amount indicated here is only for voting purposes and subject to the Solicitation Agent's tabulation rules.

amount of $40,000, and you will receive the treatment provided to Convenience Claims as set forth in Section 3.07(g) of the Plan.

If you check the box below and elect to have your Class 4A General Unsecured Claim treated as a Class 5 Convenience Claim; (i) your vote on this Ballot to accept the Plan will still be tabulated as a vote in Class 4A with respect to the Plan, but your Claim (as reduced) will receive the treatment afforded to Class 5 Convenience Claims; and (ii) you will be giving up all distributions to Class 4A General Unsecured Claims in exchange for the treatment provided to Class 5 Convenience Claims.

☐     I hereby elect to reduce my Claim and to receive the treatment provide to a Class 5 Claim.

**Item 5. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Order approving the Disclosure Statement without exhibits. The undersigned certifies that (i) it is the holder of the Class 4A – General Unsecured Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant:           _____

Signature:                               _____

Name of Signatory (if different than claimant):   _____

If by Authorized Agent, Title of Agent:    _____

Street Address:                          _____

City, State, Zip Code                    _____

Telephone Number:                        _____

E-mail Address:                          _____

Date Completed:                          _____

2

**<u>Exhibit D-4</u>**

**Form of Ballot for Class 4B – Dutch Law SME Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

**BALLOT FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN**
**OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND**
**CERTAIN AFFILIATED DEBTORS**

**BALLOT FOR:** *Class 4B – Dutch Law SME Claims*

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS**
**CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

---

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") PRIOR TO 4:30 P.M., PREVAILING EASTERN TIME ON JUNE [●], 2024 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

This Ballot is provided to you by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [●]), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll) , or email MerconInfo@ra.kroll.com with a reference to "Mercon – Voting" in the subject line. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 4B – Dutch Law SME Claims**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 4B – Dutch Law SME Claims.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto.

**PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Solicitation Agent (i) at an appropriate address listed below or (ii) via the Solicitation Agent's E-Ballot platform by visiting https://cases.ra.kroll.com/mercon, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.**

---

**If by U.S. Postal Service mail, overnight delivery, or personal delivery by hand:**

> Mercon Coffee Corporation
> Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

> To arrange hand delivery of your Ballot, please email MerconBallots@ra.kroll.com (with "Mercon Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the expected date and time of delivery

**To submit your customized electronic Ballot online:**

> Please visit the Debtors' Chapter 11 website maintained by the Solicitation Agent at https://cases.ra.kroll.com/Mercon, click on the "Submit E-Ballot" section of the website and follow instructions provided on the website to submit your electronic Ballot

> **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

> **Unique E-Ballot ID#: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission. Holders that submit an electronic Ballot via the E-Ballot platform SHOULD NOT also submit their paper Ballot.**

---

**Ballots will not be accepted by telecopy, facsimile, electronic mail or other electronic means of transmission (except via the Solicitation Agent's E-Ballot platform).**

**The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the beneficial holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed and which is not the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim; and (v) any Ballot transmitted to the Solicitation Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Solicitation Agent's E-Ballot platform). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To complete the Ballot, you must follow the procedures described below:

a.    Make sure that the information contained in Item 1 is correct;

b.    If you have a Claim in Class 4B – Dutch Law SME Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.    if you elect to opt-in to the Third-Party Release, clearly indicate your decision in the applicable box in Item 3 of your Ballot;

d.    If you vote to Accept the Plan in Item 2, you may check the box in Item 4 to voluntary elect to receive the treatment provided to Class 5 Convenience Claims;

e.    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

f.    If you hold other Class 4B – Dutch Law SME Claims, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

g.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

h.      If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

i.      If you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately;

j.      Provide your name, mailing address, and any remaining information requested;

k.      Sign and date your Ballot; and

l.      Return your Ballot with a signature to the Solicitation Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 974-4369 (U.S./CANADA, TOLL FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL), OR BY E-MAILING MERCONINFO@RA.KROLL.COM WITH A REFERENCE TO "MERCON – VOTING" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT INFORMATION REGARDING THE**
**INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN**

### Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"*Released Parties*" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"*Releasing Parties*" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

### Section 12.04 of the Plan: Third Party Release

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would**

have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

### Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

**Section 12.07 of the Plan: Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER**

**AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO**

**PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Class 4B – Dutch Law SME Claims** For purposes of voting to accept or reject the Plan, the undersigned certifies that as the Voting Record Date, the undersigned was the Holder of the Class 4B – Dutch Law SME Claims against the Debtor listed below in the aggregate amount set forth below. Except as otherwise provided in the Plan, to the extent you hold a Claim that may be asserted against more than one Debtor, your vote in connection with such Claims will be counted as a vote of such Claim against each Debtor against which you have a Claim.

