WILLIAM K. HARRINGTON  
United States Trustee, Region 2  
U.S. Department of Justice  
Office of the United States Trustee  
One Bowling Green, Room 534  
New York, New York 10004  
Telephone: (212) 510-0500  
By: Daniel Rudewicz, Trial Attorney  
Brian Masumoto, Trial Attorney  

Hearing Date: June 28, 2024  
Hearing Time: 11:00 a.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

| | |
|---|---|
| In re: | Chapter 11 |
| MERCON COFFEE CORPORATION *et al.,* | Case No. 23-11945 (MEW) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION OF THE UNITED STATES TRUSTEE TO  
CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF LIQUIDATION  
FOR MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS**

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 4

    I.    The Plan Does Not Meet the Requirements of Section 1129(b)......................................... 4

        A.    The Plan Discriminates Unfairly. ................................................................................. 5

        B.    The Plan is Not Fair and Equitable. .............................................................................. 7

    II.    An Extensive Number of Parties Are Receiving the Debtor Release in Return for Unknown Consideration...................................................................................................... 8

CONCLUSION............................................................................................................................... 11

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), through his counsel, respectfully submits this objection (the "Objection") to the confirmation of the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF No. 514] (as amended, supplemented, or modified, the "Plan").[2] In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Plan because the Plan fails to comply with section 1129 of the Bankruptcy Code.[3] The Plan (a) unfairly discriminates between classes of creditors and (b) is not fair and equitable. With respect to unfair discrimination, one class of unsecured creditors is receiving a recovery more than two times greater than what another class of unsecured creditors is receiving. With respect to fair and equitable, the Plan provides that equityholders will retain interests while other creditor classes will not receive or retain value equal to the allowed amount of their claims.

Moreover, the Debtors are giving valuable estate releases to numerous parties without receiving adequate consideration in exchange for such releases.

For these reasons, as detailed more fully below, the United States Trustee respectfully requests that the Court deny confirmation of the Plan.

## BACKGROUND

1.  On December 7, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code.

2.  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.
[3] Unless otherwise stated, all section references are to the Bankruptcy Code.

1

3.     On December 21, 2023, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. ECF No. 74. No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

**The Plan**

4.     On May 2, 2024, the Debtors filed the *Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF No. 377]. On May 15, 2024, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF No. 488]. On May 17, 2024, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF No. 499]. On May 22, 2024, the Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF No. 514] (as amended or modified from time to time, the "Plan").

Plan Treatment

5.     The Plan provides for the following treatment of Dutch Law SME Claims (collectively, "Class 4B Claims"):

> Treatment: In accordance with Dutch Restructuring Law and as required to obtain confirmation of the Dutch WHOA Plan by the Dutch Court, Holders of Allowed Dutch Law SME Claims will receive, on or within 30 days from the Effective Date of the Plan, cash in the amount of 20% of their Allowed Claims along with Class B Trust Interests for the balance of their Claims; *provided, however*, that no Distribution shall be made from the Liquidating Trust in respect of those Class B Trust Interests until such time as the Holders of Allowed General Unsecured Claims in Class 4A of the Plan shall have received Distributions in respect of their Class B Trust Interests totaling 20% of the amount of their Allowed Claims.

Plan, Art. III, § 3.07(f).

2

6. The Plan provides for the following treatment of Equity Interests (collectively, "Class 8 Equity Interests"):

Treatment: On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests; *provided, however*, that in accordance with Dutch law the Equity Interests in Debtor Mercon B.V. shall not be cancelled until such time as Mercon B.V. is formally dissolved under Dutch law.

Plan, Art. III, § 3.07(j).

### Debtor Release

7. The Plan defines "**Released Parties**" as:

collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

Plan, Art. I, § 1.124.

