Paul J. Keenan Jr. (admitted *pro hac vice*)
John R. Dodd (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | Jointly Administered |

_____/

### NOTICE OF FILING THIRD PLAN SUPPLEMENT TO THE
### FOURTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR
### <u>MERCON COFFEE CORPORATION AND CERTAIN AFFILIATED DEBTORS</u>

**PLEASE TAKE NOTICE** that on May 22, 2024, the Debtors filed the *Fourth Amended Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [Doc. No. 515] and the *Fourth Amended Joint Chapter*

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

*11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [Doc. No. 514] (as may be amended, modified or supplemented from time to time, the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that on May 24, 2024, the Court entered the *Order (I) Scheduling a Plan Confirmation Hearing, (II) Approving the Disclosure Statement, (III) Establishing Plan Solicitation, Voting and Tabulation Procedures, (IV) Approving Forms of Notices and Ballots, and (V) Granting Related Relief* [Doc. No. 521] (the "**Disclosure Statement Order**").

**PLEASE TAKE FURTHER NOTICE** that on June 13, 2024, in accordance with the Disclosure Statement Order, the Debtors filed the *Notice of Filing Plan Supplement to the Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [Doc. No. 599] (the "**First Plan Supplement**").

**PLEASE TAKE FURTHER NOTICE** that on June 17, 2024, in accordance with the Disclosure Statement Order, the Debtors filed the *Notice of Filing Second Plan Supplement to the Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [Doc. No. 607] (the "**Second Plan Supplement**").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this *Notice of Filing of Third Plan Supplement to the Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* (the "**Third Plan Supplement**" and together with the First Plan Supplement and the Second Plan Supplement, the "**Plan Supplement**"). The First Plan Supplement and Second Plan Supplement are hereby amended by this Third Plan Supplement to include the amended exhibits attached hereto, as maybe further modified, amended, or supplemented from time to time:

| Exhibit | Document |
|---------|----------|
| A-1 | Revised Liquidating Trust Agreement |
| A-2 | Redline of Liquidating Trust Agreement |

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are not final and remain subject to continuing review and analysis among the Debtors and other interested parties. Accordingly, the Debtors reserve the right to alter, amend, modify, or supplement any document of, or add any document to, the Plan Supplement subject to the terms and conditions of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and considered part of, the Plan. If the Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Plan or related documents, you may obtain copies free of charge (a) by accessing the Debtors' restructuring website maintained by Kroll Restructuring Administration LLC ("**Kroll**") at

---

[2] Capitalized terms used but not defined herein are defined in the Plan.

https://cases.ra.kroll.com/mercon; (b) by writing to Mercon Coffee Corporation Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (c) by email to the Solicitation Agent at MerconInfo@ra.kroll.com with a reference to "Mercon Solicitation Inquiry" in the subject line; (d) by telephone at 1-646-586-9785 (International) or 1-844-974-4369 (U.S./Canada Toll-Free); or (e) for a fee via PACER.

**PLEASE TAKE FURTHER NOTICE** that the confirmation hearing on final approval of the Plan has been scheduled for **June 28, 2024 at 11:00 a.m. (ET)** before The Honorable Michael E. Wiles, United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, Room 617, New York, NY 10004. The Confirmation Hearing may be further continued from time to time without further notice other than the advisement or announcement of the adjourned date(s) by the Debtors in open court or by notice on the docket.

Dated: June 27, 2024

**BAKER & McKENZIE LLP**

By: /s/ *Reginald Sainvil*

Paul J. Keenan Jr. (admitted *pro hac vice*)
John R. Dodd (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        john.dodd@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors and Debtors-in-Possession*

## **Exhibit A-1**

Revised Liquidating Trust Agreement

(Attached)

*Draft – Remains Subject to Review in All Aspects by Parties in Interest*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | |

_____/

## LIQUIDATING TRUST AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

# TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS

1.01       Definitions.................................................................................................................3

ARTICLE II
PURPOSE OF THE LIQUIDATING TRUST

2.01       Purpose......................................................................................................................8
2.02       Relationship ..............................................................................................................9

ARTICLE III
ESTABLISHMENT OF THE LIQUIDATING TRUST

3.01       Name of the Liquidating Trust..................................................................................9
3.02       Incorporation of Plan ................................................................................................9
3.03       Transfer of Assets and Rights to the Liquidating Trust............................................9
3.04       Title to the Liquidating Trust Assets ......................................................................11
3.05       Appointment of the Liquidating Trustee.................................................................11
3.06       Funding of the Liquidating Trust ............................................................................12
3.07       Rights of Debtors ....................................................................................................13

ARTICLE IV
BENEFICIARIES

4.01       Incidents of Ownership ...........................................................................................14
4.02       Evidence of Trust Interest.......................................................................................14
4.03       Transfer of Trust Interests.......................................................................................14
4.04       Trust Interests are Beneficial Only .........................................................................14
4.05       Exemption from Securities Laws ............................................................................14
4.06       Conflicting Claims to Trust Interests......................................................................15
4.07       Know Your Customer Requirements.......................................................................15
4.08       Reporting..................................................................................................................15
4.09       Annual Plan and Budget .........................................................................................16
4.10       Limited Liability .....................................................................................................16

ARTICLE V
THE LIQUIDATING TRUSTEE

5.01       Generally..................................................................................................................16
5.02       Term of Service........................................................................................................17
5.03       Authority of the Liquidating Trustee ......................................................................17

5.04    Additional Responsibilities of the Liquidating Trustee ...........................................20
5.05    Limitations on Liquidating Trustee's Authority ...................................................20
5.06    Discretion .......................................................................................................20
5.07    Retention of Professionals ...............................................................................21
5.08    Liability of Liquidating Trustee and Its Representatives......................................21
5.09    Non-liability for Acts of Others ........................................................................21
5.10    Limitation of Liability to Third Persons .............................................................22
5.11    Compensation of the Liquidating Trustee and Other Employees or Agents ...............22
5.12    Liquidating Trust Board....................................................................................23
5.13    Exculpation; Indemnification............................................................................26
5.14    Removal or Replacement of the Liquidating Trustee ...............................................27
5.15    Inquiries into the Liquidating Trustee's Authority ...................................................28

## ARTICLE VI
## DISTRIBUTIONS

6.01    Distributions to Holders of Trust Interests....................................................28
6.02    Location for Distributions; Notice of Change of Address ...........................................29
6.03    Allocation of Liquidating Trust Assets............................................................29
6.04    Administration of Distributions ..................................................................30

## ARTICLE VII
## SUCCESSOR LIQUIDATING TRUSTEE

7.01    Successor Liquidating Trustee ..........................................................................32

## ARTICLE VIII
## DURATION AND TERMINATION OF TRUST

8.01    Duration ..........................................................................................................33
8.02    Maintenance of Records ...................................................................................33
8.03    Dissolution Events ...........................................................................................34
8.04    Continuance of Trust for Winding Up ..............................................................34

## ARTICLE IX
## TAX MATTERS

9.01    Tax Treatment..................................................................................................34
9.02    Tax Reporting ..................................................................................................35
9.03    Tax Withholdings..............................................................................................36
9.04    Disputed Claims...............................................................................................36
9.05    Foreign Tax Matters.........................................................................................36

## ARTICLE X
## AMENDMENT AND WAIVER

10.01        Amendment; Waiver ...................................................................................37

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.01        Intention to Establish Grantor Trust ..........................................................37
11.02        Laws as to Construction.............................................................................38
11.03        Other Activities.........................................................................................38
11.04        Severability ...............................................................................................38
11.05        Jurisdiction................................................................................................38
11.09        Notices ......................................................................................................39
11.10        Notices if to a Holder of a Trust Interest .................................................39
11.11        Headings ...................................................................................................39
11.12        Entire Agreement......................................................................................40
11.13        Counterparts..............................................................................................40
11.14        Prevailing Party.........................................................................................40

*Draft – Remains Subject to Review in All Aspects by Parties in Interest*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                        Chapter 11

MERCON COFFEE CORPORATION, *et*            Case No. 23-11945 (MEW)
*al.*,[2]

     Debtors.

_____ /

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (as amended, supplemented, or otherwise modified from time to time, this "Agreement") is made effective as of the Effective Date (as defined below) of the Plan, by and among (i) the above-captioned debtors and debtors in possession (the "Debtors" and each a "Debtor") in the above-captioned chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); (ii) the undersigned Members of the Liquidating Trust Board (as defined below); and (iii) Marc Kirschner, solely in his capacity as the trustee (the "Trustee" or "Liquidating Trustee") for the holders of Trust Interests (as defined below). Each of the Debtors, the undersigned Members of the Liquidating Trust Board, and the Liquidating Trustee are referred to herein individually as a "Party" and, collectively, as the "Parties." This Liquidating Trust Agreement effectuates the terms of the Stipulation dated March 29, 2024, between Rabobank and the Creditors Committee, approved by Rabobank (at the direction of the Majority Lenders under the Prepetition First Lien Credit Agreement) and the Creditors' Committee.

# RECITALS

A.     On December 6, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") thereby commencing these Cases.

B.     On May 24, 2024, the Bankruptcy Court entered an order [ECF. No. 521] (the "Disclosure Statement Order") approving the *Fourth Amended Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF. No. 515] (as may be further amended or supplemented, the "Disclosure Statement").

---

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

C.      On May [XX], 2024, the Bankruptcy Court entered an order [ECF. No. XX] (the "Confirmation Order") confirming the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF. No. XX] (as may be further amended or supplemented, the "Plan").

D.      The Effective Date of the Plan occurred on [●], 2024.

E.      Pursuant to and as provided in the Plan and this Agreement, the Parties hereby seek to effectuate the creation and establishment of a liquidating trust (this "Liquidating Trust"), for the benefit of the holders of Trust Interests (i) for the purpose of collecting, administering, distributing and liquidating the Liquidating Trust Assets (as defined herein) in accordance with the terms of this Agreement, the Plan, and the Confirmation Order, (ii) to adjudicate, object to, settle, compromise or otherwise liquidate and pay certain Allowed Claims as set forth in the Plan, and (iii) to make Distributions of the Liquidating Trust Assets and the proceeds thereof to the holders of Trust Interests, in each case to the extent provided and as set forth in the Plan, the Confirmation Order, and this Agreement.

F.      The Liquidating Trust shall have no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of this Liquidating Trust as set forth in this Agreement and the Plan.  The Liquidating Trust is established hereunder for the sole purpose of liquidating the Liquidating Trust Assets and distributing such assets and the proceeds thereof to or for the benefit of the holders of Trust Interests, with no objective or authority to continue to engage in the conduct of a trade or business.

G.      The Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of the United States Treasury Regulations Section 301.7701-4(d) (subject to the treatment of any portion of the Liquidating Trust allocable to Disputed Claims as one or more "disputed ownership funds" governed by Treasury Regulation Section 1.468B-9) and, as such, as a "grantor trust" [within the meaning of sections 671 through 677 of the IRC], for U.S. federal income tax purposes with the holders of Trust Interests treated as the grantors and owners of their respective shares of the Liquidating Trust Assets.

H.      For the avoidance of any doubt, and pursuant to and consistent with the Plan, only those parties granted interests in the Liquidating Trust pursuant to the Plan and Confirmation Order (or any transferee thereof made in accordance with this Agreement) shall be considered holders of Trust Interests.

I.      Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the Plan, or if not defined in the Plan, the meanings ascribed to them in the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, in the Plan and the Confirmation Order, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

# ARTICLE I
## DEFINITIONS

1.01   Definitions.

"Available Trust Cash" means proceeds of Liquidating Trust Assets that are available for distribution to holders of Trust Interests in accordance with the Plan, the Confirmation Order and this Agreement.

"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or its Estates or other authorized parties in interest under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan) under Sections 502, 510, 541, 542, 543, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including a Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted and whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

"Cause" means with respect to the Liquidating Trustee, (i) the undue prolongation of the duration of the Liquidation Trust and of Distributions of the Liquidating Trust Assets to the holders of Trust Interests; (ii) gross negligence, bad faith, or reckless or willful misconduct (as determined by a Final Order) in connection with the affairs of the Liquidating Trust; (iii) an intentional breach of fiduciary duty or an unresolved conflict of interest by the Liquidating Trustee; (iv) that such Liquidating Trustee has engaged in or has been charged with, or has been convicted of, fraud or other acts constituting a crime under any law applicable to such Liquidating Trustee, or (v) that such Liquidating Trustee is unable to perform his or her duties as Liquidating Trustee due to death, disability or incapacity.

"Causes of Action" means, other than those that are released or dismissed as part of and pursuant to the Plan, any and all actions, causes of action, Avoidance Actions, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.  For the avoidance of doubt, "Cause of Action" includes, without limitation, (i) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity; (ii) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate,

or disallow any Claims; (iii) any claim pursuant to section 362 of the Bankruptcy Code; and (v) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

"Claim(s)" means a claim or claims against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

"Class 2A Liquidating Trust Collateral Recoveries" means the recoveries of the holder of the Class 2A Liquidating Trust Interest on account of any proceeds from the liquidation of any FMO Collateral on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class 2A Trust Interests" means beneficial interests in the Liquidating Trust entitling the holder thereof to receive Distributions of Class 2A Liquidating Trust Collateral Recoveries. The initial holder of Class 2A Trust Interests shall be FMO unless FMO elects not to receive such Class 2A Trust Interest in accordance with the Plan and the Confirmation Order.

"Class A Liquidating Trust Collateral Recoveries" means the recoveries of holders of Class A Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Liquidation Trust Assets of the Debtors and their Estates not sold, transferred or otherwise waived or released prior to the Effective Date and constituting Prepetition First Lien Collateral, including the Debtors' coffee inventory located in Nicaragua as of the Petition Date and any insurance policies or proceeds thereof that may relate to or cover such coffee inventory and (ii) Litigation Proceeds and Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral, on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class A Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class A Liquidating Trust Collateral Recoveries. The initial holders of Class A Trust Interests shall be the Prepetition First Lien Secured Parties.

"Class B Trust Interests" means, collectively, the Class B1 Trust Interests and the Class B2 Trust Interests.

"Class B1 Liquidating Trust Recoveries" means the recoveries of holders of Class B1 Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class B1 Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class B1 Liquidating Trust Recoveries. The initial holders of Class B1 Trust Interests shall be FMO (on account of the FMO Deficiency Claim) and the Holders of Allowed Class 4A Claims entitled to receive Trust Interests under the Plan other than (i) the Prepetition First Lien Secured Parties and, if applicable, (ii) Holders required to receive Class C Trust Interests pursuant to Section 3.08 of the Plan.

"Class B2 Liquidating Trust Recoveries" means the recoveries of holders of Class B2 Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in Section 6.03 hereof; provided that, notwithstanding anything to the contrary in this Agreement, the Plan or the Confirmation Order, other than payments out of the Dutch Law SME Pool, holders of Class B2 Trust Interests shall not be entitled to any Distributions from the Liquidating Trust until all holders of Allowed Class 4A Claims under the Plan have received recoveries on account of such Claims equal to 20% of such Claims.

"Class B2 Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class B2 Liquidating Trust Recoveries.  The initial holders of Class B2 Trust Interests shall be each Holder of an Allowed Dutch Law SME Claim that is entitled to receive Trust Interests under the Plan unless such Holder is required to receive Class C Trust Interests pursuant to Section 3.08 of the Plan.

"Class C Liquidating Trust Recoveries" means the recoveries of holders of Class C Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in Section 6.03 hereof; provided that, notwithstanding anything to the contrary, and as further set forth in the Plan, the Confirmation Order, and Section 6.03(f) hereof, holders of Class C Trust Interests shall not be entitled to any recoveries beyond what such holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V.

"Class C Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class C Liquidating Trust Recoveries.  Class C Trust Interests shall only be issued to the extent required by Section 3.08 of the Plan, and if Class C Trust Interests are required to be issued pursuant to Section 3.08 of the Plan, the initial holders of Class C Trust Interests shall be the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor).  If the Plan does not require the issuance of Class C Trust Interests then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor) shall receive Class B1 Trust Interests or Class B2 Trust Interests, as appropriate.

"Disputed" means with respect to any Claim or any portion thereof (a) that is not Allowed; (b) as to which the Debtors or the Liquidating Trustee, as applicable, or any other party in interest, has Filed an objection or sought to subordinate such Claim by the Claims Objection Deadline, and such objection has not been withdrawn or overruled by a Final Order; (c) that is listed on the Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been Filed in a non-contingent and liquidated amount; (d) asserted by a Disputing Claimant or an Insider; or (e) that is a tort Claim.

"Disputed Claims Reserve" means a Cash reserve sufficient to pay a Pro Rata Share to all Disputed Claim Amounts, other than with respect to General Unsecured Claims, which shall be maintained by the Liquidating Trustee and which may be funded with a Cash portion of the

Liquidating Trust Assets for distribution to Holders of Disputed Claims to the extent such Disputed Claims become Allowed Claims. The initial amount of the Disputed Claims Reserve shall be determined prior to the Effective Date based on the Debtors' good faith estimates or an order of the Bankruptcy Court estimating such Disputed Claims, and shall be established on or about the Effective Date. Thereafter, the Disputed Claims Reserve shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Board as set forth in this Agreement, provided that the Liquidating Trustee may request the Bankruptcy Court to determine the appropriate amount of the Disputed Claims Reserve.

"Distribution" means any distribution or disbursement to Holders of Allowed Claims (or their designated agents) or holders of Trust Interests under or pursuant to the Plan, the Confirmation Order or this Agreement.

"Distribution Record Date" means the record date established for determining the Holders of Allowed Claims entitled to Distributions under the Plan, which date shall be the Effective Date.

"Effective Date" means the date on which the conditions specified in Section 13.01 of the Plan have been satisfied or waived in accordance with Section 13.03 of the Plan and the transactions contemplated thereunder have been consummated. The Debtors shall file a Notice of Effective Date on the Bankruptcy Court's docket indicating the calendar date which corresponds to the Effective Date.

"Final Cash Collateral Order" means the *Final Order (I) Authorizing the Debtors to use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [ECF No. 320], as may be amended or modified from time to time, entered by the Bankruptcy Court.

"Final Order" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

"FMO" means Nederlandse Financierings-Maatschappij Voor Ontwikkelingslanden N.V. FMO will be the initial recipient of the entirety of Class 2A Trust Interests to the extent such Class 2A Trust Interests are issued by the Liquidating Trust in accordance with this Plan.

"FMO Claim" means any Claim arising in connection with the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement other than an FMO Deficiency Claim.

"FMO Collateral" means the collateral described in Section 12.09 of the Plan, which such Collateral and the proceeds thereof shall remain subject to a lien for protective purposes as set forth in Section 12.09 of the Plan.

"FMO Deficiency Claim" means any FMO Claim to the extent such Claim is not paid in full in Cash on or after the Effective Date of the Plan.

"FMO Finance Documents" means the Finance Documents, as defined in that certain Term Facility Agreement, dated as of December 17, 2018, as amended from time to time, with FMO, as lender, and that certain Term Facility Agreement, dated as of May 19, 2022, as amended from time to time, with FMO, as lender.

"Foreign Proceeding" means the Dutch (pre-)insolvency plan proceedings, referenced as the Dutch WHOA Proceeding in previous motions that have been opened before the District Court of Amsterdam, the Netherlands on 7 December 2023, the case in support of the Debtors' chapter 11 cases pending as of the Effective Date in the Civil District Court in the Judicial District of Varginha - Minas Gerais State, Brazil, and any other proceeding that may be commenced by or with respect to the Debtors in a non-United States court.

"General Unsecured Claim" means, except to the extent otherwise set forth in the Plan, any Claim arising prior to the Petition Date against the Debtors, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease and, that is not (i) a Secured Claim; (ii) a Priority Tax Claim; (iii) an Other Priority Claim; (iv) a Subordinate Claim; (v) an Intercompany Claim, (vi) an Administrative Claim; (vii) the secured portion of a Prepetition First Lien Claim; (viii) a Dutch Law SME Claim; or (ix) a Convenience Claim. For the avoidance of doubt, Allowed Prepetition First Lien Deficiency Claims and any Allowed FMO Deficiency Claims are considered to be General Unsecured Claims.

"Governmental Authority" means any federal, state, local or non-U.S. government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of law), or any arbitrator, court or tribunal of competent jurisdiction.

"Initial Litigation Funding" means $500,000 of the Prepetition First Lien Secured Parties' existing cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the pursuit of litigation claims by the Liquidating Trust.

"Initial Non-Litigation Funding" means $500,000 of the Prepetition First Lien Secured Parties' existing cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the Liquidating Trust's non-litigation activities.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Liquidating Trustee's duties and responsibilities under the Plan, the Confirmation Order and this Agreement.

"Liquidating Trust Assets" means in the aggregate, all of the assets of the Debtors and their Estates existing as of the Effective Date (after giving effect to all Distributions required to be made on or prior to the Effective Date, if any), including Liquidating Trust Causes of Action, and any other assets transferred to the Liquidating Trust as Liquidating Trust Assets, including the Initial Litigation Funding and the Initial Non-Litigation Funding and the FMO Collateral if FMO receives, pursuant to Section 3.07(c) of the Plan, Class 2A Trust Interests; provided, however, the Liquidating Trust Assets shall not include (1) any claims or Causes of Action expressly released or exculpated pursuant to Article XII of the Plan, and (2) any Privileged Documents relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction.  For the avoidance of doubt, the Liquidating Trust Assets exclude funds in the Professional Fee Escrow Account.  To the extent that FMO and the Liquidating Trustee agree to a transfer of the FMO Collateral to FMO, upon such transfer the FMO Collateral shall no longer constitute "Liquidating Trust Assets".

"Liquidating Trust Causes of Action" means all Causes of Action held or owned by the Debtors' Estates immediately prior to the Effective Date (whether asserted directly or derivatively) against all parties including but not limited to the Preserved Claims and Causes of Action, *provided* that the Liquidating Trust Causes of Action exclude (i) any claims or Causes of Action released or exculpated as provided in the Plan, including pursuant to Article XII of the Plan; and (iii) any claims or Causes of Action released pursuant to the Final Cash Collateral Order.

"Liquidating Trust Operating Expenses" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to, (i) reasonable compensation for the Liquidating Trustee in accordance with this Agreement, (ii) reasonable costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (iii) statutory fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

"Litigation Funding Reserve" means the reserve established to fund the pursuit of claims and Liquidating Trust Causes of Action.  The maximum amount to be on deposit in the Litigation Funding Reserve at any one time is $500,000, subject to the terms of this Agreement.

"Litigation Proceeds" means any and all recoveries by the Liquidating Trust on account of Liquidating Trust Causes of Action other than claims or Causes of Action of the Prepetition First Lien Secured Parties or holders of Class A Trust Interests, as applicable.

"Non-Litigation Liquidation Trust Assets" means the Liquidating Trust Assets other than the Liquidating Trust Causes of Action.

"Liquidating Trust Board" means the body established on the Effective Date pursuant to [Section 6.02] of the Plan and governed by the rights and powers as specified in Section [5.13] of this Agreement, tasked with the oversight, review, and guidance of the Liquidating Trustee's activities and performance in the implementation and administration of the Liquidating Trust.

"Prepetition First Lien Claims" means any Claim arising under or in connection with the Prepetition First Lien Loans, as defined in the Final Cash Collateral Order.

"Prepetition First Lien Collateral" means the assets, claims and rights and other property that are collateral or proceeds of collateral for the Prepetition First Lien Claims.

"Prepetition First Lien Agent" means Coöperative Rabobank U.A., New York Branch ("Rabobank"), in its capacity as administrative agent and collateral agent in respect of the Prepetition First Lien Credit Agreement (as defined in the Final Cash Collateral Order), including, to the extent applicable, following termination of the Prepetition First Lien Credit Agreement.

"Prepetition First Lien Secured Parties" means Rabobank as Prepetition First Lien Agent and lender and those other lenders that are a party to the Prepetition First Lien Credit Agreement as defined in the Final Cash Collateral Order and are holders of the Prepetition First Lien Claims.

"Preserved Claims and Causes of Action" means the claims and Causes of Action that shall be preserved and vest in the Liquidating Trust in accordance with the Plan and shall be identified in a schedule attached to the Plan Supplement.  The Preserved Claims and Causes of Action include but are not limited to claims or Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which any of the Debtors is a party or pursuant to which any of the Debtors has any rights whatsoever, including any failure to provide insurance coverage and bad faith insurance claims.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, *provided* that in cases where Pro Rata Share is used in reference to series of Trust Interests distributed to multiple series or Classes, Pro Rata Share means the portion that such holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such series or Class entitled to Distributions as of the date of such Distribution.

"Professional Fee Escrow Account" means an interest-bearing escrow account maintained at the direction of the Liquidating Trustee to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

"Professional Fee Escrow Amount" means (a) the aggregate amount of unpaid Professional Fee Claims incurred through the Effective Date as estimated by the Professionals and (b) the aggregate accrued U.S. Trustee Fee Claims as estimated by the Debtors.

"Reserved Trust Interests" means those Class B Trust Interests and, if applicable, Class C Trust Interests that are reserved by the Liquidating Trustee on the Effective Date of the Plan for issuance to (i) Holders of Class 4A Claims and Class 4B Claims, respectively, once such claims are Allowed, as defined in the Plan; and (ii) Holders of Dutch Law SME Claims and Holders of Claims that only have Claims against Mercon B.V. (and no other Debtor), once such Claims are Allowed, as defined in the Plan.

"Tax Law" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority, in each case with respect to any federal, state, local or non-U.S. tax or taxes.

"Transferred Privileges" means, subject to the limitations in Section 6.10 of the Plan, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections solely relating to the Liquidating Trust Causes of Action, in each instance arising before the Petition Date and on or after the earlier of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Liquidating Trust Cause of Action (but in no event more than six (6) years prior to the Petition Date).

"Trust Interests" means, collectively, the Class 2A Trust Interests, the Class A Trust Interests, the Class B Trust Interests and, if applicable, the Class C Trust Interests.

## ARTICLE II
## PURPOSE OF THE LIQUIDATING TRUST

2.01    Purpose.    The Liquidating Trust shall be established for the sole purpose of liquidating the Liquidating Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d) and other Tax Laws applicable to "liquidating trusts" (as defined in such section of the U.S. Treasury Regulations), with no objective to continue or engage in the conduct of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.  The Liquidating Trust is established for (i) the purposes set forth in [Article IX] of the Plan and the Confirmation Order, (ii) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (iii) administering, monetizing and liquidating the Liquidating Trust Assets, (iv) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust to the Holders of Allowed Claims and holders of Trust Interests as provided for in the Plan, the Confirmation Order and this Agreement, in each case in accordance with the Plan, the Confirmation Order, this Agreement, and Treasury Regulation Section 301.7701-4(d) (and any other comparable provisions of Tax Law).  The activities of the Liquidating Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan and the Confirmation Order.  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes (and any other comparable provisions of Tax Law) with the holders of Trust Interests treated as grantors and owners of the Liquidating Trust Assets.  This Agreement and the Liquidating Trust created under the Plan and the Confirmation Order are hereby declared to be irrevocable and the Debtors (nor such other party as provided in the Plan) shall not have any right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Liquidating Trust created under the Plan in whole or in part, or to alter, amend, or modify this Agreement in any respect.