| | |
|---|---|
| **Claim Amount:**[3] | $_____ |
| **Debtor(s):** | _____ |

**Item 2. Vote on the Plan.** The undersigned holder of a Class 4B – Dutch Law SME Claims in the amount set forth in Item 1 above hereby votes to (please check one):

☐  ACCEPT (vote FOR) the Plan          ☐  REJECT (vote AGAINST) the Plan

**Item 3. Third-Party Release Election.**

| |
|---|
| **IMPORTANT INFORMATION**<br>**REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**<br><br>**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**<br><br>**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.** |

Check this box if you wish to grant the releases contained in Section 12.04 of the Plan.

☐    The undersigned elects to grant the releases contained in Section 12.04 of the Plan.

**Item 4. Convenience Claim Election. Optional and Voluntary Election to Receive the Treatment Provided to Class 5 Convenience Claims.**

If you have voted to ACCEPT the Plan in Item 2 above, you are eligible to make the Convenience Claim Election. If you check the box below, your Claim (if Allowed) will be reduced to an Allowed amount of $40,000, and you will receive the treatment provided to Convenience Claims as set forth in Section 3.07(g) of the Plan.

---

[3] The amount indicated here is only for voting purposes and subject to the Solicitation Agent's tabulation rules.

If you check the box below and elect to have your Class 4B Dutch Law SME Claim treated as a Class 5 Convenience Claim; (i) your vote on this Ballot to accept the Plan will still be tabulated as a vote in Class 4B with respect to the Plan, but your Claim (as reduced) will receive the treatment afforded to Class 5 Convenience Claims; and (ii) you will be giving up all distributions to Class 4B Dutch Law SME Claims in exchange for the treatment provided to Class 5 Convenience Claims.

☐     I hereby elect to reduce my Claim and to receive the treatment provide to a Class 5 Claim.

**Item 5. Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Order approving the Disclosure Statement without exhibits. The undersigned certifies that (i) it is the holder of the Class 4B – Dutch Law SME Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant:     _____

Signature:     _____

Name of Signatory (if different than claimant):     _____

If by Authorized Agent, Title of Agent:     _____

Street Address:     _____

City, State, Zip Code     _____

Telephone Number:     _____

E-mail Address:     _____

Date Completed:     _____

## **Exhibit D-5**

**Form of Ballot for Class 5– Convenience Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

### BALLOT FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS

**BALLOT FOR:** *Class 5– Convenience Claims*

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

---

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") PRIOR TO 4:30 P.M., PREVAILING EASTERN TIME ON JUNE [●], 2024 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

This Ballot is provided to you by Mercon Coffee Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (Doc. No. [●]), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 974-4369 (U.S./Canada, toll free) or +1 (646) 586-9785 (international, toll) , or email MerconInfo@ra.kroll.com with a reference to "Mercon – Voting" in the subject line. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 5– Convenience Claims**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 5– Convenience Claims.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto.

**PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline, unless such time is extended by the Debtors. Ballots must be delivered to the Solicitiation Agent (i) at an appropriate address listed below or (ii) via the Solicitation Agent's E-Ballot platform by visiting https://cases.ra.kroll.com/mercon, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Holders are encouraged to submit their Ballots via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.**

<div style="border:1px solid black; padding:1em;">

**<u>If by U.S. Postal Service mail, overnight delivery, or personal delivery by hand</u>:**

> Mercon Coffee Corporation
> Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

> To arrange hand delivery of your Ballot, please email MerconBallots@ra.kroll.com (with "Mercon Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the expected date and time of delivery

**To submit your customized electronic Ballot online:**

> Please visit the Debtors' Chapter 11 website maintained by the Solicitation Agent at https://cases.ra.kroll.com/Mercon, click on the "Submit E-Ballot" section of the website and follow instructions provided on the website to submit your electronic Ballot

> **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

> **Unique E-Ballot ID#: _____**

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission. Holders that submit an electronic Ballot via the E-Ballot platform SHOULD NOT also submit their paper Ballot.**

</div>

**Ballots will not be accepted by telecopy, facsimile, electronic mail or other electronic means of transmission (except via the Solicitation Agent's E-Ballot platform).**