8. The Debtor release is contained in Article XII § 12.03 of the Plan, which states:

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released by each and all of the Debtors and their Estates, and the Liquidating Trust and Liquidating Trustee, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their Estates or affiliates would have been legally entitled to assert, in their own right (whether individually or collectively) or on behalf of the Holder of any claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors;

3

PROVIDED, HOWEVER, FOR ANY RELEASED PARTY THAT IS AN INSURED PARTY OR INSURED PERSON UNDER THE D&O POLICIES, REGARDLESS OF WHETHER COVERAGE IS ULTIMATELY EXTENDED OR DENIED TO SUCH PARTY OR PERSON, THE FOREGOING RELEASE IS LIMITED TO THE LIABILITY OF ANY SUCH PARTY OR PERSON THAT EXCEEDS THE PROCEEDS OF THE D&O POLICIES; and provided, further, however, nothing herein shall be deemed a release for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; and provided further that any right to enforce the Plan, the Plan Supplement and Confirmation Order is not so released.

Nothing herein shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct. Any Person who may be affected by the release in this Section 12.03 of the Plan is advised to seek the advice of independent legal counsel in connection therewith.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described herein by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Section 12.03 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; and (5) given and made after due notice and opportunity for hearing.

Plan, Art. XII, § 12.03.

## ARGUMENT

### I. THE PLAN DOES NOT MEET THE REQUIREMENTS OF SECTION 1129(B).

A debtor can avoid a cramdown pursuant to section 1129(b) only if the Plan meets all the requirements of section 1129(a). 11 U.S.C. § 1129(a). But to do so, *every* impaired class must accept the Plan.[4] *See* 11 U.S.C. § 1129(a)(8). Where section 1129(a)(8) is not met, then section 1129(b)(1) allows a plan to be confirmed only if it "does not discriminate unfairly, and is fair and

---

[4] As of the filing date of this Objection, the voting results are not available. *See Order (I) Scheduling a Plan Confirmation Hearing, (II) Approving the Disclosure Statement, (III) Establishing Plan Solicitation, Voting and Tabulation Procedures, (IV) Approving Forms of Notices and Ballots, and (V) Granting Related Relief* [ECF No. 521] at 3 (noting that the Voting Deadline is June 20, 2024 and the deadline to file the Voting Tabulations Affidavit is June 24, 2024.).

4

equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). Here, the Debtors' Plan (a) discriminates unfairly and (b) is not fair and equitable.

### A. The Plan Discriminates Unfairly.

Section 1129(b) provides that a plan can be confirmed if it "does not discriminate unfairly . . . with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). The Bankruptcy Code does not define unfair discrimination. *In re SunEdison, Inc.*, 575 B.R. 220, 226 (Bankr. S.D.N.Y. 2017) ("The Bankruptcy Code does not define unfair discrimination, but it is designed to protect against horizontal discrimination in the same way that the absolute priority rule prevents against nonconsensual vertical discrimination.") "There can be 'discrimination,' so long as it is not 'unfair.'" 7 Collier on Bankruptcy P 1129.03

In *In re Breitburn Energy Partners LP*, the United States Bankruptcy Court for the Southern District of New York found unfair discrimination where one unsecured class received a 4.5% recovery and the other unsecured classes received recoveries of 11.94% and higher. 582 B.R. 321, 350–52 (Bankr. S.D.N.Y. 2018). In *Breitburn*, the court evaluated the recoveries of the four unsecured classes. *Id.* at 351. The court determined that Class 5A would receive 11.94%; Class 5B would receive approximately 4.5%; Class 6 would receive approximately 7%; and Class 7A and 7B would receive 100%. *Id.* The court noted that the plan discriminates between the classes and that the debtors had "not demonstrated why it is reasonable or necessary to pay Class 5B so much less percentagewise than Class 5A or Class 7, and less than Class 6." *Id.* The court also noted that "Class 5A is receiving over two times greater value than Class 5B." *Id.* Given these facts, the court "conclude[d] that the Debtors have failed to sustain their burden

5

under 11 U.S.C. § 1129(b) to prove that the Plan does not unfairly discriminate against Class 5B." *Id.* at 352. Courts in other districts have found unfair discrimination at similar thresholds. *See In re Crosscreek Apartments, Ltd.*, 213 B.R. 521, 538 (Bankr. E.D. Tenn. 1997) (holding unfair discrimination existed where one unsecured class party recovers 50% and another unsecured class recovers 100%); *In re Barney & Carey Co.*, 170 B.R. 17, 25-26 (Bankr. D. Mass. 1994) (finding unfair discrimination where one class is paid 100% over ten years and the other class is paid 15% ninety days after Plan is effective).