2.02    Relationship.    This Agreement is intended to create a trust and a trust relationship to be governed and construed in all respects as a liquidating trust.  The Liquidating Trust is not intended to be, and shall not be deemed to be, or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Liquidating Trustee, the Liquidating Trust Board (or the Members of the Liquidating Board), or the holders of Trust Interests for any purpose be, or be deemed to be or treated in any way

whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the holders of Trust Interests, on the one hand, to the Liquidating Trust, Liquidating Trustee, and the Liquidating Trust Board (or the Members of the Liquidating Trust Board), on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal or agency relationship, and the holders of the Trust Interests' rights shall be limited to those conferred upon them by the Plan, the Confirmation Order, and this Agreement.

## ARTICLE III
## ESTABLISHMENT OF THE LIQUIDATING TRUST

3.01    <u>Name of the Liquidating Trust</u>.  The name of the Liquidating Trust shall be the Mercon Liquidating Trust, referred to herein as the "Liquidating Trust" or "Trust".

3.02    <u>Incorporation of Plan.</u>    The Plan and Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference; *provided*, *however*, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order, (2) the Plan, and (3) this Agreement.

3.03    <u>Transfer of Assets and Rights to the Liquidating Trust</u>.

(a)    On the Effective Date, the Debtors and their Estates irrevocably and automatically transfer all of their right, title, and interest in the Liquidating Trust Assets, including the Liquidating Trust Causes of Action (and any proceeds arising therefrom, including under any applicable insurance policies) and all of the rights of the Debtors and/or their Estates under any insurance policy to which the Debtors and/or their Estates may be beneficiaries, to the Liquidating Trust, free and clear of any and all Liens, Claims, Interests, and other encumbrances except as otherwise specifically provided in the Plan or in the Confirmation Order, and such Liquidating Trust Assets shall vest in the Liquidating Trust pursuant to section 1141(b) of the Bankruptcy Code; *provided*, *however*, that (i) the Liquidating Trust may, after consultation with the Liquidating Trust Board, abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the Liquidating Trust; (ii) no abandonment or non-acceptance shall have occurred, or be deemed to have occurred, without an express written statement of such abandonment or non-acceptance by the Liquidating Trustee; and (iii) none of the foregoing transfers to the Liquidating Trust shall constitute a merger or consolidation of any of the Causes of Action that constitute Liquidating Trust Assets, each of which shall retain its separateness following the transfer of all purposes relevant to the prosecution thereof.  Any assets the Liquidating Trust so abandons or otherwise does not accept shall not vest in the Liquidating Trust.

(b)    From and after the Effective Date, the Liquidating Trustee shall be deemed the representative of the Debtors' Estates pursuant to section 1123 of the Bankruptcy Code, and as such shall be vested with the authority and power (subject to the terms of this Agreement, the Plan, and the Confirmation Order) to, among other things: (i) administer, object to or settle any Claims; (ii) make Distributions in accordance with the terms of the Plan, the Confirmation Order and this Agreement; and (iii) carry out the provisions of the Plan and the Confirmation Order related to the Liquidating Trust.  As the representative of the Debtors' Estates, in its capacity as

trustee for the benefit of the holders of Trust Interests, the Liquidating Trustee will succeed to all of the rights and powers of the Debtors and their Estates with respect to all Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Debtors, their Estates, and the Creditors' Committee, in all such Causes of Action, whether or not such claims are pending in filed litigation as of the Effective Date. Without limiting the generality of the foregoing provisions, from and after the Effective Date, the Liquidating Trust shall be the sole person or entity responsible for the prosecution and settlement of all the Liquidating Trust Causes of Action conveyed to the Liquidating Trust, and all rights, powers, and interests of the Debtors' Estates in respect of the Liquidating Trust Causes of Action shall be transferred to and vest exclusively in the Liquidating Trust, pursuant to the Plan, the Confirmation Order and this Agreement. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests to pursue, settle, or abandon such Liquidating Trust Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall constitute a "trustee" under section 108 of the Bankruptcy Code and, notwithstanding entry of the Confirmation Order or occurrence of the Effective Date, shall have the benefits of the tolling provisions set forth in such section.

(c)    All Liquidating Trust Causes of Action that are not expressly released or waived under the Plan are reserved and preserved and shall vest in the Liquidating Trust, and shall not be impacted or affected in any way by the confirmation of the Plan, the occurrence of the Effective Date, or the limited substantive consolidation of the Estates pursuant to Article II of the Plan. No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order or the Disclosure Statement to any Liquidating Trust Cause of Action against them as any indication that the Liquidating Trust will not pursue any and all available Liquidating Trust Causes of Action against them. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to any rights of the Liquidating Trust or Liquidating Trustee with respect to any Liquidating Trust Causes of Action upon or after entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan, or the Confirmation Order or any other Final Order.

(d)    In connection with the vesting and transfer of the Liquidating Trust Assets, the Liquidating Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors and/or their Estates may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Liquidating Trust Assets and the Liquidating Trustee shall succeed to all rights of the Debtors and/or their Estates to hold, preserve, assert, be the beneficiary of or waive any such privilege or protection; *provided, however*, that notwithstanding the foregoing, the Transferred Privileges do not and shall not include any privileges relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction. As of the Effective Date, all Transferred Privileges of the Debtors relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by the Debtors to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. No such privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties),

or protections from disclosure held by the Debtors. The Transferred Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided*, *however*, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Liquidating Trustee, the Liquidating Trust Advisors, and their respective agents, representatives, and employees shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer, assignment and delivery and sharing and use of the Transferred Privileges as provided herein do not impair or waive any privilege. Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed a waiver of the work product privilege by any party who may be entitled to assert such privilege. In addition, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets shall vest in the Liquidating Trust from the Effective Date through the date of dissolution of the Liquidating Trust.

(e)    The Debtors and their respective professionals shall cooperate with the Liquidating Trustee in effecting the vesting of the Liquidating Trust Assets. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate transfer to or reasonable access to any evidence and information the Liquidating Trustee reasonably requests and providing him with access to, or copies of, books and records the Liquidating Trustee reasonable requires for the purpose of performing his duties and exercising his powers under this Agreement, the Plan, and the Confirmation Order. On or before the Effective Date, the Debtors shall turn over to the Liquidating Trust all physical or electronically stored documents and communications in their possession or control.

(f)    To the extent any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded by section 1123 or any other provision of the Bankruptcy Code, such assets will be retained by the Debtors (the "Retained Assets"). The proceeds of any sale or liquidation of such Retained Assets will be paid to the Liquidating Trust. The Parties do not believe that any such Retained Assets exist.

(g)    Pursuant to Section 12.09 of the Plan, to the extent the FMO Collateral is transferred to the Liquidating Trust pursuant to Section 3.07(c), any injunction or stay provided for in these Chapter 11 Cases under Sections 105 or 362 shall be lifted upon entry of the Confirmation Order solely to permit FMO to enforce any of its rights and remedies under the Finance Documents as defined in  the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement, as applicable, and under  applicable law, including the right to foreclose upon the FMO Security (as defined in the 2022 FMO Credit Agreement) and the Allocation (as defined in the 2018 FMO Credit Agreement, and together with the FMO Security, the "FMO Collateral") and, at FMO's sole expense, the Liquidating Trustee will cooperate with any reasonable request by FMO to transfer the FMO Collateral to FMO or its designee; provided that FMO shall (i) promptly report to the Liquidating Trustee FMO's receipt of any proceeds outside of the

Liquidating Trust on account of the FMO Collateral, promptly report on any actions or proceedings taken by FMO with respect to the FMO Collateral and any material developments in connection therewith so that the Liquidating Trustee may take any actions necessary to preserve the rights of the Liquidating Trust therein, and make reasonable efforts to otherwise coordinate and cooperate with the Liquidating Trustee as may be reasonably requested by the Liquidating Trustee in connection with the efforts of the Liquidating Trustee to recover assets in or pursue Causes of Action relating to Nicaragua or otherwise provided that such efforts do not prevent or impede FMO's enforcement of its rights and remedies under the Finance Documents, (ii) make reasonable efforts to report to the Liquidating Trustee on the status of any such actions taken by FMO to enforce its rights and remedies under the Finance Documents to the extent not prohibited by law or the terms of any agreement, and (iii) turn over to the Liquidating Trustee (A) any proceeds its recovers from the applicable FMO Collateral in excess of the FMO Claims or any proceeds it recovers that does not constitute FMO Collateral or proceeds thereof, in each case to the extent not prohibited by applicable law, (B) amounts necessary to reimburse the Liquidating Trust for reasonable and documented fees and expenses incurred by the Debtors or Liquidating Trust (1) in the pursuit of Causes of Action on account of FMO Collateral with the written consent of FMO or (2) for taking any corporate actions under foreign law that are requested or consented to in writing by FMO and (C) any amounts required so that FMO does not receive recoveries in excess of its proper allocation of Liquidating Trust Assets (or proceeds thereof) on account of its Liquidating Trust Interests that it received in respect of FMO Claims when taking into account any FMO recovery on account of FMO Collateral and the corresponding reduction to the amount of the Allowed FMO Deficiency Claim.[3]

3.04    Title to the Liquidating Trust Assets.  The Liquidating Trustee shall hold title to the Liquidating Trust Assets for the benefit of the holders of Trust Interests, subject to the terms of the Plan, the Confirmation Order and this Agreement.

3.05    Appointment of the Liquidating Trustee.  Pursuant to the Plan, Marc Kirschner has been designated to serve as the Liquidating Trustee, and he accepts such appointment and agrees to serve in such capacity, as of the Effective Date.  The Liquidating Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3) and as such, to the extent provided herein, the Liquidating Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to the Liquidating Trust Assets including, but not limited to, prosecuting the Liquidating Trust Causes of Action for the benefit of the holders of Trust Interests.  To the extent that any of the Liquidating Trust Assets including, but not limited to, the Liquidating Trust Causes of Action cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Debtors (other than for tax purposes), and the Liquidating Trustee shall be deemed to have been designated as a representative of the Debtors and their Estates to the extent provided herein pursuant to section 1123(b)(3) of the Bankruptcy Code solely to liquidate such Liquidating Trust Assets on behalf of the Debtors and their Estates. Notwithstanding the foregoing, all net proceeds of the Liquidating Trust Assets shall be distributed to the holders of Trust Interests consistent with the provisions of this Agreement, the Plan and the Confirmation Order.  [For the avoidance of doubt, disposition of any of the Liquidating Trust

Assets subject to this Section [3.05] shall be treated by the Parties for U.S. federal, state, and local income tax purposes as a disposition of the Liquidating Trust Assets by the Debtors as described in Section [9.01] hereof.]

3.06    Funding of the Liquidating Trust.

(a)    On or prior to the Effective Date, as set forth in detail in this Section 3.06, the Debtors shall cause the contribution of the Initial Litigation Funding and the Initial Non-Litigation Funding to the Liquidating Trust, with such funding amounts to be placed in segregated accounts respectively, and held in trust by the Liquidating Trustee and to be used to administer the Liquidating Trust in accordance with the Plan, the Confirmation Order, other applicable orders of the Bankruptcy Court, and this Agreement.  The Initial Litigation Funding and the Initial Non-Litigation Funding shall vest in the Liquidating Trust on the Effective Date pursuant to Section 9.03 of the Plan.

(b)    On or prior to the Effective Date, the Initial Litigation Funding shall be deposited into the Litigation Funding Reserve.  Additional amounts will be deposited into the Litigation Funding Reserve from time to time pursuant to Section 6.03(b) of this Agreement. Amounts in the Litigation Funding Reserve shall be used solely to fund administrative costs and other amounts related to the Liquidating Trust's pursuit of Liquidating Trust Causes of Action and conduct of other litigation related activities.  Any amounts remaining in the Litigation Funding Reserve after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests pursuant to Section 6.03(b) and the distribution of all remaining assets of this Liquidating Trust shall be allocated and distributed in accordance with Section 6.03(b)(iv).

(c)    The Initial Non-Litigation Funding shall not be used to fund administrative costs or other amounts related to the Liquidating Trust's pursuit of Liquidating Trust Causes of Action or conduct other litigation related activities.

(d)    Other than the Initial Litigation Funding and Initial Non-Litigation Funding, the Prepetition First Lien Secured Parties and holders of Class A Trust Interests shall have no further or any continuing obligation to provide funding to the Liquidating Trust from cash collateral or otherwise.

(e)    On the Effective Date, the Debtors shall cause the Professional Fee Escrow Amount to be deposited with the Liquidating Trustee, who shall maintain such funds in the Professional Fee Escrow Account in trust for the Professionals, and shall release them only when any such Claims by Professionals have been approved by a Final Order of the Bankruptcy Court, in accordance with the Plan, the Confirmation Order, and this Agreement.

(f)    On the Effective Date, the Debtors shall cause any Cash required to pay Allowed Administrative Claims or Allowed Priority Tax Claims, as such Claims ultimately are Allowed, to be deposited with the Liquidating Trustee, who shall maintain such funds in a separate account for the benefit of Holders of such Allowed Administrative or Priority Tax Claims.  After the resolution of all Allowed Administrative Claims or Allowed Priority Tax Claims, any funds remaining in such account shall be distributed to the Holders of the Class A Trust Interests.

(g)     On the Effective Date, the Debtors shall cause the Disputed Claims Reserve to be deposited with the Liquidating Trustee, who shall maintain such funds in the Disputed Claims Reserve in trust for the Holders of Disputed Claims as such Claims are resolved in accordance with the Plan.

(h)     <u>Additional Funding</u>.

(i)     The Liquidating Trustee may raise additional funding in order to pursue the Liquidating Trust Causes of Action, to administer the Liquidating Trust, to liquidate Prepetition First Lien Collateral and provide for distributions to the holders of Trust Interests as contemplated herein or in the Plan or Confirmation Order, and support or facilitate any other function, duty or responsibility of the Liquidating Trust or the Liquidating Trustee contemplated by the Plan, the Confirmation Order or this Agreement, in each case in accordance with this Agreement. Any additional funding sought by the Liquidating Trustee shall be subject to (i) the consent of the Class A Board Members (as defined herein) if such additional funding is intended to be used to liquidate Prepetition First Lien Collateral or for administrative aspects of the Liquidating Trust relating to Prepetition First Lien Collateral; and (ii) the consent of a majority of the Liquidating Trust Board members if such funding is intended to be used to facilitate the investigation or pursuit of Causes of Action or the administration of claims.

(ii)     The source(s) of such funding may be entitled to receive payment from the Liquidating Trust as a Liquidating Trust Operating Expense.

3.07   <u>Rights of Debtors</u>.  On the Effective Date, the Liquidating Trustee shall succeed to and be vested with all of the Debtors' right, title and interest in the Liquidating Trust Assets, but subject to the terms of the Plan, the Confirmation Order and this Agreement, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust, and the Liquidating Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets.  In no event shall any part of Liquidating Trust Assets revert to or be distributed to the Debtors or the holders of the Debtors' Equity Interests.  Additionally, and subject to Section 6.10 of the Plan, the Liquidating Trustee shall succeed to and be vested with all rights and legal privileges of the Debtors and their estates, specifically including, but not limited to, the attorney-client privilege and work product privileges.  After the Effective Date, and subject to Section 6.10 of the Plan, the Liquidating Trustee shall control all applicable legal privileges of the Debtors and their estates, including control over whether to assert or waive attorney-client privilege for matters arising from or relating to transactions or activity occurring prior to the Effective Date, as detailed in Section 3.03(d) above.  The Liquidating Trust shall be deemed to be substituted as the party-in-lieu of each of the Debtors in all matters, including, but not limited to: (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court; (ii) any and all tax or regulatory filings, including without limitation any state or federal returns or ERISA-related filings, and legacy accounts of the Debtors at the state or federal level (for the purpose of closing, reporting, or making payments related to the Estate) related thereto; and (iii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidating Trustee on behalf of the Liquidating Trust to file motions or substitutions of parties or counsel in each such matter.  All references to "state" or "federal" shall be interpreted in this Agreement also to apply to any foreign jurisdiction with respect to any Debtor organized outside of the United States.

3.08    Automatic Stay.  In furtherance of the implementation of the Plan, unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect and apply to all creditors and Beneficiaries holding Claims against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, and the Liquidating Trust Assets until the termination of the Liquidating Trust.

## ARTICLE IV
## BENEFICIARIES

4.01    Incidents of Ownership.  The holders of Trust Interests shall be the sole beneficiaries of the Liquidating Trust and the Liquidating Trust Assets, and the Liquidating Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan, the Confirmation Order, and any other applicable orders of the Bankruptcy Court.  The Trust Interests shall be issued in accordance with the Plan and the Confirmation Order.  For the avoidance of doubt, Holders of Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Claims, and Disputed Claims are not beneficiaries hereunder and shall only be paid from the Professional Fee Escrow or the Disputed Claims Reserve.

4.02    Evidence of Trust Interest.  Ownership of a Trust Interest shall not be evidenced by any certificate, security or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.  The death, incapacity or bankruptcy of any holder of a Trust Interest during the term of the Liquidating Trust shall not (i) operate to terminate the Liquidating Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Liquidating Trust Assets or for a partition or division thereof, or (iv) otherwise affect the rights and obligations of any of the holders of Trust Interests hereunder.

4.03    Transferability of Trust Interests.    Any and all Trust Interests shall be nontransferable except (i) upon death of the holder, (ii) by operation of law, (iii) to an affiliate of the holder or (iv) in accordance with the provisions of this Section 4.03 (each, a "Permitted Transfer").  Trust Interests shall be freely transferable; provided, however, that (A) the transfer of the Trust Interests will be prohibited to the extent such transfer would (i) result in a violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), any state securities laws or regulations, or any other applicable federal or state laws or orders having jurisdiction over the Liquidating Trust, (ii) cause the Liquidating Trust to be required to register the Trust Interests under, and/or become subject to the registration or reporting requirements of, the Securities Act or the Exchange Act or (iii) cause any change in the treatment of the Liquidating Trust in connection with the matters set forth in Section 9.01 of this Agreement; (B) any transferee of Trusts Interests that is not already a holder of Trusts Interests as of the date of this Agreement shall not be eligible to serve as, or name any person to serve on its behalf as, a Member of the Liquidating Trust Board and (C) a transfer of Trust Interests pursuant to this Section 4.03 shall not entitle the recipient of such transferred Trust Interests (the "Transferred Trust Interests") to any voting rights on account of such Transferred

Trust Interests including, but not limited to, the right to elect Members of the Liquidating Trust Board or Successor Liquidating Trust Board Members pursuant to Section [5.13] hereof. The holders of Transferred Trust Interests shall not have any voting or governance rights and instead, shall receive only Distributions.

A transfer shall not be effective until appropriate notice and proof thereof along with any other information requested by the Liquidating Trustee (which may include, without limitation, any tax information (including, without limitation, social security numbers or other tax identification numbers) and completed U.S. Internal Revenue Service ("IRS") forms as the Liquidating Trustee, in its sole discretion, deems necessary or appropriate) is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the transferring holder of a Trust Interest until receipt of proper notification and proof of transfer. The Liquidating Trustee may rely upon such proof of transfer and other information without the requirement of any further investigation. Any purported assignment or transfer of a Trust Interest or any part thereof, except a Permitted Transfer, shall constitute a violation of this Section 4.03 and shall be void *ab initio*.

4.04    Trust Interests are Beneficial Only.  Except as expressly provided hereunder, each holder of a Trust Interest's interest in the Liquidating Trust shall be beneficial only. As such, the ownership of Trust Interests shall not entitle any holder thereof to any title in or to the Liquidating Trust Assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the assets of the Liquidating Trust or to require an accounting. Except as set forth in Section [X] hereof, holders of Trust Interests shall have no voting rights with respect to such Trust Interests. Holders of Trust Interests shall not have standing to direct or to seek to direct the Liquidating Trust or the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any person upon or with respect to Liquidating Trust Assets.

4.05    Exemption from Securities Laws.  Any and all Trust Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code, the issuance of Trust Interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act and all applicable state and local laws requiring registration of securities.

4.06    Conflicting Claims to Trust Interests.  If any dispute arises with respect to the ownership or control of Trust Interests or any holder thereof, or if there is any disagreement among persons claiming to be permitted successors of any Trust Interest resulting in adverse claims or demands being made in connection with Trust Interests (an "Ownership Dispute"), the Liquidating Trustee shall be entitled to refuse to comply with any demand or direction made by any party to such Ownership Dispute. In so refusing, the Liquidating Trustee may elect to make no Distribution with respect to the Trust Interests relating to the Ownership Dispute or any part thereof, or to make payment or distribution in escrow as provided below, and to refer such Ownership Dispute to the Bankruptcy Court or another court of competent jurisdiction, which shall have jurisdiction over resolution of such Ownership Dispute. In so doing, the Liquidating Trustee shall not be or become liable to any of such parties for its refusal to comply with any demand or direction made by them, nor shall the Liquidating Trustee be liable for interest or any other charges on any funds which it may so withhold. The Liquidating Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final judgment by the Bankruptcy Court (or

such other court of proper jurisdiction), or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trustee and his respective professionals. With respect to any Distribution to be made, the Liquidating Trustee may make such Distribution into an escrow account or a segregated account until disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute; *provided*, *however*, that after providing interested parties at least 30 days' notice, if no action has been commenced within 90 days after the relevant Distribution date, the property which is the subject of the dispute shall irrevocably become unclaimed Distributions. Each party shall bear its own costs in relation to any Ownership Dispute, and any expenses incurred by the Liquidating Trust or the Liquidating Trustee shall be reimbursed as Liquidating Trust Operating Expenses.

4.07    <u>Know Your Customer Requirements</u>. Promptly following any request therefor, the Liquidating Trustee shall use its reasonable efforts to furnish to any holder of a Trust Interest information and documentation reasonably requested by such holder of a Trust Interest for purposes of such holder of a Trust Interest's compliance with applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act of 2001 and 31 C.F.R. § 1010.230, and/or other due diligence related to regulatory requirements and/or reputational risk.

4.08    <u>Reporting</u>.

(a)    Not later than forty-five (45) days following the end of each fiscal quarter during the term of the Liquidating Trust, the Liquidating Trustee shall (I) file with the Bankruptcy Court or otherwise make publicly available on a website that may be accessed by holders of Trust Interests (but shall not serve), a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee;(II) distribute a report to holders of Trust Interests containing the information set forth in clause (I) as well as a schedule of (i) the Liquidating Trust's receipts and disbursements, including Distributions and any amounts distributed pursuant to Section 6.03(g) of this Agreement, (ii) all Liquidating Trust Assets held by the Liquidating Trust, including a breakout of Prepetition First Lien Collateral held by the Liquidating Trust, (iii) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year, including the costs and expenses of the Liquidating Trust incurred (including any taxes imposed on the Liquidating Trust or actual reasonable out-of-pocket fees and expenses incurred by Liquidating Trust Advisors in connection with the administration and liquidation of the Liquidating Trust Assets and preservation of books and records as provided in this Agreement) during the preceding fiscal quarter and incurred since the Effective Date, (iv) the status of any litigation involving the Liquidating Trust or the Liquidating Trust Assets, (v) the amount of Cash and other assets received by the Liquidating Trust during the prior fiscal quarter and since the Effective Date, and (vi) the aggregate amount of Distributions from the Liquidating Trust to the holders of Trust Interests since the Effective Date.

(b)    The Liquidating Trustee shall also timely prepare and distribute such additional statements, reports, and submissions as reasonably requested from time to time by a majority of the Liquidating Trust Board regarding the Liquidating Trust Assets or the activities of the Liquidating Trust. In addition, upon request of the majority of the Liquidating Trust Board, the Liquidating Trustee shall hold periodic meetings, telephonically or electronically, with holders

of Trust Interests regarding the status of the Liquidating Trust and Trust Interests, including any financial information related to the Liquidating Trust.

(c)     Once per calendar year, or more frequently as may be requested by a majority of the members of the Liquidating Trust Board, and promptly after any Distribution is made to holders of Class A Trust Interests, the Liquidating Trustee shall prepare an updated calculation of the Prepetition First Lien Deficiency Claim to reflect any proceeds or Distributions received by holders of Class A Trust Interests during the prior calendar year.

(d)     Once per calendar year, or more frequently as may be requested by a majority of the members of the Liquidating Trust Board, and promptly after (i) any Distribution is made to holders of Class 2A Trust Interests or (ii) such holders receive any other proceeds on account of the FMO Collateral from the Liquidating Trust or otherwise the Liquidating Trustee shall prepare an updated calculation of the FMO Deficiency Claim to reflect any proceeds or Distributions received by holders of Class 2A Trust Interests during the prior calendar year.

4.09    <u>Annual Plan and Budget</u>.  Upon the request of a majority of the members of the Liquidating Trust Board, the Liquidating Trustee shall prepare and submit to the Liquidating Trust Board for approval an annual plan and budget in such detail as is reasonably requested, which approval shall not be unreasonably withheld.  The initial budget shall be presented to and approved by the Liquidating Trust Board within 60 days of the Effective Date, which initial budget shall be subject to modification by the Liquidating Trustee, with approval of the Liquidating Trust Board, no later than [_____], 2024.

4.10    <u>Limited Liability</u>.  No provision of this Agreement, and no mere enumeration herein of the rights or privileges of any holder of a Trust Interest, shall give rise to any liability of such holder of a Trust Interest solely in its capacity as such.  Holders of Trust Interests are deemed to receive their Trust Interests as set forth in this Agreement, the Plan, and the Confirmation Order, in exchange for their transfer of the assets of the Liquidating Trust (net of any applicable liabilities), without further obligation or liability of any kind, but subject to the provisions of this Agreement, the Plan, and the Confirmation Order.

## ARTICLE V
## THE LIQUIDATING TRUSTEE

5.01    <u>Generally</u>.

(a)     From and after the Effective Date, but subject to the Plan and the Confirmation Order, the Liquidating Trustee shall act for the Debtors and their Estates, as applicable.  The Liquidating Trustee shall have the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code, shall be a "representative of the estate" pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be vested with the rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code, and shall have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided*, *however*, the Liquidating Trustee shall have no rights, powers, or duties that are inconsistent with or contrary to the Plan or the Confirmation Order.

(b)    The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3) pursuant to this Agreement, the Plan, and the Confirmation Order, until death, resignation, removal or discharge of the Liquidating Trustee and the appointment of a successor Liquidating Trustee in accordance with the terms of this Agreement (such period, the "Engagement Period").  Except as expressly set forth in the Plan, the Confirmation Order, or this Agreement, and subject to its duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and the Liquidating Trust Assets.

5.02    Term of Service.  The Liquidating Trustee shall serve until (i) the completion of all the Liquidating Trustee's duties, responsibilities, and obligations under this Agreement and the Plan; (ii) termination of the Liquidating Trust in accordance with this Agreement; or (iii) the Liquidating Trustee's death, resignation, removal or discharge.