**The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the beneficial holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed and which is not the subject of a Bankruptcy Court order providing that no proof of claim needs to be filed with respect to such Claim; and (v) any Ballot transmitted to the Solicitation Agent by facsimile, or electronic transmission, or other electronic means (other than Ballots entitled to be submitted via the Solicitation Agent's E-Ballot platform. An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To complete the Ballot, you must follow the procedures described below:

a.    Make sure that the information contained in Item 1 is correct;

b.    If you have a Claim in Class 5– Convenience Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.    if you elect to opt-in to the Third-Party Release, clearly indicate your decision in the applicable box in Item 3 of your Ballot;

d.    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

e.    If you hold other Class 5– Convenience Claims, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

f.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

g.    If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Solicitation Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

h.    If you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately;

i.    Provide your name, mailing address, and any remaining information requested;

j.    Sign and date your Ballot; and

k.    Return your Ballot with a signature to the Solicitation Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 974-4369 (U.S./CANADA, TOLL FREE) OR +1 (646) 586-9785 (INTERNATIONAL, TOLL), OR BY E-MAILING MERCONINFO@RA.KROLL.COM WITH A REFERENCE TO "MERCON – VOTING" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

## IMPORTANT INFORMATION REGARDING THE
## INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN

### Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date, including but not limited to, the Chief Restructuring Officer, Harve Light; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); or (e) the Creditors' Committee's Professionals.

"*Released Parties*" means collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise.  For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

"*Releasing Parties*" means collectively, (a) the Secured Parties (solely to the extent they have opted in to granting the releases as set forth in (c) below); (b) the Creditors' Committee and each of its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (c) all Holders of Claims or Interests that affirmatively opt into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (d) any Released Party that affirmatively opts into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; for the avoidance of doubt, any party that did not affirmatively opt in to the Third-Party Releases contained in Section 12.04 of the Plan shall not be deemed to grant such Third-Party Releases.

### Section 12.04 of the Plan: Third Party Release

**Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party and the Debtors, to the extent based solely on actions or omissions occurring on or prior to the Effective Date, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would**

have been legally entitled to assert (whether individually or collectively), PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released. For the avoidance of doubt, a creditor that does not opt into the releases provided in the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan is not a Released Party nor a Releasing Party.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.04 of the Plan is advised to seek the advice of independent legal counsel in connection therewith. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.04 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

### Section 12.05 of the Plan: Exculpation

Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, solicitation, confirmation, implementation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan approved by the Bankruptcy Court in these Chapter 11 Cases, except for any Cause of Action related to any act or omission that is result of the fraud, gross negligence, or willful misconduct of such Person; provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the exculpation in this Section 12.05 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

**Section 12.07 of the Plan: Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER**

**AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO**

3

**PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; <u>PROVIDED</u>, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Class 5– Convenience Claims** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned was the Holder of the Class 5– Convenience Claims against the Debtor listed below in the aggregate amount set forth below. Except as otherwise provided in the Plan, to the extent you hold a Claim that may be asserted against more than one Debtor, your vote in connection with such Claims will be counted as a vote of such Claim against each Debtor against which you have a Claim.

| Claim Amount:[3] | $_____ |
|---|---|
| Debtor(s): | _____ |

**Item 2. Vote on the Plan.** The undersigned holder of a Class 5– Convenience Claims in the amount set forth in Item 1 above hereby votes to (please check one):

☐ ACCEPT (vote FOR) the Plan          ☐ REJECT (vote AGAINST) the Plan

**Item 3. Third-Party Release Election.**

---

**IMPORTANT INFORMATION
REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

**YOU ARE ENTITLED TO OPT-IN TO THE THIRD-PARTY RELEASE CONTAINED IN SECTION 12.04 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 OF THIS BALLOT.**

**YOU ARE NOT REQUIRED TO GRANT THIS RELEASE. YOUR FAILURE TO DO SO WILL NOT AFFECT YOUR DISTRIBUTIONS OR THE CONFIRMATION OF THE PLAN. THIS IS STRICTLY VOLUNTARY.**

---

Check this box if you wish to grant the releases contained in Section 12.04 of the Plan.

☐ The undersigned elects to grant the releases contained in Section 12.04 of the Plan.

**Item 4. Acknowledgements and Certification.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with: a copy of the Disclosure Statement, including the Plan and all other exhibits thereto; a Confirmation Hearing Notice; and a copy of the Order approving the Disclosure Statement without exhibits. The undersigned certifies that (i) it is the holder of the Class 5– Convenience Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the

---

[3] The amount indicated here is only for voting purposes and subject to the Solicitation Agent's tabulation rules.

Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Signature: _____

Name of Signatory (if different than claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____