Here, Class 4B will receive "cash in the amount of 20% of their Allowed Claims along with Class B Trust Interests for the balance of their Claims" where Classes will not receive the same treatment. Plan, Art. III, §3.07(f). More specifically, the Disclosure Statement sets forth the following estimated recoveries:

| Class | Designation | Impairment | Entitlement to Vote | Estimated Recoveries |
|---|---|---|---|---|
| Class 1: | Prepetition First Lien Claims | Impaired | Yes | 25.7% - 30.6% |
| Class 2: | Other Secured Claims | Unimpaired | No (deemed to accept) | 2.6% - 5.8% |
| Class 2A | FMO Claims | Impaired | Yes | 3.9% - 7.1%[2] |
| Class 3 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100%[3] |
| Class 4A | General Unsecured Claims | Impaired | Yes | 3.9% - 7.1%[4] |
| Class 4B | Dutch Law SME Claims | Impaired | Yes | 20% |
| Class 5 | Convenience Claims | Impaired | Yes | 60% -100% |
| Class 6 | Intercompany Claims | Impaired | No (deemed to reject) | 0% |
| Class 7 | Subordinated Claims | Impaired | No (deemed to reject) | 0% |
| Class 8 | Equity Interests in the Debtors | Impaired | No (deemed to reject) | 0% |

---

[2] This assumes that there is no recovery on FMO's Collateral in Nicaragua. Class 2A Claims are likely to be unsecured deficiency claims.
[3] This assumes that not every eligible Holder of A General Unsecured Claim elects to make the Convenience Claim Election.
[4] Any recovery is dependent almost entirely on the amount of Litigation Proceeds recovered by the Liquidating Trust. The return, therefore, is inherently uncertain.

*See* Disclosure Statement [ECF No. 521], Exh. A-1 at 5. Class 4A and Class 4B are both classes

of unsecured claims. Yet, like the debtors in *Breitburn*, the Debtors here are allowing one unsecured class to "receiv[e] over two times greater value than" another unsecured class. *Breitburn*, 582 B.R. at 351.

To the extent a class rejects the Plan, and such treatment unfairly discriminates between classes, pursuant to section 1129(b), the Court should not confirm the Plan.

### B. The Plan is Not Fair and Equitable.

In addition to the unfair-discrimination requirement, section 1129 requires a plan to be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). Section 1129(b)(2) outlines what "fair and equitable" means, providing in relevant part:

> With respect to a class of unsecured claims—
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive ***or retain*** under the plan on account of such junior claim or interest any property, . . .

11 U.S.C. § 1129(b)(2)(B) (emphasis added); *see also In re DBSD N. Am., Inc.,* 634 F.3d 79, 94 (2d Cir. 2011) ("The Code does not define the full extent of 'fair and equitable,' but it includes a form of the absolute priority rule as a prerequisite.").

Here, several classes are not being paid in full. *See, e.g.,* Plan, Art. III, § 3.07 (outlining the impaired treatment for certain creditor classes). Yet, the Plan provides that the Class 8 Interests for Mercon B.V. will be retained for an indefinite period of time. *See* Plan, Art. II, §3.07(j) (noting that "in accordance with Dutch law the Equity Interests in Debtor Mercon B.V. shall not be cancelled until such time as Mercon B.V. is formally dissolved under Dutch law"). Regardless of the Debtors' interpretation of Dutch law, the statutory language enacted by the

7

United States Congress is clear: it is a violation of the absolute priority rule if equityholders retain their interests when unsecured creditors are not being paid in full. Accordingly, to the extent any class of creditors votes to reject the plan, the Plan is not fair and equitable. Thus, the Court should not confirm the plan.