5.03    Authority of the Liquidating Trustee.  The Liquidating Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, the Plan and the Confirmation Order, take any and all actions to effectuate the operations, completion, and purpose of the Liquidating Trust.  Without limiting the generality of the previous sentence, the Liquidating Trustee shall have the power to, for the benefit of the holders of Trust Interests:

(i)    receive, manage, invest, supervise, protect, liquidate and collect in an orderly manner, and convert to Available Trust Cash the Liquidating Trust Assets, including, without limitation, the Liquidating Trust Causes of Action and tax refunds;

(ii)    to determine, satisfy and pay any and all liabilities, taxes, expenses and other obligations, created, incurred, assumed or owed by the Liquidating Trust, including Liquidating Trust Operating Expenses, and make other payments relating to the Liquidating Trust Assets, in each case, exclusively from the Liquidating Trust Assets and in accordance with this Agreement, the Plan, the Confirmation Order or applicable law;

(iii)    to invest Available Trust Cash, including any earnings thereon or proceeds therefrom, as permitted by section 345 of the Bankruptcy Code or in other prudent investments; *provided*, *however*, that such investments are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under other applicable Tax Law;

(iv)    except to the extent a Claim has been previously Allowed, to control and effectuate the Claims reconciliation process (including the determination of whether Claims are Allowed or Disallowed) in accordance with this Agreement, the Plan, and the Confirmation Order;

(v)    maintain the Disputed Claims Reserve set forth in the Plan or Confirmation Order and, in the reasonable discretion of the Liquidating Trustee, to distribute such funds therefrom, as provided herein and in the Plan and the Confirmation Order, as Disputed Claims are resolved and Allowed;

(vi)     in accordance with the terms of the Plan and Confirmation Order, to object to, seek to subordinate, compromise, estimate, litigate to judgment, arbitrate, or settle any and all Claims;

(vii)     to execute, deliver, file, and record contracts, leases, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan or Confirmation Order, which actions may include, but is not limited to, the creation of entities for the purpose of facilitating transactions between the Liquidating Trust and other parties;

(viii)     to raise additional funding for the Liquidating Trust in order to (A) pursue the Liquidating Trust Causes of Action, administer or object to Claims or liquidate or otherwise monetize the Prepetition First Lien Collateral and other Liquidating Trust Assets, and support distributions to holders of Trust Interests provided for or contemplated in this Agreement and the Plan; and (B) support or facilitate any other function, duty or responsibility of the Liquidating Trust or the Liquidating Trustee that is contemplated by the Plan, the Confirmation Order or this Agreement, in each case in accordance with this Agreement, including Section 3.06(h);

(ix)     to pay any and all Statutory Fees when due and payable, solely from Liquidating Trust Assets;

(x)     to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to (A) the Office of the United States Trustee; (B) the United States; and (C) those parties in interest who have filed, after the Effective Date, a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in the particular filing in accordance with Local Rule 2002-1(b);

(xi)     to maintain accounts, calculate and implement Distributions to Holders of Allowed Claims and holders of Trust Interests out of the Liquidating Trust Assets in accordance with the Plan, the Confirmation Order, and this Agreement;

(xii)     establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, in which the Liquidating Trust Assets or other Cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts;

(xiii)     to protect, and enforce the rights to, the Liquidating Trust Assets by any method deemed appropriate, including by judicial, administrative, arbitrative or other nonjudicial proceeding;

(xiv)     to appear on behalf of, and represent the interests of, the Debtors, the Liquidating Trust or holders of Trust Interests in any proceeding, including any Foreign Proceeding, that may directly or indirectly affect the Liquidating Trust Assets or their value or the

recovery of the holders of Trust Interests or to the extent necessary to implement the Plan, the Confirmation Order, or this Agreement;

(xv)    with respect to the Liquidating Trust Causes of Action, to exercise, in a manner not inconsistent with the Plan and subject to Section [5.13] hereof regarding the Liquidating Trust Board, all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any member, officer, director or shareholder of the Debtors, with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders;

(xvi)    to prosecute, litigate to judgment, compromise, adjust, arbitrate, sue on or defend, abandon, dismiss, or otherwise resolve or settle, in accordance with the terms hereof, claims in favor of, or against, the Liquidating Trust, including but not limited to, the Liquidating Trust Causes of Action;

(xvii)    to conduct investigation pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, as may have been conducted by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets;

(xviii)    to determine a Distribution Date and make Distributions in accordance with this Agreement, the Plan and Confirmation Order;

(xix)    to amend the Schedules in accordance with the Bankruptcy Code;

(xx)    wind-down the business and affairs of the Debtors, including to take any action necessary to wind down and dissolve any Surviving Debtor;

(xxi)    prior to dissolution of the Debtors, to file with the Bankruptcy Court all quarterly reports, in a form reasonably acceptable to the U.S. Trustee, when due;

(xxii)    to file, if necessary, any and all required federal, state and local tax and informational returns required with respect to the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or other applicable Tax Law, make tax elections by and on behalf of the Liquidating Trust and pay taxes (including, without limitation, federal, state, local or non-U.S. taxes), if any, properly payable by the Liquidating Trust, which taxes shall be paid exclusively from the Liquidating Trust and Liquidating Trust Assets, and to take any and all actions that may be necessary or appropriate to comply with any withholding and reporting requirements imposed by applicable Tax Law;

(xxiii)    to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Liquidating Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(xxiv)    to obtain and maintain insurance coverage with respect to real and personal property that may become Liquidating Trust Assets, such Persons or Entities serving as administrators and overseers of the Liquidating Trust, and officers and directors of any Surviving Debtor on and after the Effective Date;

(xxv) to retain and pay such third parties, including, paying agents, counsel or other professionals, as the Liquidating Trustee may deem necessary or appropriate in its discretion to assist the Liquidating Trust in carrying out its powers and duties under this Agreement, subject to Section 5.08 hereof; and

(xxvi) to exercise all powers vested in the Debtors, the Liquidating Trust, or the Liquidating Trustee pursuant to the Bankruptcy Code, the Plan, the Confirmation Order, and any other Bankruptcy Court order, or as may be necessary, proper and appropriate to carry out the provisions of the Plan, the Confirmation Order, or this Agreement.

(b) In all circumstances, the Liquidating Trustee shall perform its duties and exercise the authority herein in a manner that is consistent with the best interests of all the holders of Trust Interests and in furtherance of the purpose of the Liquidation Trust.

5.04 <u>Additional Responsibilities of the Liquidating Trustee</u>. Except as otherwise set forth in the Plan, the Confirmation Order or this Agreement, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in Article [XI] of the Plan, the Liquidating Trustee may, without prior or further authorization, control and exercise authority over the Liquidating Trust Assets and their protection, conservation and disposition. The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets, the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee, and all distributions to the holders of Trust Interests. The Liquidating Trust may engage a claims agent to continue to maintain and update the Claims register maintained in the Cases throughout the administration of the Liquidating Trust, and such Claims register may serve as the Liquidating Trustee's register of Trust Interests held by holders of Trust Interests.

5.05 <u>Final Decree</u>. Upon the full administration of the Liquidating Trust, the Liquidating Trustee shall seek and obtain a final decree from the Bankruptcy Court.

5.06 <u>Limitations on Liquidating Trustee's Authority</u>.

(i) The Liquidating Trustee, as his primary purpose, is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, but shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. All actions taken by the Liquidating Trustee shall be consistent with the expeditious but orderly liquidation of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Liquidating Trust as a "liquidating trust" under Treasury Regulation Section 301.7701-4(d) and other applicable Tax Law.

(ii) The Liquidating Trustee shall liquidate and convert to Available Trust Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(iii) Any investments of the Available Trust Cash portion of the Liquidating Trust Assets by the Liquidating Trustee must be permitted investments for a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) or other applicable Tax Law.

5.07    Discretion.  Subject to the provisions of Section [5.13] hereof regarding the duties of the Liquidating Trust Board, the Liquidating Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or Causes of Action, including the Liquidating Trust Causes of Action, as it determines is in the best interests of the holders of Trust Interests and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decisions, except as set forth herein and in the Plan and the Confirmation Order.  Except as expressly set forth in the Plan or the Confirmation Order, and subject to his or her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets.  Subject to Section [3.06] hereof, the Liquidating Trustee may incur reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Available Trust Cash.  Unless specifically stated otherwise herein, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Agreement or specifically contemplated in the Plan or the Confirmation Order.

5.08    Retention of Professionals.  The Liquidating Trustee may (i) retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Debtors' Bankruptcy Cases), without further order of the Bankruptcy Court, to assist in its duties as the Liquidating Trustee under the Plan, Confirmation Order, and this Agreement on such terms as the Liquidating Trustee deems appropriate, whether on an hourly, contingency fee or other basis, including, without limitation, accountants, auditors, attorneys, tax professionals, consultants, and other professionals, and (ii)  pay the fees and charges incurred by the Liquidating Trustee on the Liquidating Trust's behalf after the Effective Date for fees and expenses of Liquidating Trust Advisors (including those retained by the Liquidating Trustee), disbursements, expenses, or related support services relating to the Liquidating Trust or as otherwise provided in this Agreement, *provided* that any such professionals shall be compensated solely from the Liquidating Trust and in no event shall the Liquidating Trustee or any of its professionals have or make any claim for reimbursement of fees or expenses against any Person other than the Liquidating Trustee (not individually, but solely in its capacity as the Liquidating Trustee) or any property other than the Liquidating Trust and the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

5.09    Liability of Liquidating Trustee and Its Representatives.  Neither the employees, professionals, agents, and representatives of the Liquidating Trust or the Liquidating Trustee including any Liquidating Trust Advisors (collectively, the "Retained Parties") or any member of the Liquidating Trust Board nor the Liquidating Trustee (collectively, the "Covered Persons"), shall be held liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trust or Liquidating Trustee, except those acts arising out of its bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, and each shall be entitled to indemnification and reimbursement from the Liquidating Trust for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust or Liquidating Trustee.  All Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trust or the Liquidating Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

5.10    Non-liability for Acts of Others.  Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Liquidating Trustee of any of the liabilities, obligations or duties of the Debtors or holders of Trust Interests and shall not be deemed to be or contain a covenant or agreement by the Liquidating Trustee to assume or accept any such liability, obligation, or duty.  Any successor Liquidating Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee hereunder, and any statement or representation made as to the assets comprising the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so.  A successor Liquidating Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A Liquidating Trustee or successor Liquidating Trustee shall not be liable for any act or omission of any predecessor Liquidating Trustee, nor have a duty to enforce any claims against any predecessor Liquidating Trustee on account of any such act or omission.  Nothing in this paragraph shall impair any rights of setoff, recoupment, or offset under the Bankruptcy Code or otherwise.

5.11    Limitation of Liability to Third Persons.  Notwithstanding any other provision of this Agreement, the Liquidating Trustee shall not be liable for any error of judgment, or any action taken or omitted to be taken hereunder or any action taken in good faith in reliance upon the advice of the Liquidating Trust Advisors.  The liability of the Liquidating Trustee shall be limited as provided herein.  No provision of this Agreement, the Plan, or the Confirmation Order shall be construed to relieve the Liquidating Trustee from liability for their own respective bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice.

5.12    Compensation of the Liquidating Trustee and Other Employees or Agents. The Liquidating Trustee and the Liquidating Trust's employees and agents shall be entitled to receive reasonable compensation paid by the Liquidating Trust with the Liquidating Trust Assets. Reasonable compensation for Marc Kirschner, during such time as he is engaged as Liquidating Trustee, shall be comprised solely of

(a)    fixed fees in the amount of:

(i)    $20,000 per month for the first four months of the Engagement Period ("Initial Period");

(ii)    $15,000 per month for four months following the Initial Period; and

(iii)    $10,000 per month thereafter; and

(b)    incentive fees in an amount (the "Trustee Incentive Fees") equal to:

(i)    0% of the first $25 million in Net Proceeds (defined below) received by the Liquidating Trust during the Engagement Period;

(ii)    Once the Liquidating Trust has received Net Proceeds in excess $25 million, 1% of such Net Proceeds received by the Liquidating Trust until the Liquidating Trust has received $50 million in Net Proceeds;

(iii)    Once the Liquidating Trust has received Net Proceeds in excess $50 million, 1.5% of such Net Proceeds received by the Liquidating Trust until the Liquidating Trust has received $100 million in Net Proceeds; and

(iv)    Once the Liquidating Trust has received Net Proceeds in excess $100 million, 2% of such Net Proceeds received by the Liquidating Trust.

The term "Net Proceeds" shall mean all proceeds received by the Liquidating Trust on account of any Liquidating Trust Assets (other than (a) proceeds from the sale of remaining coffee inventory constituting Prepetition First Lien Collateral (b) any cash collateral held by the Debtors as of the Effective Date and distributed thereafter (whether out of reserves or otherwise) and (c) proceeds received in connection with the Debtors' sale of assets in Vietnam) after accounting for and reducing such proceeds by any attorneys' fees (including contingency fees) and expenses incurred by counsel responsible for converting such Liquidating Trust Assets to Available Trust Cash. For purposes of calculating Net Proceeds, the Initial Litigation Funding, the Initial Non-Litigation Funding and any financing obtained pursuant to Section 3.06(h) hereof shall not constitute proceeds received on account of Liquidating Trust Assets. In addition to the Trustee Fees, the Liquidating Trust shall reimburse the Liquidating Trustee for all reasonable out-of-pocket expenses incurred by the Liquidating Trustee in connection with the Liquidating Trust. The Liquidating Trust may pay such expenses in the ordinary course without application or notice to the Bankruptcy Court or any other court. For the avoidance of doubt, the Liquidating Trustee may, in its sole discretion, pay its professionals' compensation and other costs and expenses of this Liquidating Trust before approving or making any Distributions.

5.13    Liquidating Trust Board.

(a)    Creation and Composition. The Liquidating Trust Board shall be created on the Effective Date and may be governed by by-laws adopted by the Liquidating Trust Board, which shall provide for recusal on conflicts among other standard terms. The Liquidating Trust Board shall be comprised of four representatives designated as follows: (i) two members selected by the Prepetition First Lien Secured Parties (the "Class A Board Members"); and (ii) two members selected by representatives of the Creditors' Committee (the "Class BC Board Members and, together with the Class A Board Members, the "Members of the Liquidating Trust Board"), *provided however,* that any transferee of Trust Interests pursuant to Section 4.03 hereof shall not be entitled to vote such Transferred Trust Interests in the selection of any Member of the Liquidating Trust Board or any Successor Liquidating Trust Board Member. The Liquidating Trust Board shall have the authority to oversee, review and guide the activities and performance of the Liquidating Trustee. Each member of the Liquidating Trust shall serve until the earlier of: (i) such member's death or resignation; (ii) such member's removal pursuant to this Agreement; and (iii) the termination of the Liquidating Trust.

(b)    Rights and Powers. In addition to such other rights as are set forth in this Agreement, the Liquidating Trust Board shall have the rights to do the following, *provided*

*however*, that notwithstanding the below or anything else to the contrary herein, the two Class A Board Members shall have sole governance or other rights with respect to any matters or information relating to Prepetition First Lien Collateral:

    (i)    remove the Liquidating Trustee for Cause, acting by a majority (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member), or for any other reason acting by unanimous consent;

    (ii)    consent to the taking of any Material Action (as defined below) by the Liquidating Trustee in accordance with Section 5.13(c);

    (iii)    receive and review the reports of the Liquidating Trustee and consult with same on any matters related to the Liquidating Trust or the Liquidating Trust Assets;

    (iv)    review and consult with the Liquidating Trustee regarding: (i) Distributions to the holders of Trust Interests; (ii) the prosecution, settlement, transfer, release, or abandonment of any Liquidating Trust Causes of Action on behalf of the Liquidating Trust; (iii) the amendment of this Agreement as provided by the terms of this Agreement; and (iv) such other actions as are specified in this Agreement;

    (v)    acting by a majority (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member), appoint a successor Liquidating Trustee, as provided by the terms of this Agreement;

    (vi)    acting by a majority (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member) and with the consent of the Liquidating Trustee, remove a member of the Liquidating Trust Board, in accordance with Section 5.13(f);

    (vii)    have access, upon reasonable notice and during normal business hours, to all reports, documents, memoranda, and other work product of the Liquidating Trustee; and

    (viii)    monitor the actions of the Liquidating Trustee and receive, upon request, status reports from the Liquidating Trustee as to the status of (i) the litigation, settlement, administration, and pursuit of the Liquidating Trust Causes of Action and (ii) the administration of the Liquidating Trust Assets; *provided however*, that reports and information regarding the Prepetition First Lien Collateral shall only be available to the Class A Board Members.  For the avoidance of doubt, the failure to specifically identify rights in this section shall not limit or otherwise impair the right of the Liquidating Trustee or the members of the Liquidating Trust Board to consult with the

Liquidating Trustee or members of the Liquidating Trust Board individually or collectively on any or all issues that he or they may determine to be relevant or appropriate.

(c)    Material Actions.  "Material Action" means each of the following, each of which may only be undertaken with the consent of a majority of the Liquidating Trust Board, or with respect to any matters or information relating to Prepetition First Lien Collateral, solely with the consent of the two Class A Board Members:

(i)    the filing of any complaint or initiation of any proceeding (including any arbitration proceedings (international (via ICSID) or otherwise)) in respect of any Liquidating Trust Causes of Action [(A) in the claimed amount of $[___] or (B) against any states, nations or governmental authorities];

(ii)    the settlement or dismissal of any Liquidating Trust Causes of Action [in the claimed amount of [$___]];

(iii)    the settlement of any General Unsecured Claim which would result in such Claim being Allowed in an amount greater than [$100,000];

(iv)    entry into any contingency fee agreement or litigation funding agreement;

(v)    borrowing money or raising capital; and

(vi)    the selection and engagement of any Retained Parties.

(d)    Voting.  For all matters unrelated to the Prepetition First Lien Collateral in which the Liquidating Trust Board's consent is required, each Member of the Liquidating Trust Board and, when necessary, the Liquidating Trustee shall be entitled to one vote each.  Decisions shall be rendered by a majority decision.  When all four Members of the Liquidating Trust Board vote on a matter, the Liquidating Trustee shall have and may cast the deciding vote, if the vote would otherwise split.  If only three Members of the Liquidating Trust Board vote, the Liquidating Trustee shall abstain. If two Members of the Liquidating Trust Board are recused from voting due to absence or a conflict, the Liquidating Trustee shall have and may cast the deciding vote, if the vote would otherwise split.  In no case shall one Member of the Liquidating Trust Board have the sole authority to approve a matter requiring a vote.  A voting matter requiring action or direction that cannot be resolved by the Liquidating Trust Board and the Liquidating Trustee may be brought by the Liquidating Trustee on motion to the Bankruptcy Court for authority or direction.  The Liquidating Trust Board will additionally be responsible for deciding any matter in which the Liquidating Trustee is deemed to have a conflict, subject to the voting requirements and limitations above.

(e)    Recusal.  Each Member of the Liquidating Trust Board and the Liquidating Trustee shall recuse him or herself from discussion about any matter, and shall not vote on any voting matter, in which it has an actual or reasonably foreseeable conflict of interest.

(f)     Removal of Member of the Liquidating Trust Board.  A Member of the Liquidating Trust Board may be removed at any time by the written consent of a majority of the Members of the Liquidating Trust Board (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member); provided, however, that such removal by majority vote may solely be made for the following reasons and shall be effective on the date specified in such consent or approval pursuant to this section: (i) theft or embezzlement or attempted theft of embezzlement of money or tangible or intangible assets or property by a Member of the Liquidating Trust Board; (ii) violation of any law (whether foreign or domestic), which results in felony indictment or similar judicial proceeding by a Member of the Liquidating Trust Board; (iii) repeated failure to appear and participate in meetings of the Liquidating Trust Board, respond to communications from the Liquidating Trustee or to otherwise diligently fulfill their duties as a Member of the Liquidating Trust Board; or (iv) gross negligence, bad faith, willful misconduct or knowing violation of law, in the performance of his or her duties as a Member of the Liquidating Trust Board; provided, however, that such Member of the Liquidating Trust Board shall have been given a reasonable period to cure any alleged conduct under clause (iv) (other than bad faith, willful misconduct or knowing violation of law).

(g)     Resignation of Member of the Liquidating Trust Board.  A Member of the Liquidating Trust Board may resign by giving not less than thirty (30) days prior written notice thereof to the other Members of the Liquidating Trust Board and the Liquidating Trustee.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; or (ii) the appointment of a successor Member of the Liquidating Trust Board (a "Successor Liquidating Trust Board Member") in accordance with [Section 5.13(h)] of this Agreement and the acceptance by such Successor Liquidating Trust Board Member of such appointment in accordance with [Section 5.13(i)] of this Agreement.  Upon such resignation, a Successor Liquidating Trust Board Member shall be appointed in accordance with [Section 5.13(h)] of this Agreement.

(h)     Appointment of Successor Liquidating Trust Board Member upon Removal, Resignation, or Incapacity.  If a Member of the Liquidating Trust Board is removed pursuant to the terms of this Agreement, resigns pursuant to the terms of this Agreement, or otherwise is incapable of serving as a Member of the Liquidating Trust Board (including that such member no longer is a holder of Trust Interests), a Successor Liquidating Trust Board Member shall be appointed as follows: (i) if a vacancy is created because of the removal, resignation or incapacity of a Class A Board Member, the majority of the Class A Trust Interest holders shall elect and appoint a Successor Liquidating Trust Board Member to fill such position; or (ii) if a vacancy is created because of the removal, resignation or incapacity of a Class BC Board Member, the majority of the holders of Class B Trust Interests and Class C Trust Interests (if any) shall appoint a Successor Liquidating Trust Board Member to fill such position, provided however, that any transferee of Trust Interests pursuant to Section 4.03 hereof shall not be entitled to vote such Transferred Trust Interests in the selection of any Member of the Liquidating Trust Board or Successor Liquidating Trust Board Member.  If a Successor Liquidating Trust Board Member is not appointed or does not accept his or her appointment within thirty (30) days following: (i) delivery of a notice of resignation of a Member of the Liquidating Trust Board or (ii) the removal of a Member of the Liquidating Trust Board, the Liquidating Trust Board or Liquidating Trustee may petition any court of competent jurisdiction, including the Bankruptcy Court, for the appointment of a Successor Liquidating Trust Board Member.

(i)    Acceptance of Appointment by Successor Liquidating Trust Board Member. Any Successor Liquidating Trust Board Member appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver such acceptance to the Liquidating Trustee. Thereupon, such Successor Liquidating Trust Board Member shall, without any further act, become vested with all the rights, powers, duties, and obligations of his or her predecessor in the Liquidating Trust Board with like effect as if originally named herein.

5.14    Exculpation; Indemnification. After the Effective Date all of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the holders of Trust Interests, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of his, her, its, or their own bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice. No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan. To the fullest extent permitted by applicable law and solely from the Liquidating Trust Assets, (i) the Liquidating Trust shall indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, and (ii) the Covered Persons shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions upon receipt by the Liquidating Trust of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 5.14. The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified. For the avoidance of doubt, the rights to indemnification hereunder are not exclusive of other rights which a person entitled to indemnification may otherwise have at law or in equity including but not limited to, common law rights to indemnification or contribution. Except in the event of actions or omissions that are determined by a Final Order to have arisen out of his, her, its, or their own bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, in no event shall the Liquidating Trustee or any Covered Person be liable for any indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Liquidating Trustee or any Covered Person has been informed of the likelihood of such loss or damages and regardless of the form of action. [Notwithstanding anything to the contrary herein, in no event shall the liability of the Liquidating Trustee or any Covered Person under this Agreement exceed the total amount of fees paid to the Liquidating Trustee or any Covered Person under this Agreement.] Persons (including any of the Liquidating Trust Advisors) engaged in transactions with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the

Liquidating Trustee to such Persons in carrying out the terms of this Agreement, the Plan, or the Confirmation Order, and the Liquidating Trustee shall have no personal or individual obligation to satisfy such liability.

As of the Effective Date, notwithstanding any provision of the Plan, neither any Holder of a Claim or Interest, nor other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Covered Persons for any act or omission occurring or failing to occur after the Petition Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and execution of the Plan, the Disclosure Statement, this Agreement, and related sale process, the solicitation of votes for and the pursuit of confirmation of the Plan, the management of the Liquidating Trust, the liquidation of Liquidating Trust Assets, the consummation of the Plan, the administration of the Plan and/or the property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto; provided, however, that the foregoing shall not apply if it is determined in a Final Order that the Covered Persons engaged in fraud, willful misconduct or gross negligence.

5.15    Removal or Replacement of the Liquidating Trustee.

(a)    Termination.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate on the date the Liquidating Trust is dissolved, or upon the Liquidating Trustee's death, resignation, removal or discharge, *provided* that Sections [5.09-5.11] shall survive such termination and dissolution.

(b)    Resignation.  The Liquidating Trustee may resign by giving not less than sixty (60) days prior written notice filed with the Bankruptcy Court, *provided*, *however*, such resignation shall not become effective until the appointment of a successor trustee by the Liquidating Trust Board in accordance with Section 5.13(b)(v) with notice to the Bankruptcy Court.  If a Liquidating Trustee resigns from its position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

(c)    Removal.  The Liquidating Trustee may be removed by the Bankruptcy Court for Cause or by Liquidating Trust Board pursuant to Section 5.13(b)(i).  Any removal of the Liquidating Trustee shall become effective as of the date specified by  the Liquidating Trust Board. In the event of the removal of the Liquidating Trustee, subject to a final accounting, the Liquidating Trustee shall be entitled to immediate payment of all fees, expenses, and other compensation earned through and including the effective date of such removal, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor trustee.

5.16    Inquiries into the Liquidating Trustee's Authority.  Except as otherwise set forth in this Agreement or the Plan, no Person dealing with the Liquidating Trust shall be obligated to

inquire into the authority of the Liquidating Trustee in connection with the protection, conservation, or disposition of the Liquidating Trust Assets.

## ARTICLE VI
## DISTRIBUTIONS

6.01    Distributions to Holders of Trust Interests.  The Liquidating Trustee shall make Distributions to the holders of Trust Interests, at such time and in such amounts that the Liquidating Trustee deems appropriate and consistent with this Section 6.01.  The timing and amount of each Distribution by the Liquidating Trustee shall be determined by the Liquidating Trustee and shall be consistent with the terms set forth in the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, and this Agreement; *provided*, *however*, that the Liquidating Trustee shall make distributions from the Liquidating Trust to the holders of Trust Interests at least annually, or earlier if the Liquidating Trust is holding more than [$____] in proceeds of Prepetition First Lien Collateral, or more than [$____] in cash from Liquidating Trust Assets other than Prepetition First Lien Collateral, if and to the extent it determines the Liquidating Trust has sufficient cash available for distribution after reserving for amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims), and to maintain the value of the Liquidating Trust Assets during the term of the Liquidating Trust, (ii) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses of the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties in connection with this Agreement and any amounts owed to the Liquidating Trustee pursuant to the terms hereof, and (iii) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Agreement, including Section 5.03.

6.02    Location for Distributions; Notice of Change of Address.  Distributions to Holders of Allowed Claims and the holders of Trust Interests shall be made by the Liquidating Trustee (a) at the addresses set forth on the respective proofs of Claim filed by such Holders of Allowed Claims and holders of Trust Interests; (b) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (c) at the address reflected in the Schedules or, if not reflected in the Schedules, then in the other records of the Debtors if no proof of Claim is filed and the Liquidating Trustee or the Debtors have not received a written notice of a change of address.  The Liquidating Trustee shall have the absolute and unconditional right to rely on the information provided by the Debtors for purposes of notices and distributions under this Agreement.

6.03    Allocation of Liquidating Trust Assets.  As set forth in the Plan, Trust Interests in the Liquidating Trust are divided into classes—Class 2A Trust Interests, Class A Trust Interests, Class B Trust Interests and, if applicable, Class C Trust Interests.  Pursuant to the Plan, each series of Trust Interests shall receive Distributions from the liquidation of certain identified assets in accordance with the Plan, the Confirmation Order and this Agreement.

(a)    Allocation of Prepetition First Lien Collateral. Holders of the Class A Trust Interests shall have the exclusive right to receive any proceeds from the liquidation of Liquidation Trust Assets that constituted Prepetition First Lien Collateral, including the Debtors' coffee

inventory located in Nicaragua as of the Petition Date and any insurance policies or proceeds thereof that may relate to or cover such coffee inventory.