## II.   AN EXTENSIVE NUMBER OF PARTIES ARE RECEIVING THE DEBTOR RELEASE IN RETURN FOR UNKNOWN CONSIDERATION.

The United States Trustee resubmits and reaffirms the objections to the Debtors' release of claims against the Released Parties as detailed in the United States Trustee's Objection to the Disclosure Statement (the "Disclosure Statement Objection") [ECF No. 425].

As stated in the Disclosure Statement Objection, the Debtors' potential claims against other parties are property of the estate. *See* 11 U.S.C. § 541. Pursuant to Bankruptcy Rule 9019, debtors have the authority to settle or release such claims. *See* Fed. R. Bankr. P. 9019; *see also Smart World Technologies, LLC v. Juno Online Servs., Inc.,* 423 F.3d 166, 175 (2d Cir. 2005). Because these estate claims are not individual claims of creditors that a creditor may pursue directly, these estate claims do not implicate many of the issues involved in third-party releases. *See, e.g., In re Granite Broad. Corp.,* 369 B.R. 120, 138–39 (Bankr. S.D.N.Y. 2007) ("[I]t does not affect claims held individually by creditors or shareholders and thus does not raise any issue regarding the power of the bankruptcy court to approve a 'third-party release.'"). However, the release of such claims must still "satisfy the provisions of the Bankruptcy Code relating to the approval of settlements." *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S. Ct. 1157, 20 L.Ed.2d 1 (1968)).

The Plan provides for the Debtors to release "any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever" the estates may have against the Released Parties. *See* Plan, Art. XII, § 12.03. While the Debtors did modify the definition of

8

Released Parties following the hearings to approve the Disclosure Statement, the Debtor release is still being granted to a long-enumerated list of unnamed parties. The extensive range of parties that are being released under the Plan are borne out by the definition of "Released Parties":

> collectively the following, in each case, (i) solely in their respective capacities as such, and (ii) subject to the release limitations in Sections 12.03 and 12.04 hereof: the current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise. For the avoidance of doubt, and notwithstanding any of the foregoing, (i) any accountant that provided services to any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party and (ii) any current and former equity holder of any of the Debtors or any of the Debtors' current or former Affiliates is not a Released Party.

Plan, Art. I, § 1.124.

The release of the potentially valuable estate claims against the Released Parties are allegedly for the Debtors' receipt of "good and valuable consideration." Plan, Art. XII, § 12.03. The Plan, Disclosure Statement, and Memorandum in Support still fail to provide sufficient detail of what consideration was provided by *each* Released Party, or why, for example, each of the *current and former directors, officers, representatives, members of management and other employees of the Debtors, the attorneys of the Debtors, Riveron RTS, LLC, Riveron Consulting, LLC and any of such Riveron entities' Affiliates, and Harve Light, in his capacity as Chief Restructuring Officer or otherwise* are all entitled to be released.

The burden is on the Debtors to detail why the releases should be granted. There is not sufficient evidence in the record as to all these released parties' contribution, economic or otherwise. Nor is there detail of all the claims that are being release. There is also no evidence as to the value of these estate claims that the Debtors so readily release without any reciprocal consideration. As stated in the Disclosure Statement Objection, if the Debtors hold claims

9

against the Released Parties, then those claims are assets of the estate. In sum, the Debtor release here is inappropriate.

*[Remainder of page intentionally left blank.]*

**CONCLUSION**

WHEREFORE, the United States Trustee requests that the Court sustain the Objection of the United States Trustee and grant such other relief as it deems just and proper.

Dated: June 20, 2024
      New York, New York

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE

By:   */s/ Daniel Rudewicz*
       Daniel Rudewicz, Esq.
       Brian Masumoto, Esq.
       Trial Attorneys
       Office of the United States Trustee - NY
       Alexander Hamilton Custom House
       One Bowling Green, Room 534
       New York, NY 10004-1408
       Tel. No. (212) 510-0500