(b)    Allocation of Litigation Proceeds.    Subject to Section 6.03(e) and (f), Litigation Proceeds will be distributed as follows:

(i)    First, the Litigation Proceeds will be deposited into the Litigation Funding Reserve until the amount in the Litigation Funding Reserve is restored to $500,000, provided that no more than 10% of the Litigation Proceeds received from any one recovery will be deposited into the Litigation Funding Reserve.  The amount in the Litigation Funding Reserve at any one time shall not be greater than $500,000;

(ii)    Until the Initial Litigation Funding has been repaid to the Prepetition First Lien Secured Parties in full, after the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 70% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 30% of any remaining Litigation Proceeds shall be allocated to holders of Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests.

(iii)    After the Initial Litigation Funding has been repaid to the holders of Class A Trust Interests in full and following the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests.

(iv)    To the extent any amounts of the Litigation Funding Reserve remain after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests and the distribution of all Liquidating Trust Assets, such amounts shall be distributed 50% to the holders of Class A Trust Interests and 50% to the holders of Class B Trust Interests and, if Class C Trust Interests have been issued, Class C Trust Interests.

(v)    In the event that FMO receives Trust Interests pursuant to Section 3.07(c) of the Plan, FMO shall receive Class 2A Trust Interests that are entitled to receive 100% of Litigation Proceeds that constitute FMO Collateral.  For the avoidance of doubt, and notwithstanding anything in this Agreement, the Plan or the Confirmation Order to the contrary, FMO shall have no claim against or rights in the Trust or any Trust Assets other than the FMO Collateral and as to such FMO Collateral, solely to the extent explicitly set forth herein, and

FMO shall not be considered a "creditor" of the Trust as that term is defined in the Bankruptcy Code.

(vi)    Notwithstanding the other provisions of this Section 6.03, as a result of the Prepetition First Lien Secured Parties' funding of the Convenience Claim Pool under the Plan, holders of Class A Trust Interests shall be subrogated to the Claims of Holders of Allowed Class 5 Claims that receive Distributions out of the Convenience Claim Pool to the extent of such Distributions (up to the amount of $1,000,000), such that holders of Class A Trust Interests shall participate in distributions to be made pursuant to Section 6.03(b)(ii) through (iv) and Section 6.03(c)(ii) to holders of Class B Trust Interests as if the Holders of Allowed Class 5 Claims under the Plan had received Class B1 Trust Interests rather than distributions out of the Convenience Claim Pool.

(c)    <u>Allocation of Proceeds of Non-Litigation Liquidating Trust Assets</u>.

(i)    Proceeds of Prepetition First Lien Collateral shall be allocated to the holders of Class A Trust Interests until the claims of such holders have been satisfied in full.

(ii)    Proceeds (other than Litigation Proceeds) of Liquidating Trust Assets other than Prepetition First Lien Collateral shall be used to repay the Initial Non-Litigation Funding to the holders of Class A Trust Interests.  Once the Initial Non-Litigation Funding has been repaid to the holders of Class A Trust Interests, holders of Class A Trust Interests, Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests will receive a Pro Rata Share of proceeds (other than Litigation Proceeds) of Liquidating Trust Assets other than Prepetition First Lien Collateral and FMO Collateral.

(d)    <u>Distributions to Reserved Trust Interests</u> – No Distributions shall be made by the Liquidating Trustee on account of Reserved Trust Interests, but instead, shall be reserved by the Liquidating Trustee.  Once a Class 4A or Class 4B Claim has become Allowed (under the Plan), the Holder of such newly Allowed claim shall receive from the Liquidating Trustee the pro rata share of their Reserved Trust Interests as well as any reserved Distributions on account of such Reserved Trust Interests.  Thereafter, such Holder shall be entitled to participate Pro Rata with other Holders of Class B1 Trust Interests, Class B2 Trust Interests or Class C Trust Interests, as applicable, in any future Distributions on account of such Class B Trust Interests, Class B2 Trust Interests or Class C Trust Interests, respectively.

(e)    Notwithstanding anything to the contrary in this Agreement, the Plan or the Confirmation Order, other than payments out of the Dutch Law SME Pool, holders of Class B2 Trust Interests shall not be entitled to any Distributions from the Liquidating Trust until all Holders

of Allowed Class 4A Claims under the Plan have received recoveries on account of such Allowed Claims equal to 20% of such Claims.

(f)     Notwithstanding anything to the contrary in Section 3.07 of the Plan or in this Agreement and consistent with section 3.08 of the Plan, in the event the Dutch WHOA Plan is not sanctioned by the Dutch Court, or Mercon B.v. does not seek approval of the Dutch WHOA Plan from the Dutch Court, and Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only hold Allowed Claims against Mercon B.V. (and no other Debtor) shall not be entitled to any distribution from the Dutch Law SME Claim Pool or any Pro Rata Share of the assets transferred to the Liquidating Trust beyond what such Holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V. and as such will become Liquidating Trust Beneficiaries with Class C Trust Interests, unless the Liquidating Trustee and such Holder agree otherwise. This applies only in respect of Claims against Mercon B.V. and not against any other Debtor, and does not affect the rights of any Holders of Claims in respect of any other Debtor.

(g)     Notwithstanding anything to the contrary in this Article VI or any other provision of this Agreement, if a Distribution is being made to the Holders of the Class A Trust Interests, the Liquidating Trustee shall withhold from such Distributions and immediately pay to the Prepetition First Lien Agent such amounts that are reflected on invoices tendered by the Prepetition First Lien Agent to the Liquidating Trustee prior to the Distribution, which amounts so invoiced by the Prepetition First Lien Agent to the Liquidating Trustee (i) shall be amounts that the Holders of the Class A Trust Interests would be obligated to indemnify the Prepetition First Lien Agent for pursuant to the indemnification obligations of the Holders of the Class A Trust Interests owed to the Prepetition First Lien Agent as set forth in Section 8.5 of the Prepetition First Lien Credit Agreement (as defined in the Final Cash Collateral Order), which expressly survives the termination of the Prepetition First Lien Credit Agreement, including without limitation the reasonable compensation, expenses, disbursements and advances of the Prepetition First Lien Agent and its agents and counsel and (ii) shall be withheld from such Distribution to the Holders of the Class A Trust Interests and paid by the Liquidating Trustee to the Prepetition First Lien Agent consistent with the terms of Section 8.14 of the Prepetition First Lien Credit Agreement, which such Section 8.14 shall survive termination of the Prepetition First Lien Credit Agreement as set forth in the Confirmation Order.

6.04    Nicaragua Assets.  The rights of the Prepetition First Lien Secured Parties and FMO with respect to the allocation of (i) proceeds for any monetization of the Debtors' assets (including real property) and inventory located in Nicaragua, including from applicable insurance policies or the proceeds thereof, and (ii) Litigation Proceeds from Causes of Action arising out of the Debtors' assets (including real property) and inventory located in Nicaragua are preserved under the Plan and this Agreement.  For the avoidance of doubt, to the extent that the Liquidating Trustee liquidates any FMO Collateral with the written consent of FMO, any reasonable and documented fees and expenses incurred by the Liquidating Trustee in connection therewith shall be surcharged against any recoveries on such FMO Collateral and the Liquidating Trustee shall be authorized to allocate those surcharged proceeds to repayment of the Initial Litigation Funding and Initial Non-Litigation Funding, as applicable, or otherwise distributed to the holders of the Class A Trust Interests.

6.05    Administration of Distributions.

(a)    Manner of Payment.  Unless otherwise expressly agreed, in writing, all Available Trust Cash payments to be made pursuant to this Agreement, the Plan, or the Confirmation Order shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

(b)    Fractional Dollars; De Minimis Distributions.  Notwithstanding any other provision of the Plan or the Confirmation Order to the contrary, (a) the Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such holder, or (iii) if the amount of the final Distribution to such holder is $50.00 or less.  If the Liquidating Trust withholds any Distribution under this provision, the withheld funds shall inure to the benefit of the Liquidating Trust.

(c)    Unclaimed Distributions.

(i)    Any Available Trust Cash or other property to be Distributed under the Plan to the Holder of an Allowed Claim, the Holder of a Disputed Claim, or a holder of a Trust Interest shall revert to the Liquidating Trust if it is not claimed by the Holder of the Allowed Claim, the Holder of the Disputed Claim, or holder of a Trust Interest within three (3) months after the date of such Distribution.  If such Available Trust Cash or other property is not claimed on or before such date, the Distribution made to such Holder of an Allowed Claim, Holder of a Disputed Claim, or holder of a Trust Interest shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust.  All unclaimed Distributions shall revert to the Liquidating Trust.

(ii)    Checks issued to any Holder of an Allowed Claim, Holder of a Disputed Claim, or a holder of a Trust Interest on account of any distribution of the proceeds of the Liquidating Trust Assets shall be null and void if not negotiated within ninety (90) days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the issuer of such check.  Any Holder of an Allowed Claim, Holder of a Disputed Claim, or a holder of a Trust Interest holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Liquidating Trust.  In such cases, any Available Trust Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder or holder with respect thereto.  Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim, Holder of a Disputed Claim or a holder of a Trust Interest.

(d)     Set-Off.  Except as otherwise provided herein, the Debtors or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.  Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the holder of an Allowed Claim.

(e)     Abandonment.  The Liquidating Trustee may, after consultation with the Liquidating Trust Board, abandon, in any commercially reasonable manner, any property that the Liquidating Trustee reasonably concludes is of no benefit to the holders of Trust Interests. No abandonment shall have occurred, or be deemed to have occurred, without an express written statement of such abandonment by the Liquidating Trustee.

(f)     Excess Funds.   After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and this Agreement, if the amount of remaining Available Trust Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee, may donate such amount to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

(g)     Maximum Recovery and Postpetition Interest.  Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for holders of Secured Claims under section 506(b) of the Bankruptcy Code or as allowed by order of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

(h)     Allocation of Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

(i)     Compliance with Laws.  Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws except as may be expressly provided herein or in the Plan.  Without limiting the generality of the foregoing, (a) the Liquidating Trustee shall make Distributions from the Liquidating Trust to the holders of Trust Interests at least annually, to the extent it determines the Liquidating Trust has sufficient cash available for distribution from all net cash income and all other cash received by the Liquidating Trust; provided, however, that the Liquidating Trustee may, to the extent consistent with applicable law or guidance as to liquidating trusts (e.g., Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684), retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims), and to maintain the value of the Liquidating Trust Assets during the term of the Liquidating Trust, (ii) to pay reasonable administrative expenses including, without limitation, the compensation and

the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses of the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties in connection with this Agreement and any amounts owed to the Liquidating Trustee pursuant to the terms hereof, and (iii) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan and this Agreement; and (b) the Liquidating Trustee, in its discretion, may cause the Liquidating Trust to withhold and/or pay to the appropriate tax authority from amounts distributable from the Liquidating Trust to holders of Trust Interests any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such holder of a Trust Interest or the Liquidating Trust with respect to the amount to be distributed to such holder of a Trust Interest. The Liquidating Trustee shall determine such maximum amount to be withheld by the Liquidating Trust in its sole, reasonable discretion and shall cause the Liquidating Trust to distribute to the holder of a Trust Interest any excess amount withheld. All such amounts withheld and paid to the appropriate tax authority (or reserved pending resolution of the need to withhold) shall be treated as amounts distributed to such holder of a Trust Interest for all purposes of this Agreement.

## ARTICLE VII
## SUCCESSOR LIQUIDATING TRUSTEE

7.01    <u>Successor Liquidating Trustee</u>.    In the event the Liquidating Trustee or any successor Liquidating Trustee ceases to serve as Liquidating Trustee, is removed, terminated, resigns or is otherwise unable to serve for any reason prior to the dissolution of the Liquidating Trust, a successor trustee shall be appointed in accordance with Section 5.13(b)(v). Any successor to the Liquidating Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Liquidating Trust records and with the Bankruptcy Court. The resigning Liquidating Trustee shall duly assign, transfer, and deliver to such successor trustee all Liquidating Trust Assets held by such resigning Liquidating Trustee hereunder and shall, as reasonably requested by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee all the liabilities, duties, powers, rights, title, discretion, and privileges of such resigning Liquidating Trustee. Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee will be vested in and undertaken by the successor trustee without any further act; the predecessor Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Liquidating Trustee shall have no further liability or responsibility with respect thereto. A successor trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor trustee expressly assumes such responsibility. A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor trustee for any events or occurrences subsequent to the cessation of its role as the Liquidating Trustee.

## ARTICLE VIII
## DURATION AND TERMINATION OF TRUST

8.01    Duration.  The Liquidating Trust shall be deemed effective upon the Effective Date and shall remain and continue in full force and effect until the Termination Date.    The "Termination Date" shall occur at such time as (i) all Disputed Claims have been resolved; (ii) all of the Liquidating Trust Assets have been liquidated; (iii) all duties and obligations of the Liquidating Trustee under this Agreement, the Plan, and the Confirmation Order have been fulfilled; (iv) all Distributions required to be made by the Liquidating Trustee under the Plan, the Confirmation Order and this Agreement have been made; and (v) the Cases have been closed.  The term of the Liquidating Trust shall not exceed five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee (after consultation with the Liquidating Trust Board) filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years per extension, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extensions would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Upon the Filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.  Notwithstanding anything to the contrary in this Agreement, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust.

8.02    Maintenance of Records.  The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements [until at least six (6) years] after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee.  At the Liquidating Trustee's discretion (after consultation with the Liquidating Trust Board), all of such records and documents may, but need not, be destroyed at any time after six (6) years from the completion and winding up of the affairs of the Liquidating Trust (except to the extent such records and documents are necessary to be held longer to fulfill the Liquidating Trustee's obligations pursuant to this Agreement).

8.03    Dissolution Events.  The Liquidating Trustee shall be discharged, the Liquidating Trust shall be dissolved, and the Trust Interests shall be cancelled at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under this Agreement (other than those set forth in Section 8.02), the Plan and the Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, this Agreement and the Confirmation Order have been made, and (v) the Cases have been closed.  Without limiting any other provision of this Agreement regarding termination, the Liquidating Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Liquidating Trust and the Liquidating Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

8.04    Continuance of Trust for Winding Up.  After the Termination Date, and solely for the purpose of winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall

continue to act as such until its duties have been fully performed. The Liquidating Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidating Trustee until such time that the Liquidating Trustee determines (in accordance with Section 8.02), after consultation with the Liquidating Trust Board, that such books, records, and files may be destroyed (unless such records and documents are necessary to fulfill the Liquidating Trustee's obligations pursuant to this Agreement), subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidating Trustee may be a party. Except as otherwise specifically provided herein, upon the occurrence of the events set forth in clauses (i) – (v) in the first sentence of Section 8.03, the Liquidating Trustee shall be deemed discharged and have no further duties or obligations hereunder, and the interests of the holders of Trust Interests shall be cancelled and the Liquidating Trust will be deemed to have been dissolved.

## ARTICLE IX
## TAX MATTERS

9.01   <u>Tax Treatment</u>.   The Debtors, the Liquidating Trustee, and holders of Trust Interests, as applicable, will treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and any comparable provision of Tax Law. The Liquidating Trust shall be considered a "grantor" trust and is intended to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684. Consistent with this treatment, for all federal, state, and local income tax purposes, the holders of Trust Interests shall be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the assets of the Liquidating Trust ((i) to the extent of the value of their respective shares of the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust. The holders of Trust Interests will be treated for federal, state, and local income tax purposes as the grantors of the Liquidating Trust and the owners of the assets thereof, and the Debtors, the Liquidating Trustee, and the holders of Trust Interests shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the holders of Trust Interests as (a) a transfer by the Debtors of the assets of the Liquidating Trust (net of any applicable liabilities) directly to the holders of Trust Interests (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the holders of Trust Interests (to the extent of the value of their respective shares in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the Trust Interests in the Liquidating Trust. As soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and the Debtors, the Liquidating Trustee, and the holders of Trust Interests shall use such valuation consistently for all applicable reporting purposes, including all federal (and comparable state and local) income tax purposes. The Liquidating Trustee shall be authorized to take any action necessary to maintain compliance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of Tax Law) or any successor regulation thereto that does not contradict the terms of this Agreement, the Plan, or the Confirmation Order. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of Tax Law), the Liquidating Trustee shall take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal (and comparable

state and local) tax purposes under Treasury Regulation Section 301.7701-3 (but not a "publicly traded partnership" subject to Section 7704(a) of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified.

9.02    <u>Tax Reporting</u>.  The "taxable year" of the Liquidating Trust shall be the "calendar year" as those terms are defined in Section 441 of the Tax Code.  The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and other applicable Tax Law, and report, but not pay tax on, the Liquidating Trust's items of income, gain, loss, deduction, and credit.  All of the Liquidating Trust's income shall be treated as subject to tax on a current basis with such tax being the sole responsibility of the holders of Trust Interests.  The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority or under applicable Tax Law[; *provided, however*, the Debtors shall be responsible for filing all required federal, state, local, and non-U.S. tax returns and/or informational returns for the Debtors (including final tax returns)][4].  Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a Trust Interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal (and, as applicable, state, local, and non-U.S.) income tax returns.  The Liquidating Trustee may provide each such holder of a Trust Interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement, or in any other manner reasonably determined by the Liquidating Trustee.  Such reporting shall also occur within a reasonable time after the dissolution of the Liquidating Trust.  The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction, and credit of the Liquidating Trust with respect to each holder of a Trust Interest to the extent required by the Tax Code or other applicable Tax Law.  All parties (including, without limitation, the Debtors, holders of Trust Interests, and the Liquidating Trustee) shall report for federal, state, local, and non-U.S. income tax purposes consistently with the foregoing.  The Liquidating Trustee may, in its sole discretion, request an expedited determination of the tax obligations of the Liquidating Trust, under Bankruptcy Code Section 505(b), for all tax returns filed for, or on behalf of, the Liquidating Trust for all taxable periods from the Effective Date through the Termination Date.

9.03    <u>Tax Withholdings</u>.  The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by applicable Tax Law or by any federal, state, local, or non-U.S. taxing authority, and all Distributions made by the Liquidating Trust to the holders of Trust Interests shall be subject to any such withholding and reporting requirements.  All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to such holders of Trust Interests for all purposes of this Agreement.  The Liquidating Trustee shall be authorized to take any all actions that may be necessary or appropriate to comply with any such withholding and reporting requirements including, without limitation, to collect such tax information from the holders of Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to

---

[4] [To be conformed with Plan]

effectuate the Plan and this Agreement and requiring that, as a condition to the receipt of a Distribution, holder of a Trust Interest or the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9 or other comparable form.  The Liquidating Trustee may refuse to make a Distribution to any holder of a Trust Interest that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that upon the holder of a Trust Interest's delivery of such information, the Liquidating Trustee shall make such distribution to which the holder of a Trust Interest is entitled, without any interest and income thereon.  In the interim, any property to be distributed by the Liquidating Trust shall, pending the delivery of such information, be treated as an unclaimed Distribution to be held by the Liquidating Trustee until such time as the Liquidating Trustee is satisfied with the holder's arrangements for any withholding tax obligations.  If the Liquidating Trustee makes such a request and the holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or this Agreement.

9.04    <u>Disputed Claims</u>.   The Liquidating Trustee (a) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 (and comparable provisions of Tax Law), and (b) to the extent permitted by applicable Tax Law, shall consistently report for state, local, and non-U.S. tax purposes.  If a "disputed ownership fund" election is made, all parties (including, without limitation, the Liquidating Trustee and the holders of Trust Interests) shall file such tax returns and pay such taxes as may be required consistent with such treatment.

9.05    <u>Foreign Tax Matters</u>.   The Liquidating Trustee shall take all reasonable steps, including, without limitation, the filing of any necessary documentation or elections with any non-U.S. tax authority, to minimize, under non-U.S. law: (i) the liabilities of the Liquidating Trust and the holders of Trust Interests for non-U.S. taxes, interest, penalties, and other amounts; (ii) the obligations of the Liquidating Trust to file non-U.S. tax or information returns or other documentation; and (iii) the obligations of the Liquidating Trust to withhold and remit amounts to any non-U.S. taxing authority in respect of payments or distributions of income or property by the Liquidating Trust.  The Liquidating Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Liquidating Trustee or the Liquidating Trust under non-U.S. Tax Law.  The Liquidating Trustee, or any other legal representative of the Liquidating Trust, shall not distribute Liquidating Trust Assets or any proceeds thereof without first having obtained all certificates required to have been obtained under applicable non-U.S. law relating to taxes.

## ARTICLE X
## AMENDMENT AND WAIVER

10.01    <u>Amendment; Waiver</u>.   The Liquidating Trustee may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any holder of a Trust Interest or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; *provided* that (A) the Liquidating Trustee shall provide reasonable advance notice to the Liquidating Trust Board prior to making any such amendment, supplement or waiver to this Agreement and (B) such amendments, supplements or waivers shall

not adversely affect the Distributions to any of the holders of Trust Interests or adversely affect the U.S. federal income tax status of the Liquidating Trust as a liquidating trust; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Liquidating Trust as a liquidating trust.  Any substantive provision of this Agreement may be amended or waived, or any material defect or omission cured, by the Liquidating Trustee with the consent of a majority of the Liquidating Trust Board (or solely with the consent of the two Class A Board Members if such proposed amendment or waiver affects or relates to the Prepetition First Lien Collateral), subject to the approval of the Bankruptcy Court, upon notice and opportunity for a hearing; *provided*, *however*, that no change may be made to this Agreement that would (i) adversely affect the U.S. federal income tax status of the Liquidating Trust as a liquidating trust or (ii) expand, add to, or modify the original stated purpose of the Liquidating Trust.  Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of state or local law) or any successor regulation thereto that does not contradict the terms of this Agreement, the Plan, or the Confirmation Order, as well as applicable IRS guidelines, rulings, or other controlling authorities.  Notwithstanding any other provision herein, the Liquidating Trustee may apply to the Bankruptcy Court to order or allow any amendment of this Agreement and the Bankruptcy Court shall have jurisdiction and authority to approve amendments of this Agreement. Bankruptcy Court approval shall be required for any changes or amendments to this Agreement that are inconsistent with the terms of the Plan or Confirmation Order.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.01  <u>Intention to Establish Grantor Trust</u>.  This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with that intent, and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

11.02  <u>Laws as to Construction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.

11.03  <u>Other Activities</u>.  The person serving as the Liquidating Trustee shall be entitled to perform services for and be employed by third parties; *provided*, that such performance or employment affords the person serving as the Liquidating Trustee sufficient time to carry out his or her responsibilities and duties as Liquidating Trustee and such performance or employment does not conflict with or otherwise prohibit such person from performing his or her responsibilities or duties free of conflict or interruption.

11.04  <u>Severability</u>.  If any provision of this Agreement or application thereof to any person or circumstance shall be determined by a court of competent jurisdiction through a Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held

invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11.05    <u>Jurisdiction</u>. The Bankruptcy Court shall retain exclusive jurisdiction to interpret and enforce this Agreement. Each Party to this Liquidating Trust Agreement hereby irrevocably consents to the exclusive jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each Party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement will be brought only in the Bankruptcy Court. Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement. For the avoidance of doubt, the Bankruptcy Court shall not have exclusive jurisdiction over Liquidating Trust Causes of Action, which the Liquidating Trustee may prosecute in any court of appropriate jurisdiction in accordance with applicable law.

11.06    <u>Waiver of Right to Jury Trial</u>. Each Party to this agreement hereby irrevocably waives all rights to trial by jury in any action, proceeding, or counterclaim arising out of or relating to this Agreement or the transactions contemplated thereby.

11.07    <u>Confidentiality</u>. The Liquidating Trustee, his or her employees, the Covered Persons, and the Members of the Liquidating Trust Board (collectively, the "<u>Confidential Parties</u>") may become aware of certain material, non-public information relating to the Liquidating Trust Assets ("<u>Confidential Information</u>") in their capacity as Confidential Parties. The Confidential Parties will hold any Confidential Information strictly confidential, and not use the Confidential Information for personal gain. Confidential Parties may only disclose Confidential Information if the Confidential Information:

(a)    is, or becomes, generally available to the public other than by a disclosure made by a Confidential Party;

(b)    was available to the Confidential Parties on a non-confidential basis before its disclosure to the Confidential Parties under this Agreement;

(c)    becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with the Debtors or the Liquidating Trust, provided that the source is not also bound by a confidentiality agreement with the Debtors or the Liquidating Trust; or

(d)    must be disclosed by the Confidential Parties because of a legal process including a subpoena or other court order, or other applicable laws or regulations.

11.08    <u>Meanings of Other Terms</u>. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole [and not to any particular Article,

45

Section or subdivision of this Agreement]. The term "including" shall mean "including, without limitation." All references to the "Liquidating Trustee" shall be deemed to include its successors hereunder, if any.

11.09   Notices. Any notice of other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at the appropriate address set forth below, or such other address as may be provided to the other parties in writing:

| To the Liquidating Trustee: | |
|---|---|
| To the Members of the Liquidating Trust Board: | |

11.10   Notices if to a Holder of a Trust Interest. Subject to any transfer recognized by the Liquidating Trustee as set forth herein, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a holder of a Trust Interest, on such holder of a Trust Interest's proof of claim, or if no proof of claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Liquidating Trust or such other means reasonably calculated to appraise the holder of a Trust Interest. Any notices to the United States shall be made to the persons and addresses provided for in the Plan.

11.11   Headings. The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

11.12   Entire Agreement. This Agreement, including the Exhibits attached hereto, the Plan, and the Confirmation Order contain the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.

11.13   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

11.14   <u>Prevailing Party</u>.   If the Liquidating Trustee or the Liquidating Trust, as the case may be, is the prevailing party in any dispute with any holder of a Trust Interest regarding the provisions of this Agreement or the enforcement thereof, such person shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.   To the extent the Liquidating Trust has advanced such amounts, the Liquidating Trust may recover such amounts from the non-prevailing party.

11.15   <u>Privileges and Immunities</u>.   Notwithstanding anything set forth in this Agreement, no provision of this Agreement in any way constitutes or implies a waiver, termination, or modification by International Finance Corporation and/or the Inter-American Investment Corporation of any privileges or immunities granted to it under the Articles of Agreement of the International Finance Corporation or the Agreement Establishing the Inter - American Investment Corporation, or under any treaty, international agreement or convention, or applicable law.

*Remainder of page intentionally blank.  Signature pages follow.*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

Dated: _____          LIQUIDATING TRUSTEE

                                Signature: _____

                                Name: _____

                                As its: _____


Dated: _____          THE DEBTORS (as identified in this Agreement)

                                Signature: _____

                                Name: _____

                                As its: _____


Dated: _____          THE CLASS A BOARD MEMBERS (as identified
                  in this Agreement)

                                Signature: _____

                                Name: _____

                                Signature: _____

                                Name: _____


Dated: _____          THE CLASS B BOARD MEMBERS (as identified
                  in this Agreement)

                                Signature: _____

                                Name: _____

                                Signature: _____

                                Name: _____


[Signature Page to Liquidating Trust Agreement]

**Exhibit A-2**

Redline of Liquidating Trust Agreement

(Attached)

*Draft – Remains Subject to Review in All Aspects by Parties in Interest*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[1] | Case No. 23-11945 (MEW) |
| Debtors. | |

_____/

## LIQUIDATING TRUST AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

# TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS

1.01     Definitions ..................................................................................................... 3


ARTICLE II
PURPOSE OF THE LIQUIDATING TRUST

2.01     Purpose ......................................................................................................... 8
2.02     Relationship ................................................................................................. 9


ARTICLE III
ESTABLISHMENT OF THE LIQUIDATING TRUST

3.01     Name of the Liquidating Trust ..................................................................... 9
3.02     Incorporation of Plan ................................................................................... 9
3.03     Transfer of Assets and Rights to the Liquidating Trust ............................... 9
3.04     Title to the Liquidating Trust Assets ......................................................... 11
3.05     Appointment of the Liquidating Trustee .................................................... 11
3.06     Funding of the Liquidating Trust ............................................................... 12
3.07     Rights of Debtors ....................................................................................... 13


ARTICLE IV
BENEFICIARIES

4.01     Incidents of Ownership .............................................................................. 14
4.02     Evidence of Trust Interest .......................................................................... 14
4.03     Transfer of Trust Interests .......................................................................... 14
4.04     Trust Interests are Beneficial Only ............................................................ 14
4.05     Exemption from Securities Laws ............................................................... 14
4.06     Conflicting Claims to Trust Interests ......................................................... 15
4.07     Know Your Customer Requirements .......................................................... 15
4.08     Reporting .................................................................................................... 15
4.09     Annual Plan and Budget ............................................................................ 16
4.10     Limited Liability ........................................................................................ 16


ARTICLE V
THE LIQUIDATING TRUSTEE

5.01     Generally .................................................................................................... 16
5.02     Term of Service .......................................................................................... 17
5.03     Authority of the Liquidating Trustee ......................................................... 17

5.04    Additional Responsibilities of the Liquidating Trustee ........................... 20
5.05    Limitations on Liquidating Trustee's Authority ...................................... 20
5.06    Discretion ................................................................................................ 20
5.07    Retention of Professionals ...................................................................... 21
5.08    Liability of Liquidating Trustee and Its Representatives ........................ 21
5.09    Non-liability for Acts of Others .............................................................. 21
5.10    Limitation of Liability to Third Persons ................................................. 22
5.11    Compensation of the Liquidating Trustee and Other Employees or Agents ........ 22
5.12    Liquidating Trust Board .......................................................................... 23
5.13    Exculpation; Indemnification .................................................................. 26
5.14    Removal or Replacement of the Liquidating Trustee .............................. 27
5.15    Inquiries into the Liquidating Trustee's Authority ................................. 28

## ARTICLE VI
## DISTRIBUTIONS

6.01    Distributions to Holders of Trust Interests ............................................. 28
6.02    Location for Distributions; Notice of Change of Address ....................... 29
6.03    Allocation of Liquidating Trust Assets ................................................... 29
6.04    Administration of Distributions .............................................................. 30

## ARTICLE VII
## SUCCESSOR LIQUIDATING TRUSTEE

7.01    Successor Liquidating Trustee ................................................................ 32

## ARTICLE VIII
## DURATION AND TERMINATION OF TRUST

8.01    Duration ................................................................................................... 33
8.02    Maintenance of Records .......................................................................... 33
8.03    Dissolution Events .................................................................................. 34
8.04    Continuance of Trust for Winding Up ..................................................... 34

## ARTICLE IX
## TAX MATTERS

9.01    Tax Treatment ......................................................................................... 34
9.02    Tax Reporting .......................................................................................... 35
9.03    Tax Withholdings ..................................................................................... 36
9.04    Disputed Claims ...................................................................................... 36
9.05    Foreign Tax Matters ................................................................................ 36

## ARTICLE X
## AMENDMENT AND WAIVER

10.01      Amendment; Waiver................................................................37

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.01      Intention to Establish Grantor Trust.........................................37
11.02      Laws as to Construction..........................................................38
11.03      Other Activities.....................................................................38
11.04      Severability..........................................................................38
11.05      Jurisdiction..........................................................................38
11.09      Notices.................................................................................39
11.10      Notices if to a Holder of a Trust Interest.................................39
11.11      Headings..............................................................................39
11.12      Entire Agreement..................................................................40
11.13      Counterparts.........................................................................40
11.14      Prevailing Party....................................................................40

*Draft – Remains Subject to Review in All Aspects by Parties in Interest*
~~*Draft*~~

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCON COFFEE CORPORATION, *et al.*,[2] | Case No. 23-11945 (MEW) |
| Debtors. | |
| _____/ | |

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (as amended, supplemented, or otherwise modified from time to time, this "Agreement") is made effective as of the Effective Date (as defined below) of the Plan, by and among (i) the above-captioned debtors and debtors in possession (the "Debtors" and each a "Debtor") in the above-captioned chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); (ii) the undersigned Members of the Liquidating Trust Board (as defined below); and (iii) ~~[John Doe]~~Marc Kirschner, solely in his capacity as the trustee (the "Trustee" or "Liquidating Trustee") for the holders of Trust Interests (as defined below). Each of the Debtors, the undersigned Members of the Liquidating Trust Board, and the Liquidating Trustee are referred to herein individually as a "Party" and, collectively, as the "Parties." This Liquidating Trust Agreement effectuates the terms of the Stipulation dated March 29, 2024, between Rabobank and the Creditors Committee, approved by Rabobank (at the direction of the Majority Lenders under the Prepetition First Lien Credit Agreement) and the Creditors' Committee.

## RECITALS

A. On December 6, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") thereby commencing these Cases.

B. On May ~~[XX]~~24, 2024, the Bankruptcy Court entered an order [ECF. No. ~~XX~~521] (the "Disclosure Statement Order") approving the *Fourth Amended Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF. No. ~~XX~~515] (as may be further amended or supplemented, the "Disclosure Statement").

---

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Mercon Coffee Corporation (1844); Mercon B.V. (N/A); Mercon Brasil Comércio de Café Ltda. (N/A); Agro International Holding B.V. (N/A); Mercapital de Nicaragua, S.A. (N/A); Distribuidora de Granos de Nicaragua, S.A. (N/A); Cisa Export S.A. (N/A); Comercial Internacional de Granos de Honduras, S.A. de C.V. (N/A); Mercon Guatemala, S.A. (N/A); Mercafe Vietnam LTD. (N/A); Comercial Internacional Exportadora, S.A. (N/A). The Debtors' mailing address is: 999 Ponce de Leon Blvd, Suite 910, Coral Gables, FL 33134.

C.      On May [XX], 2024, the Bankruptcy Court entered an order [ECF. No. XX] (the "Confirmation Order") confirming the *Fourth Amended Joint Chapter 11 Plan of Liquidation for Mercon Coffee Corporation and Certain Affiliated Debtors* [ECF. No. XX] (as may be further amended or supplemented, the "Plan").

D.      The Effective Date of the Plan occurred on [●], 2024.

E.      Pursuant to and as provided in the Plan and this Agreement, the Parties hereby seek to effectuate the creation and establishment of a liquidating trust (this "Liquidating Trust"), for the benefit of the holders of Trust Interests (i) for the purpose of collecting, administering, distributing and liquidating the Liquidating Trust Assets (as defined herein) in accordance with the terms of this Agreement, the Plan, and the Confirmation Order, (ii) to adjudicate, object to, settle, compromise or otherwise liquidate and pay certain Allowed Claims as set forth in the Plan, and (iii) to make Distributions of the Liquidating Trust Assets and the proceeds thereof to the holders of Trust Interests, in each case to the extent provided and as set forth in the Plan, the Confirmation Order, and this Agreement.

F.      The Liquidating Trust shall have no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of this Liquidating Trust as set forth in this Agreement and the Plan.  The Liquidating Trust is established hereunder for the sole purpose of liquidating the Liquidating Trust Assets and distributing such assets and the proceeds thereof to or for the benefit of the holders of Trust Interests, with no objective or authority to continue to engage in the conduct of a trade or business.

G.      The Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of the United States Treasury Regulations Section 301.7701-4(d) (subject to the treatment of any portion of the Liquidating Trust allocable to Disputed Claims as one or more "disputed ownership funds" governed by Treasury Regulation Section 1.468B-9) and, as such, as a "grantor trust" [within the meaning of sections 671 through 677 of the IRC], for U.S. federal income tax purposes with the holders of Trust Interests treated as the grantors and owners of their respective shares of the Liquidating Trust Assets.

H.      For the avoidance of any doubt, and pursuant to and consistent with the Plan, only those parties granted interests in the Liquidating Trust pursuant to the Plan and Confirmation Order (or any transferee thereof made in accordance with this Agreement) shall be considered holders of Trust Interests.

I.      Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the Plan, or if not defined in the Plan, the meanings ascribed to them in the Bankruptcy Code.

NOW,  THEREFORE,  in consideration of the mutual covenants and agreements contained herein, in the Plan and the Confirmation Order, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

*Draft*

# ARTICLE I
# DEFINITIONS

1.01    Definitions.

"Available Trust Cash" means proceeds of Liquidating Trust Assets that are available for distribution to holders of Trust Interests in accordance with the Plan, the Confirmation Order and this Agreement.

"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or its Estates or other authorized parties in interest under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan) under Sections 502, 510, 541, 542, 543, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including a Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted and whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

"Cause" means with respect to the Liquidating Trustee, (i) the undue prolongation of the duration of the Liquidation Trust and of Distributions of the Liquidating Trust Assets to the holders of Trust Interests; (ii) gross negligence, bad faith, or reckless or willful misconduct (as determined by a Final Order) in connection with the affairs of the Liquidating Trust; (iii) an intentional breach of fiduciary duty or an unresolved conflict of interest by the Liquidating Trustee; (iv) that such Liquidating Trustee has engaged in or has been charged with, or has been convicted of, fraud or other acts constituting a crime under any law applicable to such Liquidating Trustee, or (v) that such Liquidating Trustee is unable to perform his or her duties as Liquidating Trustee due to death, disability or incapacity.

"Causes of Action" means, other than those that are released or dismissed as part of and pursuant to the Plan, any and all actions, causes of action, Avoidance Actions, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.  For the avoidance of doubt, "Cause of Action" includes, without limitation, (i) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of

contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity; (ii) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims; (iii) any claim pursuant to section 362 of the Bankruptcy Code; and (v) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

"Claim(s)" means a claim or claims against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

"Class 2A Liquidating Trust Collateral Recoveries" means the recoveries of the holder of the Class 2A Liquidating Trust Interest on account of any proceeds from the liquidation of any FMO Collateral on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class 2A Trust Interests" means beneficial interests in the Liquidating Trust entitling the holder thereof to receive Distributions of Class 2A Liquidating Trust Collateral Recoveries. The initial holder of Class 2A Trust Interests shall be FMO unless FMO elects not to receive such Class 2A Trust Interest in accordance with the Plan and the Confirmation Order.

"Class A Liquidating Trust Collateral Recoveries" means the recoveries of holders of Class A Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Liquidation Trust Assets of the Debtors and their Estates not sold, transferred or otherwise waived or released prior to the Effective Date and constituting Prepetition First Lien Collateral, including the Debtors' coffee inventory located in Nicaragua as of the Petition Date and any insurance policies or proceeds thereof that may relate to or cover such coffee inventory and (ii) Litigation Proceeds and Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral, on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class A Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class A Liquidating Trust Collateral Recoveries. The initial holders of Class A Trust Interests shall be the Prepetition First Lien Secured Parties.

"Class B Trust Interests" means, collectively, the Class B1 Trust Interests and the Class B2 Trust Interests.

"Class B1 Liquidating Trust Recoveries" means the recoveries of holders of Class B1 Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in the Plan, the Confirmation Order, and Section 6.03 hereof.

"Class B1 Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class B1 Liquidating Trust Recoveries. The initial holders of Class B1 Trust Interests shall be FMO (on account of the FMO Deficiency Claim) and the Holders of Allowed Class 4A Claims entitled to receive Trust Interests under the Plan other than (i) the Prepetition First Lien Secured Parties and, if

*Draft*

applicable, (ii) Holders required to receive Class C Trust Interests pursuant to Section 3.08 of the Plan.

"Class B2 Liquidating Trust Recoveries" means the recoveries of holders of Class B2 Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in Section 6.03 hereof; provided that, notwithstanding anything to the contrary in this Agreement, the Plan or the Confirmation Order, other than payments out of the Dutch Law SME Pool, holders of Class B2 Trust Interests shall not be entitled to any Distributions from the Liquidating Trust until all holders of Allowed Class 4A Claims under the Plan have received recoveries on account of such Claims equal to 20% of such Claims.

"Class B2 Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class B2 Liquidating Trust Recoveries.  The initial holders of Class B2 Trust Interests shall be each Holder of an Allowed Dutch Law SME Claim that is entitled to receive Trust Interests under the Plan unless such Holder is required to receive Class C Trust Interests pursuant to Section 3.08 of the Plan.

"Class C Liquidating Trust Recoveries" means the recoveries of holders of Class C Trust Interests from the Liquidating Trust on account of (i) any proceeds from the liquidation of any Non-Litigation Liquidation Trust Assets not constituting Prepetition First Lien Collateral or FMO Collateral; and (ii) Litigation Proceeds, on the terms set forth in Section 6.03 hereof; provided that, notwithstanding anything to the contrary, and as further set forth in the Plan, the Confirmation Order, and Section 6.03(f) hereof, holders of Class C Trust Interests shall not be entitled to any recoveries beyond what such holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V.

"Class C Trust Interests" means beneficial interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions of Class C Liquidating Trust Recoveries.  Class C Trust Interests shall only be issued to the extent required by Section 3.08 of the Plan, and if Class C Trust Interests are required to be issued pursuant to Section 3.08 of the Plan, the initial holders of Class C Trust Interests shall be the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor).  If the Plan does not require the issuance of Class C Trust Interests then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only have Allowed Claims against Mercon B.V. (and no other Debtor) shall receive Class B1 Trust Interests or Class B2 Trust Interests, as appropriate.

"Disputed" means with respect to any Claim or any portion thereof (a) that is not Allowed; (b) as to which the Debtors or the Liquidating Trustee, as applicable, or any other party in interest, has Filed an objection or sought to subordinate such Claim by the Claims Objection Deadline, and such objection has not been withdrawn or overruled by a Final Order; (c) that is listed on the Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been Filed in a non-contingent and liquidated amount; (d) asserted by a Disputing Claimant or an Insider; or (e) that is a tort Claim.

"Disputed Claims Reserve" means a Cash reserve sufficient to pay a Pro Rata Share to all Disputed Claim Amounts, other than with respect to General Unsecured Claims, which shall be maintained by the Liquidating Trustee and which may be funded with a Cash portion of the Liquidating Trust Assets for distribution to Holders of Disputed Claims to the extent such Disputed Claims become Allowed Claims. The initial amount of the Disputed Claims Reserve shall be determined prior to the Effective Date based on the Debtors' good faith estimates or an order of the Bankruptcy Court estimating such Disputed Claims, and shall be established on or about the Effective Date. Thereafter, the Disputed Claims Reserve shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Board as set forth in this Agreement, provided that the Liquidating Trustee may request the Bankruptcy Court to determine the appropriate amount of the Disputed Claims Reserve.

"Distribution" means any distribution or disbursement to Holders of Allowed Claims (or their designated agents) or holders of Trust Interests under or pursuant to the Plan, the Confirmation Order or this Agreement.

"Distribution Record Date" means the record date established for determining the Holders of Allowed Claims entitled to Distributions under the Plan, which date shall be the Effective Date.

"Effective Date" means the date on which the conditions specified in Section 13.01 of the Plan have been satisfied or waived in accordance with Section 13.03 of the Plan and the transactions contemplated thereunder have been consummated.  The Debtors shall file a Notice of Effective Date on the Bankruptcy Court's docket indicating the calendar date which corresponds to the Effective Date.

"Final Cash Collateral Order" means the *Final Order (I) Authorizing the Debtors to use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [ECF No. 320], as may be amended or modified from time to time, entered by the Bankruptcy Court.

"Final Order" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

*Draft*

"FMO" means Nederlandse Financierings-Maatschappij Voor Ontwikkelingslanden N.V. FMO will be the initial recipient of the entirety of Class 2A Trust Interests to the extent such Class 2A Trust Interests are issued by the Liquidating Trust in accordance with this Plan.

"FMO Claim" means any Claim arising in connection with the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement other than an FMO Deficiency Claim.

"FMO Collateral" means the collateral described in Section 12.09 of the Plan, which such Collateral and the proceeds thereof shall remain subject to a lien for protective purposes as set forth in Section 12.09 of the Plan.

"FMO Deficiency Claim" means any FMO Claim to the extent such Claim is not paid in full in Cash on or after the Effective Date of the Plan.

"FMO Finance Documents" means the Finance Documents, as defined in that certain Term Facility Agreement, dated as of December 17, 2018, as amended from time to time, with FMO, as lender, and that certain Term Facility Agreement, dated as of May 19, 2022, as amended from time to time, with FMO, as lender.

"Foreign Proceeding" means the Dutch (pre-)insolvency plan proceedings, referenced as the Dutch WHOA Proceeding in previous motions that have been opened before the District Court of Amsterdam, the Netherlands on 7 December 2023, the case in support of the Debtors' chapter 11 cases pending as of the Effective Date in the Civil District Court in the Judicial District of Varginha - Minas Gerais State, Brazil, and any other proceeding that may be commenced by or with respect to the Debtors in a non-United States court.

"General Unsecured Claim" means, except to the extent otherwise set forth in the Plan, any Claim arising prior to the Petition Date against the Debtors, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease and, that is not (i) a Secured Claim; (ii) a Priority Tax Claim; (iii) an Other Priority Claim; (iv) a Subordinate Claim; (v) an Intercompany Claim, (vi) an Administrative Claim; (vii) the secured portion of a Prepetition First Lien Claim; (viii) a Dutch Law SME Claim; or (ix) a Convenience Claim. For the avoidance of doubt, Allowed Prepetition First Lien Deficiency Claims and any Allowed FMO Deficiency Claims are considered to be General Unsecured Claims.

"Governmental Authority" means any federal, state, local or non-U.S. government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of law), or any arbitrator, court or tribunal of competent jurisdiction.

"Initial Litigation Funding" means $500,000 of the Prepetition First Lien Secured Parties' existing cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the pursuit of litigation claims by the Liquidating Trust.

*Draft*

"Initial Non-Litigation Funding" means $500,000 of the Prepetition First Lien Secured Parties' existing cash collateral in the possession of the Debtors as of the Effective Date used to fund initial administrative costs of the Liquidating Trust's non-litigation activities.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Liquidating Trustee's duties and responsibilities under the Plan, the Confirmation Order and this Agreement.

"Liquidating Trust Assets" means in the aggregate, all of the assets of the Debtors and their Estates existing as of the Effective Date (after giving effect to all Distributions required to be made on or prior to the Effective Date, if any), including Liquidating Trust Causes of Action, and any other assets transferred to the Liquidating Trust as Liquidating Trust Assets, including the Initial Litigation Funding and the Initial Non-Litigation Funding and the FMO Collateral if FMO receives, pursuant to Section 3.07(c) of the Plan, Class 2A Trust Interests; provided, however, the Liquidating Trust Assets shall not include (1) any claims or Causes of Action expressly released or exculpated pursuant to Article XII of the Plan, and (2) any Privileged Documents relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction. For the avoidance of doubt, the Liquidating Trust Assets exclude funds in the Professional Fee Escrow Account. To the extent that FMO and the Liquidating Trustee agree to a transfer of the FMO Collateral to FMO, upon such transfer the FMO Collateral shall no longer constitute "Liquidating Trust Assets".

"Liquidating Trust Causes of Action" means all Causes of Action held or owned by the Debtors' Estates immediately prior to the Effective Date (whether asserted directly or derivatively) against all parties including but not limited to the Preserved Claims and Causes of Action, *provided* that the Liquidating Trust Causes of Action exclude (i) any claims or Causes of Action released or exculpated as provided in the Plan, including pursuant to Article XII of the Plan; and (iii) any claims or Causes of Action released pursuant to the Final Cash Collateral Order.

"Liquidating Trust Operating Expenses" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to, (i) reasonable compensation for the Liquidating Trustee in accordance with this Agreement, (ii) reasonable costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (iii) statutory fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

"Litigation Funding Reserve" means the reserve established to fund the pursuit of claims and Liquidating Trust Causes of Action. The maximum amount to be on deposit in the Litigation Funding Reserve at any one time is $500,000, subject to the terms of this Agreement.

"Litigation Proceeds" means any and all recoveries by the Liquidating Trust on account of Liquidating Trust Causes of Action other than claims or Causes of Action of the Prepetition First Lien Secured Parties or holders of Class A Trust Interests, as applicable.

"Non-Litigation Liquidation Trust Assets" means the Liquidating Trust Assets other than the Liquidating Trust Causes of Action.

"Liquidating Trust Board" means the body established on the Effective Date pursuant to [Section 6.02] of the Plan and governed by the rights and powers as specified in Section [5.13] of this Agreement, tasked with the oversight, review, and guidance of the Liquidating Trustee's activities and performance in the implementation and administration of the Liquidating Trust.

"Prepetition First Lien Claims" means any Claim arising under or in connection with the Prepetition First Lien Loans, as defined in the Final Cash Collateral Order.

"Prepetition First Lien Collateral" means the assets, claims and rights and other property that are collateral or proceeds of collateral for the Prepetition First Lien Claims.

"Prepetition First Lien Agent" means Coöperative Rabobank U.A., New York Branch ("Rabobank"), in its capacity as administrative agent and collateral agent in respect of the Prepetition First Lien Credit Agreement (as defined in the Final Cash Collateral Order), including, to the extent applicable, following termination of the Prepetition First Lien Credit Agreement.

"Prepetition First Lien Secured Parties" means Rabobank as Prepetition First Lien Agent and lender and those other lenders that are a party to the Prepetition First Lien Credit Agreement as defined in the Final Cash Collateral Order and are holders of the Prepetition First Lien Claims.

"Preserved Claims and Causes of Action" means the claims and Causes of Action that shall be preserved and vest in the Liquidating Trust in accordance with the Plan and shall be identified in a schedule attached to the Plan Supplement.  The Preserved Claims and Causes of Action include but are not limited to claims or Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which any of the Debtors is a party or pursuant to which any of the Debtors has any rights whatsoever, including any failure to provide insurance coverage and bad faith insurance claims.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, *provided* that in cases where Pro Rata Share is used in reference to series of Trust Interests distributed to multiple series or Classes, Pro Rata Share means the portion that such holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such series or Class entitled to Distributions as of the date of such Distribution.

"Professional Fee Escrow Account" means an interest-bearing escrow account maintained at the direction of the Liquidating Trustee to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

*Draft*

"Professional Fee Escrow Amount" means (a) the aggregate amount of unpaid Professional Fee Claims incurred through the Effective Date as estimated by the Professionals and (b) the aggregate accrued U.S. Trustee Fee Claims as estimated by the Debtors.

"Reserved Trust Interests" means those Class B Trust Interests and, if applicable, Class C Trust Interests that are reserved by the Liquidating Trustee on the Effective Date of the Plan for issuance to (i) Holders of Class 4A Claims and Class 4B Claims, respectively, once such claims are Allowed, as defined in the Plan; and (ii) Holders of Dutch Law SME Claims and Holders of Claims that only have Claims against Mercon B.V. (and no other Debtor), once such Claims are Allowed, as defined in the Plan.

"Tax Law" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority, in each case with respect to any federal, state, local or non-U.S. tax or taxes.

"Transferred Privileges" means, subject to the limitations in Section 6.10 of the Plan, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections solely relating to the Liquidating Trust Causes of Action, in each instance arising before the Petition Date and on or after the earlier of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Liquidating Trust Cause of Action (but in no event more than six (6) years prior to the Petition Date).

"Trust Interests" means, collectively, the Class 2A Trust Interests, the Class A Trust Interests, the Class B Trust Interests and, if applicable, the Class C Trust Interests.

## ARTICLE II
## PURPOSE OF THE LIQUIDATING TRUST

2.01    Purpose.    The Liquidating Trust shall be established for the sole purpose of liquidating the Liquidating Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d) and other Tax Laws applicable to "liquidating trusts" (as defined in such section of the U.S. Treasury Regulations), with no objective to continue or engage in the conduct of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.    The Liquidating Trust is established for (i) the purposes set forth in [Article IX] of the Plan and the Confirmation Order, (ii) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (iii) administering, monetizing and liquidating the Liquidating Trust Assets, (iv) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust to the Holders of Allowed Claims and holders of Trust Interests as provided for in the Plan, the Confirmation Order and this Agreement, in each case in accordance with the Plan, the Confirmation Order, this Agreement, and Treasury Regulation Section 301.7701-4(d) (and any other comparable provisions of Tax Law).    The activities of the Liquidating Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan and the Confirmation Order.    The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes (and any other comparable provisions of Tax Law) with the holders of Trust Interests treated as grantors and

owners of the Liquidating Trust Assets.  This Agreement and the Liquidating Trust created under the Plan and the Confirmation Order are hereby declared to be irrevocable and the Debtors (nor such other party as provided in the Plan) shall not have any right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Liquidating Trust created under the Plan in whole or in part, or to alter, amend, or modify this Agreement in any respect.

2.02    Relationship.  This Agreement is intended to create a trust and a trust relationship to be governed and construed in all respects as a liquidating trust.  The Liquidating Trust is not intended to be, and shall not be deemed to be, or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Liquidating Trustee, the Liquidating Trust Board (or the Members of the Liquidating Board), or the holders of Trust Interests for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the holders of Trust Interests, on the one hand, to the Liquidating Trust, Liquidating Trustee, and the Liquidating Trust Board (or the Members of the Liquidating Trust Board), on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal or agency relationship, and the holders of the Trust Interests' rights shall be limited to those conferred upon them by the Plan, the Confirmation Order, and this Agreement.

## ARTICLE III
## ESTABLISHMENT OF THE LIQUIDATING TRUST

3.01    Name of the Liquidating Trust.  The name of the Liquidating Trust shall be the Mercon Liquidating Trust, referred to herein as the "Liquidating Trust" or "Trust".

3.02    Incorporation of Plan.    The Plan and Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference; *provided*, *however*, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order, (2) the Plan, and (3) this Agreement.

3.03    Transfer of Assets and Rights to the Liquidating Trust.

(a)      On the Effective Date, the Debtors and their Estates irrevocably and automatically transfer all of their right, title, and interest in the Liquidating Trust Assets, including the Liquidating Trust Causes of Action (and any proceeds arising therefrom, including under any applicable insurance policies) and all of the rights of the Debtors and/or their Estates under any insurance policy to which the Debtors and/or their Estates may be beneficiaries, to the Liquidating Trust, free and clear of any and all Liens, Claims, Interests, and other encumbrances except as otherwise specifically provided in the Plan or in the Confirmation Order, and such Liquidating Trust Assets shall vest in the Liquidating Trust pursuant to section 1141(b) of the Bankruptcy Code; *provided*, *however*, that (i) the Liquidating Trust may, after consultation with the Liquidating Trust Board, abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the Liquidating Trust; (ii) no abandonment or non-acceptance shall have occurred, or be deemed to have occurred, without an express written statement of such abandonment or non-acceptance by the Liquidating Trustee; and (iii) none of the foregoing transfers to the Liquidating Trust shall

*Draft*

constitute a merger or consolidation of any of the Causes of Action that constitute Liquidating Trust Assets, each of which shall retain its separateness following the transfer of all purposes relevant to the prosecution thereof. Any assets the Liquidating Trust so abandons or otherwise does not accept shall not vest in the Liquidating Trust.

(b)     From and after the Effective Date, the Liquidating Trustee shall be deemed the representative of the Debtors' Estates pursuant to section 1123 of the Bankruptcy Code, and as such shall be vested with the authority and power (subject to the terms of this Agreement, the Plan, and the Confirmation Order) to, among other things: (i) administer, object to or settle any Claims; (ii) make Distributions in accordance with the terms of the Plan, the Confirmation Order and this Agreement; and (iii) carry out the provisions of the Plan and the Confirmation Order related to the Liquidating Trust. As the representative of the Debtors' Estates, in its capacity as trustee for the benefit of the holders of Trust Interests, the Liquidating Trustee will succeed to all of the rights and powers of the Debtors and their Estates with respect to all Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Debtors, their Estates, and the Creditors' Committee, in all such Causes of Action, whether or not such claims are pending in filed litigation as of the Effective Date. Without limiting the generality of the foregoing provisions, from and after the Effective Date, the Liquidating Trust shall be the sole person or entity responsible for the prosecution and settlement of all the Liquidating Trust Causes of Action conveyed to the Liquidating Trust, and all rights, powers, and interests of the Debtors' Estates in respect of the Liquidating Trust Causes of Action shall be transferred to and vest exclusively in the Liquidating Trust, pursuant to the Plan, the Confirmation Order and this Agreement. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests to pursue, settle, or abandon such Liquidating Trust Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall constitute a "trustee" under section 108 of the Bankruptcy Code and, notwithstanding entry of the Confirmation Order or occurrence of the Effective Date, shall have the benefits of the tolling provisions set forth in such section.

(c)     All Liquidating Trust Causes of Action that are not expressly released or waived under the Plan are reserved and preserved and shall vest in the Liquidating Trust, and shall not be impacted or affected in any way by the confirmation of the Plan, the occurrence of the Effective Date, or the limited substantive consolidation of the Estates pursuant to Article II of the Plan. No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order or the Disclosure Statement to any Liquidating Trust Cause of Action against them as any indication that the Liquidating Trust will not pursue any and all available Liquidating Trust Causes of Action against them. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to any rights of the Liquidating Trust or Liquidating Trustee with respect to any Liquidating Trust Causes of Action upon or after entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan, or the Confirmation Order or any other Final Order.

(d)     In connection with the vesting and transfer of the Liquidating Trust Assets, the Liquidating Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors and/or their Estates may have as to an attorney-client privilege,

work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Liquidating Trust Assets and the Liquidating Trustee shall succeed to all rights of the Debtors and/or their Estates to hold, preserve, assert, be the beneficiary of or waive any such privilege or protection; *provided, however*, that notwithstanding the foregoing, the Transferred Privileges do not and shall not include any privileges relating in any way to any rights, claims, or Causes of Action sold to any purchaser in connection with any Sale Transaction. As of the Effective Date, all Transferred Privileges of the Debtors relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by the Debtors to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. No such privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Transferred Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided*, *however*, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Liquidating Trustee, the Liquidating Trust Advisors, and their respective agents, representatives, and employees shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer, assignment and delivery and sharing and use of the Transferred Privileges as provided herein do not impair or waive any privilege. Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed a waiver of the work product privilege by any party who may be entitled to assert such privilege. In addition, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets shall vest in the Liquidating Trust from the Effective Date through the date of dissolution of the Liquidating Trust.

(e)    The Debtors and their respective professionals shall cooperate with the Liquidating Trustee in effecting the vesting of the Liquidating Trust Assets. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate transfer to or reasonable access to any evidence and information the Liquidating Trustee reasonably requests and providing him with access to, or copies of, books and records the Liquidating Trustee reasonable requires for the purpose of performing his duties and exercising his powers under this Agreement, the Plan, and the Confirmation Order. On or before the Effective Date, the Debtors shall turn over to the Liquidating Trust all physical or electronically stored documents and communications in their possession or control.

(f)    To the extent any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded by section 1123 or any other provision of the Bankruptcy Code, such assets will be retained by the Debtors (the "Retained Assets"). The proceeds of any sale or

liquidation of such Retained Assets will be paid to the Liquidating Trust.  The Parties do not believe that any such Retained Assets exist.

(g)     Pursuant to Section 12.09 of the Plan, to the extent the FMO Collateral is transferred to the Liquidating Trust pursuant to Section 3.07(c), any injunction or stay provided for in these Chapter 11 Cases under Sections 105 or 362 shall be lifted upon entry of the Confirmation Order solely to permit FMO to enforce any of its rights and remedies under the Finance Documents as defined in  the 2018 FMO Credit Agreement and the 2022 FMO Credit Agreement, as applicable, and under  applicable law, including the right to foreclose upon the FMO Security (as defined in the 2022 FMO Credit Agreement) and the Allocation (as defined in the 2018 FMO Credit Agreement, and together with the FMO Security, the "FMO Collateral") and, at FMO's sole expense, the Liquidating Trustee will cooperate with any reasonable request by FMO to transfer the FMO Collateral to FMO or its designee; provided that FMO shall (i) promptly report to the Liquidating Trustee FMO's receipt of any proceeds outside of the Liquidating Trust on account of the FMO Collateral, promptly report on any actions or proceedings taken by FMO with respect to the FMO Collateral and any material developments in connection therewith so that the Liquidating Trustee may take any actions necessary to preserve the rights of the Liquidating Trust therein, and make reasonable efforts to otherwise coordinate and cooperate with the Liquidating Trustee as may be reasonably requested by the Liquidating Trustee in connection with the efforts of the Liquidating Trustee to recover assets in or pursue Causes of Action relating to Nicaragua or otherwise provided that such efforts do not prevent or impede FMO's enforcement of its rights and remedies under the Finance Documents, (ii) make reasonable efforts to report to the Liquidating Trustee on the status of any such actions taken by FMO to enforce its rights and remedies under the Finance Documents to the extent not prohibited by law or the terms of any agreement, and (iii) turn over to the Liquidating Trustee (A) any proceeds its recovers from the applicable FMO Collateral in excess of the FMO Claims or any proceeds it recovers that does not constitute FMO Collateral or proceeds thereof, in each case to the extent not prohibited by applicable law, (B) amounts necessary to reimburse the Liquidating Trust for reasonable and documented fees and expenses incurred by the Debtors or Liquidating Trust (1) in the pursuit of Causes of Action on account of FMO Collateral with the written consent of FMO or (2) for taking any corporate actions under foreign law that are requested or consented to in writing by FMO and (C) any amounts required so that FMO does not receive recoveries in excess of its proper allocation of Liquidating Trust Assets (or proceeds thereof) on account of its Liquidating Trust Interests that it received in respect of FMO Claims when taking into account any FMO recovery on account of FMO Collateral and the corresponding reduction to the amount of the Allowed FMO Deficiency Claim.[3]

3.04    Title to the Liquidating Trust Assets.  The Liquidating Trustee shall hold title to the Liquidating Trust Assets for the benefit of the holders of Trust Interests, subject to the terms of the Plan, the Confirmation Order and this Agreement.

3.05    Appointment of the Liquidating Trustee.  Pursuant to the Plan, [_____]Marc Kirschner has been designated to serve as the Liquidating Trustee, and he or she accepts such appointment and agrees to serve in such capacity, as of the Effective Date.  The Liquidating

Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3) and as such, to the extent provided herein, the Liquidating Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to the Liquidating Trust Assets including, but not limited to, prosecuting the Liquidating Trust Causes of Action for the benefit of the holders of Trust Interests.  To the extent that any of the Liquidating Trust Assets including, but not limited to, the Liquidating Trust Causes of Action cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Debtors (other than for tax purposes), and the Liquidating Trustee shall be deemed to have been designated as a representative of the Debtors and their Estates to the extent provided herein pursuant to section 1123(b)(3) of the Bankruptcy Code solely to liquidate such Liquidating Trust Assets on behalf of the Debtors and their Estates.  Notwithstanding the foregoing, all net proceeds of the Liquidating Trust Assets shall be distributed to the holders of Trust Interests consistent with the provisions of this Agreement, the Plan and the Confirmation Order.  [For the avoidance of doubt, disposition of any of the Liquidating Trust Assets subject to this Section [3.05] shall be treated by the Parties for U.S. federal, state, and local income tax purposes as a disposition of the Liquidating Trust Assets by the Debtors as described in Section [9.01] hereof.]

3.06    Funding of the Liquidating Trust.

(a)    On or prior to the Effective Date, as set forth in detail in this Section 3.06, the Debtors shall cause the contribution of the Initial Litigation Funding and the Initial Non-Litigation Funding to the Liquidating Trust, with such funding amounts to be placed in segregated accounts respectively, and held in trust by the Liquidating Trustee and to be used to administer the Liquidating Trust in accordance with the Plan, the Confirmation Order, other applicable orders of the Bankruptcy Court, and this Agreement.  The Initial Litigation Funding and the Initial Non-Litigation Funding shall vest in the Liquidating Trust on the Effective Date pursuant to Section 9.03 of the Plan.

(b)    On or prior to the Effective Date, the Initial Litigation Funding shall be deposited into the Litigation Funding Reserve.  Additional amounts will be deposited into the Litigation Funding Reserve from time to time pursuant to Section 6.03(b) of this Agreement. Amounts in the Litigation Funding Reserve shall be used solely to fund administrative costs and other amounts related to the Liquidating Trust's pursuit of Liquidating Trust Causes of Action and conduct of other litigation related activities.  Any amounts remaining in the Litigation Funding Reserve after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests pursuant to Section 6.03(b) and the distribution of all remaining assets of this Liquidating Trust shall be allocated and distributed in accordance with Section 6.03(b)(iv).

(c)    The Initial Non-Litigation Funding shall not be used to fund administrative costs or other amounts related to the Liquidating Trust's pursuit of Liquidating Trust Causes of Action or conduct other litigation related activities.

(d)    Other than the Initial Litigation Funding and Initial Non-Litigation Funding, the Prepetition First Lien Secured Parties and holders of Class A Trust Interests shall

*Draft*

have no further or any continuing obligation to provide funding to the Liquidating Trust from cash collateral or otherwise.

(e)     On the Effective Date, the Debtors shall cause the Professional Fee Escrow Amount to be deposited with the Liquidating Trustee, who shall maintain such funds in the Professional Fee Escrow Account in trust for the Professionals, and shall release them only when any such Claims by Professionals have been approved by a Final Order of the Bankruptcy Court, in accordance with the Plan, the Confirmation Order, and this Agreement.

(f)     On the Effective Date, the Debtors shall cause any Cash required to pay Allowed Administrative Claims or Allowed Priority Tax Claims, as such Claims ultimately are Allowed, to be deposited with the Liquidating Trustee, who shall maintain such funds in a separate account for the benefit of Holders of such Allowed Administrative or Priority Tax Claims.  After the resolution of all Allowed Administrative Claims or Allowed Priority Tax Claims, any funds remaining in such account shall be distributed to the Holders of the Class A Trust Interests.

(g)     On the Effective Date, the Debtors shall cause the Disputed Claims Reserve to be deposited with the Liquidating Trustee, who shall maintain such funds in the Disputed Claims Reserve in trust for the Holders of Disputed Claims as such Claims are resolved in accordance with the Plan.

(h)     Additional Funding.

(i)     The Liquidating Trustee may raise additional funding in order to pursue the Liquidating Trust Causes of Action, to administer the Liquidating Trust, to liquidate Prepetition First Lien Collateral and provide for distributions to the holders of Trust Interests as contemplated herein or in the Plan or Confirmation Order, and support or facilitate any other function, duty or responsibility of the Liquidating Trust or the Liquidating Trustee contemplated by the Plan, the Confirmation Order or this Agreement, in each case in accordance with this Agreement.  Any additional funding sought by the Liquidating Trustee shall be subject to (i) the consent of the Class A Board Members (as defined herein) if such additional funding is intended to be used to liquidate Prepetition First Lien Collateral or for administrative aspects of the Liquidating Trust relating to Prepetition First Lien Collateral; and (ii) the consent of a majority of the Liquidating Trust Board members if such funding is intended to be used to facilitate the investigation or pursuit of Causes of Action or the administration of claims.

(ii)     The source(s) of such funding may be entitled to receive payment from the Liquidating Trust as a Liquidating Trust Operating Expense.

3.07    Rights of Debtors.  On the Effective Date, the Liquidating Trustee shall succeed to and be vested with all of the Debtors' right, title and interest in the Liquidating Trust Assets, but subject to the terms of the Plan, the Confirmation Order and this Agreement, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust, and the Liquidating Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets.  In no event shall any part of Liquidating Trust Assets revert to or be distributed to the Debtors or the holders of the Debtors' Equity Interests.  Additionally, and

subject to Section 6.10 of the Plan, the Liquidating Trustee shall succeed to and be vested with all rights and legal privileges of the Debtors and their estates, specifically including, but not limited to, the attorney-client privilege and work product privileges.  After the Effective Date, and subject to Section 6.10 of the Plan, the Liquidating Trustee shall control all applicable legal privileges of the Debtors and their estates, including control over whether to assert or waive attorney-client privilege for matters arising from or relating to transactions or activity occurring prior to the Effective Date, as detailed in Section 3.03(d) above.  The Liquidating Trust shall be deemed to be substituted as the party-in-lieu of each of the Debtors in all matters, including, but not limited to: (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court; (ii) any and all tax or regulatory filings, including without limitation any state or federal returns or ERISA-related filings, and legacy accounts of the Debtors at the state or federal level (for the purpose of closing, reporting, or making payments related to the Estate) related thereto; and (iii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidating Trustee on behalf of the Liquidating Trust to file motions or substitutions of parties or counsel in each such matter.  All references to "state" or "federal" shall be interpreted in this Agreement also to apply to any foreign jurisdiction with respect to any Debtor organized outside of the United States.

3.08    Automatic Stay.    In furtherance of the implementation of the Plan, unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect and apply to all creditors and Beneficiaries holding Claims against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, and the Liquidating Trust Assets until the termination of the Liquidating Trust.

**ARTICLE IV**
**BENEFICIARIES**

4.01    Incidents of Ownership.    The holders of Trust Interests shall be the sole beneficiaries of the Liquidating Trust and the Liquidating Trust Assets, and the Liquidating Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan, the Confirmation Order, and any other applicable orders of the Bankruptcy Court.  The Trust Interests shall be issued in accordance with the Plan and the Confirmation Order.  For the avoidance of doubt, Holders of Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Claims, and Disputed Claims are not beneficiaries hereunder and shall only be paid from the Professional Fee Escrow or the Disputed Claims Reserve.

4.02    Evidence of Trust Interest.  Ownership of a Trust Interest shall not be evidenced by any certificate, security or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.  The death, incapacity or bankruptcy of any holder of a Trust Interest during the term of the Liquidating Trust shall not (i) operate to terminate the Liquidating Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to

*Draft*

take any action in the Bankruptcy Court or elsewhere for the distribution of the Liquidating Trust Assets or for a partition or division thereof, or (iv) otherwise affect the rights and obligations of any of the holders of Trust Interests hereunder.

4.03    Transferability of Trust Interests.    Any and all Trust Interests shall be nontransferable except (i) upon death of the holder, (ii) by operation of law, (iii) to an affiliate of the holder or (iv) in accordance with the provisions of this Section 4.03 (each, a "Permitted Transfer").  Trust Interests shall be freely transferable; provided, however, that (A) the transfer of the Trust Interests will be prohibited to the extent such transfer would (i) result in a violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), any state securities laws or regulations, or any other applicable federal or state laws or orders having jurisdiction over the Liquidating Trust, (ii) cause the Liquidating Trust to be required to register the Trust Interests under, and/or become subject to the registration or reporting requirements of, the Securities Act or the Exchange Act or (iii) cause any change in the treatment of the Liquidating Trust in connection with the matters set forth in Section 9.01 of this Agreement; (B) any transferee of Trusts Interests that is not already a holder of Trusts Interests as of the date of this Agreement shall not be eligible to serve as, or name any person to serve on its behalf as, a Member of the Liquidating Trust Board and (C) a transfer of Trust Interests pursuant to this Section 4.03 shall not entitle the recipient of such transferred Trust Interests (the "Transferred Trust Interests") to any voting rights on account of such Transferred Trust Interests including, but not limited to, the right to elect Members of the Liquidating Trust Board or Successor Liquidating Trust Board Members pursuant to Section [5.13] hereof.  The holders of Transferred Trust Interests shall not have any voting or governance rights and instead, shall receive only Distributions.

A transfer shall not be effective until appropriate notice and proof thereof along with any other information requested by the Liquidating Trustee (which may include, without limitation, any tax information (including, without limitation, social security numbers or other tax identification numbers) and completed U.S. Internal Revenue Service ("IRS") forms as the Liquidating Trustee, in its sole discretion, deems necessary or appropriate) is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the transferring holder of a Trust Interest until receipt of proper notification and proof of transfer.  The Liquidating Trustee may rely upon such proof of transfer and other information without the requirement of any further investigation.  Any purported assignment or transfer of a Trust Interest or any part thereof, except a Permitted Transfer, shall constitute a violation of this Section 4.03 and shall be void *ab initio*.

4.04    Trust Interests are Beneficial Only.  Except as expressly provided hereunder, each holder of a Trust Interest's interest in the Liquidating Trust shall be beneficial only.  As such, the ownership of Trust Interests shall not entitle any holder thereof to any title in or to the Liquidating Trust Assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the assets of the Liquidating Trust or to require an accounting.  Except as set forth in Section [X] hereof, holders of Trust Interests shall have no voting rights with respect to such Trust Interests.  Holders of Trust Interests shall not have standing to direct or to seek to direct the Liquidating Trust or the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any person upon or with respect to Liquidating Trust Assets.

*Draft*

4.05    Exemption from Securities Laws.  Any and all Trust Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code, the issuance of Trust Interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act and all applicable state and local laws requiring registration of securities.

4.06    Conflicting Claims to Trust Interests.  If any dispute arises with respect to the ownership or control of Trust Interests or any holder thereof, or if there is any disagreement among persons claiming to be permitted successors of any Trust Interest resulting in adverse claims or demands being made in connection with Trust Interests (an "Ownership Dispute"), the Liquidating Trustee shall be entitled to refuse to comply with any demand or direction made by any party to such Ownership Dispute.  In so refusing, the Liquidating Trustee may elect to make no Distribution with respect to the Trust Interests relating to the Ownership Dispute or any part thereof, or to make payment or distribution in escrow as provided below, and to refer such Ownership Dispute to the Bankruptcy Court or another court of competent jurisdiction, which shall have jurisdiction over resolution of such Ownership Dispute.  In so doing, the Liquidating Trustee shall not be or become liable to any of such parties for its refusal to comply with any demand or direction made by them, nor shall the Liquidating Trustee be liable for interest or any other charges on any funds which it may so withhold.  The Liquidating Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final judgment by the Bankruptcy Court (or such other court of proper jurisdiction), or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trustee and his respective professionals.  With respect to any Distribution to be made, the Liquidating Trustee may make such Distribution into an escrow account or a segregated account until disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute; *provided*, *however*, that after providing interested parties at least 30 days' notice, if no action has been commenced within 90 days after the relevant Distribution date, the property which is the subject of the dispute shall irrevocably become unclaimed Distributions.  Each party shall bear its own costs in relation to any Ownership Dispute, and any expenses incurred by the Liquidating Trust or the Liquidating Trustee shall be reimbursed as Liquidating Trust Operating Expenses.

4.07    Know Your Customer Requirements.  Promptly following any request therefor, the Liquidating Trustee shall use its reasonable efforts to furnish to any holder of a Trust Interest information and documentation reasonably requested by such holder of a Trust Interest for purposes of such holder of a Trust Interest's compliance with applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act of 2001 and 31 C.F.R. § 1010.230, and/or other due diligence related to regulatory requirements and/or reputational risk.

4.08    Reporting.

(a)    Not later than forty-five (45) days following the end of each fiscal quarter during the term of the Liquidating Trust, the Liquidating Trustee shall (I) file with the Bankruptcy Court or otherwise make publicly available on a website that may be accessed by holders of Trust Interests (but shall not serve), a "Chapter 11 Post-Confirmation Quarterly

*Draft*

Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee;(II) distribute a report to holders of Trust Interests containing the information set forth in clause (I) as well as a schedule of (i) the Liquidating Trust's receipts and disbursements, including Distributions and any amounts distributed pursuant to Section 6.03(g) of this Agreement, (ii) all Liquidating Trust Assets held by the Liquidating Trust, including a breakout of Prepetition First Lien Collateral held by the Liquidating Trust, (iii) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year, including the costs and expenses of the Liquidating Trust incurred (including any taxes imposed on the Liquidating Trust or actual reasonable out-of-pocket fees and expenses incurred by Liquidating Trust Advisors in connection with the administration and liquidation of the Liquidating Trust Assets and preservation of books and records as provided in this Agreement) during the preceding fiscal quarter and incurred since the Effective Date, (iv) the status of any litigation involving the Liquidating Trust or the Liquidating Trust Assets, (v) the amount of Cash and other assets received by the Liquidating Trust during the prior fiscal quarter and since the Effective Date, and (vi) the aggregate amount of Distributions from the Liquidating Trust to the holders of Trust Interests since the Effective Date.

(b)    The Liquidating Trustee shall also timely prepare and distribute such additional statements, reports, and submissions as reasonably requested from time to time by a majority of the Liquidating Trust Board regarding the Liquidating Trust Assets or the activities of the Liquidating Trust.  In addition, upon request of the majority of the Liquidating Trust Board, the Liquidating Trustee shall hold periodic meetings, telephonically or electronically, with holders of Trust Interests regarding the status of the Liquidating Trust and Trust Interests, including any financial information related to the Liquidating Trust.

(c)    Once per calendar year, or more frequently as may be requested by a majority of the members of the Liquidating Trust Board, and promptly after any Distribution is made to holders of Class A Trust Interests, the Liquidating Trustee shall prepare an updated calculation of the Prepetition First Lien Deficiency Claim to reflect any proceeds or Distributions received by holders of Class A Trust Interests during the prior calendar year.

(d)    Once per calendar year, or more frequently as may be requested by a majority of the members of the Liquidating Trust Board, and promptly after (i) any Distribution is made to holders of Class 2A Trust Interests or (ii) such holders receive any other proceeds on account of the FMO Collateral from the Liquidating Trust or otherwise the Liquidating Trustee shall prepare an updated calculation of the FMO Deficiency Claim to reflect any proceeds or Distributions received by holders of Class 2A Trust Interests during the prior calendar year.

4.09    <u>Annual Plan and Budget</u>.  Upon the request of a majority of the members of the Liquidating Trust Board, the Liquidating Trustee shall prepare and submit to the Liquidating Trust Board for approval an annual plan and budget in such detail as is reasonably requested, which approval shall not be unreasonably withheld.  [The initial budget shall be presented to and approved by the Liquidating Trust Board as of the Effective Date [or within 3060 days of the Effective Date], which initial budget shall be subject to modification by the Liquidating Trustee, with approval of the Liquidating Trust Board, no later than [_____], 2024.]

*Draft*

4.10    Limited Liability.  No provision of this Agreement, and no mere enumeration herein of the rights or privileges of any holder of a Trust Interest, shall give rise to any liability of such holder of a Trust Interest solely in its capacity as such.  Holders of Trust Interests are deemed to receive their Trust Interests as set forth in this Agreement, the Plan, and the Confirmation Order, in exchange for their transfer of the assets of the Liquidating Trust (net of any applicable liabilities), without further obligation or liability of any kind, but subject to the provisions of this Agreement, the Plan, and the Confirmation Order.

## ARTICLE V
## THE LIQUIDATING TRUSTEE

5.01    Generally.

(a)    From and after the Effective Date, but subject to the Plan and the Confirmation Order, the Liquidating Trustee shall act for the Debtors and their Estates, as applicable.  The Liquidating Trustee shall have the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code, shall be a "representative of the estate" pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be vested with the rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code, and shall have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided*, *however*, the Liquidating Trustee shall have no rights, powers, or duties that are inconsistent with or contrary to the Plan or the Confirmation Order.

(b)    The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3) pursuant to this Agreement, the Plan, and the Confirmation Order, until death, resignation, removal or discharge of the Liquidating Trustee and the appointment of a successor Liquidating Trustee in accordance with the terms of this Agreement (such period, the "Engagement Period").  Except as expressly set forth in the Plan, the Confirmation Order, or this Agreement, and subject to its duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and the Liquidating Trust Assets.

5.02    Term of Service.  The Liquidating Trustee shall serve until (i) the completion of all the Liquidating Trustee's duties, responsibilities, and obligations under this Agreement and the Plan; (ii) termination of the Liquidating Trust in accordance with this Agreement; or (iii) the Liquidating Trustee's death, resignation, removal or discharge.

5.03    Authority of the Liquidating Trustee.  The Liquidating Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, the Plan and the Confirmation Order, take any and all actions to effectuate the operations, completion, and purpose of the Liquidating Trust.  Without limiting the generality of the previous sentence, the Liquidating Trustee shall have the power to, for the benefit of the holders of Trust Interests:

*Draft*

(i)      receive, manage, invest, supervise, protect, liquidate and collect in an orderly manner, and convert to Available Trust Cash the Liquidating Trust Assets, including, without limitation, the Liquidating Trust Causes of Action and tax refunds;

(ii)      to determine, satisfy and pay any and all liabilities, taxes, expenses and other obligations, created, incurred, assumed or owed by the Liquidating Trust, including Liquidating Trust Operating Expenses, and make other payments relating to the Liquidating Trust Assets, in each case, exclusively from the Liquidating Trust Assets and in accordance with this Agreement, the Plan, the Confirmation Order or applicable law;

(iii)      to invest Available Trust Cash, including any earnings thereon or proceeds therefrom, as permitted by section 345 of the Bankruptcy Code or in other prudent investments; *provided*, *however*, that such investments are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under other applicable Tax Law;

(iv)      except to the extent a Claim has been previously Allowed, to control and effectuate the Claims reconciliation process (including the determination of whether Claims are Allowed or Disallowed) in accordance with this Agreement, the Plan, and the Confirmation Order;

(v)      maintain the Disputed Claims Reserve set forth in the Plan or Confirmation Order and, in the reasonable discretion of the Liquidating Trustee, to distribute such funds therefrom, as provided herein and in the Plan and the Confirmation Order, as Disputed Claims are resolved and Allowed;

(vi)      in accordance with the terms of the Plan and Confirmation Order, to object to, seek to subordinate, compromise, estimate, litigate to judgment, arbitrate, or settle any and all Claims;

(vii)      to execute, deliver, file, and record contracts, leases, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan or Confirmation Order, which actions may include, but is not limited to, the creation of entities for the purpose of facilitating transactions between the Liquidating Trust and other parties;

(viii)      to raise additional funding for the Liquidating Trust in order to (A) pursue the Liquidating Trust Causes of Action, administer or object to Claims or liquidate or otherwise monetize the Prepetition First Lien Collateral and other Liquidating Trust Assets, and support distributions to holders of Trust Interests provided for or contemplated in this Agreement and the Plan; and (B) support or facilitate any other function, duty or responsibility of the Liquidating Trust or the Liquidating Trustee that is contemplated by the Plan, the Confirmation Order or this Agreement, in each case in accordance with this Agreement, including Section 3.06(h);

(ix)    to pay any and all Statutory Fees when due and payable, solely from Liquidating Trust Assets;

(x)    to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to (A) the Office of the United States Trustee; (B) the United States; and (C) those parties in interest who have filed, after the Effective Date, a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in the particular filing in accordance with Local Rule 2002-1(b);

(xi)    to maintain accounts, calculate and implement Distributions to Holders of Allowed Claims and holders of Trust Interests out of the Liquidating Trust Assets in accordance with the Plan, the Confirmation Order, and this Agreement;

(xii)    establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, in which the Liquidating Trust Assets or other Cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts;

(xiii)    to protect, and enforce the rights to, the Liquidating Trust Assets by any method deemed appropriate, including by judicial, administrative, arbitrative or other nonjudicial proceeding;

(xiv)    to appear on behalf of, and represent the interests of, the Debtors, the Liquidating Trust or holders of Trust Interests in any proceeding, including any Foreign Proceeding, that may directly or indirectly affect the Liquidating Trust Assets or their value or the recovery of the holders of Trust Interests or to the extent necessary to implement the Plan, the Confirmation Order, or this Agreement;

(xv)    with respect to the Liquidating Trust Causes of Action, to exercise, in a manner not inconsistent with the Plan and subject to Section [5.13] hereof regarding the Liquidating Trust Board, all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any member, officer, director or shareholder of the Debtors, with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders;

(xvi)    to prosecute, litigate to judgment, compromise, adjust, arbitrate, sue on or defend, abandon, dismiss, or otherwise resolve or settle, in accordance with the terms hereof, claims in favor of, or against, the Liquidating Trust, including but not limited to, the Liquidating Trust Causes of Action;

(xvii)   to conduct investigation pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, as may have been conducted by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets;

(xviii) to determine a Distribution Date and make Distributions in accordance with this Agreement, the Plan and Confirmation Order;

(xix)    to amend the Schedules in accordance with the Bankruptcy Code;

(xx)    wind-down the business and affairs of the Debtors, including to take any action necessary to wind down and dissolve any Surviving Debtor;

(xxi)    prior to dissolution of the Debtors, to file with the Bankruptcy Court all quarterly reports, in a form reasonably acceptable to the U.S. Trustee, when due;

(xxii)    to file, if necessary, any and all required federal, state and local tax and informational returns required with respect to the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or other applicable Tax Law, make tax elections by and on behalf of the Liquidating Trust and pay taxes (including, without limitation, federal, state, local or non-U.S. taxes), if any, properly payable by the Liquidating Trust, which taxes shall be paid exclusively from the Liquidating Trust and Liquidating Trust Assets, and to take any and all actions that may be necessary or appropriate to comply with any withholding and reporting requirements imposed by applicable Tax Law;

(xxiii) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Liquidating Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(xxiv) to obtain and maintain insurance coverage with respect to real and personal property that may become Liquidating Trust Assets, such Persons or Entities serving as administrators and overseers of the Liquidating Trust, and officers and directors of any Surviving Debtor on and after the Effective Date;

(xxv)    to retain and pay such third parties, including, paying agents, counsel or other professionals, as the Liquidating Trustee may deem necessary or appropriate in its discretion to assist the Liquidating Trust in carrying out its powers and duties under this Agreement, subject to Section 5.08 hereof; and

(xxvi) to exercise all powers vested in the Debtors, the Liquidating Trust, or the Liquidating Trustee pursuant to the Bankruptcy Code, the Plan, the Confirmation Order, and any other Bankruptcy Court order, or as may be necessary, proper and appropriate to carry out the provisions of the Plan, the Confirmation Order, or this Agreement.

(b)    In all circumstances, the Liquidating Trustee shall perform its duties and exercise the authority herein in a manner that is consistent with the best interests of all the holders of Trust Interests and in furtherance of the purpose of the Liquidation Trust.

5.04    <u>Additional Responsibilities of the Liquidating Trustee</u>.  Except as otherwise set forth in the Plan, the Confirmation Order or this Agreement, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in Article [XI] of the Plan, the Liquidating Trustee may, without prior or further authorization, control and exercise authority over the

*Draft*

Liquidating Trust Assets and their protection, conservation and disposition. The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets, the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee, and all distributions to the holders of Trust Interests. The Liquidating Trust may engage a claims agent to continue to maintain and update the Claims register maintained in the Cases throughout the administration of the Liquidating Trust, and such Claims register may serve as the Liquidating Trustee's register of Trust Interests held by holders of Trust Interests.

5.05    <u>Final Decree</u>. Upon the full administration of the Liquidating Trust, the Liquidating Trustee shall seek and obtain a final decree from the Bankruptcy Court.

5.06    <u>Limitations on Liquidating Trustee's Authority</u>.

(i)    The Liquidating Trustee, as his primary purpose, is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, but shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. All actions taken by the Liquidating Trustee shall be consistent with the expeditious but orderly liquidation of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Liquidating Trust as a "liquidating trust" under Treasury Regulation Section 301.7701-4(d) and other applicable Tax Law.

(ii)    The Liquidating Trustee shall liquidate and convert to Available Trust Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

(iii)    Any investments of the Available Trust Cash portion of the Liquidating Trust Assets by the Liquidating Trustee must be permitted investments for a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) or other applicable Tax Law.

5.07    <u>Discretion</u>. Subject to the provisions of Section [5.13] hereof regarding the duties of the Liquidating Trust Board, the Liquidating Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or Causes of Action, including the Liquidating Trust Causes of Action, as it determines is in the best interests of the holders of Trust Interests and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decisions, except as set forth herein and in the Plan and the Confirmation Order. Except as expressly set forth in the Plan or the Confirmation Order, and subject to his or her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets. Subject to Section [3.06] hereof, the Liquidating Trustee may incur reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Available Trust Cash. Unless specifically stated otherwise herein, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Agreement or specifically contemplated in the Plan or the Confirmation Order.

5.08    Retention of Professionals.    The Liquidating Trustee may (i) retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Debtors' Bankruptcy Cases), without further order of the Bankruptcy Court, to assist in its duties as the Liquidating Trustee under the Plan, Confirmation Order, and this Agreement on such terms as the Liquidating Trustee deems appropriate, whether on an hourly, contingency fee or other basis, including, without limitation, accountants, auditors, attorneys, tax professionals, consultants, and other professionals, and (ii)  pay the fees and charges incurred by the Liquidating Trustee on the Liquidating Trust's behalf after the Effective Date for fees and expenses of Liquidating Trust Advisors (including those retained by the Liquidating Trustee), disbursements, expenses, or related support services relating to the Liquidating Trust or as otherwise provided in this Agreement, *provided* that any such professionals shall be compensated solely from the Liquidating Trust and in no event shall the Liquidating Trustee or any of its professionals have or make any claim for reimbursement of fees or expenses against any Person other than the Liquidating Trustee (not individually, but solely in its capacity as the Liquidating Trustee) or any property other than the Liquidating Trust and the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

5.09    Liability of Liquidating Trustee and Its Representatives.  Neither the employees, professionals, agents, and representatives of the Liquidating Trust or the Liquidating Trustee including any Liquidating Trust Advisors (collectively, the "Retained Parties") or any member of the Liquidating Trust Board nor the Liquidating Trustee (collectively, the "Covered Persons"), shall be held liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trust or Liquidating Trustee, except those acts arising out of its bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, and each shall be entitled to indemnification and reimbursement from the Liquidating Trust for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust or Liquidating Trustee.  All Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trust or the Liquidating Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

5.10    Non-liability for Acts of Others.  Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Liquidating Trustee of any of the liabilities, obligations or duties of the Debtors or holders of Trust Interests and shall not be deemed to be or contain a covenant or agreement by the Liquidating Trustee to assume or accept any such liability, obligation, or duty.  Any successor Liquidating Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee hereunder, and any statement or representation made as to the assets comprising the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so.  A successor Liquidating Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A Liquidating Trustee or successor Liquidating Trustee shall not be liable for any act or omission of any predecessor

*Draft*

Liquidating Trustee, nor have a duty to enforce any claims against any predecessor Liquidating Trustee on account of any such act or omission. Nothing in this paragraph shall impair any rights of setoff, recoupment, or offset under the Bankruptcy Code or otherwise.

5.11    Limitation of Liability to Third Persons.  Notwithstanding any other provision of this Agreement, the Liquidating Trustee shall not be liable for any error of judgment, or any action taken or omitted to be taken hereunder or any action taken in good faith in reliance upon the advice of the Liquidating Trust Advisors.  The liability of the Liquidating Trustee shall be limited as provided herein.  No provision of this Agreement, the Plan, or the Confirmation Order shall be construed to relieve the Liquidating Trustee from liability for their own respective bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice.

5.12    Compensation of the Liquidating Trustee and Other Employees or Agents.[4] The Liquidating Trustee and the Liquidating Trust's employees and agents shall be entitled to receive reasonable compensation paid by the Liquidating Trust with the Liquidating Trust Assets. Reasonable compensation for Marc Kirschner, during such time as he is engaged as Liquidating Trustee, shall be comprised solely of

(a)    fixed fees in the amount of:

(i)    $20,000 per month for the first four months of the Engagement Period ("Initial Period");

(ii)    $15,000 per month for four months following the Initial Period; and

(iii)    $10,000 per month thereafter; and

(b)    incentive fees in an amount (the "Trustee Incentive Fees") equal to:

(i)    0% of the first $25 million in Net Proceeds (defined below) received by the Liquidating Trust during the Engagement Period;

(ii)    Once the Liquidating Trust has received Net Proceeds in excess $25 million, 1% of such Net Proceeds received by the Liquidating Trust until the Liquidating Trust has received $50 million in Net Proceeds;

(iii)    Once the Liquidating Trust has received Net Proceeds in excess $50 million, 1.5% of such Net Proceeds received by the Liquidating Trust until the Liquidating Trust has received $100 million in Net Proceeds; and

(iv)    Once the Liquidating Trust has received Net Proceeds in excess $100 million, 2% of such Net Proceeds received by the Liquidating Trust.

---

[4] [To be revised to reflect agreed compensation structure upon retention of the Liquidating Trustee.]

*Draft*

5.12 including [ ● ]The term "Net Proceeds" shall mean all proceeds received by the Liquidating Trust on account of any Liquidating Trust Assets (other than (a) proceeds from the sale of remaining coffee inventory constituting Prepetition First Lien Collateral (b) any cash collateral held by the Debtors as of the Effective Date and distributed thereafter (whether out of reserves or otherwise) and (c) proceeds received in connection with the Debtors' sale of assets in Vietnam) after accounting for and reducing such proceeds by any attorneys' fees (including contingency fees) and expenses incurred by counsel responsible for converting such Liquidating Trust Assets to Available Trust Cash.  For purposes of calculating Net Proceeds, the Initial Litigation Funding, the Initial Non-Litigation Funding and any financing obtained pursuant to Section 3.06(h) hereof shall not constitute proceeds received on account of Liquidating Trust Assets.  In addition to the Trustee Fees, the Liquidating Trust shall reimburse the Liquidating Trustee for all reasonable out-of-pocket expenses incurred by the Liquidating Trustee in connection with the Liquidating Trust.  The Liquidating Trust may pay such expenses in the ordinary course without application or notice to the Bankruptcy Court or any other court.  For the avoidance of doubt, the Liquidating Trustee may, in its sole discretion, pay its professionals' compensation and other costs and expenses of this Liquidating Trust before approving or making any Distributions.]

5.13    Liquidating Trust Board.

(a)    Creation and Composition.  The Liquidating Trust Board shall be created on the Effective Date and may be governed by by-laws adopted by the Liquidating Trust Board, which shall provide for recusal on conflicts among other standard terms.  The Liquidating Trust Board shall be comprised of fivefour representatives designated as follows: (i) two members selected by the Prepetition First Lien Secured Parties (the "Class A Board Members"); and (ii) two members selected by representatives of the Creditors' Committee (the "Class BC Board Members"); and (iii) one member mutually selected by the Prepetition First Lien Secured Parties and the Creditors' Committee (the "Joint Board Member" and, collectively and, together with the Class A Board Members and the Class BC Board Members, the "Members of the Liquidating Trust Board"), *provided however,* that any transferee of Trust Interests pursuant to Section 4.03 hereof shall not be entitled to vote such Transferred Trust Interests in the selection of any Member of the Liquidating Trust Board or any Successor Liquidating Trust Board Member.  The Liquidating Trust Board shall have the authority to oversee, review and guide the activities and performance of the Liquidating Trustee.  Each member of the Liquidating Trust shall serve until the earlier of: (i) such member's death or resignation; (ii) such member's removal pursuant to this Agreement; and (iii) the termination of the Liquidating Trust.

(b)    Rights and Powers.  In addition to such other rights as are set forth in this Agreement, the Liquidating Trust Board shall have the rights to do the following, *provided however*, that notwithstanding the below or anything else to the contrary herein, the two Class A Board Members shall have sole governance or other rights with respect to any matters or information relating to Prepetition First Lien Collateral:

(i)    remove the Liquidating Trustee for Cause, acting by a majority (which shall include an affirmative vote by a Class A Board

*Draft*

Member and a Class BC Board Member), or for any other reason acting by unanimous consent;

(ii)   consent to the taking of any Material Action (as defined below) by the Liquidating Trustee in accordance with Section 5.13(c);

(iii)   receive and review the reports of the Liquidating Trustee and consult with same on any matters related to the Liquidating Trust or the Liquidating Trust Assets;

(iv)   review and consult with the Liquidating Trustee regarding: (i) Distributions to the holders of Trust Interests; (ii) the prosecution, settlement, transfer, release, or abandonment of any Liquidating Trust Causes of Action on behalf of the Liquidating Trust; (iii) the amendment of this Agreement as provided by the terms of this Agreement; and (iv) such other actions as are specified in this Agreement;

(v)   acting by a majority (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member), appoint a successor Liquidating Trustee, as provided by the terms of this Agreement;

(vi)   acting by a majority (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member) and with the consent of the Liquidating Trustee, remove a member of the Liquidating Trust Board, in accordance with Section 5.13(f);

(vii)   have access, upon reasonable notice and during normal business hours, to all reports, documents, memoranda, and other work product of the Liquidating Trustee; and

(viii)   monitor the actions of the Liquidating Trustee and receive, upon request, status reports from the Liquidating Trustee as to the status of (i) the litigation, settlement, administration, and pursuit of the Liquidating Trust Causes of Action and (ii) the administration of the Liquidating Trust Assets; *provided however*, that reports and information regarding the Prepetition First Lien Collateral shall only be available to the Class A Board Members.  For the avoidance of doubt, the failure to specifically identify rights in this section shall not limit or otherwise impair the right of the Liquidating Trustee or the members of the Liquidating Trust Board to consult with the Liquidating Trustee or members of the Liquidating Trust Board individually or collectively on any or all issues that he or they may determine to be relevant or appropriate.

(c)   Material Actions.  "Material Action" means each of the following, each of which may only be undertaken with the consent of a majority of the Liquidating Trust Board, or

*Draft*

with respect to any matters or information relating to Prepetition First Lien Collateral, solely with the consent of the two Class A Board Members:

> (i)      the filing of any complaint or initiation of any proceeding (including any arbitration proceedings (international (via ICSID) or otherwise)) in respect of any Liquidating Trust Causes of Action [(A) in the claimed amount of $[____] or (B) against any states, nations or governmental authorities];

> (ii)      the settlement or dismissal of any Liquidating Trust Causes of Action [in the claimed amount of [$___]];

> (iii)      the settlement of any General Unsecured Claim which would result in such Claim being Allowed in an amount greater than [$100,000];

> (iv)      entry into any contingency fee agreement or litigation funding agreement;

> (v)      borrowing money or raising capital; and

> (vi)      the selection and engagement of any Retained Parties.

(d)      <u>Voting</u>.  For all matters <u>unrelated to the Prepetition First Lien Collateral</u> in which the Liquidating Trust Board's consent is required, each ~~member~~<u>Member</u> of the Liquidating Trust Board and, when necessary, the Liquidating Trustee shall be entitled to one vote each.  Decisions shall be rendered by a majority decision.  ~~If three members~~<u>When all four Members</u> of the Liquidating Trust Board ~~are available to vote, the Liquidating Trustee shall abstain.  If one member of the Liquidating Trust Board is recused from voting due to its absence or any conflict that may arise~~<u>vote on a matter</u>, the Liquidating Trustee shall have and may cast the deciding vote, if the vote would otherwise split.  If ~~two members~~<u>only three Members</u> of the Liquidating Trust Board <u>vote</u>, ~~or one member and~~ the Liquidating Trustee~~,~~ <u>, shall abstain. If two Members of the Liquidating Trust Board</u> are recused from voting due to absence or a conflict, the ~~matter voted upon must be approved by the remaining voting parties for any action on such matter.  If three or more Liquidating Trust Board members are recused from a matter up for vote, then a voting matter requiring action or direction shall be decided by the Bankruptcy Court's order entered after an opportunity for a hearing, upon motion of the~~ Liquidating Trustee <u>shall have and may cast the deciding vote, if the vote would otherwise split</u>.  In no case shall ~~two or less members~~<u>one Member</u> of the Liquidating Trust Board have the sole authority to approve a matter requiring a vote.  A voting matter requiring action or direction that cannot be resolved by the Liquidating Trust Board and the Liquidating Trustee may be brought by the Liquidating Trustee on motion to the Bankruptcy Court for authority or direction.  The Liquidating Trust Board will additionally be responsible for deciding any matter in which the Liquidating Trustee is deemed to have a conflict, subject to the voting requirements and limitations above.

*Draft*

(e)    <u>Recusal</u>.    Each Member of the Liquidating Trust Board and the Liquidating Trustee shall recuse him or herself from discussion about any matter, and shall not vote on any voting matter, in which it has an actual or reasonably foreseeable conflict of interest.

(f)    <u>Removal of Member of the Liquidating Trust Board</u>.  A Member of the Liquidating Trust Board may be removed at any time by the written consent of a majority of the Members of the Liquidating Trust Board (which shall include an affirmative vote by a Class A Board Member and a Class BC Board Member) ~~and the Liquidating Trustee~~; provided, however, that such removal <u>by majority vote</u> may solely be made for the following reasons and shall be effective on the date specified in such consent or approval pursuant to this section: (i) theft or embezzlement or attempted theft of embezzlement of money or tangible or intangible assets or property by a Member of the Liquidating Trust Board; (ii) violation of any law (whether foreign or domestic), which results in felony indictment or similar judicial proceeding by a Member of the Liquidating Trust Board; (iii) repeated failure to appear and participate in meetings of the Liquidating Trust Board, respond to communications from the Liquidating Trustee or to otherwise diligently fulfill their duties as a Member of the Liquidating Trust Board; or (iv) gross negligence, bad faith, willful misconduct or knowing violation of law, in the performance of his or her duties as a Member of the Liquidating Trust Board; provided, however, that such Member of the Liquidating Trust Board shall have been given a reasonable period to cure any alleged conduct under clause (iv) (other than bad faith, willful misconduct or knowing violation of law).

(g)    <u>Resignation of Member of the Liquidating Trust Board</u>.  A Member of the Liquidating Trust Board may resign by giving not less than thirty (30) days prior written notice thereof to the other Members of the Liquidating Trust Board and the Liquidating Trustee.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; or (ii) the appointment of a successor Member of the Liquidating Trust Board (a "<u>Successor Liquidating Trust Board Member</u>") in accordance with [Section 5.13(h)] of this Agreement and the acceptance by such Successor Liquidating Trust Board Member of such appointment in accordance with [Section 5.13(i)] of this Agreement.  Upon such resignation, a Successor Liquidating Trust Board Member shall be appointed in accordance with [Section 5.13(h)] of this Agreement.

(h)    <u>Appointment of Successor Liquidating Trust Board Member upon Removal, Resignation, or Incapacity</u>.  If a Member of the Liquidating Trust Board is removed pursuant to the terms of this Agreement, resigns pursuant to the terms of this Agreement, or otherwise is incapable of serving as a Member of the Liquidating Trust Board (including that such member no longer is a holder of Trust Interests), a Successor Liquidating Trust Board Member shall be appointed as follows: (i) if a vacancy is created because of the removal, resignation or incapacity of a Class A Board Member, the majority of the Class A Trust Interest holders shall elect and appoint a Successor Liquidating Trust Board Member to fill such position; <u>or</u> (ii) if a vacancy is created because of the removal, resignation or incapacity of a Class BC Board Member, the majority of the holders of Class B Trust Interests and Class C Trust Interests (if any) shall appoint a Successor Liquidating Trust Board Member to fill such position~~; or (iii) if a vacancy is created because of the removal, resignation or incapacity of the Joint Board Member, a Successor Liquidating Trust Board Member shall be appointed by the other remaining Members of the Liquidating Trust Board~~, *provided however,* that any transferee

of Trust Interests pursuant to Section 4.03 hereof shall not be entitled to vote such Transferred Trust Interests in the selection of any Member of the Liquidating Trust Board or Successor Liquidating Trust Board Member.  If a Successor Liquidating Trust Board Member is not appointed or does not accept his or her appointment within thirty (30) days following: (i) delivery of a notice of resignation of a Member of the Liquidating Trust Board or (ii) the removal of a Member of the Liquidating Trust Board, the Liquidating Trust Board or Liquidating Trustee may petition any court of competent jurisdiction, including the Bankruptcy Court, for the appointment of a Successor Liquidating Trust Board Member.

(i)      Acceptance of Appointment by Successor Liquidating Trust Board Member.  Any Successor Liquidating Trust Board Member appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver such acceptance to the Liquidating Trustee.  Thereupon, such Successor Liquidating Trust Board Member shall, without any further act, become vested with all the rights, powers, duties, and obligations of his or her predecessor in the Liquidating Trust Board with like effect as if originally named herein.

5.14    Exculpation; Indemnification.  After the Effective Date all of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the holders of Trust Interests, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of his, her, its, or their own bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan.  To the fullest extent permitted by applicable law and solely from the Liquidating Trust Assets, (i) the Liquidating Trust shall indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence, or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, and (ii) the Covered Persons shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions upon receipt by the Liquidating Trust of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 5.14.  The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified.   For the avoidance of doubt, the rights to indemnification hereunder are not exclusive of other rights which a person entitled to indemnification may otherwise have at law or in equity including but not limited to, common law rights to indemnification or contribution.  Except in the event of actions or omissions that are determined by a Final Order to have arisen out of his, her, its, or their own bad faith, reckless disregard of duty, criminal conduct, self-dealing, fraud, willful misconduct or gross negligence,

*Draft*

or in the case of an attorney or other professional (and as required by any applicable rules of conduct), malpractice, in no event shall the Liquidating Trustee or any Covered Person be liable for any indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Liquidating Trustee or any Covered Person has been informed of the likelihood of such loss or damages and regardless of the form of action. [Notwithstanding anything to the contrary herein, in no event shall the liability of the Liquidating Trustee or any Covered Person under this Agreement exceed the total amount of fees paid to the Liquidating Trustee or any Covered Person under this Agreement.] Persons (including any of the Liquidating Trust Advisors) engaged in transactions with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such Persons in carrying out the terms of this Agreement, the Plan, or the Confirmation Order, and the Liquidating Trustee shall have no personal or individual obligation to satisfy such liability.

As of the Effective Date, notwithstanding any provision of the Plan, neither any Holder of a Claim or Interest, nor other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Covered Persons for any act or omission occurring or failing to occur after the Petition Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and execution of the Plan, the Disclosure Statement, this Agreement, and related sale process, the solicitation of votes for and the pursuit of confirmation of the Plan, the management of the Liquidating Trust, the liquidation of Liquidating Trust Assets, the consummation of the Plan, the administration of the Plan and/or the property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto; provided, however, that the foregoing shall not apply if it is determined in a Final Order that the Covered Persons engaged in fraud, willful misconduct or gross negligence.

5.15    Removal or Replacement of the Liquidating Trustee.

(a)    Termination. The duties, responsibilities and powers of the Liquidating Trustee shall terminate on the date the Liquidating Trust is dissolved, or upon the Liquidating Trustee's death, resignation, removal or discharge, *provided* that Sections [5.09-5.11] shall survive such termination and dissolution.

(b)    Resignation. The Liquidating Trustee may resign by giving not less than sixty (60) days prior written notice filed with the Bankruptcy Court, *provided*, *however*, such resignation shall not become effective until the appointment of a successor trustee by the Liquidating Trust Board in accordance with Section 5.13(b)(v) with notice to the Bankruptcy Court. If a Liquidating Trustee resigns from its position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

(c)    Removal. The Liquidating Trustee may be removed by the Bankruptcy Court for Cause or by Liquidating Trust Board pursuant to Section 5.13(b)(i). Any removal of

*Draft*

the Liquidating Trustee shall become effective as of the date specified by the Liquidating Trust Board. In the event of the removal of the Liquidating Trustee, subject to a final accounting, the Liquidating Trustee shall be entitled to immediate payment of all fees, expenses, and other compensation earned through and including the effective date of such removal, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor trustee.

5.16    Inquiries into the Liquidating Trustee's Authority. Except as otherwise set forth in this Agreement or the Plan, no Person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation, or disposition of the Liquidating Trust Assets.

## ARTICLE VI
## DISTRIBUTIONS

6.01    Distributions to Holders of Trust Interests. The Liquidating Trustee shall make Distributions to the holders of Trust Interests, at such time and in such amounts that the Liquidating Trustee deems appropriate and consistent with this Section 6.01. The timing and amount of each Distribution by the Liquidating Trustee shall be determined by the Liquidating Trustee and shall be consistent with the terms set forth in the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, and this Agreement; *provided*, *however*, that the Liquidating Trustee shall make distributions from the Liquidating Trust to the holders of Trust Interests at least annually, or earlier if the Liquidating Trust is holding more than [$____] in proceeds of Prepetition First Lien Collateral, or more than [$____] in cash from Liquidating Trust Assets other than Prepetition First Lien Collateral, if and to the extent it determines the Liquidating Trust has sufficient cash available for distribution after reserving for amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims), and to maintain the value of the Liquidating Trust Assets during the term of the Liquidating Trust, (ii) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses of the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties in connection with this Agreement and any amounts owed to the Liquidating Trustee pursuant to the terms hereof, and (iii) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Agreement, including Section 5.03.

6.02    Location for Distributions; Notice of Change of Address. Distributions to Holders of Allowed Claims and the holders of Trust Interests shall be made by the Liquidating Trustee (a) at the addresses set forth on the respective proofs of Claim filed by such Holders of Allowed Claims and holders of Trust Interests; (b) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (c) at the address reflected in the Schedules or, if not reflected in the Schedules, then in the other records of the Debtors if no proof of Claim is filed and the Liquidating Trustee or the Debtors have not received a written notice of a change of address. The Liquidating Trustee shall have the absolute and unconditional right to rely on the information provided by the Debtors for purposes of notices and distributions under this Agreement.

6.03    Allocation of Liquidating Trust Assets.  As set forth in the Plan, Trust Interests in the Liquidating Trust are divided into classes—Class 2A Trust Interests, Class A Trust Interests, Class B Trust Interests and, if applicable, Class C Trust Interests.  Pursuant to the Plan, each series of Trust Interests shall receive Distributions from the liquidation of certain identified assets in accordance with the Plan, the Confirmation Order and this Agreement.

(a)    Allocation of Prepetition First Lien Collateral. Holders of the Class A Trust Interests shall have the exclusive right to receive any proceeds from the liquidation of Liquidation Trust Assets that constituted Prepetition First Lien Collateral, including the Debtors' coffee inventory located in Nicaragua as of the Petition Date and any insurance policies or proceeds thereof that may relate to or cover such coffee inventory.

(b)    Allocation of Litigation Proceeds.  Subject to Section 6.03(e) and (f), Litigation Proceeds will be distributed as follows:

(i)    First, the Litigation Proceeds will be deposited into the Litigation Funding Reserve until the amount in the Litigation Funding Reserve is restored to $500,000, provided that no more than 10% of the Litigation Proceeds received from any one recovery will be deposited into the Litigation Funding Reserve.  The amount in the Litigation Funding Reserve at any one time shall not be greater than $500,000;

(ii)    Until the Initial Litigation Funding has been repaid to the Prepetition First Lien Secured Parties in full, after the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 70% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 30% of any remaining Litigation Proceeds shall be allocated to holders of Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests.

(iii)    After the Initial Litigation Funding has been repaid to the holders of Class A Trust Interests in full and following the deposit into the Litigation Funding Reserve contemplated in clause (i) above, 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class A Trust Interests and 50% of any remaining Litigation Proceeds shall be allocated to the holders of Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests.

(iv)    To the extent any amounts of the Litigation Funding Reserve remain after the repayment of the Initial Litigation Funding to the holders of Class A Trust Interests and the distribution of all Liquidating Trust Assets, such amounts shall be distributed 50% to the holders of Class A Trust Interests and 50% to the holders of

Class B Trust Interests and, if Class C Trust Interests have been issued, Class C Trust Interests.

(v)    In the event that FMO receives Trust Interests pursuant to Section 3.07(c) of the Plan, FMO shall receive Class 2A Trust Interests that are entitled to receive 100% of Litigation Proceeds that constitute FMO Collateral.  For the avoidance of doubt, and notwithstanding anything in this Agreement, the Plan or the Confirmation Order to the contrary, FMO shall have no claim against or rights in the Trust or any Trust Assets other than the FMO Collateral and as to such FMO Collateral, solely to the extent explicitly set forth herein, and FMO shall not be considered a "creditor" of the Trust as that term is defined in the Bankruptcy Code.

(vi)    Notwithstanding the other provisions of this Section 6.03, as a result of the Prepetition First Lien Secured Parties' funding of the Convenience Claim Pool under the Plan, holders of Class A Trust Interests shall be subrogated to the Claims of Holders of Allowed Class 5 Claims that receive Distributions out of the Convenience Claim Pool to the extent of such Distributions (up to the amount of $1,000,000), such that holders of Class A Trust Interests shall participate in distributions to be made pursuant to Section 6.03(b)(ii) through (iv) and Section 6.03(c)(ii) to holders of Class B Trust Interests as if the Holders of Allowed Class 5 Claims under the Plan had received Class B1 Trust Interests rather than distributions out of the Convenience Claim Pool.

(c)    (b) Allocation of Proceeds of Non-Litigation Liquidating Trust Assets.

(i)    Proceeds of Prepetition First Lien Collateral shall be allocated to the holders of Class A Trust Interests until the claims of such holders have been satisfied in full.

(ii)    Proceeds (other than Litigation Proceeds) of Liquidating Trust Assets other than Prepetition First Lien Collateral shall be used to repay the Initial Non-Litigation Funding to the holders of Class A Trust Interests.  Once the Initial Non-Litigation Funding has been repaid to the holders of Class A Trust Interests, holders of Class A Trust Interests, Class B Trust Interests and, if applicable (see Section 6.03(f)), Class C Trust Interests will receive a Pro Rata Share of proceeds (other than Litigation Proceeds) of Liquidating Trust Assets other than Prepetition First Lien Collateral and FMO Collateral.

(d)    (c) Distributions to Reserved Trust Interests – No Distributions shall be made by the Liquidating Trustee on account of Reserved Trust Interests, but instead, shall be

*Draft*

reserved by the Liquidating Trustee.  Once a Class 4A or Class 4B Claim has become Allowed (under the Plan), the Holder of such newly Allowed claim shall receive from the Liquidating Trustee the pro rata share of their Reserved Trust Interests as well as any reserved Distributions on account of such Reserved Trust Interests.  Thereafter, such Holder shall be entitled to participate Pro Rata with other Holders of Class B1 Trust Interests, Class B2 Trust Interests or Class C Trust Interests, as applicable, in any future Distributions on account of such Class B Trust Interests, Class B2 Trust Interests or Class C Trust Interests, respectively.

(e)    (d) Notwithstanding anything to the contrary in this Agreement, the Plan or the Confirmation Order, other than payments out of the Dutch Law SME Pool, holders of Class B2 Trust Interests shall not be entitled to any Distributions from the Liquidating Trust until all Holders of Allowed Class 4A Claims under the Plan have received recoveries on account of such Allowed Claims equal to 20% of such Claims.

(f)    (e) Notwithstanding anything to the contrary in Section 3.07 of the Plan or in this Agreement and consistent with section 3.08 of the Plan, in the event the Dutch WHOA Plan is not sanctioned by the Dutch Court, or Mercon B.V. does not seek approval of the Dutch WHOA Plan from the Dutch Court, and Mercon B.V. becomes the subject of Dutch bankruptcy proceedings (*faillissement*), then the Holders of Dutch Law SME Claims and any Holders of Allowed Claims that only hold Allowed Claims against Mercon B.V. (and no other Debtor) shall not be entitled to any distribution from the Dutch Law SME Claim Pool or any Pro Rata Share of the assets transferred to the Liquidating Trust beyond what such Holders would be entitled to in a (non-consolidated) bankruptcy liquidation of Mercon B.V. and as such will become Liquidating Trust Beneficiaries with Class C Trust Interests, unless the Liquidating Trustee and such Holder agree otherwise. This applies only in respect of Claims against Mercon B.V. and not against any other Debtor, and does not affect the rights of any Holders of Claims in respect of any other Debtor.

(g)    Notwithstanding anything to the contrary in this Article VI or any other provision of this Agreement, if a Distribution is being made to the Holders of the Class A Trust Interests, the Liquidating Trustee shall withhold from such Distributions and immediately pay to the Prepetition First Lien Agent such amounts that are reflected on invoices tendered by the Prepetition First Lien Agent to the Liquidating Trustee prior to the Distribution, which amounts so invoiced by the Prepetition First Lien Agent to the Liquidating Trustee (i) shall be amounts that the Holders of the Class A Trust Interests would be obligated to indemnify the Prepetition First Lien Agent for pursuant to the indemnification obligations of the Holders of the Class A Trust Interests owed to the Prepetition First Lien Agent as set forth in Section 8.5 of the Prepetition First Lien Credit Agreement (as defined in the Final Cash Collateral Order), which expressly survives the termination of the Prepetition First Lien Credit Agreement, including without limitation the reasonable compensation, expenses, disbursements and advances of the Prepetition First Lien Agent and its agents and counsel and (ii) shall be withheld from such Distribution to the Holders of the Class A Trust Interests and paid by the Liquidating Trustee to the Prepetition First Lien Agent consistent with the terms of Section 8.14 of the Prepetition First Lien Credit Agreement, which such Section 8.14 shall survive termination of the Prepetition First Lien Credit Agreement as set forth in the Confirmation Order.

*Draft*

6.04    Nicaragua Assets.  The rights of the Prepetition First Lien Secured Parties and FMO with respect to the allocation of (i) proceeds for any monetization of the Debtors' assets (including real property) and inventory located in Nicaragua, including from applicable insurance policies or the proceeds thereof, and (ii) Litigation Proceeds from Causes of Action arising out of the Debtors' assets (including real property) and inventory located in Nicaragua are preserved under the Plan and this Agreement.  For the avoidance of doubt, to the extent that the Liquidating Trustee liquidates any FMO Collateral with the written consent of FMO, any reasonable and documented fees and expenses incurred by the Liquidating Trustee in connection therewith shall be surcharged against any recoveries on such FMO Collateral and the Liquidating Trustee shall be authorized to allocate those surcharged proceeds to repayment of the Initial Litigation Funding and Initial Non-Litigation Funding, as applicable, or otherwise distributed to the holders of the Class A Trust Interests.

6.05    Administration of Distributions.

(a)    Manner of Payment.  Unless otherwise expressly agreed, in writing, all Available Trust Cash payments to be made pursuant to this Agreement, the Plan, or the Confirmation Order shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

(b)    Fractional Dollars; *De Minimis* Distributions.  Notwithstanding any other provision of the Plan or the Confirmation Order to the contrary, (a) the Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such holder, or (iii) if the amount of the final Distribution to such holder is $50.00 or less.  If the Liquidating Trust withholds any Distribution under this provision, the withheld funds shall inure to the benefit of the Liquidating Trust.

(c)    Unclaimed Distributions.

(i)    Any Available Trust Cash or other property to be Distributed under the Plan to the Holder of an Allowed Claim, the Holder of a Disputed Claim, or a holder of a Trust Interest shall revert to the Liquidating Trust if it is not claimed by the Holder of the Allowed Claim, the Holder of the Disputed Claim, or holder of a Trust Interest within three (3) months after the date of such Distribution.  If such Available Trust Cash or other property is not claimed on or before such date, the Distribution made to such Holder of an Allowed Claim, Holder of a Disputed Claim, or holder of a Trust Interest shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust.  All unclaimed Distributions shall revert to the Liquidating Trust.

*Draft*

(ii)    Checks issued to any Holder of an Allowed Claim, Holder of a Disputed Claim, or a holder of a Trust Interest on account of any distribution of the proceeds of the Liquidating Trust Assets shall be null and void if not negotiated within ninety (90) days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the issuer of such check.  Any Holder of an Allowed Claim, Holder of a Disputed Claim, or a holder of a Trust Interest holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Liquidating Trust.  In such cases, any Available Trust Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder or holder with respect thereto.  Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim, Holder of a Disputed Claim or a holder of a Trust Interest.

(d)    Set-Off.  Except as otherwise provided herein, the Debtors or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.  Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the holder of an Allowed Claim.

(e)    Abandonment.  The Liquidating Trustee may, after consultation with the Liquidating Trust Board, abandon, in any commercially reasonable manner, any property that the Liquidating Trustee reasonably concludes is of no benefit to the holders of Trust Interests. No abandonment shall have occurred, or be deemed to have occurred, without an express written statement of such abandonment by the Liquidating Trustee.

(f)    Excess Funds.  After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and this Agreement, if the amount of remaining Available Trust Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee, may donate such amount to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

(g)    Maximum Recovery and Postpetition Interest.  Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for holders of Secured Claims under section 506(b) of the Bankruptcy Code or as allowed by order of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

(h)    Allocation of Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount

(as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

(i)      Compliance with Laws.  Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws except as may be expressly provided herein or in the Plan.  Without limiting the generality of the foregoing, (a) the Liquidating Trustee shall make Distributions from the Liquidating Trust to the holders of Trust Interests at least annually, to the extent it determines the Liquidating Trust has sufficient cash available for distribution from all net cash income and all other cash received by the Liquidating Trust; provided, however, that the Liquidating Trustee may, to the extent consistent with applicable law or guidance as to liquidating trusts (e.g., Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684), retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims), and to maintain the value of the Liquidating Trust Assets during the term of the Liquidating Trust, (ii) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses of the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties in connection with this Agreement and any amounts owed to the Liquidating Trustee pursuant to the terms hereof, and (iii) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan and this Agreement; and (b) the Liquidating Trustee, in its discretion, may cause the Liquidating Trust to withhold and/or pay to the appropriate tax authority from amounts distributable from the Liquidating Trust to holders of Trust Interests any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such holder of a Trust Interest or the Liquidating Trust with respect to the amount to be distributed to such holder of a Trust Interest. The Liquidating Trustee shall determine such maximum amount to be withheld by the Liquidating Trust in its sole, reasonable discretion and shall cause the Liquidating Trust to distribute to the holder of a Trust Interest any excess amount withheld.  All such amounts withheld and paid to the appropriate tax authority (or reserved pending resolution of the need to withhold) shall be treated as amounts distributed to such holder of a Trust Interest for all purposes of this Agreement.

## ARTICLE VII
## SUCCESSOR LIQUIDATING TRUSTEE

7.01    Successor Liquidating Trustee.  In the event the Liquidating Trustee or any successor Liquidating Trustee ceases to serve as Liquidating Trustee, is removed, terminated, resigns or is otherwise unable to serve for any reason prior to the dissolution of the Liquidating Trust, a successor trustee shall be appointed in accordance with Section 5.13(b)(v).  Any successor to the Liquidating Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Liquidating Trust records and with the Bankruptcy Court. The resigning Liquidating Trustee shall duly assign, transfer, and deliver to such successor trustee all Liquidating Trust Assets held by such resigning Liquidating Trustee hereunder and

*Draft*

shall, as reasonably requested by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee all the liabilities, duties, powers, rights, title, discretion, and privileges of such resigning Liquidating Trustee. Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee will be vested in and undertaken by the successor trustee without any further act; the predecessor Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Liquidating Trustee shall have no further liability or responsibility with respect thereto. A successor trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor trustee expressly assumes such responsibility. A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor trustee for any events or occurrences subsequent to the cessation of its role as the Liquidating Trustee.

## ARTICLE VIII
## DURATION AND TERMINATION OF TRUST

8.01    Duration.  The Liquidating Trust shall be deemed effective upon the Effective Date and shall remain and continue in full force and effect until the Termination Date.  The "Termination Date" shall occur at such time as (i) all Disputed Claims have been resolved; (ii) all of the Liquidating Trust Assets have been liquidated; (iii) all duties and obligations of the Liquidating Trustee under this Agreement, the Plan, and the Confirmation Order have been fulfilled; (iv) all Distributions required to be made by the Liquidating Trustee under the Plan, the Confirmation Order and this Agreement have been made; and (v) the Cases have been closed. The term of the Liquidating Trust shall not exceed five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee (after consultation with the Liquidating Trust Board) filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years per extension, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extensions would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Upon the Filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.  Notwithstanding anything to the contrary in this Agreement, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust.

8.02    Maintenance of Records.  The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements [until at least six (6) years] after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee.  At the Liquidating Trustee's discretion (after consultation with the Liquidating Trust Board), all of such records and documents may, but need not, be destroyed at any time after six (6) years from the

completion and winding up of the affairs of the Liquidating Trust (except to the extent such records and documents are necessary to be held longer to fulfill the Liquidating Trustee's obligations pursuant to this Agreement).

8.03    <u>Dissolution Events</u>.  The Liquidating Trustee shall be discharged, the Liquidating Trust shall be dissolved, and the Trust Interests shall be cancelled at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under this Agreement (other than those set forth in Section 8.02), the Plan and the Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, this Agreement and the Confirmation Order have been made, and (v) the Cases have been closed.  Without limiting any other provision of this Agreement regarding termination, the Liquidating Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Liquidating Trust and the Liquidating Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

8.04    <u>Continuance of Trust for Winding Up</u>.  After the Termination Date, and solely for the purpose of winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until its duties have been fully performed.  The Liquidating Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidating Trustee until such time that the Liquidating Trustee determines (in accordance with Section 8.02), after consultation with the Liquidating Trust Board, that such books, records, and files may be destroyed (unless such records and documents are necessary to fulfill the Liquidating Trustee's obligations pursuant to this Agreement), subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidating Trustee may be a party.  Except as otherwise specifically provided herein, upon the occurrence of the events set forth in clauses (i) – (v) in the first sentence of Section 8.03, the Liquidating Trustee shall be deemed discharged and have no further duties or obligations hereunder, and the interests of the holders of Trust Interests shall be cancelled and the Liquidating Trust will be deemed to have been dissolved.

**ARTICLE IX**
**TAX MATTERS**

9.01    <u>Tax Treatment</u>.  The Debtors, the Liquidating Trustee, and holders of Trust Interests, as applicable, will treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and any comparable provision of Tax Law.  The Liquidating Trust shall be considered a "grantor" trust and is intended to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.  Consistent with this treatment, for all federal, state, and local income tax purposes, the holders of Trust Interests shall be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the assets of the Liquidating Trust ((i) to the extent of the value of their respective shares of the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust.  The holders of Trust Interests will be treated for federal, state, and local income tax purposes as the grantors of the Liquidating Trust and the owners of the assets thereof, and the Debtors, the Liquidating Trustee, and the holders of Trust Interests shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the holders

of Trust Interests as (a) a transfer by the Debtors of the assets of the Liquidating Trust (net of any applicable liabilities) directly to the holders of Trust Interests (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the holders of Trust Interests (to the extent of the value of their respective shares in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the Trust Interests in the Liquidating Trust. As soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and the Debtors, the Liquidating Trustee, and the holders of Trust Interests shall use such valuation consistently for all applicable reporting purposes, including all federal (and comparable state and local) income tax purposes. The Liquidating Trustee shall be authorized to take any action necessary to maintain compliance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of Tax Law) or any successor regulation thereto that does not contradict the terms of this Agreement, the Plan, or the Confirmation Order. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of Tax Law), the Liquidating Trustee shall take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal (and comparable state and local) tax purposes under Treasury Regulation Section 301.7701-3 (but not a "publicly traded partnership" subject to Section 7704(a) of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified.

9.02    Tax Reporting. The "taxable year" of the Liquidating Trust shall be the "calendar year" as those terms are defined in Section 441 of the Tax Code. The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and other applicable Tax Law, and report, but not pay tax on, the Liquidating Trust's items of income, gain, loss, deduction, and credit. All of the Liquidating Trust's income shall be treated as subject to tax on a current basis with such tax being the sole responsibility of the holders of Trust Interests. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority or under applicable Tax Law[; *provided*, *however*, the Debtors shall be responsible for filing all required federal, state, local, and non-U.S. tax returns and/or informational returns for the Debtors (including final tax returns)][54]. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall send to each holder of a Trust Interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal (and, as applicable, state, local, and non-U.S.) income tax returns. The Liquidating Trustee may provide each such holder of a Trust Interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement, or in any other manner reasonably determined by the Liquidating Trustee. Such reporting shall also occur within a reasonable time after the dissolution of the Liquidating Trust. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction, and credit of the Liquidating Trust with respect to each holder of a

---

[54] [NTD: To be conformed with Plan]

*Draft*

Trust Interest to the extent required by the Tax Code or other applicable Tax Law. All parties (including, without limitation, the Debtors, holders of Trust Interests, and the Liquidating Trustee) shall report for federal, state, local, and non-U.S. income tax purposes consistently with the foregoing. The Liquidating Trustee may, in its sole discretion, request an expedited determination of the tax obligations of the Liquidating Trust, under Bankruptcy Code Section 505(b), for all tax returns filed for, or on behalf of, the Liquidating Trust for all taxable periods from the Effective Date through the Termination Date.

9.03    Tax Withholdings. The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by applicable Tax Law or by any federal, state, local, or non-U.S. taxing authority, and all Distributions made by the Liquidating Trust to the holders of Trust Interests shall be subject to any such withholding and reporting requirements. All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to such holders of Trust Interests for all purposes of this Agreement. The Liquidating Trustee shall be authorized to take any all actions that may be necessary or appropriate to comply with any such withholding and reporting requirements including, without limitation, to collect such tax information from the holders of Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Agreement and requiring that, as a condition to the receipt of a Distribution, holder of a Trust Interest or the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9 or other comparable form. The Liquidating Trustee may refuse to make a Distribution to any holder of a Trust Interest that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that upon the holder of a Trust Interest's delivery of such information, the Liquidating Trustee shall make such distribution to which the holder of a Trust Interest is entitled, without any interest and income thereon. In the interim, any property to be distributed by the Liquidating Trust shall, pending the delivery of such information, be treated as an unclaimed Distribution to be held by the Liquidating Trustee until such time as the Liquidating Trustee is satisfied with the holder's arrangements for any withholding tax obligations. If the Liquidating Trustee makes such a request and the holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or this Agreement.

9.04    Disputed Claims. The Liquidating Trustee (a) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 (and comparable provisions of Tax Law), and (b) to the extent permitted by applicable Tax Law, shall consistently report for state, local, and non-U.S. tax purposes. If a "disputed ownership fund" election is made, all parties (including, without limitation, the Liquidating Trustee and the holders of Trust Interests) shall file such tax returns and pay such taxes as may be required consistent with such treatment.

9.05    Foreign Tax Matters. The Liquidating Trustee shall take all reasonable steps, including, without limitation, the filing of any necessary documentation or elections with any nonU.S. tax authority, to minimize, under non-U.S. law: (i) the liabilities of the Liquidating Trust and the holders of Trust Interests for non-U.S. taxes, interest, penalties, and other amounts; (ii) the obligations of the Liquidating Trust to file non-U.S. tax or information returns or other

*Draft*

documentation; and (iii) the obligations of the Liquidating Trust to withhold and remit amounts to any non-U.S. taxing authority in respect of payments or distributions of income or property by the Liquidating Trust. The Liquidating Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Liquidating Trustee or the Liquidating Trust under non-U.S. Tax Law. The Liquidating Trustee, or any other legal representative of the Liquidating Trust, shall not distribute Liquidating Trust Assets or any proceeds thereof without first having obtained all certificates required to have been obtained under applicable non-U.S. law relating to taxes.

## ARTICLE X
## AMENDMENT AND WAIVER

10.01  Amendment; Waiver. The Liquidating Trustee may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any holder of a Trust Interest or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; *provided* that (A) the Liquidating Trustee shall provide reasonable advance notice to the Liquidating Trust Board prior to making any such amendment, supplement or waiver to this Agreement and (B) such amendments, supplements or waivers shall not adversely affect the Distributions to any of the holders of Trust Interests or adversely affect the U.S. federal income status of the Liquidating Trust as a liquidating trust; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Liquidating Trust as a liquidating trust. Any substantive provision of this Agreement may be amended or waived, or any material defect or omission cured, by the Liquidating Trustee with the consent of a majority of the Liquidating Trust Board (or solely with the consent of the two Class A Board Members if such proposed amendment or waiver affects or relates to the Prepetition First Lien Collateral), subject to the approval of the Bankruptcy Court, upon notice and opportunity for a hearing; *provided*, *however*, that no change may be made to this Agreement that would (i) adversely affect the U.S. federal income tax status of the Liquidating Trust as a liquidating trust or (ii) expand, add to, or modify the original stated purpose of the Liquidating Trust. Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) (and any comparable provision of state or local law) or any successor regulation thereto that does not contradict the terms of this Agreement, the Plan, or the Confirmation Order, as well as applicable IRS guidelines, rulings, or other controlling authorities. Notwithstanding any other provision herein, the Liquidating Trustee may apply to the Bankruptcy Court to order or allow any amendment of this Agreement and the Bankruptcy Court shall have jurisdiction and authority to approve amendments of this Agreement. Bankruptcy Court approval shall be required for any changes or amendments to this Agreement that are inconsistent with the terms of the Plan or Confirmation Order.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.01  Intention to Establish Grantor Trust. This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be

*Draft*

governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with that intent, and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

11.02    <u>Laws as to Construction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.

11.03    <u>Other Activities</u>.  The person serving as the Liquidating Trustee shall be entitled to perform services for and be employed by third parties; *provided*, that such performance or employment affords the person serving as the Liquidating Trustee sufficient time to carry out his or her responsibilities and duties as Liquidating Trustee and such performance or employment does not conflict with or otherwise prohibit such person from performing his or her responsibilities or duties free of conflict or interruption.

11.04    <u>Severability</u>.  If any provision of this Agreement or application thereof to any person or circumstance shall be determined by a court of competent jurisdiction through a Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11.05    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction to interpret and enforce this Agreement.  Each Party to this Liquidating Trust Agreement hereby irrevocably consents to the exclusive jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each Party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement will be brought only in the Bankruptcy Court.  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement. For the avoidance of doubt, the Bankruptcy Court shall not have exclusive jurisdiction over Liquidating Trust Causes of Action, which the Liquidating Trustee may prosecute in any court of appropriate jurisdiction in accordance with applicable law.

11.06    <u>Waiver of Right to Jury Trial</u>.  Each Party to this agreement hereby irrevocably waives all rights to trial by jury in any action, proceeding, or counterclaim arising out of or relating to this Agreement or the transactions contemplated thereby.

11.07    <u>Confidentiality</u>.  The Liquidating Trustee, his or her employees, the Covered Persons, and the Members of the Liquidating Trust Board (collectively, the "<u>Confidential Parties</u>") may become aware of certain material, non-public information relating to the Liquidating Trust Assets ("<u>Confidential Information</u>") in their capacity as Confidential Parties. The Confidential Parties will hold any Confidential Information strictly confidential, and not use the Confidential Information for personal gain.  Confidential Parties may only disclose Confidential Information if the Confidential Information:

*Draft*

        (a)      is, or becomes, generally available to the public other than by a disclosure made by a Confidential Party;

        (b)      was available to the Confidential Parties on a non-confidential basis before its disclosure to the Confidential Parties under this Agreement;

        (c)      becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with the Debtors or the Liquidating Trust, provided that the source is not also bound by a confidentiality agreement with the Debtors or the Liquidating Trust; or

        (d)      must be disclosed by the Confidential Parties because of a legal process including a subpoena or other court order, or other applicable laws or regulations.

11.08  <u>Meanings of Other Terms</u>. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole [and not to any particular Article, Section or subdivision of this Agreement]. The term "including" shall mean "including, without limitation." All references to the "Liquidating Trustee" shall be deemed to include its successors hereunder, if any.

11.09  <u>Notices</u>. Any notice of other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at the appropriate address set forth below, or such other address as may be provided to the other parties in writing:

| | |
|---|---|
| <u>To the Liquidating Trustee:</u> | |
| <u>To the Members of the Liquidating Trust Board:</u> | |

*Draft*

11.10  <u>Notices if to a Holder of a Trust Interest</u>.  Subject to any transfer recognized by the Liquidating Trustee as set forth herein, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a holder of a Trust Interest, on such holder of a Trust Interest's proof of claim, or if no proof of claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Liquidating Trust or such other means reasonably calculated to appraise the holder of a Trust Interest.  Any notices to the United States shall be made to the persons and addresses provided for in the Plan.

11.11  <u>Headings</u>.  The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

11.12  <u>Entire Agreement</u>.  This Agreement, including the Exhibits attached hereto, the Plan, and the Confirmation Order contain the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.

11.13  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

11.14  <u>Prevailing Party</u>.  If the Liquidating Trustee or the Liquidating Trust, as the case may be, is the prevailing party in any dispute with any holder of a Trust Interest regarding the provisions of this Agreement or the enforcement thereof, such person shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.  To the extent the Liquidating Trust has advanced such amounts, the Liquidating Trust may recover such amounts from the non-prevailing party.

11.15  <u>Privileges and Immunities</u>.    Notwithstanding anything set forth in this Agreement, no provision of this Agreement in any way constitutes or implies a waiver, termination, or modification by International Finance Corporation and/or the Inter-American Investment Corporation of any privileges or immunities granted to it under the Articles of Agreement of the International Finance Corporation or the Agreement Establishing the Inter -American Investment Corporation, or under any treaty, international agreement or convention, or applicable law.

*Remainder of page intentionally blank.  Signature pages follow.*

*Draft*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

Dated: _____          LIQUIDATING TRUSTEE

Signature: _____

Name: _____

As its: _____

Dated: _____          THE DEBTORS (as identified in this Agreement)

Signature: _____

Name: _____

As its: _____

Dated: _____          THE CLASS A BOARD MEMBERS (as identified in this Agreement)

Signature: _____

Name: _____

Signature: _____

Name: _____

Dated: _____          THE CLASS B BOARD MEMBERS (as identified in this Agreement)

Signature: _____

Name: _____

Signature: _____

Name: _____

[Signature Page to Liquidating Trust Agreement]

*Draft*

Dated:_____                    THE JOINT COMMITTEE MEMBER (as identified in this Agreement)

                                       Signature: _____

                                       Name: _____

[Signature Page to Liquidating Trust Agreement]